UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIGEL AUSTIN, | ) <br> ) <br> ) |
| Plaintiff, | ) Case No. 05-2219(JDB) <br> ) |
| v. | ) <br> ) |
| THE DISTRICT OF COLUMBIA, et al. | ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

Plaintiff Nigel Austin, by and through his counsel, Bode & Grenier, LLP, hereby opposes Defendant District of Columbia's Motion to Stay All Proceedings (the "Motion").

**SUMMARY OF ARGUMENTS**

As set forth more fully herein, this Court should deny the motion for the following reasons:

1. Pre-indictment investigations do not warrant a stay of a civil action; moreover, there are no indictments issued against any Defendant herein, no grand juries have been convened, and there are no parallel criminal proceedings. As a matter of law, therefore, Defendant has failed to provide any basis for a stay of the civil action.

2. There are no Fifth Amendment concerns which would warrant staying the civil action. Without an indictment, no alleged Fifth Amendment privilege is threatened and this Court has held that a blanket assertion of privilege against self-incrimination is an inadequate basis for the issuance of a stay.

3. Defendant District of Columbia's assertion that it lacks sufficient information to answer Plaintiff's Complaint until the completion of the Force Investigation Team ("FIT") investigation is simply nonsensical and belied by the very facts. The District has been on notice of this incident for almost four months and has had ample opportunity independently to investigate Plaintiff's allegations -- including multiple interviews with its own employee, co-Defendant Officer Thomas, who personally inflicted the severe and debilitating injuries to Plaintiff *in the cell block and in front of another MPD officer.*

4. The Memorandum of Agreement on the Use of Force between and among the Department of Justice, Metropolitan Police Department, and District of Columbia created and implemented reporting and documentation guidelines and requirements regarding excessive force -- such guidelines are *independent* of any FIT investigation, and such investigatory results can certainly be used by the District to respond to Plaintiff's Complaint. It would be a judicial travesty to permit the District a stay based upon its failure to follow its own guidelines and policies.

5. An order staying the civil action would cause extreme prejudice and harm to the Plaintiff Nigel Austin, as he will most assuredly require future extensive medical treatment (including, potentially, more surgery) to monitor and perhaps revise the series of plates and screws holding his jaws together -- such treatment will be quite costly and should be borne by the responsible parties. No possible prejudice or harm to any Defendant could result should the civil action continue. Additionally, convenience of the courts is furthered when motions to stay proceedings are denied. Finally, the interests of non-parties to this action and the public are best served by allowing this proceeding to

continue unfettered.

## FACTUAL BACKGROUND

This action arises out of the brutal, unjustified, and wholly vicious battery to Plaintiff Nigel Austin ("Mr. Austin") by Defendant Officer Don Thomas ("Officer Thomas"), who was acting in the course of his employment for the Metropolitan Police Department ("MPD), while Mr. Austin was in the custody of the MPD.

On the morning of August 25, 2005, Mr. Austin was arrested on a warrant arising out of an alleged altercation with one of his neighbors that had occurred several days earlier. Mr. Austin was processed at the MPD's Seventh District Station, and then transported to the "Central Cell" facility, located at 300 Indiana Avenue, N.W., Washington, D.C. where he was to await arraignment. Upon his arrival at the "Central Cell" facility, Mr. Austin was informed that if he was in his cell around 12:30 p.m., he would likely be brought before the Court, arraigned, and released that same day.

At some point in the early afternoon (between noon and 2:30 p.m.), Officer Thomas came and took Mr. Austin and another detainee to another room, where he instructed them to sit down. A female MPD officer was also in this room with another detainee. Mr. Austin, concerned that he would miss his opportunity to appear in Court, and therefore not be released that same day, requested that Officer Thomas return him to his cell. In response, Officer Thomas walked up to Mr. Austin and said, "What did you say?" When Mr. Austin repeated his request, Officer Thomas suddenly and violently struck Mr. Austin on the left side of his face with a closed fist. At no point prior to the blow, did Mr. Austin raise his hands, or make any gesture whatsoever to provoke this

violent assault.

As a result of this blow, both of Mr. Austin's jaws were completely shattered and he fell face first to the ground where Officer Thomas proceeded to jump on top of him, put his knee into Mr. Austin's back, and handcuff his hands behind his back. Mr. Austin was bleeding profusely at this time as a direct result of the blow. Other officers, including the female MPD officer present when the incident occurred, responded to the scene after hearing the exchange, but failed to make any effort to aid Mr. Austin in any way. When he complained that Officer Thomas had broken his jaw, Officer Thomas replied "If you can talk, it's not broken."

Officer Thomas then proceeded to throw Mr. Austin into a cell by himself, with his hands still handcuffed behind his back, for several hours where Mr. Austin passed out for an extended period of time due to blood loss and pain. Mr. Austin was awoken several hours later by another MPD employee and transferred to another cell so that the employee could clean up the massive amount of blood that had accumulated in the cell as a result of his injuries. Despite his complaints that his jaw was broken, his obvious pain, and the fact that he was still bleeding, the MPD employee put him in another cell alone for several more hours.

At some point that evening, the MPD finally sought medical assistance for Mr. Austin, when two Seventh District police officers brought him to Greater Southeast Community Hospital. Upon arriving at the hospital, the MPD affirmatively instructed the doctors not to reveal that Mr. Austin was at the hospital. In fact, Mr. Austin's mother, Barbara Boyd, who had been frantically calling the MPD to discern the whereabouts of her son without any success, found out he was at Greater Southeast Community Hospital

4

only because a nurse, acting against the MPD's explicit request, specifically asked Mr. Austin for his phone number so that she could call his mother and let her know where he was.

The MPD lied to the hospital about where and how the incident had occurred, claiming that it was the result of Mr. Austin's altercation with them in a public park -- a demonstrable lie.

Mr. Austin was admitted to the hospital where x-rays confirmed that Officer Thomas' blow had indeed broken both of his jaws. Mr. Austin remained in the hospital for five (5) days. On Saturday, August 27, 2005 (Mr. Austin's twentieth birthday), doctors performed closed reduction internal fixation on his jaws and wired his mouth shut. Mr. Austin's mouth remained wired shut for approximately one and one-half months which rendered him unable to eat any solid food.

## ARGUMENT

1.  **Pre-Indictment Investigations Do Not Warrant a Stay of a Civil Proceeding**

    While a Court does have an inherent power to stay proceedings in control of its docket, *see Landis v. North America Co.*, 299 U.S. 248, 254 (1936), the facts here do not even remotely warrant such an extreme action, and the cases cited by District of Columbia in support of their motion are inapposite.

    Courts have consistently held that pre-indictment criminal investigations do not warrant a stay of a civil action. *Barry Farm v. U.S. Dept. of the Navy*, 1997 U.S. Dist. LEXIS 2754, (D.D.C. 1997); S.*E.C. v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. App. 1980)(stating that where no indictment has been issued, the case for staying a

civil proceeding is "far weaker."); *U.S. v. Private Sanitation Industry Association*, 811 F. Supp. 802, 805 (S.D.N.Y. 1992)("pre-indictment requests for a stay of civil proceedings are generally denied."); *United States v. District Council of New York City*, 133 F.R.P. 12, 16 (S.D.N.Y. 1992)("In the case of pre-indictment requests for a stay, courts in this district will deny a stay of the civil proceeding where no indictment has been issued."); *Admiral Ins. Co. v. Fed. Sec., Inc.*, 1996 US LEXIS 3639, *4 (N.D. Ill. Mar. 26, 1996)("Where an indictment has not yet been returned or where there is no ascertainable time period within which the criminal prosecution is likely to be concluded, a stay of discovery in a civil proceeding is more problematic."); *Sterling National Bank v. A-1 Hotels International, Inc.*, 175 F. Supp.2d 573, 577 (S.D.N.Y. 2001)(holding that pre-indictment, "the likelihood that a civil party can make the necessary showing to obtain the "extraordinary" remedy of a stay . . . is inevitably much reduced."). In fact, Courts have declined to stay civil cases even when an indictment against a defendant was imminently expected. *In re Anicom*, 2002 U.S. Dist. LEXIS 21680, *6 (N.D. Ill. 2002)(denying a stay in civil action where criminal indictments were expected within four months because "defendants only have a threat of being indicted."); *Fidelity Nat'l Title Ins. Co. v. Nat'l Titles Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997)(denying a motion for protective order to limit the scope of the defendant's deposition where an indictment was not expected for five months, explaining that "pre-indictment requests for a stay of civil proceedings are generally denied.").

In this action, there has been no indictment, nor any representation by the District of Columbia that an indictment against Officer Thomas is forthcoming. Rather, the District alludes to unspecified investigations by the U.S. Attorney's Office and the MPD

6

Force Investigation Team ("FIT"), in addition to a grand jury investigation that "upon information and belief" is pending. Plaintiff seriously questions the truth of this assertion, considering that he, the *victim of the crime*, has never been contacted by any representative of the U.S. Attorney's Office, nor has he ever been informed about any such potential criminal investigation. Indeed, the District has not provided this Court with a scintilla of evidence to support this bald assertion.

In light of the fact that there has been no indication when the investigations are to be completed -- an obvious precursor to any potential criminal proceeding -- mere allegations as to any indictments or phantom criminal proceedings that *may* be commenced against Officer Thomas are utterly speculative, and cannot possibly serve as a basis for a stay of these proceedings. As the United States has had almost four months to commence criminal proceedings against Officer Thomas, how long is Mr. Austin expected to wait while Defendant "investigates" this incident? Clearly, Mr. Austin's case should not be indefinitely halted on the mere threat of indictment of Officer Thomas. *See In re Anicom*, 2002 U.S. Dist. LEXIS 21680 at *6.

In fact, the District's own arguments defeat their request for a stay and are utterly inapposite to every authority cited in their Memorandum. The District fails to point to a single shred of authority whereby an agency's *internal investigation* adequately serves as a basis for a stay. Every case cited by District of Columbia in support of a stay of the civil proceedings either had a parallel criminal action ongoing at the same time, s*ee Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971)(parallel criminal trial arising from same facts as civil action); *Volmar v. New York Post*, 152 F.R.D. 36 (S.D.N.Y. 1993)(parallel criminal trial arising from same facts as civil action), or at the very least a

7

convened grand jury, *see Dresser, supra*.

In fact, the District even acknowledges that the "*strongest case for deferring a civil proceeding until after completion of a criminal proceeding is where a party under indictment for a serious offense is required to defend a civil or administrative action.*" *Dresser*, 628 F.2d at 1375. (emphasis added) This is clearly not the case here -- no indictments have been issued by a grand jury in this matter, in fact there has been no representation when, if ever, a grand jury is to be convened, and obviously, no parallel criminal proceeding has been commenced against any parties to Mr. Austin's action. This Court should therefore deny the Motion.

2.  **There Are No Fifth Amendment Concerns**

Contrary to the District's assertions, there are no Fifth Amendment concerns which would warrant staying the civil action. Since no grand jury has been convened and no indictments issued there are no Fifth Amendment privileges to assert. *Dresser*, 628 F.2d at 1376. The *Dresser* Court held that without an indictment no Fifth Amendment privilege is threatened. *Id*. This Court has held that as a matter of law the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay. *Barry Farm v. U.S. Dept. of the Navy*, 1997 U.S. Dist. 2754, *7 (D.D.C. 1997). Finally, if a grand jury is ever convened and Officer Thomas is actually indicted, the District of Columbia cannot assert a Fifth Amendment privilege through its individual officers. *U.S. v. Kordel*, 397 U.S. 1, 8 (1970).

3.  **The District of Columbia's Assertion That It Has No Information in Which to Answer the Complaint is Untenable**

The Motion is little more than a veiled attempt by the District to mask its apparent

8

lack of investigation of the incident, despite having notice of this action since August 2005. (As an aside, Plaintiff does have reason to believe that an Internal Affairs investigation is proceeding on this matter as well.)  Clearly, the District had little incentive to pursue and actively investigate this incident prior to the actual threat of civil liability and money damages.  District of Columbia's sloth in actually investigating this matter should not be rewarded by staying the only active proceedings seeking justice and compensation from this heinous incident.

The District initially states in the Motion that a stay is necessary because a grand jury "upon information and belief" is pending against Officer Thomas, leading one to believe that perhaps a parallel criminal action is to be commenced against Officer Thomas whereby a stay may *arguably* be more proper than as presented in this action. Later in the Motion, however, the District reveals that no grand jury investigation is pending -- arguing rather that a stay is necessary because the U.S. Attorney's Officer and the MPD FIT are currently investigating Officer Thomas in contemplation of criminal proceedings against him.  By the conclusion of the Motion, the District admits its position that a stay is required merely because FIT is currently investigating the incident and in the process of collecting the necessary facts in which to answer Mr. Austin's complaint.

The District's assertion that its own FIT Team's failure to have completed its report hampers its preparation of a defense is the functional equivalent of the child who murders both of his parents and then begs for the Court's mercy as an orphan. The FIT is part of the MPD!

By way of background, the Department of Justice ("DOJ") commenced an investigation of the MPD, at the MPD's own request, with regard to use of excessive

force by the MPD in 2000-2001. The DOJ's investigation revealed a pattern or practice of use of excessive force by the MPD. *See* Cover Letter to Memorandum of Agreement between DOJ, District of Columbia and MPD, page 1, a copy of which is attached hereto as Exhibit "A." In fact, the DOJ found that approximately 15% of all uses of force by the MPD were excessive, in contrast to the national average of 1-2%. *Id*. at page 2. In addition to actual use of excessive force by MPD officers, the DOJ found that the reporting of uses of force by MPD officers and subsequent investigations were woefully inadequate. *Id*. at 8-9.

As a result of the foregoing investigation, a Memorandum of Agreement on the Use of Force ("MOA") was entered into between the DOJ, MPD and District of Columbia on June 13, 2001, a copy of which is attached hereto as Exhibit "B." As part of the MOA, FIT's role, which had been previously relegated to only the investigation and review of firearm discharges by MPD officers, was expanded to include an "impartial and professional" review and investigation of any incident involving a use of deadly force and serious uses of force by MPD officers. *See* Exhibit "B" at page 9. Included in the definition of "serious force" were "less-than-lethal actions by MPD officers including . . . all uses of force by an MPD officer resulting in a broken bone or an injury requiring hospitalization." *Id*. at 6. Officer Thomas' actions towards Mr. Austin, as acknowledged by District of Columbia, surely warranted a FIT investigation.

Apart from the expansion of the role of FIT, new standards were put into place with regard to the reporting and documentation of use of force incidents. As per the MOA's guidelines and policies, which were explicitly incorporated by the MPD, officers were to notify their supervisor immediately following any use of force or receipt of any

allegation of excessive force, and complete a Use of Force Incident report documenting the incident. *Id*. at 9. This duty to notify and document extended to other officers who observed a fellow officer engaging in the use of excessive force. *Id*. at 14. Additionally, the MPD was required to notify the Office of the United States Attorney for the District of Columbia immediately, or "in no case later than the next business day, following . . . a serious use of force by an MPD officer or following any use of force indicating potential criminal conduct by the officer." *Id*. Finally, a supervisor was responsible for *immediately* notifying FIT with regard to any serious use of force by an MPD officer that they became aware of. *Id*. Thus, documentation and investigation of brutal assault on Mr. Austin by Officer Thomas should have begun on August 26, 2005 pursuant to the MOA and guidelines incorporated by the MPD. In other words, *well* before undersigned counsel even became involved on behalf of Plaintiff!

      As a result, the District's arguments that it has no information with which to properly defend this action are untenable under the mandates of the MOA. The events underlying this action occurred almost four months ago. Pursuant to its own guidelines and policies, the MPD, including Officer Thomas or any other MPD employees present at the time of his unprovoked assault on Mr. Austin, were required to immediately notify their supervisor of the incident, who was in turn obligated to notify the Office of the United States Attorney's for the District of Columbia and FIT. Additionally, Use of Force reports were to be completed with regard to this incident immediately after its occurrence.

      In addition, any information directly related to Officer Thomas must have been entered into his file in the MPD Personal Performance Management System. *Id*. at 19.

As a result, pursuant to the MOA, District of Columbia has a virtual paper trail, outside of any FIT or other investigation, in which to begin to obtain information and defend this action. In fact, one of the main purposes of the MOA was both to expedite the investigation process and to provide for this very same paper trail in which to document, report, and investigate uses of force in order to alleviate these excessive uses of force by the MPD.

Despite (1) the passage of almost four months; (2) the reporting and documentation requirements of the MOA with regard to any use of force by an officer which should have resulted in an immediate FIT investigation; (3) Mr. Austin's mother's complaint to Internal Affairs and the Grievance Committee immediately after the incident; (4) a § 12-309 notice of claim being served on the District of Columbia and the MPD on September 23, 2005; and (5) the service of Mr. Austin's Complaint on November 16, 2005, the District claims that it requires a stay of proceedings until its investigations are complete. This is utterly ridiculous given the significant amount of time which has already passed since the incident. The District of Columbia's and the MPD's utter failure to abide by the *very rules that they created for themselves for these very situations* can hardly serve as a justification for any delay of Mr. Austin's civil action.

Further, <u>FIT is part of the MPD</u>, *not* an independent organization existing outside of the MPD, but an internal part of the MPD. Essentially, District of Columbia is arguing that the MPD has no knowledge of the facts of an investigation that they themselves are conducting.

Importantly, FIT is not a disciplinary board, and while its investigations may lead

to criminal charges, they are not responsible for instituting such actions against MPD officers. FIT is charged with reviewing use of force incidents, determining whether such uses of force are consistent with police procedure, and then forwarding policy and training recommendations to the Police Chief. *Id*. at 10. Thus, the District's assertion that the FIT investigation precludes it from knowing what happened on August 25, 2005, is a gross misrepresentation of what FIT really is and should be duly ignored by this Court.

Further, nowhere in the MOA is there any indication that a FIT investigation precludes the commencement or defending of a civil suit arising from the same incident which FIT is investigating. Indeed, such a provision would likely not pass constitutional muster.

Apart from the above, the District's baseless argument that it cannot properly mount a defense to Mr. Austin's complaint prior to the completion of the FIT investigation is patently absurd -- arguably more a function of the indefensibility of this senseless act of violence, than a commentary on lack of knowledge. The District has a multitude of other means in which to obtain information and timely respond to Mr. Austin's complaint, in addition to the Use of Force reports, and other paperwork required by the MOA and MPD guidelines as a result of Officer Thomas' violent assault. Clearly, the District is not limited to only looking to FIT for facts behind this case. Plaintiff, through his own investigation, has already uncovered a significant amount of information without benefit of FIT's assistance. Nothing precludes the District from engaging in similar independent investigation. More importantly, nothing precluded the District of Columbia timely investigating this matter when it first received notice of this action, at

the very latest, three months ago.

The incident underlying this action took place in front of many witnesses, MPD representatives and private citizens alike. However, the District has not indicated that any of these witnesses were interviewed, or otherwise questioned with regard to Officer Thomas' actions. Additionally, neither Mr. Austin nor his counsel have ever been contacted by FIT, or any other representatives, agents or employees of the District of Columbia, MPD or the Office of the Attorney General regarding the brutal assault of Mr. Austin, despite it happening almost four months ago. Nor has Mr. Austin ever been contacted regarding the "pending" grand jury investigation, though one would imagine he would play a central role in any criminal or internal investigation of Officer Thomas.

Further, the Central Cell holding facility has four multiplex security cameras which would undoubtedly prove helpful in any investigation. Clearly, the rights of Mr. Austin to seek compensation and redress for the wrongs caused to him by the MPD, the District, and Officer Thomas should not be delayed merely because the District has only now deemed it "necessary," when faced with a potential civil judgment, to "begin" investigating this heinous incident. The District cannot seek to delay Mr. Austin's case by hiding behind general allegations of unspecified investigations and grand jury investigations which are "upon information and belief" pending.

Finally, the District's argument that further investigations need to be completed in order to determine if it can represent Officer Thomas is a complete misrepresentation of all known and uncontested facts. This incident occurred at the Central Cell holding facility and there can be no doubt that Officer Thomas, who had initially taken Mr. Austin and another detainee out of his jail cell and into another room, was acting within

14

the scope of his employment as an MPD officer at the time of the incident.

The District's sudden need to investigate whether Officer Thomas was acting in the course of his employment at the time of the incident clearly strains the bounds of all credibility. Interestingly, the MPD has already related an explanation -- albeit demonstrably false -- as to what happened to Mr. Austin on August 25, 2005.  Mr. Austin was brought to the Greater Southeast Community Hospital by two MPD officers from the Seventh District.  When Mr. Austin was admitted to the hospital, the accompanying officers represented that Mr. Austin was injured in a city park or street while resisting arrest.  *See* Greater Southeast Community Hospital records, copies of which are attached hereto as Exhibit "C."  As a result, what is the need for any further investigation?

**4.     Regardless of the Foregoing, the District Of Columbia Does Not Meet The Criteria for a Stay**

The Court, in its discretion, may stay a civil proceeding after careful consideration of the following factors:  (1) the private interest of the plaintiff in resolving the civil litigation expeditiously balanced against the prejudice of delay; (2) the private interests of and burden to the defendants; (3) convenience to the courts; (4) the interests of persons not parties to the litigation; and (5) the public interest. *Barry Farm Resident Council, Inc. v. U.S. Dept. of the Navy*, 1997 U.S. Dist. LEXIS 2754 at *3 (D.D.C. 1997); Milton Pollack, *Parallel Civil and Criminal Procedures*, 129 F.R.D. 201, 203 (S.D.N.Y. 1990).

Mr. Austin's private interests clearly outweigh any alleged and speculative prejudice to the District of Columbia.  As a result of Officer Thomas' brutal and vicious assault, Mr. Austin required both hospitalization for an extended period of time and surgery.  Additionally, Mr. Austin still requires follow-up medical and rehabilitative care

15

for the severe injuries to his jaw, and his doctors have indicated that he will likely require future surgeries to repair the damage done to him by Officer Thomas. Mr. Austin has been forced to pay for all of these medical bills out of his own pocket, with limited contribution from insurance. As a result, any delay in his civil action will cause severe economic harm to Mr. Austin as he will continue to accrue significant medical expenses as a result of his injuries.

In contrast, the District has alleged absolutely no actual prejudice and will not be subjected to any additional burden should the civil action continue. The District argues that the civil action may prejudice possible criminal investigations/proceedings. However, at this time there are no actual criminal proceedings stemming from this incident, nor any indications when such proceedings would be commenced, if at all. The actual prejudice to the Plaintiff should his existing case be stayed clearly outweighs the District's wholly speculative burdens on any phantom criminal proceedings that *may* be commenced at some unspecified future date.

The fact of the matter is that the District is propping up as pretext whatever impediments it can to its ultimate obligation to pay Plaintiff significant damages, while standing on the brink of offending the sensibilities of this Court. Unfortunately for the District, its motivations are crystal clear -- one would think that *if* Officer Thomas is ever indicted, the District would *not* want resolution of the criminal charges before completion of this civil matter. A conviction of Officer Thomas would not be admissible; however, a guilty plea *would* be admissible in the civil arena. Why would the District want this?

With regard to the third factor, convenience of the courts is furthered when motions to stay proceedings are denied. *Private Sanitation*, 811 F.Supp at 808. Further,

16

in this case, efficiency demands that the parties proceed with the civil case as there is absolutely no certainty that any criminal investigation will ever result in any indictments. *See Barry Farm*, 1997 U.S. Dist. LEXIS 2754 at *5.

The interests in persons not a party to this action are best served by resolving this action as expeditiously as possible.  More so, since any criminal parallel proceedings that may commence are completely speculative and indefinite at this time.  Should this action be stayed, witnesses may become unavailable, physical evidence may be disappear, and memories may fade.  As a result, the best interests of non-parties are served by denying the stay requested by District of Columbia.

There is a significant public interest in the enforcement of the MPD's use of force policies and guidelines as defined in the MOA.  There is a truly a greater public interest in this civil proceeding then any speculative criminal proceeding, as it is presently being prosecuted, and involves the wrongful and blatant use of excessive force by the MPD.  Further, there is a significant public interest in forcing the MPD's to abide by their own policies and guidelines with regard to the timely documentation, reporting and investigation of wrongful uses of force.  This case is brought to not only redress the wrongs sustained by Nigel Austin as a result of Officer Thomas' bad acts, but also to prevent continued injury to the citizens of the District of Columbia as a result of unlawful and excessive uses of force by the MPD.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Nigel Austin requests that the Court deny the Defendant's Motion to Stay All Proceedings. A proposed Order is attached hereto.

Respectfully submitted,


BODE & GRENIER, LLP


_____/s/_____
Peter C. Grenier, #418570
Jeremy S. Tishler (Bar No. pending)
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C. 20036
(202) 862-4311
*Counsel for Plaintiff*

18