UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIGEL AUSTIN, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) Case No. 05-2219(JDB) |
| | ) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S STATUS REPORT

Plaintiff Nigel Austin, by and through his counsel, Bode & Grenier, LLP, and in compliance with this Court's January 9, 2006, Order [1] (the "Order"), hereby submits Plaintiff's Status Report.  As described below, and as has been confirmed *twice* by the United States Attorney's Office ("USAO") to undersigned counsel, there is literally *no* change in the status of any potential criminal proceedings arising out of the subject incident, and this Court should not further delay Plaintiff's right to prosecute this action. Moreover, because the District has blatantly ignored both an October 2005 FOIA request and a November 2005 non-spoliation letter, Plaintiff is extremely concerned that evidence is not being properly preserved -- during a time when this Court has by its Order precluded Plaintiff from pursuing any discovery.

As a preliminary matter, Plaintiff notes that Officer Thomas, despite being served with process, has never appeared or participated in this action. The District, in its original

---

[1]     In its recently filed status report, the District of Columbia characterizes the Order as requiring a "Joint Status Report." No where in the Order does it say "joint." Given the parties' diametrically different understandings as to the true status of any "ongoing (or completed) investigations," Plaintiff could not "join" in that report,  and therefore files this separate status report.

stay motion, represented that it was "not in a position to make a determination as to whether it can represent the named officer (Thomas) in this lawsuit. *Id, at 4*. Thus, out of concern that Plaintiff's claims vis-a-vis Officer Thomas remain in limbo, Plaintiff intends to seek an appropriate judgment by default under *Fed. R. Civ. P. 55*. Plaintiff assumes that Officer Thomas will appear at the May 8, 2006, Status Conference herein, whether personally or through counsel.

### *Background*

The Court will recall that this action arises out of the brutal battery by a Metropolitan Police Department ("MPD") officer upon then-nineteen year old Plaintiff, while in custody at an MPD facility in August 2005. Plaintiff respectfully directs the Court to the "Factual Background" section of Plaintiff's December 19, 2005, "Memorandum In Opposition To Defendant's Motion To Stay."

In the Order, this Court, in issuing a four month stay, expressed its confidence that a stay would not "prejudice any party because the case was recently filed, it concerns very recent events, and the proceedings will likely be stayed for a very short time." *Id*.

### *Status Report*

In a nutshell, nothing has changed, other than there being an ever-increasing risk to Plaintiff that witnesses may be unlocatable, evidence may be spoliated or lost, and Plaintiff has suffered what we now know with twenty-twenty hindsight to be useless delay.

### *Status of any Criminal Proceedings*

Several months ago, undersigned counsel spoke with (now-former) Assistant U.S. Attorney Lynn Holliday, a veteran prosecutor assigned to review this matter for potential

criminal charges against Officer Thomas. She requested the opportunity to interview

Plaintiff Nigel Austin in order to determine whether to convene a grand jury and/or to

pursue criminal charges. She indicated -- not surprisingly -- that the other MPD officers

present at or around the incident supported whatever Office Thomas' story of the events

was. She told undersigned counsel point-blank that without an interview of Plaintiff, she

would not pursue the criminal charges, period.

For numerous strategic reasons -- including, candidly, the apparently real

possibility that a stay of this action could result from an indictment of Officer Thomas,

coupled with Plaintiff's serious doubt that a prosecutor truly would prosecute "one of her

own" -- undersigned counsel indicated that Plaintiff would be happy to speak with

prosecutors immediately upon the conclusion of the civil case (*i.e.,* this case). Ms.

Holliday expressed her complete understanding as to Plaintiff's position, and again

clearly and unequivocally stated that in the absence of Plaintiff's cooperation with her

office, charges would not be brought. Undersigned counsel had no reason to disbelieve

her and indeed, she never did pursue charges, as was her prosecutorial discretion.

On Monday, April 24, 2006, defense counsel in this matter brought to

undersigned counsel's attention that Ms. Holliday is no longer with the USAO, and that

the matter had been placed in the hands of a senior AUSA, Jeff Ragsdale, Esquire. The

District has made representations to the Court regarding the status of the USAO's

involvement in the matter. Since its recitation squarely contradicts what Ms. Holliday had

previously represented to Plaintiff's counsel, Plaintiff's counsel went directly to the

source, and called Mr. Ragsdale personally. Mr. Ragsdale was kind enough to leave the

following voicemail message for Plaintiff's counsel at 12:20 p.m. on Monday, April 24,

which has been transcribed below *in toto*:[2]


April 24, 2006
12:20 p.m.

Hi.  It's, ah, Jeff Ragsdale, on Monday the 24th, returning
your call on Don Thomas/Nigel Austin.  Long story short, I
do run the civil rights section at our office, at the U.S.
Attorney's Office.  With respect to that case particularly
and as well as several others, we've actually had some
changeover in the primary people that handle the civil
rights cases.  And, what I have actually done with that
case and some of the older cases is actually assign them to
veteran prosecutors to try and move these cases along.  ***So
the harsh reality is, that case was reassigned a couple of
weeks ago to a veteran prosecutor but I can't predict with
any degree of accuracy how long it's going to be before we
have a decision made in that case***.  I can't imagine
anything can run any faster than 60 days and then if the
case has prosecutorial merit, you know, there may be
additional features that need to be investigated.   So
you're welcome to call me back, but that's essentially
where we're at at this stage of the game, and I will relay
to the line assistant your interest. Again my telephone
number is 514-8321. Thanks.


*Id (emphases added).*  What is clear from Mr. Ragsdale's message is that there is no

definite -- or even reasonably predictable -- end in sight, nor even an educated guess.

Indeed, he "can't predict with any degree of accuracy" how long it will take for the

USAO even to decide ***whether*** to take any action, let alone complete it. Thus, we are left

with indefinite vagaries, upon which the District seeks to seize in order to extract a delay

of justice.  Notably, and in light of the District's difference of understanding from the

USAO in this matter, undersigned counsel specifically suggested in an e-mail to defense

counsel that the parties jointly request that a USAO representative attend the upcoming

---

[2]      Should the Court have *any* doubt about the veracity of Plaintiff's representation, the voicemail has
been saved and could easily be recorded onto an audio device for the Court.

(May 8, 2006) Status Conference herein, to advise the Court of the truth. Curiously, defense counsel was not interested in that suggestion.

### *Other Considerations*

#### *FOIA Request*

On October 17, 2005, undersigned counsel submitted to the MPD Public Information Office a Freedom of Information Request pursuant to *D.C. Code Ann.. §§ 2-531 et seq. (2001),* seeking various records relating to the subject incident. (Exhibit 1 hereto).  By form letter dated November 1, 2005, MPD Deputy General Counsel Ronald B. Harris, Esquire, made some vague promise to eventually respond. (Exhibit 2 hereto). Today, more than *six months* post-FOIA request, the District still has not responded. Thus, absent the right to conduct discovery, Plaintiff has zero chance of pursuing evidence in the case before it disappears (assuming it has not already).

#### *Non-Spoliation And Preservation of Evidence Demand*

In light of the central booking area at MPD facilities where the incident occurred, Plaintiff had reason to believe that the incident may have been caught on a surveillance camera in that room, that Plaintiff's injuries may have been photographed by MPD representatives, and/or that stills may have been culled from such materials. As such, by letter dated November 16, 2005, undersigned counsel requested that the Office of the Attorney General, the Mayor's Office, and the MPD's General Counsel take all steps necessary to ensure non-spoliation of any related evidence. (Exhibit 3 hereto).  Despite the passage of more than *five months*, no one has ever responded to that letter. Thus, again, Plaintiff is completely hampered in his quest for information.

### *"The D.C. Metropolitan Police Department (MPD) Investigation is Complete"*[3]

Harkening back to the District's Memorandum in support of its December 6, 2005, motion to stay these proceedings, Plaintiff observes the following statements of the District therein:

> The circumstances surrounding the subject incident continue to be investigated by the United States Attorney's Office, as well as *the Metropolitan Police Department's Force Investigation Team.*[4] ("FIT") ...

> Furthermore, the District has no information with which to adequately respond to plaintiff's Complaint until FIT is able to release documents relating to the subject incident.[5]

> The underlying incident is also the subject of investigation by the Metropolitan Police Department.[6]

> Until FIT's report is complete, the District would be hampered in its preparation of a defense. Specifically, the District does not have information regarding the subject incident with which to adequately respond to plaintiff's Complaint...[7]

> The District will concede that plaintiff has the right, generally, to prosecute his action without unnecessary delay.[8]

In stark contrast, today we have the District's Status Report, wherein the District states: "The D.C. Metropolitan Police Department (MPD) investigation is complete." *Id, at 1.* Ignoring the original absurdity of the District's position that *its own law enforcement body* does not have access or ability to investigate independently the incident -- the very investigative unit *is* imputably the District of Columbia itself -- its

---

[3]    *Defendant District of Columbia's Status Report, at 1.*
[4]    *Id, at 3* (emphases added).
[5]    *Id, at 4.*
[6]    *Id, at 5.*
[7]    *Id, at 7.*
[8]    *Id, at 7.*

original "concern" about its ignorance of the facts has now been allayed by its own completion of its own self-investigation. All the while, of course, Plaintiff has been forced to sit on his hands, restrained by this Court-imposed stay.

Noticeably absent from the District's Status Report is any mention of Officer Thomas' present status with the MPD, other than its confirmation that it "will not seek to impose any discipline against Officer Thomas until it learns whether the USAO will be filing criminal charges." *Id, at 1.* Ignoring the illogic of that statement -- the standards differ and they are by no means mutually exclusive -- it suggests strongly that in MPD's own investigation, Officer Thomas did ***not*** invoke any Fifth Amendment Privilege and was fully cooperative. Otherwise, a failure to cooperate with the investigation itself would merit disciplinary action. Apparently none is forthcoming.

### *Conclusion*

Hopefully it is now abundantly clear to the Court that the District's original motion to stay was a veiled attempt simply to delay the case. Nothing of substance has altered the landscape of this action, no criminal proceedings have begun, and indeed, it is almost guaranteed that no criminal proceedings will ever proceed. Given the historical statistics as to how infrequently FIT recommends disciplinary action against an MPD officer when there is the threat of a related civil action, Plaintiff would bet *anything* that this civil action is the sole means by which to learn the truth and to obtain any modicum of justice. Perhaps the only change -- one which weighs against a further stay -- is that the District has now completed its own investigation of the incident. The irony, of course, is that assuming the District's recitation of the USAO's estimates to be correct -- namely, that a "minimum" of an additional 90 - 120 days of "investigation" is required -- Plaintiff

could have concluded this case before that time, had no stay been issued.

The further irony is that, had the District *not* sought a stay, it could already have taken the sworn deposition of Plaintiff, the victim.....and the best eyewitness on earth! Again, this counterintuitive behavior by the defense should be scrutinized carefully so as to assess the *bona fides* of its claimed need for a stay. If this Court deems it necessary, then perhaps the District could educate the Court on its (the District's) position with respect to indemnifying MPD officers for civil rights claims, intentional acts, and punitive damages.  It is not what the District seemingly suggested in its original motion.

Plaintiff now finds himself eight months post-incident, essentially being punished for his diligence in the pursuit of justice -- this Court will recall that part of its rationale for the stay was that no prejudice would result "because the case was recently filed, it concerns very recent events, and the proceedings will likely be stayed for only a short time." *Order, at 1 - 2*.  While Plaintiff does take issue with the characterization of a one-third of a year delay as a "short time," certainly any further delay is unwarranted.

For this Court to take away the one hope for all involved to flesh out the truth through the discovery process, is the functional equivalent of depriving Plaintiff of his own Constitutional rights to due process, and the private causes of action codified by 42 U.S.C. § 1983. If the District truly believes that it will be exonerated, one would think that it would push for an expeditious development of the facts.  Its push for the opposite speaks volumes.

## CONCLUSION

Given that the Court ordered that this case was "stayed for a period of four

months"[9] *i.e.*, until May 9, 2006, the stay is set to expire by its own terms one day after the upcoming Status Conference. To the extent that the District, by its Status Report, seeks to extend the stay, Plaintiff vigorously objects to same.

Respectfully submitted,


BODE & GRENIER, LLP


_____/s/ *Peter C. Grenier*_____
Peter C. Grenier, #418570
Jeremy S. Tishler (Bar No. pending)
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C. 20036
(202) 862-4311
*Counsel for Plaintiff*

---

[9]        *Order, at 1.*