**Ofc.**                         CENTRAL CELLBLOCK PROCESSING LOCK-UP

**From:**    Headquaters Teletype
**To:**      ADMINGRP; ADMINGRP; STATGRP; STATGRP
**Date:**    3/1/02 11:12 AM
**Subject:** CENTRAL CELLBLOCK PROCESSING LOCK-UP

TT03-006-02

**MARCH 1,2002**

TO THE FORCE
NOT FOR THE PRESS

THE CENTRAL CELLBLOCK IS NOW PROCESSING ALL LOCK-UP CASES IN THE PATROL DISTRICTS THAT PARTICIPATE IN THE CITATION RELEASE PROGRAM. THE DISTRICTS PARTICIPATING IN THIS PROGRAM WILL NOW BE RESPONSIBLE FOR PROCESSING the CITATION RELEASES AND ELECT TO FORFEITS. IT IS IMPERATIVE THAT THESE DISTRICTS BOOK THE LOCK UP CASES AND BRING THEM TO THE CENTRAL CELLBLOCK WITHIN THREE HOURS OF ARREST. THIS IS IMPORTANT TO ENSURE THAT ALL PRISONERS ARE PROCESSED IN A TIMELY MANNER AND THAT THEY MAKE COURT CUTOFF TIMES. IF THE THREE-HOUR TIME FRAME CANNOT BE MET, THE DISTRICT MUST CONTACT THE OFFICIAL ON DUTY AT CENTAL CELLBLOCK TO COORDINATE THE LIVE SCANNING PROCESS FOR THE PRISONER(S).

EVERY EFFORT WILL BE MADE TO ASSIST WITH THOSE PRISONERS THAT WILL NOT MEET LIVELY CONDITIONS, BUT DUE TO THE INCREASED VOLUME OF PROCESSING THAT THE CENTRAL CELLBLOCK HAS BEEN EXPERIENCING, IT MAY BE NECESSARY FOR THE DISTRICT TO COMPLETELY PROCESS THOSE PRISONERS.

DUE TO THE LIMITED CELL SPACE THAT IS AVAILABLE AT CENTRAL CELLBLOCK, THE THIRD DISTRICT WILL CONTINUE TO HOUSE ALL FEMALE PRISONERS. IF THE CENTRAL CELLBLOCK REACHED ITS CAPACITY, CONTACT AND COORDINATION WILL BE MADE WITH THE PATROL DISTRICTS TO HOUSE PRISONERS.

IT IS REQUESTED THAT CENTRAL CELLBLOCK BE NOTIFIED IN ADVANCE FROM UNITS THAT WILL BE CONDUCTING OPERATIONS WHERE THEY EXPECT TO MAKE NUMEROUS ARREST. THIS IS IMPORTANT TO ENSURE THAT THERE IS PROPER STAFFING AT THE CENTRAL CELLBLOCK TO HANDLE THE INCREASED WORKLOAD.

IF THERE ARE ANY QUESTIONS REGARDING THE PROCESSING OF PRISONERS, PLEASE CONTACT AN OFFICIAL AT CENTRAL CELLBLOCK ON 202 727-2894.

/S/     LT MICHAEL R. BUNNER   CCB
AUTH:  BRENDER L. GREGORY, DIRECTOR
        BUSINESS SERVICES DIVISION
**ST.HILL,J**      TT          INFOTECH          1059HRS/03012002

# SPECIAL ORDER



**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Title | **Supplement to GO-PCR-502.01 (Transportation of Prisoners)** |
| Series / Number | **SO-02-09** |
| Effective Date | **July 8, 2002** |
| Distribution | **A** |
| Replaces / Rescinds | **N/A** |

The Purpose *of* this order is to apprise members that the following amendment shall **be** added to GO-PCR-502.01 (Transportation of Prisoners).

Part VI, Section G, add 3 and 4, to read as follows:

3.  Upon entering the cell block/holding area, station personnel shall take custody of the prisoner(s) from the transporting member and escort the prisoner(s) to the cell block/holding area. Once station personnel have custody of the prisoner(s), the arresting/transporting member shall secure his/her service weapon in a compartment specifically designated for securing weapons, prior to entering the cell block/holding area. Once the member's service weapon is properly secure, he/she shall immediately respond to the prisoner processing area to continue with the necessary activities.

4.  Upon exiting the cell block/holding area with a prisoner, the transporting member shall either have the prisoner escorted to the transport vehicle by station personnel, or have his/her service weapon properly secured prior to escorting the prisoner.

    Note:   At no time shall a prisoner be left unattended in any MPD vehicle.

Charles H. Ramsey
Chief of Police

CHR:NMJ:njg

## Metropolitan Police Department □ Washington, D.C.

a.

# SPECIAL ORDER



| Subject: | Series **93** | Number **28** | Distribution **A** |
|---|---|---|---|
| **Revisions to PD Form 313 (Arrestee's Injury/Illness Report)** | Effective Date **December 3, 1993** | | |
| | Expiration  Date  * | | |

The purpose of this Special Order is to apprise members of the department of recent revisions to the PD Form 313 (Arrestee's Injury/Illness Report). The PD Form 313 is used to document the nature and treatment of illness or injury to arrested persons.

Revisions to this form have been made in response to an immediate need to capture and document specific information that establishes better accountability and ensures accurate and concise reporting concerning the medical treatment of ill or injured persons, while in police custody.

In addition to the "Attending Physician's Report" and the "Report of Injury or Illness of the arrestee", the form has been expanded and now affords the user additional space to allow for the arrestee's account of the incident and an investigative report section, to be completed by a supervisory official. Both the supervisory official and the element Watch Commander shall sign the report based on his/her investigation and/or knowledge of the incident.

**NOTE:**     **Completion of this form shall not delay medical treatment to the arrested person.**

Members are reminded that when arrested persons are transported to hospitals, prior to booking, the arrested persons thumbprint shall be obtained and imprinted onto the lower-front right portion of the PD Form 313, by the member on duty at the D.C. General Hospital Strong Room.

Special Order 92.6 (Revisions to PD Form 313 [Arrestee's Injury/Illness Report]), dated May 12, 1992 is hereby rescinded.

*This Special Order shall remain in effect until such time as appropriate portions are incorporated into General Order 502.7 (Medical Treatment and Hospitalization for Prisoners).

Fred Thomas
Chief of Police

FT:**MEA**:jtp

UN-12  REV.  02/91

DATE

COMPLAINT
NUMBER

RG. ELEMENT

## METROPOLITAN POLICE DEPARTMENT

The admission of _____ of _____
                          *Name*                        *Address*

Date and Time Transported to Hospital | Transported By

☐ Treatment Refused by Patient
  Against Advice of Attending Physician

☐ Admission Refused by Patient
  Against Advice of Attending Physician

*Signature of Attending Physician*

Date and Time Returned | Transported By

I certify that the above   injury/   illness was received in the manner described above.

### ARRESTEE'S ACCOUNT OF INCIDENT

THUMBPRINT

Arrestee's Signature | Date

## SUPERVISORY OFFICIAL'S REPORT

PRELIMINARV INVESTIGATION:

Interviewed the Arrestee ☐ Yes ☐ No

Interviewed the Officer ☐ Yes ☐ No

No Further Investigation ☐ Yes ☐ No

PRELIMINARV DETERMINATION:

Further Investigation is Required ☐ Yes ☐ ■

Referral to CCRB ☐ Yes ☐ No

Use of Force Report Required ☐ Yes ☐ No

I have reviewed the documentation related to this incident in order to ensure the completeness and accuracy of this report. I certify that the information provided here, in the Preliminary Investigation/Dermination and narrative portions, is a true and accurate reflection of events, to the best of my knowledge:          DID YOU WITNESS THIS INCIDENT? .  ☐ Yes    No

| Signature of Supervisory Official | Date |
|---|---|
| Signature of Watch Commander | Date |

Page _____ of _____

# CIRCULAR



**METROPOLITAN POLICE**

**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Title** | Implementation of Revised Use of Force Policy |
| **Series / Number** | CIR – 02-12 |
| **Effective Date** | October 7, 2002 |
| **Distribution** | B |
| **Related to** | General Order 901.07 (Use of Force) General Order 901.08 (Useof Force Investigations) |

### NEW USE OF FORCE POLICY IMPLEMENTED

The Office of Organizational Development (OOD) introduces the first seven (7) new General Orders related to the MPD/DOJ use of force project resulting from the June 13, 2001, Memorandum of Agreement (MOA) between our Department, the City, and the Department of Justice.

With this Circular the following orders are being distributed:

General Order RAR-306.01 (Canine Teams)
General Order RAR-901.01 (Handling of Service Weapons)
General Order RAR-901.04 (Oleoresin Capsicum Spray)
General Order RAR-901.07 (Use of Force)
General Order RAR-901.08 (Use of Force Investigations)
General Order RAR-901.10 (Carrying Weapons and Transporting
  Prisoners Aboard Aircraft)
General Order RAR-901.11 (Force-Related Duty Status Determinations)

In addition to these orders, MPD is introducing a new form entitled PD Form 901-e (Use of Force Incident Report). This new report will be attached to some of the initial orders and will be used whenever members use force as defined in GO 901.07. The hardcopy version of the Use of Force Incident Report (PD Form 601-hc) is to be used until the full automation of the UFIR.

An informational video explaining the orders, the UFIR, and UFIR training for Sergeants and above, up to and including Inspectors, will follow in the upcoming weeks.

If you have any questions about any of the orders or the UFIR, please contact Inspector Joshua Ederheimer in the Civil Rights and Force Investigation Division at (202) 724-4269.

Charles H. Ramsey
Chief of Police

CHR:NMJ:JAE:MAR:LS:AFA:afa

# SPECIAL ORDER



| | |
|---|---|
| **Title**<br>**Addendum to GO-OPS-304.15**<br>**(Unbiased Policing)** | |
| **Topic/Number**<br>**SO – 03-11** | |
| **Effective Date**<br>**6/12/03** | **Distribution**<br>**A** |
| **Related to:**<br>GO-OPS-304.15 (Unbiased **Policing**) | |

## DISTRICT OF COLUMBIA

The purpose of this order is to apprise members that the following amendment should be made to GO-OPS-304.15 (Unbiased Policing):

    Part IV, Section D shall read as follows:

        3.    In conjunction with the Office of General Counsel, conduct an administrative review of Department practices and citizen complaints; Include the findings of the administrative review in the annual report to the Chief of Police, as outlined in GO-PER-120.25 (Citizen Complaints); and  (CALEA **1.2.9-d**)

        4.    Forward to the Senior Executive Director, Office of Organizational Development:

            a.    A compilation of all recommendations detailing training improvements; and/or

            b.    Recommendations for policy or procedural improvements. (See, GO-OMA-101.00 (Directives System).

                                        Charles H. Ramsey<br>                                        Chief of Police

CHR:NMJ:MAR:pas

50~7

| | | 82 | 46 | DATE December 22, 19 |
|---|---|---|---|---|
| т | | | UT A | |
| CourtProcessing of Hospitalized Police Prisoners | | | UNIT POD | |
| | | | EXPIRATION DATE * | |

To eliminate the many unproductive hours previously incurred **by** transporting offi-
cers while waiting to have their prisoners treated at D.C. General Hospital, the
Fifth District has assumed operational control of the prisoner strongroom located
adjacent to the hospital Emergency Room.  Members assigned to this post are re-
sponsible for receiving and maintaining custody of al ■adult **male** police prisoners
until *the* prisoner is either admitted or returned to the arresting element.

While renovation of the lockward at D.C. General hospital has been completed.
prisoner capacity in the ward has been severely reduced to only sixteen (**16**) beds.
**Because** this ward is generally occupied by inmates of the D.C. Department of Cor-
rections, space for Police Department prisoners is frequently unabailable  There-
**fore,** until other alternatives are fully explored and evaluated. it will often be
necessary For *the* Department to continue to maintain a guard detail on adult **pris-**
oners charged with felonies **or** juveniles charged with serious felonies who are
hospitalized at D.C. General outside of the lockward or at hospitals other than
D.C. General  However, Watch Commanders should check with the Department **of** Cor-
rections for space availability  in the lockward before establishing a guard detail
at D.C. General Hospital.

Permission must be obtained from the field Operations Officer to establish a guard
detail over a prisoner who is charged with a misdemeanor and admitted to a hospi-
tal  If the prisoner is eligible for Citation Release, the papering officer shal ■
respond to court to paper the case, as for any other Citation release case.  If
the prisoner is not eligible for Citation Release, the papering shall be handled
as indicated in this order.

Pursuant to the provisions contained in the Memorandum of understanding  and **the**
operational requirements of this Department, the following procedures shall be
complied with when a prisoner (adult **or** juvenile) is admitted to D.C. General **or**
any other hospital for treatment and is required to remain under guard while **so**
confined:

-2-

A.    Responsibilities of strongroom Officers.

1.    Members of the force assigned to the hospital strongroom shall receive adult male prisoners transported to D.C. General for treatment and shall maintain custody of the prisoners until such time as the prisoners are either admitted to the hospital or returned to the custody of the 'arresting officer's organizational element.

2.    Members assigned to the strongroom shall not take custody of a prisoner unless the transporting officers present a properly prepared PD Form 313.

3.    Upon the admission of a prisoner under their custody to the hospital, members assigned to the strongroom shall immediately notify an official of the arresting element of the prisoner's location in the hospital and an estimate of the expected period of hospitalization, if known.

4.    Members assigned to the strongroom shal ■make daily checks on the condition and status of prisoners admitted within the hospital. Any significant change in the prisoner's condition or status shall be communicated to an official of the arresting element.

5.    When not engaged in processing a prisoner through a treatment a or maintaining security over police prisoners being held in the strongroom may bers shall maintain order in the hospital's public waiting area and any other area aas requested by a hospital representative.

6.    As the D C Corrections department will continue to ut ■ize the strongroom for holding prisoners awaiting medical treatment, members shall not interfere with the processing of Corrections Department prisoners This does not however, preclude the rendering of assistance to the corrections officer assigned to the strongroom when requested and warranted or requesting assistance when necessary.

7.    Members assigned to the strongroom shall make a log entry on all prisoners transported to the hospital for treatment, regardless of whether they assume custody.

8.    Members assigned to the strongroom shall be responsible for escorting police prisoners under D.C. Corrections custody in the lockward (44N) to the necessary treatment locations, unti ■such time as the prisoners have been remanded to the custody of D.C. Corrections, or have been placed in a release status by the court.

B.    Responsibilities of transporting Officers.

1.    Upon arriving at the hospital and prior to transferring custody of the prisoner to the strongroom officers, transporting officers shall be responsible for processing the prisoner through the hospital's Records Desk

-3-

2.    In the event a prisoner is able to receive immediate medical attention upon arriving at the hospital, and the treatment is for a condition which will not result in the prisoner being admitted or require the transporting officers to be delayed beyond 60 minutes at the hospital, the transporting officers shall remain with the prisoner until treatment has been completed. Under all circumstances, however, transporting officers shall remain with female and juvenile prisoners until treatment has been completed.

3.    Transporting officers shall present a completed PD Form 313 to the strongroom officers for all prisoners transferred to their custody. In all other cases information shall be provided the strongroom officers in order that proper entry may be made in the prisoner treatment log. Upon departing the hospital with their prisoner following treatment, transporting officers shall check out with the strongroom officers.

4.    When a prisoner who has not been fingerprinted and photographed is transported to and admitted at a hospital other than D.C. General the transporting officers shall notify an official of the arresting officer's assigned organizational element of this fact.

5.    When a prisoner in their custody is admitted to any hospital, transporting officers shall attempt to obtain the following information for notification to the unit official prescribed in paragraph 4:

a.    The nature and extent of the defendant's or respondent's injury or illness.

b.    Whether the prisoner is or soon will be ambulatory.

c.    A doctor's estimate concerning the prognosis or the projected period of hospitalization.

d.    The exact location within the hospital the prisoner is being held or treated.

C.    Responsibilities of Official Notified.

The official receiving notification that a prisoner has been admitted to a hospital shall take the following action:

1.    Arrange for a guard detail to be established if the prisoner is confined at any hospital other than D.C. General and if the prisoner is placed in any location at D.C. General other than the lockward.

2.    Notify the arresting officer that the prisoner has been admitted, informing the officer of all available information on the prisoner's condition and the precise location of confinement. This information will be important to the prosecutor and the Court at the time of arraignment/presentment

-4-

3.    If the prisoner has not already been processed, notify the Central Cellblock Supervisor (Watch Commander) that a hospitalized prisoner will need to be fingerprinted and photographed, giving the name of the prisoner, hospital at which confined, floor, wing and room numbers.

4.    During business hours, in addition to notifying the telecommunications Branch, notify an official at the Court Liaison Division, giving the name of the prisoner, the charge, the hospital, room number and the name of the arresting officer. During non-business hours, this notification shall be made to a Communications Division supervisor.

D.    Identification Process

1.    Upon being notified that a prisoner has been admitted to a hospital, the arresting officer shall print at the top of PD Form 163 'PRISONER ADMITTED TO THE HOSPITAL then imediately deliver the number 1, 2, and 3 copies of PD Form 163, along with a completed PD 255, to the Central Cellblock Supervisor. The back of the 255 should clearly indicate the hospital room number and nature of the injury or illness.    These procedures shall apply to both felony and misdemeanor cases

2.    If the prisoner is a juvenile who could be charged as as der D.C. Code Title 16, section 2301. 3(a), PD Form 163 should be immediately warded to the Central cellblock supervisor as above. If the juvenile is 16 or ,/ and charged with a felony but riot as an adult, or special approved has been authorized for fingerprinting and photographing by the Youth division Watho Commander as per genera ∎Order 305.1, the fourth copy or the PD Form 379 should like wise be imediately forwarded to the Central cellblock Supervisor for processing of the juvenile by a member of the Identification branch

3.    Upon receiving the copies of PD Form 163 (or PD 379) and the PD Form 255 from the arresting officer, the Central Cellblock Supervisor shall, as soon as possible, dispatch a member of the Identification Branch to the hospital as which the prisoner is confined for the purpose of fingerprinting and photographing the prisoner. After completing this task, the member shall return the completed forms to the Central Cellblock Supervisor, who shall then be responsbile for their transmission to the Court Lidison Division as soon thereafter as possible. If the prisoner is uncooperative and refuses to allow the member to print him. prints shall not be forcibly taken. A PD Form 119 reporting the situation, ,including witnesses, shall be prepared and attached to the PD 163 or 379. The situation shall be brought to the attention of the Cellblock Supervisor who shall in turn advise an official of the Court Lidison Division and forward the paperwork to Court liaison for presentation. Prosecutors' Offices have agreed to request court orders for identification purposes in such instances.

4.    Should the prisoner's physical condition, or other circumstances relating to the medical treatment being provided, prohibit the identification Branch member from completing the identification process at the hospital, the ber shall so advise the Central Cellblock Supervisor who shall then be respons for notifying an official of the Court Liaison Division of this fact. The Central Cellblock Supervisor shall check daily with the officer assigned to the hospital stationed or the officer standing guard if the prisoner is confined at a hospital

-5-

other than D.C. General, or at a location within D.C. General other than the lock-
ward to determine whether the prisoner's condition permits the completion of the
identification process. The Central Cellblock Supervisor shall keep the Court
Liaison Division apprised of delays in completing the identification process. If
it appears that the delay may be more than 24 hours the Central Cellblock Supervi-
sor should try to get an estimate from the hospital staff concerning the amount of
delay which may be necessary before the identification process can be completed in
order that the court can be advised of the situation.

E.    Papering

    1.    The morning following the arrest and hospitalization of a defen-
dant, except Sundays the arresting or papering officer shall respond to court and
prepare the case jacket for papering. The papering officer shall notify an offi-
cial of Court Liaison that he/she will be papering a hospitalized prisoner 'case so
that the hospitalized prisoner leg can be annotated. If the defendant's paperwork
has not yet arrived at the Court Liaison Division, the official will call the Cen-
tral Cell Block to ascertain the cause of delay. If the delay is because the
identification process has not been completed, the official may authorize the
officer to start papering procedures using his/her own copies of the paperwork.
However, officers shall not complete papering procedures by carrying case jackets
into the "numbering office" until the identification process has been completed
and the proper paperwork (i.e., the second and third copies of the P.D. 163, with
thumbprint) has been inserted into the prosecutor's jacket, unless they have been
specifically authorized to do so by a Court Liaison official The prosecutors'
offices will delay making a final papering decision on hospitalized cases until
the identification process is completed and the papers are in the case jackets.
The unfinished jacket may be left with either the prosecutor's Intake Supervisor
or an official in Court Liaison.

    2.    Prior to responding to court in Citation Release cases, the paper-
ing officer shall determine if the defendant has been, or is about to be, released
from the hospital. If the defendant is still hospitalized the Court Liaison Divi-
sion and prosecutor shall be so advised when the the papering officer responds to
court.

    3.    In those rare cases where identification is not readily possible
because of the defendant's medical condition, the Court Liaison Division will no-
tify the Office of the Prosecutor in the appropriate court and the Legal Assis-
tance Branch of the Court by 1600 hours, so that special arrangements for present-
ment can be devised on a case by case basis.

F.    Guarding the Prisoner

    1.    The district to which the arresting officer is assigned shall be
responsible for establishing a guard detail over a prisoner admitted to a hospi-
tal. Guard details for prisoners of Headquarter's investigative units and the
Youth Division shall be provided by the district in which the hospital of confine-
ment is located. Special Operations Division will be responsible for providing
guard details for arrests by members of that element, except on midnights when
this task will be assumed by the District in which the hospital is located.

-6-

2.    Police officers standing guard over a prisoner shall not leave their post until such time as they are personally relieved by an official of their assigned organizational element. If a guard detail is for an entire tour, officials should arrange for appropriate relief. Officials shall not terminate guard details until such time as they have either reviewed and verified all release orders, or confirmed that the prisoner is securely in the custody of the D.C. Corrections Department. Prior to leaving the hospital, following the termination of a police guard detail, officials shall notify the officer assigned to the strongroom or the hospital security office, as appropriate that the prisoner is no longer under police guard.

G    Arraignment/Presentment

When the case is presented, the Court will set conditions of release or detention.

1.    Conditional Release

If the defendant is placed in a conditional release status, a representative of the Legal Assistance Branch of Superior Court will respond to the hospital to serve the conditional release order upon the prisoner. When the representative arrived the officer standing guard Over the prisoner shall immediately request an official of his/her assigned organizational element to respond to the hospital. Prior to the legal Assistance Branch of Superior Court representative contacting the prisoner, the police officer standing guard shall ■ verify the representative's identity. The representative should then be allowed to serve the Conditional release orders. The officer will be given the "custodian's" copy of the order after it is served which he/she should turn over to the responding official for transmission to the arresting officer. Once a hospitalized prisoner has been served a conditional release order and the responding official confirms proper service, the police guard shall be lifted. It is not considered proper service if the defendant refuses to sign. legal Assistance will normally withdraw the order in such circumstances. Special arrangements will be made on an individual basis between the Court liaison Division and the U.S. Attorney's Office should any District Court cases be placed in a conditional release status.

2.    Commitment (Detention) Order

a.    If the Court orders detention in lieu of or without bond, the commitment (Detention) Order (original) will be forwarded by the U.S. Marshal's Office along with the evening van of prisoners to D.C. Jail's Receiving and Discharge (R&D) Office. In the case of juveniles, a copy of the order would be turned over to Receiving Home representatives.

b.    If the prisoner is confined at D.C. General at a location other than in the lockward, the D.C. jail Records Office will arrange for a Corrections Officer to assume the custody of the prisoner after they receive the commitment Order   if the

-7-

prisoner is at another hospital, they will keep the order in suspense file until they obtain actual custody of the prisoner at D.C. General.

c.  If the hospitalized prisoner is ordered detained and is at an hospital other than D.C. General, the police guard detail shall be maintained until such time as the prisoner is ale to be transferred to D.C. General and into the custody of the D.C. Corrections Department.

a  A copy of the Commitment Order will be provided to the Court Liaison Division by the Court. The Court Liaison Division will then notify an official of the arresting officer's unit to respond and take the copy to the officer maintaining the guard. This copy shall be kept by the officer guarding the prisoner.

e.  When a prisoner under guard at a hospital other than D.C General is medically released by the hospital, the procedure shall be as follows:

(1)  If the prisoner has not been processed by Central Cell block (CCB), transport him/her to CCB. The prisoner shall then be sent to court if the case had not been presented, or directly to D.C. Jail if it had been presented, and the defendant was being held under a Commitment Order.

(2)  If the prisoner has been processed by CCB, his/her cast has been presented, and a Commitment Order issued transport directly to D.C. Jail.

3.  Bond Release

Occasionally, there are instances when hospitalized prisoners seek to have their detention status terminated by obtaining bond. When such cases occur during regular business hours the Court Finance Office shall notify the CID Desk Lieutenant that an Appearance Bond [Superior Court Form FO (20) - 1292] ha· been filed with their office for the defendant. The Finance Office will also prepare a Release Form (6-3 Card) which the bondsman will then present to the Desk Lieutenant at CID. During non-business hours the bondsman will respond directl to the Desk Lieutenant's Office and complete the above two forms. When the Desk Lieutenant is satisfied that the bond conditions set by the judge have been met he will notify the Watch Commander of the guarding unit. The Watch Commander will send an official to meet the bondsman at the hospital who shall compare the appearance Bond to the Detention/Commitment Order held by the guarding unit to en Sure that the conditions have been met before terminating the detail. A defendan is not eligible for bond prior to his case being presented in Court if he has no been processed by the identification and Records Division. Once the identification process has been completed, the bond conditions would be Same as for an other defendant.

-a-

4.    Felony Charge Reduced to Misdemeanor

In most instances when a felony charge is reduced to a misdemeanor charge the defendant will be placed on some form of conditional release. Those few misdemeanor cases where the judge issues a Detention Order and the prisoner is at a hospital other than D.C. General will be resolved on a case by case basis after the order is delivered to the Court Liaison Division.

5.    Prosecution Declined

When a case is no papered, the Court Liaison Division shall make arrangements with the arresting officer's unit to have the court release form delivered to the officer standing guard over the prisoner by a unit official. After explaining that pending charges of the present arrest have been dropped to the prisoner (or a responsible family member if the prisoner is incapable of comprehending) the official shall terminate the detail. The official shall note on his/her daily activity report the time the guard detail was terminated and who was notified on the hospital security force.

H.    Juveniles

1.    Juveniles charged with the Title 16 offenses (i.e., murder, forcible rape, robbery while armed, burglary I, or assault with the intent to commit any such offense), or other serious crimes of violence (such as mayhem or arson an occupied premises), or serious felony where there is a known history of abscondance and the Juvenile is ambulatory, or may soon become ambulatory, shall be kept under guard pending presentment of the case in court, The papering officer shall be prepared to provide the prosecuting attorney with as much information as possible on the respondent's medical condition. Such information should include whether the respondent is or soon will be ambulatory, the nature of the injury/illness, and a rough estimate by the doctor concerning the projected hospitalization period.

2.    In all cases where a 16 or 17 year old has been previously charged as an adult by the U.S. Attorney's Office under Title 16 and subsequently certified by the Court as an adult, and the charge is still pending disposition, or the juvenile was found guilty of the adult charge, or not guilty by reason of insanity, the present arrest shall be handled the same as an adult arrest, irrespective of the criminal charge, including detention and transportation (this includes detention in the lockward at D.C. General Hospital). If a juvenile who has been certified is charged as an adult with a misdemeanor, he/she is eligible to participate in the Citation Release Program, per General Order 305.1.

3.    In all cases where a 16 or 17 year old is arrested for a Title 16 Offense and a check with the Juvenile Records Section, Identification and Records Division, indicates that the juvenile does not meet the above criteria (does not presently have adult certification), the arresting officer shall prepare all the necessary PD Forms in an adult case, and the juvenile shall be processed as an adult, except for detention and transportation. Such juveniles cannot be placed in either the strongroom or the lockward.

-9-

4.    In those instances here charges are pending before the U.S. Attorney's Office or they have declined to prosecute under Title 16 and the charges an pending before the Corporation Counsel, or the juvenile is 15 years of age c younger with a pending serious felony charge, the Department will maintain a guard until the case is presented and the release or detention conditions are set an acknowledged by the juvenile, his parents/guardian and defense attorney. the Court Liaison Division shall advise the Corporation Counsel concerning the Department ment's position on the necessity for maintaining a guard of the juvenile on a case by case basis. In those rare instances here maintenance of the guard is sought or imposed, the Corporation Counsel will request a formal court order. The Juven nile Major Recidivist Unit will assist the Court Liaison Division in monitoring such cases.

I.    Incapacitated Prisoners.

After a Commitment (Detention) Order has been issued by the Court, there are occasional situations when a unit is in the position of guarding a prisoner who is comotose or totally incapacitated, and there is no reason to believe that the prisoner's life is threatened or that anyone would try to remove him/her from the hospital. If all of the above conditions exist, the Commanding Officer of the unit guarding the prisoner may contact the official in charge of the Court liaison division to determine if alternate special arrangements could be authorized by the prosecuting office and the issuing judge.

J.    Responsibilities of the Court liaison Division

1.    An official of the Court liaison Division shall contact a superv sor in the Communications Division prior to o800 Hours each business day to ascer tain if there are any new hospital cases The information obtained will be logged in the Hospital Book kept by the Court Liaison Division and be updated to incluc papering officer, date of papering, and disposition.

2.    Any misunderstanding or disagreement which may arise between mem bers of this Department and Court representatives over the application of the prc visions contained in this Special Order shall immediately be referred to the Cour Liaison Officer for clarification and/or resolution with the appropriate person within the Court or Offices of the U.S. Attorney or Corporation Counsel.

K.    Hospitalized Cases Resulting from the Use of Force.

1.    When a fatality or serious injury occurs from the use of force by member, and the case is being processed by the Homicide Branch, a member of the Homicide Branch shall be responsible for initially papering and processing an pending charges against the defendant the next court business day following the fatal incident or hospitalization.

-10-

     2.    Should the Homicide Branch release responsibility for the case to the involved member's assigned organizational element, the element official overseeing the investigation of the case and the member assigned to investigate the case, shall respond to court for the purpose of papering the case the next court business day.

     3.    The member who exercised the use of force resulting in a fatal or serious injury, shall not respond to court for the purpose of papering the case or handling the preliminary hearing.   Appearances at any subsequent court proceeding shall be at the discretion of the prosecuting attorney.

Commanding Officers shall ensure that the contents of this Special Order are m-derstood by all members under their command.

Where the provisions contained in this Special Order conflict with those contained in existing directives, this Special Order shall take precedence.

Special Order No. 82-17, dated June 24, 1982, and Special Order No. 82-22, dated July 11, 1982, issued under a "D" distribution, are hereby rescinded.

Maurice T. Turner, Jr.
Chief of Police

MTT :RJB :jtw

# Metropolitan Police Department —Washington, D.C.



## SPECIAL ORDER

Subject:

**Use of Non-Deadly Weapons
and Restraint Techniques**

| Series 99 | Number 11 | Distribution A |
|---|---|---|

Effective Date
**November 1, 1999**

Expiration Date
*

---

**Legal Sources:**
D C Code § 4- 188-190
(Limitation on the Use
of Chokehold)

D C Code § 6-2311
(Firearms and
Destructive Devices)

D.C.Code § 22-3214
(Possession of Certain
Dangerous Weapons)

**Related Directives:**
General Order 901 1
(Use of Firearms or Other
Service Weapons)

General Order 901.7
(Use of Force)

Special Order 85-21
(TASER Electronic
Control Device)

Special Order 93-25
(Use of Carotid
Neck Restraint)

**CALEA Standards:**
1 3 1
1 3 4
1 3 9
1 3 10

---

**Purpose**

The purpose of this directive is to prohibit the use of:

1. Blackjacks or Slapjacks
2. Carotid Neck Restraint
3. TASER — except by members of the Emergency Response Team (ERT)

Members of the Metropolitan Police Department are reminded to utilize only that level of force reasonably necessary to control situations.

If the situation requires a use of force beyond the officer's presence, verbal persuasion, or hands, he/she *is* authorized to use Oleoresin Capsicum (OC), or impact weapons such as the issued baton or the A.S.P tactical baton.

This Special Order supersedes any sections of the related directives that are in conflict with the contents of this order.

*This Special Order shall remain in effect until superseded by an appropriate directive

Charles H. Ramsey
Chief of Police

CHR:AFA:afa

# Metropolitan Police Department □ Washington, D.C.



## SPECIAL ORDER



| Subject: | Series | Number | Distribution |
|---|---|---|---|
| | **97** | **34** | **B** |
| **ETHICS, CONDUCT, AND APPEARANCE** | Effective Date | | |
| | December 23, 1997 | | |
| | Expiration Date | | |
| | * | | |

### Introduction.

The purpose of this special order is to continue my campaign to restore and maintain public confidence in the Metropolitan Police Department. I intend to revitalize and energize the awareness of every member of the department to the existing standards of behavior, ethics, and professionalism inherent in our traditions and reflected in our official directives. Officials and civilian supervisors are directed to take appropriate corrective and/or disciplinary action whenever one of these rules is violated.

As part of this effort to restore and maintain public confidence, this special order summarizes specific regulations and directives that I consider to be of particular significance. These orders have a direct impact upon the way citizens perceive us and demonstrate most clearly our professional commitment as law enforcement professionals who can be relied upon to provide safety, protection, and public order whenever and wherever it is needed.

In addition to the Code of Ethics which I have recently published (Special Order 97-31 [Metropolitan Police Department Code of Ethics]), I am requiring that all members of the department strictly comply with the following rules and regulations.

**A.**   **Title 6A, Police Personnel, D.C. Municipal Regulations.** (Formerly the Manual of the Metropolitan Police Department.)

Section 202 (Standards of Conduct) is quoted for your information and guidance:

"202.1    A member of the force shall at all times do the following:

(a)    Maintain decorum and command of temper;

(b)    Be patient and discreet;

(c)    Use no harsh, violent, profane, or insolent language; and

(d)    Be courteous and considerate under all circumstances."

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Special Order 97-34** | **December 23, 1997** | | **2 of 4** |

**B.**    **General Order 201.26 (Duties, Responsibilities and Conduct of Members of the Department).**

Part I-A-3 is quoted for your information and guidance:

"3.    In accomplishing their mission, members shall recognize that:

"a.    The power of the police to fulfill their functions and duties is dependent on public approval of their existence, actions, and behavior and on their ability to secure and maintain public respect.

"b.    To secure and maintain public respect and approval means also obtaining public willingness to cooperate in the task of securing observance of the law."

Members are reminded of the contents of Parts I-C-1 through I-C-3, which state:

"1.    All members of the department shall be courteous and orderly in their dealings with the public. They shall perform their duties quietly, remaining calm regardless of provocation to do otherwise. Members shall be attentive to, and take suitable action on, reports and complaints by a private person except when circumstance make it necessary for them to report the matter, or refer the complaint to a more suitable police officer, or other agency. Members shall fulfill requests for information or assistance, or they shall aid the person in otherwise obtaining the requested information or assistance. Members shall avoid giving the impression that they are evading the performance of their duty or that they are not interested in the problems of persons who are referred elsewhere for service.

"2.    Members shall be courteous, civil, and respectful to their superiors, associates, and other persons whether on, or off duty. They shall be quiet, orderly and attentive and shall exercise patience and discretion in the performance of their duties. When requested to do so, they shall give their names and badge numbers in a respectful, polite manner.

"3.    Members shall refrain from harsh, violent, coarse, profane, sarcastic, or insolent language. Members shall not use terms or resort to name calling which might be interpreted as derogatory, disrespectful, or offensive to the dignity of any person."

Parts I-E-1 through I-E-3 are quoted for your information and guidance:

"1.    It is expected that every member of this department is keenly aware of the fact that public support and cooperation is essential if we are to effectively fulfill our police responsibilities. We also know that the extent to which the public will cooperate with the police department is dependent upon its respect for, and confidence in, the police.

| Publication<br>**Special Order 97-34** | Effective Date<br>December 23, 1997 | Change Number | Page Number<br>**3 of 4** |
|---|---|---|---|

"2.    In any effort to strengthen the citizen-police officer relationship, the personal conduct and attitude of the police officer is of paramount importance. Each member of the force must understand that the basis of a correct attitude is a desire and a willingness to serve the public. However, members must distinguish between service and servility and between courtesy and softness.

"3.    In the performance of their duty, police officers should develop a disposition that is pleasant and personal in nonrestrictive situations, and firm and impersonal in situations calling for regulation and control. They must observe, uphold, and enforce all laws without bias or prejudice and without regard to individual or individuals involved."

**C.**    General Order 1101.1 (Personal Appearance, Uniforms, and Equipment).

1.    Maintenance of a uniform, professional appearance is an important part of the image we need to portray to the public. It is often part of the first impression that a citizen perceives and can impact positively or negatively upon the effectiveness of the services we provide. Compliance with these requirements is particularly important to facilitate immediate recognition of members of the force as police officers. This promotes the safety of both officers and members of the public.

2.    Members are directed to review all requirements for the proper wearing of the uniform and equipment appropriate to the duty to which they are assigned. Particular attention shall be given to the wearing of long or short sleeve shirts; headgear; footwear; holsters; firearms; insignia; and the proper wearing of the blouse, jacket, sweater and raincoat.

3.    Although all of the general appearance requirements of General Order 1101.1 (Personal Appearance, Uniforms, and Equipment) shall continue to be observed, male and female members of the force are also reminded of the criteria established with respect to the grooming of hair and the wearing of hairstyles set forth in Parts I-E and I-F. Attachments "B" and "C" of General Order 1101.1 provide photographs showing acceptable hairstyles for both men and women.

**D.**    General Order 1202.1 (Disciplinary Procedures and Processes).

General Order 1202.1 (Disciplinary Procedures and Processes) prescribes the process to be followed within the department for alleged violations of department regulations, orders, or directives. A list of 24 punishable offenses and a Table of Penalties Guide are listed in Part I-B of the General Order.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Special Order 97-34** | December 23, 1997 | | **4 of 4** |

There are three general provisions in Part I-B which might be applied to misconduct of the nature described above.  These provisions are quoted for your information and guidance:

"**B.**   Offenses

"5.   Willfully disobeying orders or insubordination. . . .

"16.   Failure to obey orders or directives issued by the Chief of Police. . . .

"24.   Any conduct not specifically set forth in this order which is prejudicial to the reputation and good order of the police force, or involving failure to obey or properly observe any of the regulations and orders relating to the discipline and performance of the force."

## Conclusion.

The calling of a police officer is a proud and noble one.  Let us work together to obtain universal support and acceptance from our citizens within the District of Columbia, as well as all who visit the nation's capital, so that we are known as the great police force that we are.

*This special order shall remain in effect until officially revised or rescinded.

Sonya T. Proctor
Interim Chief of Police

STP:TDR:WRP

# CIRCULAR



| | |
|---|---|
| **Title** | |
| **PD Form 901-e** | |
| **(Use of Force Incident Report)** | |
| **Series / Number** | |
| **CIR – 02-13** | |
| **Effective Date** | **Distribution** |
| **October 7, 2002** | **B** |
| **Related to** | |
| General Order 901.07 (Use of Force) | |
| General Order 901.08 (Use of Force Investigations) | |

## DISTRICT OF COLUMBIA

## INTRODUCTION OF NEW REPORTING REQUIREMENT

The purpose of this circular is to introduce the Department's new Use of Force Incident Report (UFIR). In June 2001, the Metropolitan Police Department and the City entered into an agreement with the U.S. Department of Justice to improve its use of force policies and procedures. Part of this agreement requires MPD to track all uses of force using a Use of Force Incident Report. An automated electronic version of this report (designated as PD Form 901-e) has been designed, but is not yet operational. As an interim measure, a hard copy paper form will be used (designated as **PD Form 901-hc**) . When the electronic version is finalized, members will be able to access it via the Department's intranet.

Members shall notify their supervisor immediately following any use of force or receipt of an allegation of excessive force, and the member using the force shall complete the Use of Force Incident Report. Additionally, members shall complete a Use of Force Incident Report immediately following the drawing of and pointing a firearm at or in the direction of another person. **(MOA ¶ 53)** CS numbers shall be obtained from the Office of Professional Responsibility.

The hard copy **UFIR** is five (5) pages, with four **(4)** supplements. The first 5 pages shall be utilized in incidents involving one member. Members shall use the supplemental officer, subject and witness forms when there are multiple officers, subjects or witnesses in an incident. Any additional property damage shall be noted on the supplemental form for property. Please note that the UFIR is an added report and does not replace any other MPD form. Members are still required to complete all other applicable reports, such as PD 251 and PD 75, etc.

A member may decline to complete the Use of Force Incident Report immediately following an incident. However, the supervisor shall compel the member to complete the form following a USAO declination or the issuance of a Reverse Garrity warning.

Charles H. Ramsey
Chief of Police

CHR:NM:JAE:MAR:LS:afa

Attachment

PD Form 901-hc (9-02)

# Use of Force Incident Report

ID:_____          Date:_____

## REPORTING PERSON

| OFFICER | SUBJECT | EYE WITNESS | THIRD PARTY | |
|---|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | | CAD#: |
| ADDRESS: | | CITY: | STATE: | ZIP: |
| PHONE(H): | EMPLOYMENT/SCHOOL: | | | PHONE(W): |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |
| PERSON NOTIFIED: | RANK: | CAD#: | DATE / TIME NOTIFIED: | |
| FIT NOTIFIED: | TIME NOTIFIED: | FIT INVESTIGATOR: | | CAD#: |

## EVENT INFORMATION

| CCN: | TOTAL # of OFFICERS USING FORCE: | | TOTAL # of SUBJECTS: | |
|---|---|---|---|---|
| REPORT TAKEN BY: | | | CAD#: | |
| REPORT TAKEN ON SCENE? Yes No | REPORT DATE / TIME: | | INCIDENT DATE / TIME: | |
| OTHER JURISDICTION? Yes No | INCIDENT LOCATION: | | DISTRICT: | PSA |
| 1st MEMBER ON SCENE: | | CAD#: | RADIO ASSIGNMENT? Yes No | |
| WEATHER: | GROUND: | | LIGHTING: | |

## LOCATION TYPE

| | | | | |
|---|---|---|---|---|
| Air/Bus/Train Terminal | Alley | Bank/Savings & Loan | Bus Stop | Church/Synagogue/Temple |
| College/University | Commercial Office Bldg | Construction Site | Convenience Store | Department/Discount Store |
| DC Government Bldg | Doctor Office/Hospital | Drug Store | Federal/Government Bldg | Fields/Woods |
| Grocery/Supermarket | Hotel/Motel | Jail/Prison | Lake/Waterway | Liquor Store |
| Park Area | Parking lot/garage | Public Housing Project | School | Rental Storage Facility |
| Residence/Home | Restaurant | Service Station | Sidewalk | Specialty Store |
| Street/Highway/Road | Tavern/Night Club | Other | N/A | Unknown |

## DESIGNATED AREAS

| | | | | |
|---|---|---|---|---|
| Victim's Vehicle | Suspect's Vehicle | Taxi-Cab | Bus | Train/Metro/Amtrak/Etc. |
| Hallway | Elevator | Stairwell | Basement/Laundry Room | Apartment/Condo Unit |
| Single Family Dwelling | Hotel/Motel Room | College/University Dorm. | Classroom | Office Room |
| Vacant Bldg/Room | Customer Area | Storage Area | In Public Housing | Within 1 block of Public Housing |
| Within 1000ft of School | N/A | Unknown | Other: | |

| SUPERVISOR SIGNATURE: | CAD#: |
|---|---|
| FINDING: | RECOMMENDATION: |

| COMMANDER SIGNATURE: | CAD#: | ELEMENT: |
|---|---|---|
| FINDING: | RECOMMENDATION: | |
| REASON: | | |

| ROC SIGNATURE: | CAD#: | ELEMENT: | DATE: |
|---|---|---|---|
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |

| CASE STATUS: | REASON: |
|---|---|
| OPEN   CLOSED | |

## OFFICER INFORMATION

OF OFFICERS USING FORCE:                                          CS#:

| LAST: | FIRST: | | MIDDLE: | |
|---|---|---|---|---|
| CAD#: | RANK: | ELEMENT: | ASSIGNMENT: | PSA: |
| SUPERVISOR: | | CAD#: | DISTRICT: | DATE NOTIFIED: |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |
| APPOINTMENT DATE: | | | DUTY STATUS: On  Off | |
| UNIFORM: Full / Partial / Plain Clothes | | | OFFICER INJURED? Yes No | |

*************************** DESCRIBE OFFICER INJURIES (Check all that apply) ***************************

| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASION | BURNING |
| BRUISING | OF PAIN, NO VISIBLE PAIN |
| LACERATION | BREATHING |
| STAB WOUND | |
| UNCONSCIOUS | NONE |
| NONE | |
| Yes  No | |

## OFFICER INFORMATION

OF OFFICERS USING FORCE:

| LAST: | FIRST: | MIDDLE: |
|---|---|---|

*************************** TYPE OF FORCE USED ***************************

| HANDS | ASP-CONTROL | | FIREARM | |
|---|---|---|---|---|
| FEET-KICK | ASP-STRIKE | POINTED AT PERSON | DISCHARGED | |
| FIRM GRIP | STUNGUN (ERT) | # OF SHOTS: | | |
| CONTROL HOLDS | TASERS (ERT) | | FIREARM TYPE | |
| JOINT LOCKS | BEANBAGS (ERT) | HANDGUN | SHOTGUN | |
| PRESSURE POINTS | STUNBAGS (ERT) | RIFLE (ERT) | AUTOMATIC WEAPON (ERT) | |
| FIST | FLASHBANGS (ERT) | | OTHER | |
| – SOLO | STINGBALL | BIKE SLIDE | (CERTIFIED) | |
| – TEAM | CS CHEMICAL AGENT (CDU) | | | |
| OC AEROSOLE | BATON-CONTROL (CDU) | OTHER FORCE USED: | | |
| | BATON-STRIKE (CDU) | | | |
| WAS FIRST AID RENDERED? Yes No | | | | |
| NON-ISSUED WEAPON USED: | | QUALIFIED IN WEAPON USE: | | DATE CERTIFIED: |

## SUBJECT INFORMATION

| # of SUBJECTS: | | | | |
|---|---|---|---|---|
| T: | FIRST: | MIDDLE: | | SSN: |
| DRESS: | CITY: | STATE: | | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | | CERTIFIED: | |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |

*********************** SUBJECT ACTION ************************************

| COMPLIANT | ASSAULTIVE (PHYSICAL INJURY) |
|---|---|
| RESISTANT (PASSIVE) | ASSAULTIVE (SERIOUS PHYSICAL INJURY / DEATH) |
| RESISTANT (ACTIVE) | |

*********************** SUBJECT ACTIVITY ************************************

| ASSAULT ON POLICE | DISORDERLY CONDUCT | HOSTAGE | DANGEROUS ANIMAL |
|---|---|---|---|
| ATTEMPT ARREST | DEMONSTRATION | LANDLORD / TENANT DISPUTE | ROBBERY |
| ADW | DEFENDING AND ASSAULT | SUICIDE ATTEMPT | BURGLARY |
| ALCOHOL | DOMESTIC VIOLENCE | TRANSPORTING | FOOT PURSUIT |
| BARRICADE | DRUGS | TRAFFIC STOP | VEHICLE PURSUIT |
| CROWD CONTROL | DUI | SUSPICIOUS SITUATION | OTHER |

## WEAPON INFORMATION

| WEAPON: Yes No | FIREARM Type: | BLUNT WEAPON Type: | EDGED WEAPON Type: | OTHER WEAPON Type: |
|---|---|---|---|---|
| DISCHARGED: Yes No | # SHOTS FIRED: | WEAPON DESCRIPTION: | | |
| WEAPON RECOVERED? Yes No | | RECOVERY LOCATION: | | |
| SUBJECT INTERVIEWED? Yes No | | INTERVIEW DATE / TIME: | | RECORDED: Yes No |
| SUBJECT INJURED Yes No | IMPLEMENT: | DESCRIBE INJURIES: | | |
| HOSPITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | | DATE / TIME TAKEN: | |
| TAKEN BY AMBULANCE? Yes No | AMBULANCE #: | MEDIC #: | HOSPITAL STATUS: | |
| ESCORT PROVIDED? Yes No | PHYSICIAN NAME: | | Admitted / Released / NA | PHOTOS TAKEN? Yes No |
| ARREST DATE / TIME: | | | PDID: | |
| CHARGES: | | | | |

## OFFICERS AT SCENE

| # OFFICERS AT SCENE: | AGENCY (IES) (NON-MPD): | | | |
|---|---|---|---|---|
| COMMANDING OFFICIAL: | | CAD#: | DISTRICT ASSIGNMENT: | |
| LAST: | FIRST: | MIDDLE: | | |
| RANK: | CAD#: | DISTRICT: | | PSA: |
| DUTY STATUS? On Off | PD119? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No |
| TECHNICIAN NAME: | | CAD#: | | |

## WITNESS INFORMATION

| # OF WITNESSES: | | | |
|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | |
| ADDRESS: | CITY: | STATE: | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | | |
| DOB: | SEX: | RACE: | LOCAL CANVASS? Yes No |
| PD119? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No |

## PROPERTY INFORMATION

| # OF PROPERTIES: | | |
|---|---|---|
| Property #: | WAS PROPERTY DAMAGED FROM USE OF FORCE? Yes No | ESTIMATED VALUE: $ |
| PROPERTY TYPE: | DESCRIPTION | |

## NARRATIVE

## BODY DIAGRAM

eport ID:_____          Date:_____

_____          CCN:_____          FDID:_____

**Body Diagram is:**     Officer          Officer _____          CAD#:_____
                         Subject          Subject _____

**Last Name:**_____     **First Name:**_____     **Middle Name:**_____



| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASIONS | BURNING |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| GUN SHOT WOUND | DIFFICULTY BREATHING |
| LACERATION(s) | NUMBNESS |
| STAB WOUND | NONE |
| UNCONSCIOUS | |
| NONE | |

| | | | | |
|---|---|---|---|---|
| PITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | | DATE TIME TAKEN: | |
| KEN BY AMBULANCE? Yes NO | AMBULANCE | MEDIC | HOSPITAL STATUS: | |
| ESCORT PROVIDED?     NO | PHYSICIAN NAME: | | Admitted   Released   NA | PHOTOS TAKEN? Yes No |

PD Form 901-hc

PD Form 901-hc (9-02)  Use of Force          Report          Additional Officer Supplemental **Form O**  Page

Report **ID:** _____          Date: _____
CS#: _____          CCN: _____          PDID: _____

Officer #:

| | | |
|---|---|---|
| LAST: | FIRST: | MIDDLE: |
| CAD#: | RANK: | ELEMENT: | ASSIGNMENT: | PSA: |
| SUPERVISOR: | | CAD#: | DISTRICT: | DATE NOTIFIED: |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |
| APPOINTMENT DATE: | | DUTY STATUS: On Off | |
| UNIFORM: Full / Partial / Plain Clothes | | OFFICER INJURED? Yes No | |

**************** DESCRIBE OFFICER INJURIES (Check all that apply) ****************

| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASION | BURNING |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| LACERATION | DIFFICULT BREATHING |
| STAB WOUND | NUMBNESS |
| UNCONSCIOUS | NONE |
| NONE | |

PHOTOS TAKEN: Yes No

**************** TYPE OF FORCE USED ****************

| | | | |
|---|---|---|---|
| HANDS | ASP-CONTROL | FIREARM | |
| FEET-KICK | ASP-STRIKE | POINTED AT PERSON | DISCHARGED |
| FIRM GRIP | STUNGUN (ERT) | # OF SPOTS: | |
| CONTROL HOLDS | TASERS (ERT) | FIREARM TYPE | |
| JOINT LOCKS | BEANBAGS (ERT) | HANDGUN | SHOTGUN |
| PRESSURE POINTS | STUNBAGS (ERT) | RIFLE (ERT) | AUTOMATIC WEAPON (ERT) |
| FIST | FLASHBANGS (ERT) | OTHER | |
| TAKEDOWN – SOLO | STINGBALL | MOUNTAIN BIKE SLIDE STRIKE/TAKEDOWN (CERTIFIED) | |
| TAKEDOWN – TEAM | CS CHEMICAL AGENT (CDU) | CANINE | |
| OC AEROSOLE | BATON-CONTROL (CDU) | OTHER FORCED USED: | |
| | BATON-STRIKE (CDU) | | |

WAS FIRST AID RENDERED? Yes No

| NON-ISSUED WEAPON USED: | QUALIFIED IN WEAPON USE: | DATE CERTIFIED: |
|---|---|---|

PD Form 901-hc (9-02)  Use of Force Incident Report                Additional Subjects Supplemental **Form S**   Page ——

Report ID:_____
_____                          CCN:_____                    Date:_____
                                                                                    PDID_____

## ADDITIONAL SUBJECTS

Subject #:_____

| # of SUBJECTS: | | | |
|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | SSN: |
| ADDRESS: | CITY: | STATE: | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | | CERTIFIED: |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |

*************************** SUBJECT ACTION ***************************

| COMPLIANT | ASSAULTIVE (PHYSICAL INJURY) |
|---|---|
| RESISTANT (PASSIVE) | ASSAULTIVE (SERIOUS PHYSICAL INJURY / DEATH) |
| RESISTANT (ACTIVE) | |

*************************** SUBJECT ACTIVITY ***************************

| ASSAULT ON POLICE | DISORDERLY CONDUCT | HOSTAGE | DANGEROUS ANIMAL |
|---|---|---|---|
| ATTEMPT ARREST | DEMONSTRATION | LANDLORD / TENANT DISPUTE | ROBBERY |
| ADW | DEFENDING AND ASSAULT | SUICIDE ATTEMPT | BURGLARY |
| ALCOHOL | DOMESTIC VIOLENCE | TRANSPORTING | FOOT PURSUIT |
| BARRICADE | DRUGS | TRAFFIC STOP | VEHICLE PURSUIT |
| CROWD CONTROL | DUI | SUSPICIOUS SITUATION | OTHER |
| SUBJECT INTERVIEWED? Yes No | INTERVIEW DATE / TIME: | | RECORDED: Yes No |
| ARREST DATE / TIME: | | PDID: | |
| CHARGES: | | | |

*************************** INJURY INFORMATION ***************************

| SUBJECT INJURED Yes No | IMPAIRMENT: | DESCRIBE INJURIES: | |
|---|---|---|---|
| HOSPITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | | DATE / TIME TAKEN: |
| TAKEN BY AMBULANCE? Yes No | AMBULANCE #: | MEDIC #: | HOSPITAL STATUS: |
| ESCORT PROVIDED? Yes No | PHYSICIAN NAME: | Admitted / Released / NA | PHOTOS TAKEN? Yes No |

*************************** WEAPON INFORMATION ***************************

| WEAPON: Yes No | FIREARM Type: | BLUNT WEAPON Type: | EDGED WEAPON Type: | OTHER WEAPON Type: |
|---|---|---|---|---|
| DISCHARGED: Yes No | # SHOTS FIRED: | WEAPON DESCRIPTION: | | |
| WEAPON RECOVERED? Yes No | RECOVERY LOCATION: | | | |

Form 901-hc (9-02)  Use of Force Incident Report          Additional Witnesses Supplemental Form W

Report
CS#: _____          CCN: _____          Date: _____
                                                                    _____

## ADDITIONAL WITNESSES

| LAST: | | | | |
|---|---|---|---|---|
| ADDRESS: | | | | |
| PHONE ( E I ) : | | EMPLOYMENT/SCHOOL: | | |
| DOB: | SEX: | RACE: | LOCAL CANVASS? | No |
| Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No | |

| LAST | | MIDDLE: | |
|---|---|---|---|
| ADDRESS: | | | |
| PHONE | | | |
| DOB | | LOCAL CANVASS? Yes No | |
| Yes No | INTERVIEW DATE / TIME: | RECORDED INTERVIEW? Yes No | |

Witness #:

| LAST: | | FIRST: | | MIDDLE: | | |
|---|---|---|---|---|---|---|
| ADDRESS: | | CITY: | | STATE: | ZIP: | |
| PHONE (H): | | | | | | |
| DOB: | SEX: | RACE: | | LOCAL CANVASS? Yes No | | |
| PD119? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No | | |

Witness #:

| LAST: | | FIRST: | | MIDDLE: | | |
|---|---|---|---|---|---|---|
| ADDRESS: | | CITY: | | STATE: | ZIP: | |
| PHONE (H): | | EMPLOYMENT/SCHOOL: | | | | |
| DOB: | SEX: | RACE: | | LOCAL CANVASS? Yes No | | |
| PD119? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No | | |

| LAST | | MIDDLE: | |
|---|---|---|---|
| ADDRESS: | | BE: | |
| PHONE (H): | | | |
| DOB: | SEX | LOCAL CANVASS? | No |
| PD119? Yes No | INTERVIEW DATE / TIME: | RECORDED INTERVIEW? | NO |

Witness #:

| LAST: | | FIRST: | | MIDDLE: | | |
|---|---|---|---|---|---|---|
| ADDRESS: | | CITY: | | STATE: | ZIP: | |
| PHONE (H): | | EMPLOYMENT/SCHOOL: | | | | |
| DOB: | SEX: | RACE: | | LOCAL CANVASS? Yes No | | |
| PD119? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No | | |

| PHONE (H): | | | |
|---|---|---|---|
| DOB: | SEX: | LOCAL CANVASS? | No |

Form          Use of *Force Incident* Report                    Additional        Supplemental        P

**Report ID:** _____                                    Date: _____

_____

## ADDITIONAL PROPERTIES

**Property #:**

**PROPERTY TYPE:**

Property                                        VALUE:

DESCRIPTION

Property          PROPERTY DAMAGED FROM USE OF FORCE? Yes No        VAL    $

PROPERTY TYPE:

Property          PROPERTY DAMAGED FROM USE OF FORCE? Yes No        VALUE:

PROPERTY TYPE:

Property          PROPERTY DAMAGED FROM USE OF FORCE? Yes No        VALUE:  $

PROPERTY TYPE:                          []DESCRIPTION

Property          PROPERTY DAMAGED FROM USE OF FORCE? Yes No    /(ESTIMATEDVALUE:

PROPERTY TYPE:

Property          []WASPROPERTY DAMAGED FROM USE OF FORCE? Yes No    /(ESTIMATEDVALUE:

PROPERTY TYPE:

Property          PROPERTY DAMAGED FROM USE OF FORCE? Yes No        VALUE:

PROPERTY TYPE:                          /DESCRIPTION

perty #:

## Metropolitan Police Department □ Washington, D.C.

 **SPECIAL ORDER** 

| Subject: | Series | Number | Distribution |
|---|---|---|---|
| | 97 | 31 | A |
| **Metropolitan Police Department Code of Ethics** | Effective Date **December 15, 1997** | | |
| | Expiration Date **N/A** | | |

The Metropolitan Police Department's integrity has been called into question by the recent events concerning individual cases of corruption which have resulted in an arrest and a continuing federal grand jury investigation. The community's confidence in the department has been shaken at two levels: the department's integrity as an organization and the personal integrity of its members. One broad brush has been used to paint most members of the Metropolitan Police Department the same way. This is very unfair to our 3,600 men and women, most of whom have the highest personal integrity.

Today, I am publishing a **Code of Ethics** which will communicate unequivocally to our employees the standards I believe the community has a right to expect from its public servants. The **Code of Ethics** is intended to reinforce just that fact: police officers are public servants and we must be responsive to and earn the confidence of the community we serve.

I can assure you that I take this **Code of Ethics** seriously, as I have for each and every day of the past 23 years that I have served the citizens of the District of Columbia. I fully expect every man and woman employed by the Metropolitan Police Department, whether sworn or civilian, irrespective of rank, grade or position, to fully share those values.

In conclusion, let me say that I am absolutely and personally committed to regaining the community trust we have lost in recent weeks. I sincerely believe that the vast majority of the men and women of this agency join me in that commitment. The officers and sergeants in the PSA's know how important it is to have the respect and trust of the community in order to work together with citizens to solve the many problems we face. I also demand this same level of commitment to integrity and excellence from the department's command staff, managers, and supervisors. Those who feel unable to join with us, have no place in public service.

*Sonya T. Proctor*

Sonya T. Proctor
Interim Chief of Police

STP:WRP:smf

UN-12 REV 10/95

## METROPOLITAN POLICE DEPARTMENT

### *Code of Ethics*

The power of the police to fulfill their functions is dependent upon securing and maintaining community respect and approval, which includes obtaining the community's willingness to cooperate in the task of ensuring public safety. The extent to which the community will cooperate with the Metropolitan Police Department is dependent upon its respect for, and confidence in, the police. The extent to which the community's respect and trust can be secured is diminished when a member of the department acts in an unprofessional, improper, dishonest, or unlawful manner.

In any effort to strengthen the citizen-police officer relationship, the personal conduct and attitude of the police officer is of paramount importance. Each member of the force must understand that the basis of the police service is a desire and a willingness to serve the community. In order to earn the respect and trust of the community, all sworn and civilian employees of the Metropolitan Police Department must subscribe to the following:

Members shall regard their office as a public trust and, in the discharge of their duties, be constantly mindful of their primary obligation to serve the community honestly, efficiently, and effectively.

☆

Members shall administer the law in a just, impartial, and reasonable manner and shall not accord to some more reasonable treatment than to others. They shall recognize the limitations of their authority and at no time use the power of their office for their own personal advantage.

☆

Members must observe, uphold, and enforce all laws without bias or prejudice, and without regard to the individual or individuals involved.

☆

Members shall recognize their responsibility as public servants and shall be particularly attentive to citizens seeking assistance, information, who desire to register complaints, or give evidence.

☆

Members shall cooperate fully with all other public officials to the end that the safety and general welfare of the community will be insured.

☆

Members must conduct their private and professional lives in such a manner as to avoid bringing discredit upon themselves, the department, or the community. The community must regard them as examples of honesty, stability, fidelity, and morality.

☆

Members must not conduct themselves in a manner which might be construed by the community as immoral, indecent, or unprofessional.

☆

Members shall not engage in any relationships which might be construed as evidence of favoritism, unfairness, partiality, or unfair advantage. Members shall serve all members of the community in a fair, impartial, and professional manner.