# GENERAL ORDER



**METROPOLITAN**
**POLICE**

## DISTRICT OF COLUMBIA

| Title | |
|---|---|
| **Serious Misconduct Investigations** | |

| Series / Number | |
|---|---|
| **GO – PER – 120.23** | |

| Effective Date | Distribution |
|---|---|
| **January 16, 2004** | **B** |

Replaces/ rescinds
**General Order 1202.3 (Investigative Responsibilities Where Sworn Members of This Department Are Arrested or Are Suspected of Criminal Misconduct)**

I.   Background ...............................Page 1
II.  Policy ........ . .................. ,.....Page 1
III. Definitions................................Page 2

IV. Regulations...........................Page 4
V.  Procedural Guidelines..............Page 6
VI. Cross References....................Page 15

## I. BACKGROUND

Sworn members of the Metropolitan Police Department are expected to maintain the highest standards of conduct. Members should conduct themselves properly and professionally, on or off duty. When a member is accused of misconduct, a thorough investigation will be conducted. The purpose of this directive is to establish responsibilities and procedures for reporting and conducting investigations of serious misconduct (administrative and/or criminal) that may result in disciplinary action.

## II. POLICY

The policy of the Metropolitan Police Department (MPD) is to investigate every instance of alleged misconduct against a member of this Department (whether criminal or administrative in nature), in accordance with the laws of the District of Columbia and the policies and procedures of MPD. Investigations shall be conducted in a fair and consistent manner. (CALEA 52.1.1)

The Office of Internal Affairs (OIA) within the Office of Professional Responsibility (OPR) shall be responsible for the investigation of all allegations of serious misconduct by members of the Department. (CALEA 52.1.1 b-c)

The Force Investigation Team (FIT) within the Office of Professional Responsibility shall be responsible for investigating force-related misconduct pursuant to General Order RAR – 901.08 (Use of Force Investigations). (CALEA 52.1.1 b-c)

Other administrative or policy misconduct shall be investigated at the command level pursuant to General Order PER – 120.20 (Chain-of-Command Misconduct Investigations). (CALEA 52.1.1 a)

Where applicable and pursuant to General Order PER – 120.25 (Processing Citizen Complaints), certain use-of-force misconduct, serious misconduct, and other administrative or policy misconduct cases will be investigated by the Office of Citizen Complaint Review through the Citizen Complaint process. (CALEA 52.1.1)

## III.    DEFINITIONS

When used in this directive, the following terms shall have the meanings designated:

1.    Agent – positions held by Sergeants and Detective Grades I and II, assigned to the Office of Internal Affairs (OIA). While engaged in official duties, an OIA agent may assert authority over a higher-ranking member involved in the investigation.

2.    Officer/Member – interchangeable terms referring to sworn law enforcement personnel of the Department. The terms do not include civilian employees of the Department.

3.    Serious Misconduct – suspected criminal misconduct and the following specific forms of misconduct listed below (except that for the purposes of this directive, serious misconduct involving a use of force within the jurisdiction of the Force Investigation Team pursuant to GO RAR-901.08 shall be investigated by the Force Investigation Team):

a.    all civil suits alleging any misconduct by an officer while acting in an official capacity;

b.    all civil suits against an officer for off-duty conduct (while not acting in an official capacity) alleging physical violence, threats of physical violence, racial bias, dishonesty, or fraud;

c.    all criminal arrests or filing of criminal charges against an officer;

d.    all allegations of unlawful discrimination (e.g., on the basis of race, ethnicity, gender, religion, national origin, sexual orientation, or disability), including improper ethnic remarks and gender bias, but excluding employment discrimination;

e.    all allegations of an unlawful search and seizure;

f.    all allegations of an unlawful stop;

g.    all allegations of false arrests or filing of false charges;

h.    any act of retaliation or retribution against an officer or person;

i.    any act of retaliation or retribution against a person for filing a complaint against a member;

j.    all allegations of excessive use of force or improper threat of force (including strikes, blows, kicks, or other similar uses of force against a compliant subject or administered with a punitive purpose);

k.    any intentional failure to complete use of force reports required by MPD policies and in accordance with procedures;

l.    any intentional provision of false information in an MPD or an Office of Citizen Complaint Review (OCCR) investigation or in any official report, log, or electronic transmittal of information;

m.    all incidents in which (1) a person is charged by an officer with assault on a police officer or resisting arrest or disorderly conduct, and (2) the United States Attorney's Office (USAO) or the Office of the Corporation Counsel (OCC) notifies MPD that it is dismissing the charge based upon officer credibility or a judge dismissed the charge based upon officer credibility;

n.    all incidents in which MPD has received written notification from a prosecuting agency in a criminal case that there has been (1) an order suppressing evidence because of any constitutional violation involving potential misconduct by an MPD officer, or (2) any other judicial finding of officer misconduct made in the course of a judicial proceeding or any request by a federal or District of Columbia judge or magistrate that a misconduct investigation be initiated pursuant to some information developed during a judicial proceeding before a judge or magistrate. MPD shall request that all prosecuting agencies provide them with written notification whenever the prosecuting agency has determined that any of the above has occurred; or

o.    all referrals pursuant to Sections IV-A and IV-B (Regulations) of this General Order.

4.    **Underlying Matter** – an incident which would require appropriate police action and during which a responding or involved officer is charged with misconduct. This directive focuses on the handling of the alleged misconduct while recognizing that the "underlying matter" is a police responsibility that must also be processed to completion.

5.    **Probable Cause** – whether a reasonably prudent police officer, considering the total circumstances confronting him/her and drawing from his/her experience, would be warranted in the belief that an offense has been or is being committed. (CALEA 1.3.2)

## IV.    REGULATIONS

A.    All officers shall promptly notify OPR or a supervisor (who shall report the information to OPR) of the following:

    1.    the officer is arrested or criminally charged for any conduct;

    2.    the officer is named as a party in any civil suit involving his or her conduct while on duty (or otherwise while acting in an official capacity); or

    3.    the officer is named as a party in any civil suit regarding off-duty conduct (while not acting in an official capacity) that alleges any of the following:

        a.    physical violence,

        b.    threats of physical violence,

        c.    racial bias,

        d.    dishonesty, or

        e.    fraud by the officer.

B.    All officers (including supervisors and managers who learn of evidence of possible misconduct through their review of an officer's work) shall promptly notify OPR of any conduct by other officers that reasonably appears to constitute any of the following:

    1.    an excessive use of force or improper threat of force;

    2.    a false arrest or filing of false charges;

    3.    an unlawful search or seizure;

    4.    unlawful discrimination;

    5.    an intentional failure to complete use of force reports required by MPD policies and in accordance with procedures;

    6.    an act of retaliation for complying with any MPD policy or procedure; or

    7.    an intentional provision of false information in an MPD or OCCR investigation or in any official report, log, or electronic transmittal of information.

C.    Failure to voluntarily report officer conduct as described in Sections A and B above shall be an offense subject to discipline if sustained.

D.    Any member who has reason to believe that reporting misconduct to an element official may compromise the investigation may report the information to OPR directly.

E.    MPD shall notify and consult with the USAO immediately, in no case later than the next business day, following the receipt or discovery of any allegations of criminal misconduct referred to in Section III-3 (Serious Misconduct) above. In every such incident involving allegations of criminal misconduct, the USAO will notify and consult with the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

F.    Failure to voluntarily make a timely and proper notification of possible misconduct shall be an offense subject to discipline, if sustained, up to and including removal from the Department.

G.    Members of this Department shall take appropriate police action in any situation involving serious allegations of misconduct against another member. Appropriate action may include, but is not limited to, arrest based on probable cause.

H.    Any member who has a potential conflict of interest related to a pending misconduct investigation shall not be allowed to participate in any way in the conduct or review of that investigation.

I.    No member shall interfere with the process of a lawful arrest of another member whether on or off duty.

J.    Investigative responsibility is assigned to the Office of Professional Responsibility for all incidents of serious misconduct as defined by Section III-3 of this order. OPR shall review all misconduct complaints as they are received and shall determine whether a misconduct complaint meets the criteria for being assigned for investigation outside of the District Chain of Command, except that whenever an incident of serious misconduct involves a use of force within the jurisdiction of the Force Investigation Team pursuant to General Order RAR – 901.08 (Use of Force Investigations), the Force Investigation Team shall conduct the investigation. (CALEA 52.1.1-b)

K.    Where applicable and pursuant to General Order PER – 120.25 (Processing Citizen Complaints), certain use-of-force misconduct, serious misconduct, and other administrative or policy misconduct cases within the concurrent jurisdiction of MPD and OCCR will be investigated by the Office of Citizen Complaint Review through the Citizen Complaint process. (CALEA 52.1.1)

## V.    PROCEDURAL GUIDELINES

A.    Initial Duties at the Scene of an Allegation of Serious Misconduct

    1.    When a member is handling a police matter and an act of misconduct is alleged, the initial responsibility of the member shall be to ensure that the scene is safe, render first aid if applicable, and secure the scene's integrity.

    2.    If an arrest or other police action is required in the underlying matter, the officer shall complete all necessary and appropriate police duties unless otherwise directed by an official.

    3.    A member who is involved in an alleged act of misconduct shall not be compelled to provide a statement when the alleged incident indicates potential criminal misconduct in accordance with Section V-E-2 of this order.

B.    Duties of Members

Members of the Department shall immediately notify an official when any member:

    a.    is accused of misconduct or an allegation of misconduct is made;

    b.    is arrested and/or criminally charged for any misconduct in any jurisdiction.

    c.    has knowledge of any serious or criminal misconduct by another member;

    d.    is named as a party in any civil suit involving his or her conduct while on duty or otherwise acting in an official capacity;

    e.    is named as a party in any civil suit regarding off-duty conduct while not acting in an official capacity that alleges:

        (1)    physical violence,

        (2)    threats of physical violence,

        (3)    racial bias,

        (4)    dishonesty, or

        (5)    fraud

      f.    learns of an existing warrant, summons or protection order for himself/herself or another member, regardless of jurisdiction;

      g.    has knowledge of an alleged use of force, excessive force or improper threat of force by another member;

      h.    has knowledge of a false arrest or filing of false charges by another member;

      i.    has knowledge of an unlawful stop, search and/or seizure by another member;

      j.    has knowledge of any conduct by another member that reasonably appears to constitute unlawful discrimination;

      k.    has knowledge of an act of retaliation or retribution toward any person for complying with any MPD policy or procedure;

      l.    has knowledge of another member's intentional failure to complete a Use of Force Incident Report (PD Form 901-e) when required; or

      m.    has knowledge that another member intentionally provided false information in an MPD or an Office of Citizen Complaint Review (OCCR) investigation or in any official report, log or electronic transmittal of information.

**C.**    Obtaining Complaint System (CS) Tracking Numbers

Officials of the Department shall notify the Office of Professional Responsibility and obtain Complaint System tracking numbers within one (1) hour of learning of an incident of alleged serious misconduct –

      a.    During normal weekday business hours (from 0700 – 1900), notify the Office of Professional Responsibility directly at 727-4385; or

      b.    During non-business hours (from 1900 – 0700), notify the on-call OPR Agent. The agent may be contacted through the Synchronized Operations Command Center (SOCC).

**D.**    Investigation of Underlying Matter or Offense Related to the Allegation of Serious Misconduct

      1.    The Office of Internal Affairs is responsible for investigating all allegations of serious misconduct except those incidents within the jurisdiction of FIT or OCCR.

2.  The Office of the Superintendent of Detectives (OSD) is responsible for conducting the investigation of the underlying offense related to the allegation of serious misconduct.

3.  The OSD shall immediately respond to begin their investigation and secure evidence, witnesses, and other information related to the crime that led up to the alleged misconduct. An OSD official shall designate a lead investigator for the crime that led up to the allegation of misconduct.

4.  The OSD lead investigator shall coordinate all investigative information with the Office of Internal Affairs.

5.  The OSD is responsible for handling the arrest and processing of any individual charged as a result of the underlying offense related to the alleged misconduct.

6.  Members from the Forensic Science Services Division shall respond and be responsible for evidentiary crime scene processing.

7.  The Forensic Science Services Division Technician handling the scene shall be required to coordinate all evidentiary information with the Office of Internal Affairs.

E.  Investigation of Serious Misconduct Incidents
    Within the District of Columbia

    1.  Interviewing Subjects, Members and Witnesses (General)

        In conducting serious misconduct investigations, the Office of Internal Affairs or other appropriate investigators shall include, subject to and in conformance with applicable law and MPD directives, the following measures:

        a.  If, during the course of an investigation, the investigator has reason to believe that misconduct occurred other than that alleged, the investigator also shall investigate the additional potential misconduct to its logical conclusion.

        b.  In investigations involving a serious use of force or serious physical injury, MPD investigators shall tape record or videotape interviews of complainants, involved officers, and material witnesses (if a complainant or non-officer witness refuses to be tape-recorded or videotaped, then MPD shall prepare a written narrative of the statement to be signed by the complainant or non-officer witness)

        c.  Whenever practicable and appropriate, complainants and witnesses shall be interviewed at sites and times convenient for them, including at their residences or places of business.

d.   Officers involved in a serious misconduct incident shall be sequestered until interviewed by a member of OIA or by appropriate supervisory personnel.

e.   Group interviews are prohibited.

f.   Supervisors of the involved members subject to the investigation shall be notified, as appropriate.

g.   All appropriate MPD members, including supervisors, shall be interviewed.

h.   Investigators shall ensure that all appropriate evidence is collected, preserved, and analyzed, including canvassing the scene to locate witnesses and obtaining complainant medical records, where appropriate.

i.   Any inconsistencies in officer and witness interview statements gathered during the investigation shall be identified and reported in writing.

2.   Duties of Officials When Notified of Alleged Serious Misconduct Indicating Potential Criminal Charges or Arrest in the District of Columbia:

a.   In all cases of serious misconduct involving potential criminal charges or the arrest of an officer, the subject officer shall not be compelled or ordered to make a statement (which includes interview by video or tape-recording) until the USAO has issued a written declination and an authorized Reverse-Garrity warning has been issued; or criminal prosecution of the officer has been completed.  (Refer to Section V-D-1 of General Order RAR-901.08 regarding use of force incidents required to be investigated by the Force Investigation Team.)

b.   All situations in which the "Reverse-Garrity Warning" is used shall be authorized by an official of the rank of captain or above.

c.   Questions concerning the use of "Garrity Warning" or the "Reverse-Garrity Warning" should be addressed to the Office of the General Counsel.

d.   In those instances in the District of Columbia when a member, either on or off duty, is arrested or suspected of criminal misconduct, the Assistant District Commander or Watch Commander of the district of occurrence shall:

(1)   Immediately respond to the scene and determine if the member shall be summarily arrested; and

(2)    Whether or not an arrest is made, the potential crime scene shall be protected and the responding official shall ensure that all evidence is preserved.

(3)    Ensure that the Office of Professional Responsibility has been notified as prescribed by Section V-D of this general order.

(4)    Ensure that the USAO has been timely notified, pursuant to Section IV-E (Regulations) of this general order.

e.    Upon receiving notification that a member has been arrested or suspected of criminal misconduct, a member from OPR shall respond to the scene.

f.    The official responding to the scene of an arrested member or a member suspected of criminal misconduct shall:

(1)    Ensure that the Office of Professional Responsibility has been notified as prescribed by Section V-C of this general order.

(2)    Turn over all pertinent information to the investigating official of the OPR;

(3)    Take possession of appropriate Department property not seized as evidence; and

(4)    Interview those present to verify the essential aspects of the incident and gather all pertinent information needed until such time as a member of OPR responds to handle the investigation, if applicable.

3.    Responsibilities of Officials when Notified of Alleged Serious Misconduct

The official or supervisor receiving notification of serious misconduct by a member shall:

a.    Notify his/her commanding officer or the Assistant District Commander through the chain of command;

b.    Modify the member's duty status, if applicable, and cause the appropriate entries to be made in the Patrol Signal System (PSS) Book of the arrested member's element. (CALEA 1.3.8)

c.    Cause the applicable preliminary report, PD Form 99 (Citizen Complaint Report) and/or OCCR complaint form to be transmitted either by facsimile or hand-carried to the OPR prior to being relieved from duty.

d.    Immediately notify (no later than the next business day) the USAO regarding the misconduct.

F.  Duties and Responsibilities of the Office of Professional Responsibility

1.  The Office of Professional Responsibility shall maintain responsibility for conducting the administrative investigation, in conjunction with any other investigative component that is involved, in all situations where a member:

    a.  is arrested;

    b.  is the subject of an arrest warrant, criminal information or criminal indictment; or

    c.  is the subject of a protection order.

2.  Members of the Office of Internal Affairs have the authority and responsibility to conduct investigations assigned by the Assistant Chief of the Office of Professional Responsibility or the Chief of Police. As such, they have the following authority, as required by their position:

    a.  Conduct activities in the furtherance of an investigation;

    b.  Request and receive all Department records and/or information to facilitate an investigation;

    c.  Direct a member of this Department to appear at designated locations for interviews;

    d.  Require members to provide truthful statements for use in an investigation (subject to "Reverse-Garrity" requirements, after a criminal declination by the USAO, or after any criminal prosecution of the officer has been completed).

    e.  Cause the police powers of a sworn member to be revoked in connection with an investigation being conducted by the Office of Internal Affairs. (CALEA 52.1.8)

    f.  Assert authority over a higher-ranking member involved in the investigation while engaged in official duties.

3.  The Director, Office of Internal Affairs, or the Director, Civil Rights and Force Investigations Division, when applicable, shall be responsible for:

    a.  Completing any administrative investigations of serious misconduct, absent special circumstances, within 90 calendar days of receiving the complaint, criminal declination, or conclusion of a criminal prosecution where applicable (Special circumstances causing any delay in an administrative

investigation shall be documented and the investigating member shall submit a written status report of the investigation at least every thirty days thereafter.); (CALEA 52.1.4)

b. Investigating all incidents of serious misconduct as defined in this order; (CALEA 52.1.1-b);

c. Monitoring each related case in the judicial process;

d. Designating members to serve in an "on-call" capacity;

e. Tracking all allegations of misconduct against MPD members; (CALEA 52.1.1.0)

f. Ensuring that, in those cases where members of OPR are required to investigate a case in conjunction with another investigative unit, copies of all statements taken from involved parties and witnesses, along with any tapes, are kept on file at the OPR; and

g. Approving requests from other involved investigative units for records and copies of statements taken by OPR personnel.

G. Handling of Arrests of Members

When a member is arrested by MPD personnel, the arresting officer shall:

a. Upon learning that an arrested person is a member of MPD, immediately notify his/her Assistant District Commander or Watch Commander. The notified official shall follow the procedures outlined in Section V-E of this general order.

b. Handle the arrest in an appropriate manner, consistent with the requirements of this order;

c. Transport the arrested member to the appropriate element for processing;

d. Where multiple members are arrested, sequester them from each other during processing;

e. Be responsible for processing the case and meeting all court obligations; (a member of OPR shall assist the arresting officer in meeting these obligations);

f. Turn in all Department equipment, not held as evidence, to the arrested member's immediate supervisor or, if not available, to the official who responds from the arrested member's element.

H.     Responsibilities of Commanding Officer After Arrest of a Member

Upon learning that a sworn member of the Department is involved in criminal misconduct requiring arrest, the arresting officer's commanding officer shall:

1.     Notify the arrested member's commanding officer, if the arrested member is from another district or unit;

2.     Ensure that the member's duty status is appropriately modified, if applicable;

3.     Ensure that an official from the arrested member's unit responds to the location of the arrest to assist with the investigation and take possession of any department property not seized as evidence; and

4.     Ensure that the proper entries are made in the PSS Book and the Time and Attendance Court Information System (TACIS).

I.     Responsibility of Synchronized Operations Command Center (SOCC)

The official in charge of SOCC shall be responsible for:

1.     Notifying an official of the OPR immediately upon receiving all notifications in Section V-B of these procedural guidelines:

a.     During normal weekday business hours, from 0700 – 1900, notify OPR, or

b.     During non-business hours, from 1900 – 0700, notify the on-call OPR Agent through SOCC;

2.     Maintaining an on-call duty schedule of all OPR members and their assigned pager numbers; and

3.     Notifying the Chief of Police or official then in command of the Department, in all cases where a sworn member of this Department has been arrested. (CALEA 52.1.3)

J.     Processing Serious Misconduct Involving MPD Members Outside of the District of Columbia

When a member is involved in serious misconduct *outside* of the District of Columbia, whether on or off duty:

1.     The member shall immediately notify the Watch Commander of his/her command through the Communications Division or SOCC.

2.     The Communications Division or SOCC shall notify the Office of Professional Responsibility.

3. The Office of Professional Responsibility shall respond as may be appropriate under the particular circumstances.

4. The appropriate law enforcement authority of the jurisdiction of occurrence will maintain primary responsibility for conducting a criminal investigation of the incident or the underlying matter.

5. The Office of Internal Affairs shall initiate a concurrent administrative investigation, and shall work closely with the investigator/official from the originating police jurisdiction investigating the primary criminal offense. In cases where the United States Attorney's Office or the competent prosecutorial authority has not yet issued a written declination, OIA shall not compel or order a subject officer to make a statement.

K. Investigative Report Contents and Completion Schedules

1. In instances of serious misconduct by an officer, the OIA Investigators shall complete a final investigative report with conclusions and recommendations within ninety (90) days as prescribed in Section V-G-3a of this general order.

2. The final investigative report shall include a description of the **serious misconduct** identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation, and proposed findings and analysis supporting those findings.

3. To ensure comprehensive and timely completion of investigations by OIA, all MPD special units, whether located at the district level or operating from a centralized location, shall liaison and provide full cooperation with members of OIA.

4. A duplicate copy of all reports, records, communications, and information related to the enumerated misconduct incident shall be provided immediately to the OIA Agent by any support unit having any such related materials.

5. The standard of review in a criminal investigation is *probable cause*. The standard of review in a policy review (administrative) investigation is a *preponderance of the evidence*.

6. When allegations of serious misconduct are made, the Office of Internal Affairs, shall make one of the following dispositions:

   a. Unfounded: Where the investigation determined that there are no facts to support the incident complained of actually occurred.

b.   Sustained:  Where the person's allegation is supported by a preponderance of the evidence to determine that the incident occurred and the actions of the officer were improper.

c.   Insufficient Facts:  Where there are insufficient facts to decide whether the alleged misconduct occurred.

d.   **Exonerated:**  Where a preponderance of the evidence shows that the alleged conduct did occur, but did not violate MPD policies, procedures, or training.

## VI.   CROSS REFERENCES

### A.   Related Directives

1.   GO OPS-304.10 (Police-Citizen Contacts, Stops and Frisks)
2.   GO PCA-502.07 (Medical Treatment and Hospitalization of Prisoners)
3.   GO RAR-901.01 (Handling of Service Weapons)
4.   GO RAR-901.04 (Aerosol Oleoresin Capsicum Spray Dispensers)
5.   GO RAR-901.07 (Use of Force)
6.   GO RAR-901.08 (Use of Force Investigations)
7.   GO PER-120.20 (Chain-of-Command Misconduct Investigations)
8.   GO PER-120.25 (Processing Citizen Complaints)
9.   GO PER-201.26 (Duties, Responsibilities and Conduct of Members)

### B.   Court Opinions

1.   Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)
2.   Graham v. Connor, 490 U.S. 386 (1989), 104 L. Ed 2d 443, 447
3.   Garrity v. New Jersey, 385 U.S. 493 (1967)
4.   Saucier v. Katz, 533 U.S. 194 (June 18, 2001)

### C.   Laws and Regulations

1.   D.C. Official Code § 5-1101, et seq. (Review of Citizen Complaints Involving Police)
2.   D.C. Municipal Regulations, Title 6A, §200 (Performance of Duty) and §202 (Standards of Conduct)

Charles H. Ramsey
Chief of Police

CHR:NMJ:JAE:MAR:LL:AP:sw

| GENERAL ORDER | SERIES | NUMBER | EFFECTIVE DATE |
|---|---|---|---|
| | 201 | 26 | November 10, 1976 |

| SUBJECT: | DISTRIBUTION |
|---|---|
| Duties, Responsibilities and Conduct of Members of the Department | A |
| | ORIGINATING UNIT |
| | PDD |

The purpose of this order is to establish the policy and procedures for the conduct of all members of the Metropolitan Police Department concerning their performance of duty, the exercise of their police powers, and their relationship with the public. This order consists of the following parts:

> PART I   Responsibilities and Procedures for Members of the Department
>
> A.   Responsibilities.
> B.   General Duties and Personnel Conduct.
> C.   Conduct Toward the Public.
> D.   Conduct in Arresting and the Processing of Law Violators.
> E.   Citizen - Police Officer Relationships.
> F.   Code of Ethics.

PART I

- A.   Responsibilities.

1.   It is the duty and responsibility of each member of the police force to preserve the peace, protect life and property, prevent crime, apprehend criminals, recover lost and stolen property, and enforce all laws and ordinances of the District of Columbia and the United States in a fair and impartial manner.

2.   In accordance with the District of Columbia Human Rights Law, members shall not discriminate, either in the enforcement of the law, or in the provision of police service, on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, matriculation, political affiliation, physical handicap, source of income, or place of residence or business, except as required by specific statute.

3.   In accomplishing their mission, members shall recognize that:

a.   The power of the police to fulfill their functions and duties is dependent on public approval of their existence, actions, and behavior and on their ability to secure and maintain public respect.

b.   To secure and maintain public respect and approval means also obtaining public willingness to cooperate in the task of securing observance of the law.

-2-

    c.   The extent to which the cooperation of the public can be secured diminishes proportionately the necessity for the use of physical force in achieving police objectives.

    d.   The ultimate goal of police operations is the absence of crime and disorder, not the visible evidence of police action in dealing with them.

B.   <u>General Duties and Personal Conduct.</u>

1.   The prevention of crime being the most important factor from a police point of view, members shall familiarize themselves with the laws and regulations they are required to enforce.

2.   Members shall provide themselves with memorandum books and shall make note of matters of interest coming to their attention within the scope of their duties. Such memorandum books shall be subject at all times to examination by their supervisors.

3.   Members shall continually maintain a valid operator's license issued by the jurisdiction in which the member resides. Any change in the status of the member's license shall be reported to an official of the department prior to the member's next tour of duty.

4.   Members shall report for roll call properly uniformed and equipped and shall give attention to dispatches, orders, and instructions read and issued by the official then in command.

5.   When directed to take their beats, they shall do so by the most expedient route and method, and if notified that the member whom they are to relieve has information concerning police business, they shall meet such members at a designated location. However, they shall not utilize their privately-owned mode of transportation unless so directed by competent authority.

6.   Unless otherwise directed, or authorized by proper authority, or when necessary for emergency purposes, members assigned to foot patrol beats shall not ride, nor be transported in a vehicle while so assigned during a tour of duty.

7.   They shall become thoroughly acquainted with every part of their beat and acquire such knowledge of the residents as will enable them to promptly recognize and furnish information regarding them. At night they shall form impressions of persons they encounter on the streets, so as to enable them to recognize them later; and if the circumstances are of a suspicious nature, they shall ascertain the name and addresses of the persons and appropriately report such information.

8.   They shall give persons of known bad character such attention as will make it apparent to the persons that they are under observation and that detection will follow the commission of a crime and shall note and appropriately report the presence of such persons on their beats.

General Order No. 201.26
(Revised    6/25/86   )

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 201.26** | May 4, 1994 | 1 | 3 of 11 |

9.    They shall inform themselves as to houses on their beats in which violations of the law are believed to exist and take appropriate police action. If uncertain as how to proceed, the facts shall be reported to the official then in command.

10.    They shall investigate all vehicles which arouse their suspicions and note the license number of such vehicles for future reference.

11.    Unless otherwise directed by competent authority, they shall constantly patrol their beats. At night they shall frequently examine the front doors, transoms, low windows, and area ways of buildings on their beats to ascertain if they are properly secured; if any are found open, their station shall be notified and the building secured.

12.    When on patrol duty, they shall not walk or talk with citizens except for the purpose of communicating, or receiving police information, or such brief conversations that are likely to foster good police-community relations.

13.    When members of the force on patrol duty meet on the confines of their beats, or assigned duty posts, they shall not walk or talk with each other except for the purpose of communicating, or receiving police information, and the conversations shall be as brief as possible.

14.    During their tour of duty they shall not return to the station house for any purpose without permission from competent authority; and unless otherwise directed, they shall not leave their beats until the expiration of their tour of duty; and upon leaving same, they shall proceed by the most direct route to the station and report to an official. They shall inform an official of any matters of police interest.

15.    Members shall be limited to one lunch period not to exceed 30 minutes in any one tour of duty. Members may not, however, request to be held out of service during the morning and evening rush hour periods (0630-0930 hours or 1530-1830 hours).

16.    In the absence of instructions to the contrary, members of the force on duty, when leaving any detail, hearing, or the police clinic, shall proceed immediately by the most direct means available to their district station, division or bureau or to their beat or post and report their return. If they return directly to their beat, they shall immediately notify their station of their return. The time of return shall be recorded on the patrol signal system book in the margin opposite the officer's name.

17.    Members shall note and make proper report of all incidentals coming under their observation on their beats (such as unsafe structures; lamps not burning during the prescribed hours (giving time out and location); public property found defective or broken, such as drains, pumps, fire hydrants, sewers, water pipes; broken and dangerous trees and tree boxes; and dangerous holes on public, or private property) and shall take such

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 201.26** | May 4, 1994 | 1 | **4 of 11** |

measures as will protect the public interest until the conditions have been properly corrected. Such reports shall be made at the expiration of the tour of duty except in cases where the public interest requires immediate action.

18. They shall immediately investigate all damage to public property such as schools, street light poles, patrol boxes, parking meters, traffic signal poles and fire alarm boxes and make a full report or record at the district in which the damage occurred. The report shall include a notation as to whether the person, or persons responsible will indemnify the District of Columbia for the damage.

19. They shall promptly report to the proper department of the District Government any apparent violation of the plumbing, building, and health codes of the District of Columbia.

20. If they observe anything which seems to be irregular, or unsanitary and which cannot be remedied at once, they shall immediately report the same to the proper department of the District Government, and in addition, note same on their district records.

21. Whenever they observe anything being done for which a permit is required and none has been procured, they shall promptly advise the proper department of the District Government. When a permit has been obtained or is produced, they shall, after determining the terms of the permit are being complied with, enter their rank, name, district, and date of examination on the face of the permit.

22. Members shall conduct their private and professional lives in such a manner as to avoid bringing discredit upon themselves or the department.

23. Members shall not conduct themselves in an immoral, indecent, lewd, or disorderly manner or in a manner that might be construed by an observer as immoral, indecent, lewd, or disorderly. They shall not be guilty of misconduct, neglect of duty, or conduct unbecoming to an officer and a professional even though such conduct is not specifically set forth in this order.

24. A member shall not accept a gift or gratuities from organizations business concerns, or individuals with whom he/she has, or reasonably could be expected to have official relationship on business of the District Government. Similarly, members are prohibited from accepting personal or business favors such as social courtesies, loans, discounts, services, or other considerations of monetary value which might influence, or be reasonably suspected of influencing their decisions as representatives of the District Government. It is particularly important that all members guard against any relationships which might be construed as evidence of favoritism, coercion, unfair advantage, or collusion.

25. Members shall not engage in political or religious discussion to the detriment of discipline.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 201.26** | June 28, 1994 | 2 | **5 of 11** |

26.     Members shall not suggest, recommend, advise, or otherwise counsel concerning the retention of an attorney, or bondsman to any person coming to their attention as a result of police business.  This does not apply when a relative of the member seeks such service.

27.     Unless specifically authorized by the reporting member or by an official department directive, no member, other than the reporting member, shall sign an official report.

28.     Members shall not interfere with the cases of other members, except by consent of such other members, or their commanding officers.

29.     Members shall report to their immediate supervisor any violations of the rules of the Metropolitan Police Department by any other member of the force.

30.     When questioned by superior officers in connection with matters relating to the official business of the police department, subordinate members shall respond truthfully.  Additionally, during the course of an investigation, all members shall respond truthfully to questions by any agent or official of the Office of Internal Affairs (OIA), even if the OIA agent is not of superior rank.  During the progress of an investigation, **every** agent is authorized to conduct any and all investigative activities in the furtherance of an investigation.

31.     A member of the force below the grade of lieutenant who desires an interview with the Chief of Police, or a Bureau Head shall, except as otherwise provided by departmental regulations, make request to his/her commanding officer stating briefly the reason for the request and the commanding officer shall transmit the request to the official indicated for his/her approval, or disapproval.  This shall not be construed as restricting any member of the force from requesting an interview with any of the officials mentioned.

32.     Members in either uniform, or civilian attire <u>shall always</u> exercise sound judgement and tact when speaking to, or conversing with other members in civilian attire.  This is of utmost importance in order to prevent the inadvertent exposure of members working in confidential, or sensitive assignments.  Members must realize that even a casual acknowledgement of a member working in a confidential assignment could possibly place the member and his/her assignment in jeopardy.  <u>Therefore, it is imperative that all members of the department strictly adhere to this policy.</u>

33.     In referring to, or addressing a superior officer, whether on, or off duty, the appropriate title to the officer addressed, or referred to shall be used, such as "Chief," "Inspector," "Captain," "Lieutenant," or "Sergeant." Superior officers in addressing members of the force below the rank of sergeant on official business shall use the prefix "Officer."

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 201.26** | June 28, 1994 | 2 | 6 of 1 |

34. Members of the force in full uniform shall render a salute in either of the following situations:

    a.   To the National Colors, or

    b.   To the National Anthem.

35. When required, the salute shall be executed as follows:

    a.   The hand salute shall be used by members of the force in uniform without baton. The right hand shall be raised smartly until the tip of the forefinger touches the lower part of the headdress, or forehead above the right eye. The thumb and fingers shall be joined and extended with the palm to the left, forearm inclined at about 45 degrees, and the hand and wrist straight.

    b.   The baton salute shall be used by members of the force in uniform when equipped with a baton. The salute shall be made by grasping the handle of the baton firmly in the hand, with the thumb extending along the baton. The baton shall then be raised so that the hand is at the height of the chin, the back of the hand is to the front, and the baton is at an angle of about 30 degrees.

    c.   When members of the force are assigned along parades routes they shall face the crowd at all times unless otherwise directed. Salutes to the National Colors in this case shall be given by the officials in charge of the sections. The salute shall be given when the flag is six paces from the official and held until the flag is six paces beyond him/her.

    d.   In cases when the National Anthem is played, members in uniform shall stand at attention and face the flag (or when no flag, the music), and render the hand, or baton salute as appropriate. The salute shall commence at the first note of the Anthem and be held until the final note has been sounded. Members in civilian dress shall uncover and stand at attention. The hat shall be held in the right hand over the left shoulder, so that the right hand covers the area of the heart. When not covered, the member shall face the flag (or music) and stand at attention.

    e.   When the National Anthem is played, or the National Colors pass during ceremonies indoors, members who are in uniform (without uniform cap) shall stand at attention and face the flag, or music

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 201.26** | June 28, 1994 | 2 | **6.1 of 1** |

36.    Members on duty shall obtain approval from their watch commander and shall notify the Communications Division before leaving the city, except:

a.    The notification to the Communications Division shall not be required if the watch commander determines that an investigation could be compromised, or

b.    When the above requirement conflicts with General Order 401.1 (Field Reporting System) regarding report-taking.

\* \* \* \* \* \* \*

(Go to Page 7)

7-

C.   Conduct Toward the Public.

1.    All members of the department shall be courteous and orderly in their dealings with the public. They shall perform their duties quietly, remaining calm regardless of provocation to do otherwise. Members shall be attentive to, and take suitable action on, reports and complaints by a private person except when circumstances make it necessary for them to report the matter, or refer the complaint to a more suitable police officer, or other agency. Members shall fulfill proper requests for information or assistance, or they shall aid the person in otherwise obtaining the requested information or assistance. Members shall avoid giving the impression that they are evading the performance of their duty or that they are not interested in the problems of persons who are referred elsewhere for service.

2.    Members shall be courteous, civil, and respectful to their superiors, associates, and other persons whether on, or off duty. They shall be quiet, orderly, and attentive and shall exercise patience and discretion in the performance of their duties. When requested to do so, they shall give their names and badge numbers in a respectful, polite manner.

3.    Members shall refrain from harsh, violent, coarse, profane, sarcastic, or insolent language. Members shall not use terms or resort to name calling which might be interpreted as derogatory, disrespectful, or offensive to the dignity of any person.

4.    Members shall not question persons about their residency status in this country, unless the members are:  (1) investigating a violation of section 274 of the Immigration and Nationality Act, 8 U.S.C. §1324, which prohibits willfully or knowingly bringing in or harboring any illegal alien, or (2) investigating a crime other than a violation of the Immigration and Nationality Act, and an element of that crime is the illegality of the person's presence in the United States.

5.    Members of the department shall respond without delay to all calls for police assistance from citizens or other members. Emergency calls take precedence; however, all calls shall be answered as soon as possible consistent with normal safety precautions and vehicle laws. Failure to answer promptly a call for police assistance, without justification, constitutes misconduct.

6.    When a member of the department is called on the telephone he/she shall respond promptly by giving the command to which he/she is attached, his/her rank, and surname.

7.    No member shall willfully depart from the truth either in giving testimony, or in connection with any legal official order received by him/her or in his/her official duties.

8.    Members shall avoid engaging in idle conversations on racial, religious, political, or other controversial subjects. They shall refrain from the public discussion of the merits of any law or ordinance.

General Order No. 201.26
(Revised      6/25/86  )

-8-

D.   Conduct in Arresting and the Processing of Law Violators.

     1.   Except when impractical, unfeasible, or where their identity is obvious, members shall identify themselves by displaying the badge or identification folder before taking police action.  At the time of an arrest, the person arrested shall be advised of the reason for the arrest.

     2.   Members shall make diligent efforts to arrest or locate wanted persons and to recover stolen and lost property. They shall observe and investigate all persons, whether on foot or in vehicles, whose appearance, actions, or presence at a particular location seems suspicious.

     3.   When a member has probable cause to believe that a felony has been committed and that a person or persons is guilty of that felony, the person or persons shall be questioned and taken into custody if appropriate.  Members so engaged will use tact and good judgement in speech and conduct and shall at all times remain cautious and alert to the possibility of attack or flight by the suspect.

     4.   In cases of minor violations of the law, e.g., District of Columbia Municipal Regulations and, in the judgement of the officer, the circumstances surrounding the incident are such that a verbal warning would best serve the interest of the community, the member may issue such a warning as the proper enforcement action.  However, in more serious or aggravated types of incidents, or those which indicate a serious disregard for the safety or welfare of others, or those in which the member has reasonable grounds to believe that the individual concerned will ignore the warning, the appropriate enforcement action would be an arrest.

     5.   In the event that the activities of a congregation of persons involve the exercise of some constitutionally protected right such as freedom of speech, religion, or assembly, members shall endeavor to protect the participants and prevent any violence from occurring.

     6.   On the occurrence of a disturbance, it is the duty of the police to restore order and disperse the crowd by efforts of persuasion, if possible. If such efforts fail, force must be used and the principals arrested.

     7.   Members shall not use unnecessary force in making arrests or in dealing with prisoners or any other person.  Prisoners and suspects shall be treated in a fair and humane manner; they shall not be humiliated, ridiculed, taunted, or embarrassed.  Members shall not strike or use any form of physical force on a prisoner or other person except when necessary to prevent escape or in self defense or to prevent violence to another person.  Members shall report each instance of their use of force to a superior officer as soon as possible.

     8.   In the arrest, transportation, and detention of prisoners, members shall take precautions to prevent an escape, injury to themselves or others, and damage to property.  When making arrests, they shall search prisoners carefully and shall immediately take possession of all weapons and evidence.

-9-

9.    Immediately upon an arrest being recorded, an inquiry shall be made of prisoners as to the person or persons they may wish notified of the arrest; the station clerk shall at once make every reasonable effort to communicate with such person or persons, except where such action might serve to defeat the ends of justice or entail expense to the District.  However, whenever practicable, prisoners shall be required to use public pay telephones for such notifications, and in no case shall a prisoner be permitted to incur toll or long distance charges against the department for such purposes.

10.    Prior to questioning an arrested person, the arresting member shall warn the person of his/her rights using PD Form 47 (Warning as to Your Rights) as required.

11.    Members shall not conduct their interrogations of suspects in a manner that would tend to compel a confession.  They shall not use physical violence on the suspect or the threat of such abuse, nor shall they make any promise of immunity or lesser degree of prosecution, or hold out any other inducement to a defendant for the purpose of obtaining a confession.

12.    The arresting member shall be responsible for the security of the personal property in the possession of, or under the control of, the arrested person at the time of arrest.

13.    When a prisoner is unconscious from any cause, members should immediately endeavor to restore consciousness.  An unconscious person shall not be placed in a cell but shall be immediately transported to a medical facility for examination by a doctor.

14.    Each prisoner booked shall be immediately examined and, if he/she has any bruises, cuts, or other injuries requiring medical attention, shall be delivered to the appropriate emergency hospital.

15.    Members shall not normally search the persons of the opposite sex who are in custody or under the care of the department.

16.    Members shall adhere to the procedures outlined below in order to ensure that the arrest book contains information which is complete and accurate in accordance with departmental guidelines:

      a.    Examine the organizational element's arrest book each business day to ensure that each entry displays a current disposition (e.g., Citation Release, bond, forfeiture of collateral, lock-up, court docket number);

      b.    The date of the first court appearance shall be entered in the arrest book alongside the corresponding arrest book entry.  In addition, the disposition shall also be entered in the arrest book no later than five (5) business days after the date of the first court appearance.

-10-

    (1)   If the lead charge is no-papered and no other charge against the defendant stemming from the same arrest is papered, enter "No-Papers" and the date the case was no-papered in the disposition section of the arrest book.

    (2)   When the lead charge or other charges stemming from the same arrest are papered, enter the court docket number in the disposition section of the arrest book.

   c.   Cases where the arrestee was released on personal recognizance, or was issued a citation (i.e., NOI, 61-D) in lieu of being arrested, shall be checked daily in the arrest book until the case has either been papered, no papered, collateral has been posted, or the requirements of the citation have been met.

E.   Citizen-Police Officer Relationships.

    1.   It is expected that every member of this department is keenly aware of the fact that public support and cooperation is essential if we are to effectively fulfill our police responsibilities. We also know that the extent to which the public will cooperate with the police department is dependent upon its respect for, and confidence in, the police.

    2.   In any effort to strengthen the citizen-police officer relationship, the personal conduct and attitude of the police officer is of paramount importance. Each member of the force must understand that the basis of a correct attitude is a desire and a willingness to serve the public. However, members must distinguish between service and servility and between courtesy and softness.

    3.   In the performance of their duty, police officers should develop a disposition that is pleasant and personal in nonrestrictive situations, and firm and impersonal in situations calling for regulation and control. They must observe, uphold, and enforce all laws without bias or prejudice and without regard to individual or individuals involved.

    4.   Members of Congress, and all other elected or appointed federal, state, or local officials are subject to arrest for the commission of criminal offenses (except those parking privileges granted to members of the Congress as described in the D.C. Code and to elected city officials in accordance with General Order No. 303.1 [Traffic Enforcement]) to the same extent and in the same manner as all other citizens.

General Order No. 201.26
(Revised    6/25/86    )

-11-

F.   Code of Ethics.

Members shall:

1.   Be habitually courteous; they shall recognize their responsibilities as public servants and shall be particularly attentive to citizens seeking assistance, information, who desire to register complaints, or give evidence.

2.   Accept their responsibility to the public by being punctual in their engagements and expeditious in the performance of their duties.

3.   Regard their office as a public trust and, in the discharge of their duties, be constantly mindful of their primary obligation to serve the public efficiently and effectively.

4.   Administer the law in a just, impartial, and reasonable manner and shall not accord to some more reasonable treatment than to others.  They shall recognize the limitations of their authority and at no time use the power of their office for their own personal advantage.

5.   Be true to their obligations as custodians of public property and shall bear in mind that the misuse and waste of public property is equally as reprehensible as the misuse or waste of money from the public treasury.

6.   Cooperate fully with all other public officials to the end that the safety and general welfare of the public will be insured.  They shall not permit jealousies or personal differences to influence their cooperation with other agencies.

7.   Add to their effectiveness by diligent study and sincere attention to self-improvement.  They shall welcome an opportunity to disseminate practical and useful information relating to matters of the public's safety and welfare.

8.   Conduct their public and private lives so that the public regards them as examples of stability, fidelity, and morality.

9.   Bear faithful allegiance to their Government and be loyal to their profession.  They shall accept as a sacred obligation their responsiblity as citizens to support the Constitution of the United States; and, as public officials, they shall consider the privilege of defending the principles of liberty as defined in our Constitution and laws the greatest honor that may be bestowed upon any person.

Maurice T. Turner, Jr.
Chief of Police

MMT:RJB:jtw

General Order No. 201.26

# Metropolitan Police Department □ Washington, D.C.



# GENERAL ORDER



| Subject: | | Series | Number | Distribution | Change Number |
|---|---|---|---|---|---|
| Collection of Physical Evidence; Utilization of the Crime Scene Examination Section and Crime Scene Search Officers | | 304 | 8 | A | 2 |
| | | Effective Date April 30, 1992 | | | |
| | | Revision Date | | | |

The purpose of this order is to establish the policies and procedures for collecti and preserving all physical evidence found at crime scenes. Additionally, this order defines the duties and responsibilities of crime scene examination section technicians, crime scene search coordinators, district crime scene search officers, reserve crime scene search officers, and those members qualified to field test suspected narcotics/drugs. This order consists of the following parts:

PART I      Responsibilities and Procedures for
                 Members of the Department

                 A.     Policy.
                 B.     Investigation of Crime Scenes.
                 C.     Handling of Potential Evidence.
                 D.     Processing Motor Vehicles.
                 E.     Requests for Latent Fingerprint Examination.

PART II     Responsibilities and Procedures for
                 Special Assignment Personnel

                 A.     General Responsibilities of District Crime Scene Search
                        Officers and Crime Scene Examination Section Technicians.
                 B.     District Crime Scene Search Officers.
                 C.     Crime Scene Search Coordinators.
                 D.     District Crime Scene Search Vehicles and Equipment.
                 E.     Crime Scene Examination Section Supervisor.
                 F.     Re-Certification Program.
                 G.     Fingerprint Examination Section.

PART III    Responsibilities and Procedures for
                 Supervisory and Command Personnel

                 A.     District Commanders.
                 B.     Director, Training Division.
                 C.     Director, Criminal Investigations Division.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 304.8 | April 30, 1992 | 2 | 2 of 16 |

PART I

A.    Policy.

1.    The member responsible for the preliminary investigation or an official on the scene shall notify the crime scene examination section of cases that require processing by the technicians of that section.

2.    When conditions prohibit a member of the crime scene examination section from responding to the scene of a crime as set forth in Part IB of this order, the official or senior technician in charge of the crime scene examination section may authorize a district crime scene search officer to respond and process the case.

3.    In crimes other than those listed in part IB of this order, the member making the report and/or preliminary investigation shall arrange through the radio dispatcher, for the services of a district crime scene search officer.

4.    In the event there are no district crime scene search officers available to process a crime scene, the requesting member shall contact his/her immediate supervisor for instructions on how to proceed with the case.

5.    District members trained to search crime scenes are designated as district crime scene search officers.

6.    Those members trained but not assigned as crime scene search officers shall be designated as reserve crime scene search officers, and shall be available for occasional assignments as needed.

7.    Members investigating and/or reporting crimes which require the services of either a crime scene examination section technician or a district crime scene search officer, shall:

      a.    Protect the crime scene in order to prevent the destruction or contamination of evidence;

      b.    Not disturb any articles, marks, or impressions of potential evidentiary value; and

      c.    Initiate security measures to keep unauthorized persons away from the immediate area of the crime scene until all evidence measurements, sketches, photographs, searches, and collections have been made.

| Publication | Revision Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | April 16, 1991 | 2 | 3 of 16 |

8.    It is the responsibility of all members handling evidence to ensure the integrity and subsequent admissibility of such evidence.

9.    Establishment and protection of the "chain of custody" of evidence by limiting the number of persons who handle the evidence between discovery and court presentation.

10.    With the exception of narcotics and certain document examinations, (which are outlined in General Orders No. 601.1 [Handling and Disposition of Property] and 304.2 [Processing Questioned Documents] Part I, respectively) any type of evidence coming into the possession of any member of the department that needs to be submitted to a laboratory for analysis must go through a district crime scene search officer or crime scene examination section technician:

        a.    This includes submitting firearms to the Firearms Examination Section when they are to be compared to a fired bullet or fired cartridge casing, etc.

        b.    This does not include guns recovered where only test fires are needed.

11.    Members and/or investigators are reminded that the identification and collection of evidence should be a team effort, and that no item of evidence should be overlooked. Failure to ensure that each item of evidence receives the proper attention could prove to be a detriment to an investigation, and hamper its presentation in court.

12.    Investigators shall make themselves aware of all items that are collected to ensure that a thorough investigation is being accomplished.

13.    In cases where motor vehicles are taken to the crime scene examination section for processing, it shall be the responsibility of the member requesting the service to have the vehicle removed at the completion of the processing.

14.    District crime scene search officers recovering property shall comply with the provisions of General Order No. 601.*.

15.    Members other than district crime scene search officers or crime scene search technicians, recovering items of evidence shall, when instructed to do so by an official or a crime scene search officer or a crime scene examination technician, turn the evidence over to the district crime scene search officer or crime scene examination section technician/processing the case, as soon as possible, to ensure proper coordination and handling.

| Publication | Revision Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | April 16, 1991 | 2 | 4  of  16 |

16.    Only those members trained in the field testing of narcotics/drugs shall conduct field tests of narcotics/drugs and/or prepare the necessary paperwork (see Part IIB10) generated from the seizure of narcotic/drug-related evidence.

**B.    Investigation of Crime Scenes.**

Personnel of the Crime Scene Examination Section, Criminal Investigations Division, Investigative Services Bureau, shall, in addition to performing such duties as directed by the Director, Criminal Investigations Division, be responsible for processing scenes of the following types of crimes:

1.    All deaths (to include assassinations) of a violent or suspicious nature, all deaths resulting from industrial accidents, and all deaths of unidentified persons, which are the investigative responsibility of the Homicide Branch;

2.    All sex offenses investigated by the Sex Branch;

3.    Critical injury assaults, where the victim may die;

4.    All robberies of financial institutions, armored cars and United States Postal Facilities;

5.    Burglaries, when there is critical injury or loss of property valued at $10,000 or more;

6.    Use of service firearms by members of the force as indicated in General Order No. 901.1 (Use of Firearms and Other Service Weapons); and

7.    Other major offenses (e.g., kidnappings, bombings, serious arsons as outlined in General Order No. 304.1 [Procedures for Conducting Criminal Investigations]).

**C.    Handling of Potential Evidence.**

The "Chain of Custody" of evidence is essential in the handling of evidence. Members are to ensure that evidence in which they process is accounted for. The admissibility of evidence in a court of law will depend, in large part, on the manner in which the evidence was collected, and the precautions taken to ensure its integrity. Members are responsible for:

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | February 24, 1991 | 1 | 5 of 16 |

    1.    Ensuring the future identification of recovered evidence for court or administrative purposes, by:

        a.    Initialing the evidence, and/or

        b.    Placing the evidence into an evidence envelope containing the evidence, and marking the envelope.

        Note: If any link in this chain is unknown or unaccounted for, the integrity of the evidence can be threatened and it may well be ruled inadmissible;

    2.    When taking custody or handling evidence, checking it's condition and identifying each time it was handled, ensuring that:

        a.    It is the original evidence; and

        b.    It is in the same condition as at the time of discovery;

    3.    Ensuring that when testifying, his/her testimony is able to support the fact that each item of evidence was either found at the crime scene or is otherwise related to the crime; and

    4.    Demonstrating to the satisfaction of the court, that the evidence was not altered, and that it can be positively identified and distinguished from all other similar items.

D.    Processing Motor Vehicles.

    1.    Motor vehicles involved in the commission of those crimes listed in Part IB of this order, shall be processed by the crime scene examination section.

    2.    Motor vehicles involved in crimes other than those listed in part IB of this order, shall be processed by a district crime scene search officer upon the request of the investigating member.

    3.    Recovered stolen motor vehicles, unless involved in the commission of those crimes listed in Part IB of this order, shall be processed at the time of recovery for latent fingerprints and other physical evidence, by a district crime scene search officer from the district in which the motor vehicle was recovered.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | February 24, 1981 | 1 | 6 of 16 |

E.    **Requests for Latent Fingerprint Examination.**

1.    Members shall request a latent fingerprint examination in those cases where, through investigation or information from a reliable source, they have **developed a suspect** to a particular crime or series of crimes. All requests for a latent fingerprint examination shall be submitted on a PD Form 860 (Request for Latent Fingerprint Examination).

2.    Members whose organizational element utilizes a crime scene search file shall submit all completed PD Forms 860 to their **commanding officer** or other member designated by him/her. Members whose organizational element does not maintain a crime scene search file shall submit the PD Form 860 directly to the Fingerprint Examination Section, Identification and Records Division.

3.    In the event a member has reliable information on a suspect, but **insufficient** information to complete a PD Form 860, the requesting member shall **contact a supervisor** of the Fingerprint Examination Section for assistance.

**PART II**

A.    **General Responsibilities of District Crime Scene Search Officers and Crime Scene Examination Section Technicians.**

District crime scene search officers and/or crime scene examination section technicians are responsible for:

1.    Coordinating the collection and handling of **all physical evidence** in the more serious cases, as outlined in Part IB of this order;

2.    Recovering **all physical evidence** in those **more serious cases,** or when applicable, **assuming custody** of the evidence when already recovered by another member;

3.    Responding to offenses and examining the scene, to **determine what type of processing** is required;

4.    Taking photographs and making diagrams or sketches where **circumstances** surrounding the offense and department policy dictate the need to do so;

5.    Maintaining the integrity of all of the evidence he/she handles, **and ensuring that** his/her work reflects impartiality and professionalism;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.9 | February 24, 1991 | 1 | 7 of 16 |

6.    Collecting, handling, and expediently submitting all evidence to laboratories, in the following cases:

a.    Homicides;

b.    Rapes and Sexual Assaults;

c.    Serious ADW's;

d.    Armed Robberies of commercial establishments; and

e.    Burglaries, where the nature of the evidence dictates that the district crime scene search officer or crime scene examination section technician should handle it;

NOTE:    If, in these cases, another member has already collected the evidence, it shall be turned over to the district crime scene search officer or crime scene examination section technician (whichever appropriate) to ensure proper handling.

7.    Taking nitric acid swabs from all suspects in cases involving the discharge of firearms, at the direction of an official:

a.    These swabs shall be taken in a timely manner during the initial investigation as this evidence is easily destroyed.

b.    A determination will be made at a later time as to whether this evidence is to be forwarded for laboratory examination, and

8.    Collecting garments as evidence when there is a possibility of their exposure to gunpowder residue, due to their close proximity to a discharged firearm.

B.    District Crime Scene Search Officers.

District crime scene search officers shall be responsible for:

1.    Maintaining the physical evidence kit issued them;

2.    Drawing supplies from the crime scene search coordinator, when needed;

3.    Surrendering his/her physical evidence kit to a supervisor of the crime scene examination section upon being relieved of the assignment as a district crime scene search officer;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | February 24, 1991 | 1 | 8 of 16 |

4.  Telephoning the crime scene examination section, upon the completion of their investigation:

    a.  Supplying the necessary information;

    b.  Obtaining a Crime Scene Examination Section (CSES) number; and

    c.  Preparing the appropriate reports, which reflect the action taken and the evidence recovered, and forwarding these reports to the crime scene examination section for processing;

5.  Ensuring the proper collection and submission of evidence, by handling recovered evidence in the following manner:

    a.  Ensuring that evidence has been properly marked;

        (1)  Placing latent fingerprints into a PD Form 307 (Latent Fingerprint Jacket);

        (2)  Ensuring that the PD Form 307 is securely sealed;

    b.  Completing a PD Form 668 (Evidence Report), in an original and the appropriate number of copies;

        (1)  Attaching the PD Form 668 to the PD 307; and

        (2)  Forwarding the forms to the Crime Scene Examination Section, Criminal Investigations Division; and

    c.  After receiving the results, forwarding all information to the member in charge of the investigation;

6.  Collecting all evidence requiring laboratory examination except latent fingerprints and narcotics, and delivering the evidence in person, to the appropriate laboratory for processing.

    a.  The evidence must be accompanied by a PD Form 668 for laboratory examination conducted by MPDC; or

    b.  A transmittal letter prepared by the crime scene examination section, for non-MPDC laboratory examination;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | February 24, 1991 | 1 | 9 of 16 |

      7.    Submitting latent fingerprints per Parts IIB 5a and 5b of this order, and narcotics per General Order No. 601.1;

      8.    Processing evidence not requiring laboratory examination through the Property Division;

      9.    Processing and testing suspected narcotics/drugs when:

          a.    Other member's qualified to test narcotics/drugs are not immediately available;

          b.    Other items of evidence are going to be recovered, requiring the preparation of a PD Form 668; or

          c.    Other forensic examination is required; and

      10.    When notified of a seizure of suspected narcotics/drugs, if not engaged in searching a crime scene, district crime scene search officers, and any other member qualified to test narcotics/drugs, shall be responsible for:

          a.    Wearing an approved pair of non-disposable gloves and approved safety glasses, in that these tests involve the use of concentrated acid;

          b.    Conducting all tests in a location easily accessible to water in the event acid is spilled on exposed skin;

          c.    Responding and assisting the arresting or seizing member(s) in the identification of the drug;

          d.    Collecting and processing all narcotic/drug related evidence recovered;

          e.    Preparing all necessary Forms (e.g., DEA Form 7 (Report of Drug Property Collected, Purchased or Seized), PD 81 (Property Return), and the PD Form 95 (Narcotic Evidence Bag);

          f.    Preparing the PD Form 95 in all instances where narcotics/ drugs and/or drug paraphernalia are seized as evidence:

              (1)    Entering the required information on the bag, and

| General Order No. 304.8 | Effective Date February 26, 1991 | Rescission Number 1 | Page Number 10 of 16 |
|---|---|---|---|

(2)    Initialing and dating the inside of the bag, at the top edge, just below the area where the bag will be sealed, with a black wide-tipped felt marker;

(3)    Not sealing, reopening, then resealing a PD Form 95, and

(4)    Submitting the PD Form 95 to the DEA Lab for analysis, via the Narcotics and Special Investigations Division (NSID), by placing the sealed envelope in the element's narcotic evidence mailbox, or turning the bag directly over to the NSID;

g.    Preparing a PD Form 668-B (Field Test/Evidence Report) in instances where:

(1)    Suspected narcotics/drugs are recovered and a field test is performed; and

(2)    A PD Form 668 is not prepared;

h.    Obtaining a CSES number from the Crime Scene Examination Section, CID, when preparing a PD Form 668-B, and providing a copy of the PD Form 668-B to the arresting/investigating member;

i.    Advising the arresting or recovering member that lab numbers will be provided by the DEA Laboratory and also can be obtained by calling the Narcotic and Special Investigations Division (NSID) at the time of papering if the lab number is not available in the papering section, U.S. Attorney's Office; and

j.    Providing the arresting/papering member with a reproduced copy of all paperwork/forms prepared in connection with the seizure of the narcotics/drugs, for submission to the Assistant U.S. Attorney papering the case.

C.    Crime Scene Search Coordinators.

District crime scene search coordinators are responsible for:

1.    Reviewing all reports before forwarding them to the crime scene examination section;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 304.8 | April 30, 1992 | 2 | 11 of 16 |

    2.    Compiling monthly activity figures and forwarding reports to the crir scene examination section;

    3.    Coordinating all requests for fingerprint comparisons;

    4.    Maintaining all other administrative records relative to the crime scer search program;

    5.    Conducting weekly inspections of all crime scene search equipment, including camera equipment, for damage, excessive wear or malfunction.  In instances where equipment is discovered damaged, or upon notification of the discovery of damaged equipment by another member:

        a.    Apprising an official of his/her unit to ensure that an investiga tion is conducted; and

        b.    Furnishing the crime scene examination section coordinator with the name of the official handling the investigation;

    6.    Securing supplies for their office:

        a.    Crime scene search supplies shall be obtained from the crime scene examination section office only.

        b.    Other office supplies may be obtained from the district admini trative section;

    7.    Stocking the crime scene search vehicles with the required evidence collection material, which will be supplied by the Crime Scene Examination Section, Criminal Investigations Division, and ensuring that all evidence collection equipment is stored in the cabinets provided for this purpose;

    8.    Handling or coordinating all evidence to be taken to, or picked up from, various laboratories;

    9.    Attending patrol sections roll calls once a month to discuss the recognition, preservation, processing and when applicable, the recovery of evidence by patrol members;

    10.    Meeting with the Supervisor, Crime Scene Examination Section, monthly to discuss and develop the training material to be presented at the roll call training session:

| olication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 304.8** | April 30, 1992 | 2 | 12 of 16 |

11.    Ensuring that the CSSO assigned to the midnight patrol section is briefed, allowing presentment of the training material; and

12.    Handling or coordinating all other problems relative to their unit, to ensure an efficient utilization of personnel and equipment.

D.    District Crime Scene Search Vehicles and Equipment.

1.    District Crime Scene Search Vehicles

District crime scene search officers are responsible for the following, when utilizing district crime scene search vehicles:

a.    Carrying out the district's responsibilities regarding the protection and preservation of evidence;

b.    Storing of evidence collection equipment or evidence (no other property shall be stored or transported in these vehicles); and

c.    Operating the crime scene search vehicles in the following manner:

(1)    Keeping them clean at all times and exercise the utmost care in their operation;

(2)    Ensuring that the vehicle's doors are locked, after alighting from the vehicle;

(3)    Ensuring that the vehicles are kept locked, except when equipment or property is actually being removed or inserted; and

(4)    Not expediting to any crime scene for the sole purpose of processing the crime scene.

2.    Crime Scene Search Equipment

District crime scene search officers are responsible for:

a.    Ensuring that they have adequate supplies, and that they maintain those supplies in good condition (these supplies are to be drawn from their coordinator).

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 304.8 | August 22, 1997 | | 13 of 16 |

    b.    Assuming control of any equipment (including camera equipment), and the responsibility for such equipment. Upon receipt of equipment:

        (1)    Immediately checking the equipment for damage, and

        (2)    Ensuring the protection of equipment through the utilization of such safeguards as camera cases, straps, etc.

    c.    Upon discovering damaged equipment, immediately notifying:

        (1)    An official of his/her unit, and

        (2)    As soon as practical, the crime scene search coordinator.

E.    Crime Scene Examination Section Supervisor.

The crime scene examination section supervisor shall be responsible for:

1.    Maintaining an appropriate file documenting actions taken at all crime scenes. Such files shall reflect:

    a.    A complete inventory of all items taken as evidence, and

    b.    The results of any examination made of such evidence;

2.    Reviewing all requests to forward evidence which cannot be processed or analyzed by this department;

3.    Preparing transmittal letters for the forwarding of evidence to appropriate agencies; and

4.    Documenting in records maintained at their element, all calls for which their services or the services of district crime scene search officers, or those members requesting CSES numbers regarding their preparation of PD Forms 668-B, are required. These reports shall contain the following information, and be forwarded to the crime scene examination section for processing:

    a.    CSES number,

    b.    Complaint number,

    c.    Complainant's name,

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 304.8 | August 22, 1997 | | 14 of 16 |

      d.    Address of offense or service,

      e.    Type of offense,

      f.    Officer/investigator who requested service,

      g.    Logging officer, and

      h.    Officer assigned to process the case.

    5.    Meeting monthly with all CSSC for the purpose of developing needed training for members in their organizational elements.

    6.    Maintaining a file of all training topics outlined for presentation at monthly patrol section roll calls, for the purpose of accountability and future analysis.

F.    Re-certification Program.

    To ensure universal compliance in maintaining professional standards throughout the Crime Scene Search Program, annual re-certification procedures have been instituted for all crime scene search officers and reserve crime scene search officers. These procedures shall consist of the following:

    1.    Attendance at the Annual Training Seminars.

    2.    The obtaining of a minimum score of 70% on the final written exam, and a minimum score of 70% on a practical exam.

    Members who fail to meet the requirements as stated above, shall be removed from the Crime Scene Search program and lose his/her technician's pay, if applicable.

G.    Fingerprint Examination Section.

    The Fingerprint Examination Section, Identification and Records Division, is responsible for:

    1.    Evaluating all latent fingerprints, determining whether they are identifiable or not:

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 304.8** | **April 30, 1992** | **2** | **14.1 of 1** |

2.    Noting the results of this evaluation on the appropriate copies of the PD Form 668, which shall be returned to the crime scene examination section for filing and distribution; and

3.    Processing all PD Forms 860 received from submitting elements.

PART III

A.    <u>District Commanders</u>.

District commanders shall be responsible for:

1.    Ensuring that at least one district crime scene search officer is available on each tour of duty. If necessary, reserve crime scene search officers shall be utilized.

2.    Ensuring the assignment of one crime scene search officer in his/her district as coordinator.

3.    Coordinating the training of a sufficient number of members from each patrol section in the field testing of narcotics/drugs, with the NSID, ensuring the expedient field testing and processing of narcotics/drugs recovered by members of his/her command.

4.    Ensuring that station clerks are provided with a list of the names of all district crime scene search officers, to include all reserve crime scene search officers.

Go to Page 15

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | February 24, 1991 | 1 | 15 of 16 |

     5.    Ensuring that crime patterns are studied in their respective districts in order to determine modus operandi, to develop suspects, and to submit requests for latent print comparisons.

     6.    Maintaining or causing to be maintained, a Crime Scene Search File consisting of the PD Forms 668 which are returned to the organizational element by the crime scene examination section.

     7.    Ensuring that all PD Forms 860 (Request for Latent Fingerprint Examination) are reviewed:

         a.    Checking the Crime Scene Search File for the corresponding PD Form 668, to ensure that there are identifiable prints, prior to submission of the PD Form 860; and

         b.    Ensuring that duplicate requests are not made.

     8.    Ensuring that his/her district has a vehicle designated as a crime scene search vehicle.

     9.    Ensuring that all members under their command account for all persons who handled or stored evidence, through the proper collection and marking of the evidence for future identification.

    B.    <u>Director, Training Division</u>.

    The Director, Training Division shall be responsible for:

     1.    Ensuring that Training Division personnel coordinate their training and re-training classes with a member of the crime scene examination section and the NSID, so that a sufficient number of officers in each district qualify; and

     2.    Reviewing the proposed training schedules and subject matter to be covered with the official(s) and/or training officers of the crime scene examination section and the NSID, ensuring that schedules and related subject matter comply with the goals and policies of the department.

    C.    <u>Director, Criminal Investigations Division</u>.

    The Director, Criminal Investigations Division, Investigative Services Bureau, shall be responsible for:

     1.    Ensuring that the certification, and annual re-certification programs are conducted and coordinated with the Training Division,

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order No. 304.8 | February 24, 1991 | 1 | 16 of 16 |

2.    Ensuring that each district crime scene search officer and reserve crime scene search officer is issued a physical evidence kit for use in conducting crime scene searches, and the identification of narcotics and other dangerous drugs;

3.    Ensuring the proper control and inspection of issued supplies and equipment;

4.    Ensuring that all completed PD Forms 307 and 668 are logged in the Crime Scene Examination Section control book, and forwarded to the Fingerprint Examination Section, Identification and Records Division; and

5.    Ensuring that the Narcotics and Special Investigations Division's Field Test Training Program is coordinated with the Training Division, the crime scene examination section, and the commanding officers, Patrol Operations Bureau, respectively.

Isaac Fulwood, Jr.
Chief of Police

IF:DAJ:daj