| Publication | Effective Date | | Page Number |
|---|---|---|---|
| Attachment A<br>General Order No. 701.1 | July 25, 1991 | 1 | 1 of 2 |

## TIMES REQUIRED TO BE PRESENT IN COURT

Listed below are the scheduled reporting times for members when responding to the various courts and hearings. Members are reminded that they must be checked in by the scheduled reporting time and that compensation will stop at 1800 hours unless otherwise authorized by a CLD official.

After checking in, members shall respond immediately to the appropriate required location.

### U.S. District Court

**Magistrate Hearing**--------------------------------------------------------------------------------------**0900 hours**

**Grand Jury and**
**Witness Conferences**--------------------------------------------------------------------------**0900 hours**
    (Times earlier than 0900 hours or later than 1800 hours must be approved by a CLD official.)

**Lock-up Cases**-----------------------------------------------------------------------------------**0900 hours**

**All Trials**------------------------------------------------------------------------------------------**0900 hours**
**(Unless altered by CANS notice or subpoena)**

### Superior Court

All Adult Trials (U.S. Attorney/Corporation Counsel, Jury/Non Jury)----------0845 hours
(Unless altered by CANS notice or subpoena)

**All Juvenile Trials**----------------------------------------------------------------------0800 hours

**Adult Lock-up Cases** -----------------------------------------------------------------0800 hours
(Except members working 1500 to 2300, 1600 to 2400, or other non-conventional tours ending after 2200 hours, who shall report between 0800 and 0930 hours)

Adult Lock-up Cases on Saturdays and Holidays --------------------------0800 hours
(Members shall report at 0800 hours regardless of their tour of duty)

Bond Cases -------------------------------------------------------------------------0800 hours

**Juvenile Lock-up Cases**----------------------------------------------------------0800 hours

**Juvenile Release Cases/Obtaining Custody Orders**............................................Various
(According to the citation release schedule below)

| plication<br>Attachment A<br>General Order No. 701.1 | Effective date<br>July 25, 1991 | Change Number<br>1 | Page Number<br>2 of 2 |
|---|---|---|---|

**Preliminary Hearings**-------------------------------------------------------------0800 hours

**Grand Jury and Witness Conferences**----------------------------------------0900 hours
    (Times earlier than 0900 hours or later than 1800 hours must be approved by a
    CLD official.)

**Status Hearings**-------------------------------------------------------------------Various
(Members shall not appear unless summoned by CANS notice or subpoena)

**Sentencing**------------------------------------------------------------------------Various
(Members shall not appear unless summoned by CANS notice or subpoena)

**Probation Revocation Hearings**---------------------------------------------Various
(Determined by CANS notice or subpoena)

Motions Hearings:

    Misdemeanor-------------------------------------------------------------Various
    (Usually held on day of trial)

    Felony-----------------------------------------------------------------------Various
    (Usually on day of trial, unless indicated otherwise by CANS notice and/or
    subpoena)

**BMVS Hearings**-------------------------------------------------------------------Various
(Determined by CANS notice)

**BTA**-------------------------------------------------------------------------------Various
(Determined by computer print out)

Papering Citation Release Cases/Collateral Cases (to be papered two or three days prior
to the defendant's court date, but not on a member's day off).

| ARRESTING OFFICER'S<br>TOUR OF DUTY | DAY FOR<br>PAPERING | REPORTING TIME<br>FOR PAPERING |
|---|---|---|
| 0700-1500 hours | Monday-Friday | 1230 to 1330 hours |
| 0800-1600 hours | Monday-Friday | 1330 to 1430 hours |
| 1500-2300 hours | Monday-Friday | 1430 to 1530 hours |
| 1600-2400 hours | Monday-Friday | 1530 to 1630 hours |
| PERMANENT | | |
| 2300-0700 hours | Monday-Friday | 0800 hours |
| 2400-0800 hours | Monday-Friday | 0900 hours |

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment B<br>General Order No. 701.1 | July 25, 1991 | 1 | 2 of 2 |

14. Testifying before a grand jury for the purpose of obtaining a grand jury directive for rulings concerning telephone records, lineup orders, handwriting samples, or subpoenas for hostile witnesses.

15. Pre-arrest consultation and/or hearings with prosecutors.

16. Obtaining or returning arrest warrants or custody orders.

17. Obtaining or returning search warrants.

18. A grand jury original investigation.

    a. Prior approval is not needed for a grand jury original investigation if the member has been served with a CANS notification, unless the court date is scheduled on a member's day-off.

    b. If a grand jury original has been scheduled on a member's day-off, he/she shall immediately bring the situation to the attention of an official of his/her element who shall attempt to have the appearance rescheduled to a member's duty day.

    c. When checking into court, the member shall note the name of his/her official who approved the appearance during an off duty time in the "Remarks" section of his/her PD Form 140.

19. Any grand jury appearance in which no testimony is presented before a grand jury panel, and which is used for the purpose of contacting witnesses for information and/or additional investigative work on a case.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment C<br>General Order No. 701.1 | July 25, 1991 | 1 | 2 of 6 |

15. PD Form(s) 313 (Arrestees Injury or Illness Report and Request for Examination and Treatment);

16. PD Form(s) 81 (Property Record);

17. PD Form(s) 106 (Lookout Information);

18. PD Form(s) 42 (Sick or Injury Report);

19. PD Form(s) 43 (Report of Damage to or Loss of District Government Property);

20. UN Form(s) 85-A (Narcotic Buy Card);

21. UN Form(s) 298-A (Undercover Officer's Report);

22. Notes taken by members involved in the case;

23. Information relative to complainants, witnesses, and victims (e.g., Names, addresses, telephone numbers, etc.); and

24. Communications information related to the receipt and dispatch of the assignment.

B. **Witness and Special Requirements for Papering Cases.**

listed below are the witness and special requirements for papering cases that are commonly prepared for court presentation. Listed **witnesses must be** present at papering, unless there is a justified reason for their absence.

1. Arson:

   a. Primary investigating member,

   b. Fire Marshal, and

   c. Investigative report (copies only).

2. Assault (ADW, AWIK, Mayhem, etc.):

   a. Arresting member, and

   b. Victim (unless hospitalized).

| Publication | Effective | Change Number | Page Number |
|---|---|---|---|
| Attachment C<br>General Order No. 701.1 | July 25, 1991 | 1 | 3 of 6 |

3. Assault on a Police Officer:

(See General Order No. 701.3 for specific instructions).

4. Assault and Threats to do Bodily Harm:

   a. Arresting member (if warrant arrest, member who obtained warrant), and

   b. Victim (unless hospitalized).

5. Bribery, Blackmail, Extortion:

   Primary investigating member.

6. Burglary:

   Primary investigating member.

7. Cruelty to Animals:

   a. Arresting member,

   b. Humane Society official, and

   c. Investigative report (copies only).

8. Cruelty to Children:

   a. Arresting member,

   b. Defendant's spouse,

   c. Identity of physician who examined child, and

   d. Information relating to Youth Division involvement and previous court status of the case.

9. Destruction of Property:

   Arresting member.

| Publication<br>Attachment C<br>General Order No. 701.1 | Effective<br>July 25, 1991 | 1 | Page Number<br>4 of 6 |
|---|---|---|---|

**10.** Drug Offenses:

    a.    Arresting or primary investigating member,

    b.    Related documents (also see General Order No. 702.31, and

    c.    Information pertinent to vehicle occupants, if applicable.

**11.** Embezzlement:

    Primary investigating member.

**12.** Escapes and Prison Breach:

    No member required.

**13.** False pretenses, forgery/uttering, bad checks:

    a.    Primary investigating member, and

    b.    Questioned document.

**14.** Gambling:

    Primary investigating member.

**15.** Homicide:

    a.    Primary investigating member, and

    b.    Homicide case history fils (copies only).

**16.** Kidnapping:

    If a sex related case, same as item 19. All others same as item 20.

**17.** Obstructing Justice:

    primary investigating member

**18.** Pandering and Procuring:

    Primary investigating member.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment C<br>General Order No. 701.1 | July 25, 1991 | 1 | 5  of  6 |

19.  Rape, Sodomy, Carnal Knowledge, Indecent Liberties:

  a.  Primary investigating member,

  b.  Case history file (copies only), and

  c.  Information related to past offenses and current suspected offense: committed by the defendant.

20.  Robbery:

  a.  Primary investigating member, and

  b.  Case history file (copies only).

21.  Shoplifting:

  a.  Arresting member, or

  b.  Store security officer, if special police officer.

22.  Soliciting for Prostitution or Lewd and Immoral Purposes:

  Primary investigating member.

23.  Theft, Receiving Stolen Progeny, and Tampering:

  Arresting member.

24.  Unauthorized Use of a Vehicle:

  a.  Arresting member,

  b.  Owner of vehicle, if acquainted with defendant, and

  c.  Information related to rental vehicles, if applicable.

25.  Unlawful Entry:

  Arresting member.

26.  Warrant Cases:

  Member obtaining warrant.

| Publication | | Effective Date | Change Number | Page Number |
|---|---|---|---|---|
| Attachment C General Order No. 701.1 | | July 25, 1991 | 1 | 1 of |

## U.S. ATTORNEY'S OFFICE
## GRAND JURY INTAKE SECTION
### GUIDELINES FOR PAPERING AND PREPARATION OF CRIMINAL CASES IN SUPERIOR COURT

The U.S. Attorney's Office, Grand Jury Intake Section, has announced the following guidelines for papering and preparing criminal cases in Superior Court.

A. **Document Requirements for Papering Cases.**

Members shall present the following documents and other evidence at the time cases are presented for papering:

1. PD Form(s) 163 (Prosecution Report);

2. PD Form(s) 251 (Event Report);

3. PD Form(s) 252 (Supplemental Report);

4. PD Form(s) 255 (Arrest Report);

5. Investigative Reports (e.g., PD Forms 123, 854, etc.);

6. PD Form(s) 47 (Rights Card);

7. PD Form(s) 118 and 119 (Defendant and Witness Statements);

8. Copies of arrest warrant and affidavit;

9. Copies of search warrant, affidavit, and return slip;

10. Photo array materials and related reports;

11. Crime Scene Examination Reports;

12. PD Form(s) 32 (Certificate of Record/No Record of Firearm Reg.);

13. PD Form(s) 36 (Certificate of No Record of a License to Carry a Pistol);

14. PD Form(s) 799 (Citation to Appear);

| General Order No. 701.1 | July 25, 1991 | Number 1 | Page 23 of 26 |

2.    Ensure that members under their supervision schedule court-related administrative and investigative activities during their on-duty time, or for a time during a scheduled work day, if an on-duty time is

3.    When approving requests from members to respond to court to handle administrative or investigative activities, and be compensated on their off-duty time, initial the members' SF 1130 in the "remarks" column prior to their responding to court;

4.    Prior to authorizing leave, check on a member's court commitments:

5.    Not approve leave which conflicts with a pending court date, unless the member can demonstrate that he/she has resolved the conflict with the prosecuting attorney; and

6.    When issuing court parking permits, enter their initials in the court Parking Permit Logbook, and indicate the date the permit is to be returned.

**B.    Administrative Lieutenants.**

Administrative lieutenants shall be responsible for:

1.    Ensuring that the BTA print-out list is posted in the roll call room on a timely basis, and that the current duty status is noted next to each member's name on the element's daily list;

2.    Maintaining the current roster of names' addresses, and telephone numbers of members assigned to their element, and providing the list to CLD semi-annually;

3.    Contacting the elements of those individuals who are former members, yet whose names appear on the BTA printout;

4.    Keeping CLD informed of any changes of court notification personnel; and

5.    Upon receipt of monies paid in witness fees to members, advising those members to consult General Order No. 206.1 (Time and Attendance) for compensation, and ensuring that:

a.    A PD Form 196A (Payer's Receipt) is Completed, which includes but is not limited to, the information listed below:

(1)    The member's name;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Attachment B**<br>**General Order No. 701.1** | July 25, 1991 | 1 | 1 of 2 |

### ADMINISTRATIVE AND INVESTIGATIVE
### COURT-RELATED FUNCTIONS

The following is a partial list of administrative and investigative court-related **functions** which do not, in themselves, constitute court appearances within the legislative intent of Public Law 89-282.

If circumstances arise which cause doubt as to how an appearance should be classified, members shall confer with an official of the court Liaison Division before completing a PD Form 140.

1.  Service of subpoenas.

2.  Transporting witnesses to or from court.

3.  Preparing case jackets for prosecutors (excluding the initial papering procedure)

4.  Contacting witnesses for informational or investigative purposes.

5.  Picking up and delivering photos or other (evidentiary) materials to the prosecutor's office.

6.  The performance of additional investigative work on a case at the request of the prosecutor.

7.  Obtaining a handwriting or voice exemplars from suspect/defendant.

8.  Transcribing tapes or comparing tapes to a voice exemplar.

9.  Having a weapon (evidence) test fired.

10. Obtaining a property release from the prosecutor.

11. Obtaining blood orders.

12. Transporting/accompanying the prosecutor to a crime scene for pre-trial purposes.

13. Obtaining booking orders or processing a prisoner at CCB as a result of a booking order by the court.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Attachment C**<br>**General Order No. 701.1** | **July 25, 1991** | **1** | **6  of 6** |

27.   Weapons cases (CDW, PPW, etc.):

    a.    Arresting/seizing member, and

    b.    Information related to vehicle, if applicable.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment D<br>General Order No. 701.1 | July 25, 1991 | 1 | 1 of 7 |

OFFICE OF THE CORPORATION COUNSEL
JUVENILE SECTION
GUIDELINES FOR PAPERING AND PREPARATION OF
JUVENILE CASES IN SUPERIOR COURT

The Office of the Corporation Counsel, Juvenile Section, has announced the following guidelines for papering and preparing criminal cases in Superior Court.

A.  **Document Requirements for Papering Cases.**

Members shall present the following documents and other evidence at the time cases are presented for papering:

1.  **PD Form(s)** 379 or 163 (Prosecution Report),

2.  **PD Form(s)** 251 (Event Report),

3.  **PD Form(s)** 252 (Supplemental Report),

4.  **PD Form(s)** 255 (Arrest Report),

5.  Investigative Reports (e.g., **PD** Forms 123, 854, etc.),

6.  **PD Form(s)** 47 (Rights Card),

7.  **PD Form(s)** 118 and 119 (Defendant and Witness Statements),

8.  Copies of arrest warrant and affidavit,

9.  Copies of search warrant, affidavit, and return slip,

10. Photo array materials and related reports,

11. Crime Scene Examination Reports,

12. **PD Form(s)** 32 (Certificate of Record/No Record of Firearm Reg.),

13. **PD Form(s)** 36 (Certificate of No Record of a License to Carry a Pistol),

14. **PD Form(s)** 799 (Citation to Appear),

15. **PD Form(s)** 313 (Arrestees Injury or Illness Report and Request for Examination and Treatment),

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment D | | | |
| General Order No. 701.1 | July 25, 1991 | 1 | 2 of 7 |

16. PD Form(s) 81 (Property Record),

17. PD Form(s) 106 (Look-out Information),

18. PD Form(s) 42 (Sick or Injury Report),

19. PD Form(s) 43 (Report of Damage to or Loss o District Government Property),

20. UN Form(s) 85-A (Narcotic Buy Card),

21. UN Form(s) 298-A (Undercover Officer's Report),

22. Notes taken by members involved in the case,

23. Information relative to complainants, witnesses, and victims (e.g., Names, addresses, telephone numbers, etc.), and

24. Information related to the receipt and dispatch of the assignment.

**B.    Witness and Special Requirements for Papering Cases.**

Listed below are the witness and special requirements for papering cases that are commonly prepared for court presentation. Listed witnesses must bo present at papering, unless there is a justified reason for their absence.

1. Arson:

   a. Primary investigating member,

   b. Fire Marshal

   c. Investigative report (copies only),

   d. Lay witnesses, and

   e. Owner or agent of premises should be known by name.

2. Assault (ADW, AWIK, Mayhem, etc.):

   a. Arresting member,

   b. Victim (unless hospitalized), and

e .

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment D<br>General Order No. 701.1 | July 25, 1991 | 1 | 3 of 7 |

     'c.    Lay witnesses.

3.    Assault an a Police Officer:

    (See General Order No. 701.3 for specific instructions).

4.    Assault and Threats to do Bodily Harm:.

    a.    Arresting member (if custody order, arresting member who obtained warrant),

    b.    Victim (unless hospitalized), and

    c.    Lay witnesses.

5.    Bribery, Blackmail, Extortion:

    a.    Primary investigating member, and

    b.    Victim.

6.    Burglary:

    a.    Primary investigating member,

    b.    Owner, occupant or agent of premises, and

    c.    Lay witnesses,

7.    Cruelty to Animals:

    a.    Arresting member

    b.    Humane Society official

    c.    Investigative report (copies only), and

    d.    Lay witnesses.

8.    Cruelty to Children:

    a.    Arresting member,

    b.    Defendant's spouse,

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Attachment D**<br>General Order No. 701.1 | July 25, 1991 | 4 | 4 of 7 |

      c.    Identity of physician who examined child,

      d.    Information relating to Youth Division involvement and previous court status of the case, and

      e.    Lay witnesses.

9.    Destruction of Property:

      a.    Arresting member,

      b.    Owner of property, and

      c.    Lay witnesses.

10.    Drug Offenses:

      a.    Arresting or primary investigating member,

      b.    Related documents (also see General Order No. 702.31, and

      c.    Information pertinent to vehicle occupants, if applicable.

11.    Embezzlement:

      a.    Primary investigating member, and

      b.    Lay witnesses.

12.    False Pretenses, Forgery/Uttering, Bad Checks:

      a.    Primary investigating member,

      b.    Questioned document,

      c.    Victim, and

      d.    Lay witnesses.

13.    Gambling:

      Primary investigating member.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Attachment D** | | | |
| General Order No. 701.1 | July 25, 1991 | 1 | 5 of 7 |

14. Homicide:

    a. Primary investigating member, **and**

    b. Homicide case history file **(copies only)**.

15. Kidnapping:

    If a sex related case, same as item 17. All others, same as item 18.

16. Pandering and Procuring:

    a. Primary investigating officer, and

    b. Lay witnesses.

17. Rape, Sodomy, Carnal Knowledge, Indecent Liberties:

    a. Primary investigating member,

    b. Case history file (copies only),

    c. Information related to past offenses and current suspected offenses committed by the respondent,

    d. Victim **(when physically able) and** parent if victim is a juvenile,

    e. If victim is very young, the complaining parent, and

    f. Lay witnesses.

18. Robbery:

    a. Primary investigating member,

    b. Case history file (copies only),

    c. Complaining witness, and

    d. Lay witnesses.

| Publication<br>Attachment D<br>General Order No. 701.1 | Effective Date<br>July 25, 1991 | Change Number<br>1 | Page Number<br>6 of 7 |
| --- | --- | --- | --- |

19.  Shoplifting:

   a. . Arresting member or store security officer, if special police officer, and

   b. Complaining witness or lay witnesses

20.  Soliciting for Prostitution or Lewd and Immoral Purposes:

   Primary investigating member.

21.  Theft, Receiving Stolen Property, and Tampering:

   a. Primary investigating member,

   b. Owner or possessor of property, and

   c. Lay witnesses.

22.  Unauthorized Use of Motor Vehicle:

   a. Arresting member

   b. Lay witnesses who place defendant in vehicle,

   c. All passengers if not charged.

   d. Owner of vehicle if acquainted with respondent, and

   e. Information related to rental vehicles, if applicable.

23.  Unlawful Entry:

   a. Arresting member

   b. Owner of premises or their representative, and

   c. School representative who warned respondent, if school case.

24.  Weapons cases (CPW, PPW, etc):

   a. Primary investigating member,

   b. Seizing officer, and

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Attachment D**<br>**General Order No. 701.1** | July 25, 1991 | 1 | 7 of 7 |

        c.    If the weapon is recovered from a vehicle, all passengers not charged and the owner, if other than one of those present in the vehicle.

    **25.**    Arrest Following Issuance of Custody Order for New Offenses:

        a.    Member obtaining custody order, and

        b.    Arresting member (only if respondent is detained).

**C.**    <u>Juvenile Custody Orders.</u>

Members who are presenting juvenile custody order requests shall:

    **1.**    At the time they apply for the custody order, ensure the presence of all necessary witnesses applicable to the case requirements noted in Section **B** above;

    **2.**    Not instruct witnesses to appear in cases where prosecution is not feasible; and

    **3.**    Not be required to bring the necessary witnesses in late hour custody order requests.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **Attachment E** **General Order No. 701.1** | July 25, 1991 | 1 | 1 *of* 2 |

## LOG INFORMATION INSTRUCTIONS

**A.    Issuance.**

1.    "Permit Number."

The number of the permit assigned.

2.    "Member Assigned"

Name of member receiving the permit.

3.    "Section"

Section member is assigned.

4.    "Member's Signature"

Signature of member receiving permit.

5.    "Date/Time Issued"

Date and time permit was issued to member.

6.    "Type of Documentation"

Member shall provide documentation of the necessity to attend cou to g., a CANS notice, subpoena, proof of arrest, on-going investiga- tion, etc. (logged by issuing official).

7.    "Issuing Official's Signature"

Signature of official issuing permit to member.

0.    "Date/Time to be Returned"

a.    The date and time permit is to be returned by the member.

b.    An extension of time must have prior approval by an official.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment E<br>General Order No. 701.1 | July 25, 1991 | 1 | 2 of 2 |

    **c.** If an extension is granted, the original issue shall be completed in the Return/Remarks column and the permit reissued to the member with a new return date/time (Logged by the issuing official).

**B.** **Return Information.**

"Date/Time Returned"

Date and time permit was returned by the member.

**C.** **Remarks.**

    **1.** "Date/Time of Remarks"

    If permit is lost, stolen or destroyed, the date, time, and complaint number (where applicable) shall be logged.

    **2.** "Signature (Received By)"

    Signature of official receiving returned permit or information of a lost, stolen, or destroyed permit.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| Attachment F<br>General Order No. 701.1 | July 25, 1991 | 1 | 1 of 1 |

## CITIZENS COMPLAINT CENTER

## HOURS OF OPERATION

### U.S. Attorney's Office

The U.S. Attorney's Office handles those cases involving conflicts where there is a potential for criminal action. Hearings are held to determine the merits of the case during the times listed below:

Case Review.......................................... .0900-1600 hour

Hearings.................................................. 1100-1600 hour

Evening Hearings ................................. .1800-2200 hour

### Corporation Counsel's Office

The Corporation Counsel's Office handles those cases where a Temporary Protection Order (TPO) or Civil Protection Order (CPO) may be warranted:

Hours of Operation............................................0900-1630 hour

| 1. REQUEST FOR | 2. TYPE | 3. COMPLAINT NUMBER | 4. DATE OF REQUEST |
|---|---|---|---|
| ☐ LOCAL LOOKOUT | ☒ ORIGINAL | | May 6, 1997 |
| ☐ INTERSTATE TT | ☐ EXPEDITE | | 7. REQUESTING ELEMENT |
| ADMINISTRATIVE TT | ☐ ADDITIONAL | 5. COURT LIAISON | COURT LIAISON |
| ☐ DETAIL (See Reverse) | ☐ CANCEL | DIVISION (CLD) | |
| ☐ | ☐ CORRECTION | | |
| ☐ | ☐ REPEAT | | |
| ☐ | ☐ REPLY | ☒ NOT FOR THE PRESS | ☐ FLASH TT REQUESTED |

**TO THE FORCE: READ AT ALL ROLL CALLS**                       101.1

| NAME OF WANTED PERSON | 11. WANTED BY | 12. CHARGE |
|---|---|---|
| | | |

| 13. COMPLAINANT'S NAME | 14. COMPLAINANT'S ADDRESS |
|---|---|
| | |

15. DESCRIPTION OF WANTED PERSON OR MESSAGE

PAGE I

The Chief Judge D.C. Superior Court, United States Attorney's Office, and the Corporation Counsel's Office have recently brought to the attention of the Chief of Police a significant increase in the number of officers failing to appear for court, or who report late for various trials, grand jury hearings and witness conferences. This is causing an adverse impact on the Department's ability to accomplish its mission.

The following policies are therefore being reiterated as it relates to court and court appearances. All members should be fully aware of the following directives as contained in General Orders 701.1, 701.6, Special Order 96-6 and all other applicable General Orders, Special Orders, and eletype messages.

An appearance in court is a duty assignment and members shall remain at such duty assignment until appropriately relieved of duty.

CANS notices are issued under the authority of the Chief of Police, and are therefore direct orders from the Chief of Police. Moreover, members who fail to honor a CANS notification are subject to contempt proceedings before the court. A CANS notice like a subpoena, cannot be refused or ignored.

Members shall report in sufficient time to complete a P. D. Form 140 (Court Attendance Record) and be checked in by the scheduled appearance time.

Prosecutors cannot relieve members from an appearance in response to a CANS, without sending a "do not appear notice" through the Court Liaison. Members who are informed or learn they are not needed must notify an official of the Court Liaison Division.

| UNDER BADGE-ORG-ELM | AUTHORIZED BY BADGE-ORG-ELM | BUREAU HEAD'S APPROVAL |
|---|---|---|
| LIEUTENANT J. GENIES | INSPECTOR J. ADAMANY | ASST. CHIEF SONYA T. PROCTO |

COMMUNICATIONS DIVISION USE ONLY

| MARKS | |
|---|---|
| | DATE AND TIME |
| | FILE |
| | TELETYPE NUMBER |
| | TELETYPE NUMBER |
| | TT05-127-97 |

on:    1- Communications Division    2- Element File Copy

G.O. 701.1

: Wed Feb 26  9:57:52 EST 1997
**Subject:** OUTSIDE EMPLOYMENT
To: ~admin
Content-Length: 1756

TT 02-393-97                    TO THE FORCE
                        ///NOT FOR THE PRESS////
MEMBERS WHO ARE ENGAGED IN OUTSIDE EMPLOYMENT, ATTENTION IS DIRECTED TO
GENERAL ORDER 201.17, PART 1, E: REPORTING AND ARREST PROCEDURES.

WHEN MEMBERS ENGAGED IN POLICE-RELATED OUTSIDE EMPLOYMENT MAKE AN ARREST IN
THE COURSE OF OUTSIDE EMPLOYMENT...THEY SHALL CLEARLY PRINT THE WORDS
"OUTSIDE EMPLOYMENT" AT THE TOP OF THE P.D. 251., P.D. 163, P.D. 255 AND ALL
OTHER REQUIRED REPORTING FORMS.

MEMBERS SHALL BE RESPONSIBLE FOR ALL COURT APPEARANCES REQUIRED IN CONJUNCTION
WITH THE ARREST, AND SHALL BE RESPONSIBLE FOR COMPLYING WITH THE PROVISIONS
OF GENERAL ORDER 701.1.  WHEN CHECKING INTO COURT, MEMBERS SHALL REPORT TO
THE COURT LIAISON BRANCH AND PREPARE A P.D. 140(COURT ATTENDANCE FORM).  WHEN
COMPLETING THE BLOCK WHICH REFLECTS DUTY STATUS, THE MEMBER SHALL CHECK THE
BLOCK "OFF-DUTY", AND HAND PRINT "OUTSIDE EMPLOYMENT".  THE MEMBER SHALL
PRINT "OUTSIDE EMPLOYMENT" AT THE TOP OF THE P.D. 140.

MEMBERS SHALL NOT BE COMPENSATED BY THE DEPARTMENT FOR COURT APPEARANCES
IN CONJUNCTION WITH ARRESTS IN THE COURSE OF OUTSIDE EMPLOYMENT.
ERS MAY NOT APPEAR IN COURT OR OTHERWISE ENGAGE IN ACTIVITY IN
C. JUNCTION WITH SUCH ARRESTS WHILE IN AN ON-DUTY STATUS: ACCORDINGLY,
MEMBERS SHALL BE REQUIRED TO USE ANNUAL LEAVE OR COMPENSATORY TIME OFF(CTO)
FOR SUCH APPEARANCES AND/OR ACTIVITIES.

IF A MEMBER IS REQUIRED IN COURT PURSUANT TO AN ARREST MADE IN THE COURSE OF
OUTSIDE EMPLOYMENT, HE/SHE MUST BE GRANTED LEAVE TO ANSWER SUBPOENAS
SUMMONES OR TO COMPLY WITH NECESSARY PROVISIONS OF GENERAL ORDER 701.1.

/S/ LT. J. VILLINES, COURT LIAISON
AUTHORITY MAX KRUPO, HUMAN RESOURCES OFFICERS
MAGRUDER CD AT 1026 HRS                    FEBRUARY 26, 1597

# GENERAL ORDER



| | |
|---|---|
| **Title** Use of Force Review Board | |
| **Series / Number** GO – RAR – 901.09 | |
| **Effective Date** February 14, 2003 | **Distribution** B |
| **Related to** General Order RAR-901.07 (Use of Force) General Order RAR-901.08 (Use of Force Investigations) | |

## DISTRICT OF COLUMBIA

I. Background ........................ Page 1
II. Policy ............................... Page 1
III. Rules................................ Page 1
IV. Procedural Guidelines ........Page 2
V. Cross References ..............Page 5

## I.     BACKGROUND

The purpose of this directive is to establish the Use of Force Review Board, replacing the Use of Service Weapon Review Board previously covered under **GO-PER-201.07** (Review Boards). The Use of Force Review Board's jurisdiction has been focused to concentrate on the review of all serious use-of-force investigations. All non-serious use-of-force investigations shall be reviewed by chain-of-command officials and conclude at the Assistant Chief or equivalent level. Investigations shall then be forwarded to the Force Investigation Team, Office of Professional Responsibility for a quality-control review and for filing.

## II.     POLICY

The policy of the Metropolitan Police Department is to ensure that timely reviews are conducted of all investigations of use-of-force incidents involving members of the Department to determine the appropriateness of the findings.   Review of all use-of-force investigations that are investigated by FIT I and FIT II shall be conducted by the Use of Force Review Board, serving as a quality control mechanism for use-of-force investigations and providing command staff with an opportunity to quickly appraise use-of-force incidents from a training and agency-improvement perspective. (CALEA 1.3.7)

## III.     RULES

A.     The Use of Force Review Board is authorized to compel the appearance of members for questioning and to obtain Departmental documents necessary for the discharge of Board duties.

B.     The Use of Force Review Board is authorized to recommend corrective or adverse action and may also recommend non-disciplinary action.

C.    The Use of Force Review Board is also authorized to recommend commendations for members who have acted with distinction.

D.    The Office of Professional Responsibility shall have responsibility for the administration of the Use of Force Review Board.

E.    The Use of Force Review Board shall review all use of force investigations conducted by the Force Investigation Team.

F.    Review of all other investigations shall be conducted by the chain of command and conclude at the Assistant Chief or equivalent level.  Policy violations shall be forwarded to the Department Disciplinary Review Office (DDRO) for action.

G.    The Force Investigation Team shall provide a quality control review of all use-of-force incidents investigated by the chain of command after the investigations are reviewed by the appropriate Assistant Chief or equivalent, and FIT is authorized to identify and forward appropriate incidents to the Use of Force Review Board for review.


IV.    PROCEDURAL GUIDELINES (CALEA 1.3.7)

A.    Organization of the Use of Force Review Board

Membership of the board shall consist of three permanent and two rotating members:

a.    Chair: Commanding Officer, Special Operations Division;

b.    Vice Chair: Commanding Officer, Office of the Superintendent of Detectives;

c.    One (1) management-level official, from the Maurice T. Turner Institute of Police Science; and

d.    Two (2) rotating members, the rank of Commander or above, to be selected by the Assistant Chief, Office of Professional Responsibility.

B.    Operation of the Board

1.    Absent special circumstances, the Board shall meet monthly to review use-of-force incidents.

2.    The UFRB shall complete, to the extent practicable, its review of each incident within 90 working days of receipt of the final investigative report.

**USE OF FORCE REVIEW BOARD (GO – RAR–901.09)**

    3. The Assistant Chief, Office of Professional Responsibility, shall schedule the rotating members of the Use of Force Review Board on a quarterly basis.

    4. A representative of the Office of Professional Responsibility shall serve as the Use of Force Review Board Administrator.

**C.**    **Review Process**

    1. The Use of Force Review Board shall review use-of-force incidents with respect to the following areas of concern:

        a. Comportment with Department policies and standards.

        b. Determination of whether proper tactics were employed.

        c. Assessment of Department training.

        d. Whether lesser-force alternatives were reasonable.

        e. Risk management.

    2. The Use of Force Review Board shall:

        a. Conduct hearings as determined necessary by the Board.

        b. Recommend to the Chief of Police investigative protocols and standards for all force investigations.

    3. The UFRB, assisted by the Office of Professional Responsibility, shall conduct annual reviews of all use-of-force cases to detect any patterns or problems and to issue a report to the Chief of Police with findings and recommendations. (CALEA 1.3.13)

**D.**    **Review Board Findings and Recommendations**

    1. After evaluating each case, the Board shall reach a conclusion with findings and recommendations. The Review Board recommendation shall serve to either affirm or reject the investigative recommendation.

    2. The Use of Force Review Board shall assess the findings of the incident investigation as defined below and in GO-RAR-901.08 (Use of Force Investigations)

        e. **Justified, Within Departmental Policy** – this classification reflects a finding in which a police use of force is determined to be justified, and during the course of the incident the subject officer did not violate Department policy.



Justified, Policy Violation - this classification reflects a finding in which a police use of force is determined to be justified, but during the course of the incident the subject officer violated a Department policy.

Justified, Tactical Improvement Opportunity - this classification reflects a finding in which a police use of force is determined to be justified, and during the course of the incident no Departmental violations occurred. However, the investigation revealed tactical errors that could be addressed through nondisciplinary and tactical improvement endeavors.

Not Justified, Not Within Departmental Policy - this classification reflects a finding in which a police use of force is determined to be not justified, and during the course of the incident the subject officer violated a Department policy.

3.    When the Board determines that an investigation is incomplete or has been mishandled, the Board may assign the case to the Force Investigation Team or return the case to the investigating unit for appropriate action.

4.    Any case returned to the Force Investigation Team or an investigating unit for completing or correcting an investigation shall be returned to UFRB within 30 days for a final evaluation by the Board.

5.    Dissenting or non-concurring members of a Board finding or recommendation may submit a minority report.

E.    Referral of Findings and Recommendations

1.    When the Board determines there has been an act that merits distinction, the Board shall forward appropriate commendation recommendations to the Element Commander/Director or to the Chair, Awards Committee.

2.    When the Board determines that a violation of Department regulations has occurred that warrants adverse action, the Board shall forward appropriate recommendations to the Department Disciplinary Review Officer (DDRO).

3.    When the Board determines that a violation of Department policy has occurred that warrants corrective action, the Board shall forward the appropriate findings to the DDRO who shall notify the appropriate Element Commander or Director.

4.    When appropriate, the Chair, UFRB, shall submit training recommendations for specific members, as well as the entire Department, to the Assistant Chief of the Maurice T. Turner Institute of Police Science.

1

**USE OF FORCE REVIEW BOARD (GO – RAR-901.09)**

F. **Office of Professional Responsibility**

1. The Assistant Chief, Office of Professional Responsibility, shall designate a member to serve as the Use of Force Review Board Administrator. The Administrator shall be a non-voting member of the Board.

2. The Use of Force Review Board Administrator shall:

   a. Notify members of the Board as to the date, time, and location of the Board meetings;

   b. Provide all pertinent reports, records, and samples to be considered, as well as necessary administrative assistance;

   c. Ensure that relevant and appropriate historical information about subject officers is available for consideration by the Board in connection with determinations of appropriate discipline;

   d. Prepare a summary of the Board's conclusions outlining findings and recommendations;

   e. Notify subject members of the Board's decisions; and

   f. Maintain complete records of the Board's actions.

3. The Office of Professional Responsibility shall ensure that statistical information concerning all use-of-force cases is maintained in a database and is available to the Use of Force Review Board.

V. **CROSSREFERENCES**

A. Related Directives

1. GO-RAR-901.01 (Handling of Service Weapons)
2. GO-RAR-901.07 (Use of Force)
3. GO-RAR-901.08 (Use of Force Investigations)
4. GO-PER-120.21 (Disciplinary Process)
5. GO-PER-120.23 (Serious Misconduct Investigations)
6. GO-PER-120.25 (Processing Citizen Complaints)
7. GO-PER-120.26 (Chain-of-Command Misconduct Investigations)

**B.**     Superseded Directive

All references in General Order 201.07 (Review Boards) that pertain to the
functions and responsibilities of the Use of Service Weapons Review Board
are hereby rescinded and superseded by the provisions of this general order.


Charles H. Ramsey
Chief of Police

CHR:NMJ:JAE:MAR:AFA:afa

# GENERAL ORDER



| | |
|---|---|
| **Title** | |
| **Use of Force Investigations** | |
| **Series / Number** | |
| **GO - RAR - 901.08** | |
| **Effective Date** | **Distribution** |
| **October 7, 2002** | **B** |

**Related to**
**General Order RAR-901.07**
     (Use of Force)
**General Order RAR-901.09**
     (Use of Force Review Board)

## DISTRICT OF COLUMBIA

I. Background...................... Page 1     IV. Regulations. ....................Page 3
II. Policy .............................. Page 1     V. Procedural Guidelines ........Page 4
III. Definitions...................... Page 2     VI. Cross References............... Page 15

## I.   BACKGROUND

Accurate and timely reporting of use-of-force incidents is essential for Department monitoring and training. Fair and accurate follow-up investigations, especially in use of force situations involving firearms or serious bodily injury or death, allow the Department and community to learn of the integrity and appropriateness of such decisions. It enables the Department to make decisions regarding the incident and to provide further necessary guidance to members on appropriate levels of use of force.

## II.   POLICY

The Metropolitan Police Department has established the following statements of policy guidance regarding the use of force:

A.   The policy of the Metropolitan Police Department is to value and preserve human life when using lawful authority to use force. Therefore, members of the Metropolitan Police Department shall use the minimum amount of force that the objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control, while protecting the lives of the member or others.

B.   The decision to use force of any level should be based on the danger posed by the subject, rather than the nature or category of the incident. That decision must be based on the circumstances that a reasonable member believes exist. (CALEA 1.3.1)

C.   A decision to use deadly force should be based on a member having probable cause to believe that the subject poses an imminent threat of serious physical harm, either to the member or to others. (**CALEA 1.3.2**)

## III.    DEFINITIONS

When used in this directive, the following terms shall have the meanings designated:

A.    **Deadly Force** – any use of force likely to cause death or serious physical injury, including but not limited to the use of a firearm or a strike **to the head** with a hard object.

B.    **Non-Deadly Force** – any use of force that is neither likely nor intended to cause death or serious physical injury.

C.    **Serious Use of Force** – lethal and less-than-lethal actions by **MPD** members including:

   1    All firearm discharges by an MPD member with the exception of range and training incidents and discharges at animals;

   2.    All uses of force by an MPD member resulting in a broken bone or an injury requiring hospitalization;

   3.    All head strikes with an impact weapon;

   4.    All uses of force by an MPD member resulting in a loss of consciousness, or that create a substantial risk of death, serious disfigurement, disability or impairment of the functioning of any body part or organ.

   5.    All other uses of force by an MPD member resulting in a death; and

   6.    All incidents where a person receives a bite from an MPD canine.

D.    **Use of Force** – any physical contact used to effect, influence or persuade an individual to comply with an order from an officer. The term shall not include un-resisted handcuffing or hand control procedures that do not result in injury.

E.    **Use of Force Indicating Potential Criminal Conduct by a Member** – includes, but is not limited to, all strikes, blows, kicks or other similar uses of force against a handcuffed subject and all accusations or complaints of excessive force made against the member.

F.    **Serious Physical Injury** – any injury that results in hospitalization and that creates a substantial risk of death, serious disfigurement, disability or protracted loss or impairment of the functioning of any body part or organ.

G.    **Less-Than-Lethal Weapons** – any object or device deployed with the intent or purpose of eliminating a threat without causing death.  These include, but

are not limited to a 37 mm gas gun containing a cloth bag filled with small lead shot pellets, rubber bullets, batons, OC Spray, A.S.P. (Armament System Procedures) tactical batons.

H.  Use of Force Continuum – a training model/philosophy that supports the progressive and reasonable escalation and de-escalation of member-applied force in proportional response to the actions and level of resistance offered by a subject. The level of response is based upon the situation encountered at the scene and the actions of the subject in response to the member's commands. Such response may progress from the member's actual physical presence at the scene to the application of deadly force.

I.  Objective Reasonableness – reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene in light of the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation.

J.  Duty Status – the relief of a member as an immediate interim step to preclude any further action concerning the incident by the involved member(s). *Note:* policing responsibilities as defined here is used only in the context of serious use of force incidents. (CALEA 1.3.8)

K.  Probable Cause – where known facts and circumstances, of a reasonably trustworthy nature, are sufficient to justify a man of reasonable caution or prudence in the belief that a certain person has committed, is committing, or is about to commit a criminal act. (CALEA 1.3.2)

## IV.  REGULATIONS

A.  The Force Investigation Team (FIT) shall be responsible for investigating all incidents involving Deadly Force, Serious Use of Force or the Use of Force Indicating Potential Criminal Conduct (see definitions).

B.  The Office of the Superintendent of Detectives shall be responsible for investigating the offense leading up to the use of force, where applicable.

C.  The member's Element Commander or Director shall be responsible for the investigation of all use of force incidents not involving Deadly Force, a Serious Use of Force or a Use of Force Indicating Potential Criminal Conduct. The Element Commander or Director may delegate responsibility for conducting the investigation to another official who must be of a higher rank than the involved member.

D.  The Use of Force Incident Report (PD Form 901-e) shall be completed by the involved officer in all of the following situations:

    1.  all Use of Force incidents (except Cooperative or Contact Controls, e.g., mere presence, verbal commands or submissive handcuffing,

            unless there has been a resulting injury or the subject complains of
            pain following the use of Cooperative or Contact Controls);

    2.     any time when an officer is in receipt of an allegation of excessive use
           of force; or

    3.     whenever a member draws and points a firearm at or in the direction
           of another person.

E.     Members shall notify their supervisor and complete a PD Form 901-e (Use of
       Force Incident Report) immediately following any use of force, receipt of an
       allegation of excessive force, or immediately following the drawing of and
       pointing a firearm at or in the direction of another person.

F.     When a member has declined to complete the Use of Force Incident Report
       immediately following an incident, the supervisor shall compel the member to
       complete the report following a declination by the U. S. Attorney's Office
       and/or issuance of an authorized Reverse-Garrity warning.

G.     The Department's Use of Force Review Board shall be responsible for
       reviewing all use-of-force incidents as required by GO RAR – 901.09 (Use of
       Force Review Board). (CALEA 1.3.7)

H.     When a subject has sustained visible injuries or expresses complaints of pain
       as a result of a member's use of force, the injured subject shall be provided
       immediate medical assistance for the treatment of those injuries.

I.     FIT shall prepare a transmittal document to the Mayor describing the
       circumstances of any accidental or performance-of-duty firearm discharge.

V.   **PROCEDURAL GUIDELINES**

    A.     Initial Response Duties at the Scene of a Use of Force

        1.     When a Metropolitan Police member becomes involved in a use-of-
            force incident that requires a Use of Force Incident Report, the initial
            responsibilities of the officer(s) shall be to ensure that the scene is
            safe, render first aid if applicable, secure the scene's integrity, and
            notify a supervisor.

        2.     When a subject is suffering from or complains of injuries, he or she
            shall be immediately taken to the Hospital for examination and
            treatment pursuant to GO PCA-502.07 (Medical Treatment and
            Hospitalization of Prisoners).

        3.     District Watch Commanders and/or appropriate element supervisors
            shall respond immediately to the scene of the use of force, and ensure
            that the Communications Division and the Synchronized Operations
            Command Center (SOCC) are notified.

      4.     If the use of force occurs outside the District of Columbia, members shall make notifications in accordance with Section V.-F. of this order and GO-RAR-901.01 (Handling of Service Weapons). An official from the involved member's organizational element shall also respond to the scene. In such cases, the appropriate law enforcement authority of the jurisdiction of occurrence will handle all criminal investigations. The Force Investigation Team shall only conduct a policy review in this circumstance.

**B.**    Notification and Reporting of a Use of Force Incident

    1.    Member Responsibilities

        a.    In all uses of force requiring a Use of Force Incident Report, the member shall immediately notify his/her supervisor of the use of force, intentional or unintentional, exercised by the member, any allegation of excessive force made against the member, or immediately following the drawing of and pointing a firearm at or in the direction of another person, and shall promptly complete the Use of Force Incident Report.

        b.    Members who observe the use of force by another member or who are the of a complaint regarding the use of force by another member shall notify their supervisor of any knowledge they have concerning the incident and shall cooperate with their supervisor and the Force Investigation Team as may be appropriate.

    2.    Supervisor Responsibilities

      When a member has declined to complete the Use of Force Incident Report immediately following an incident, the supervisor shall compel the member to complete the report following a declination by the U. S. Attorney's Office and the issuance of an authorized Reverse-Garrity warning.

**C.**    Investigation of Offense Leading Up to the Use of Force

    1.    The Office of the Superintendent of Detectives (OSD) shall immediately respond to begin their investigation and secure evidence, witnesses, and other information related to the crime that led up to the use of force. An OSD official shall designate a lead investigator for the crime that led up to the use of force.

    2.    The OSD is responsible for handling the arrest and processing of any individual charged as a result of the offense leading up to the use of force.

    3.    Members from the Forensic Science Services Division (Mobile Crime Lab) shall respond and be responsible for evidentiary crime scene processing.

USE OF FORCE INVESTIGATIONS (GO – PAR – 901.08)

       (3)    Forwarding all completed investigations, through the Assistant Chief of the Office of Professional Responsibility, to the Use of Force Review Board.

       (4)    Completing every aspect of the investigation of use of force incidents within 90 days of the date FIT receives a Letter of Declination from the USAO or the termination of the criminal prosecution of the member.

    f.    The Force Investigation Team shall reserve the right and have the authority to assume control of any force-related incidents. Their primary responsibility, however, shall be the investigation of uses of deadly force, serious use of force incidents and uses of force indicating potential criminal conduct.

4.    **Response to Incidents Not Involving Deadly Force, a Serious Use of Force, nor Indicating Potential Criminal Conduct**

Chain of command and/or division supervisors shall investigate all use-of-force incidents not investigated by the Force Investigation Team.  In such instances, the following procedures shall apply:

    a.    When a member reports any use of force or accusation of force, a supervisor (of higher rank than the reporting member) is required to respond to the scene.

    b.    No supervisor who was involved in the incident shall be responsible for the investigation of the incident.

    c.    The supervisor shall notify the Office of the Superintendent of Detectives through the Communications Division and the Synchronized Operations Command Center *(SOCC)* .

    d.    The supervisor shall respond to the scene of the incident and locate and interview witnesses and document their statements on a PD Form 119 (Complainant/Witness Statement).

    e.    When a member has discharged, which is not considered a serious use of force or any other force indicating potential criminal misconduct and an administrative investigation/policy review has commenced, the member shall complete forms and reports consistent with MPD policies.

    f.    The supervisor shall ensure that the following steps are taken:

       (1)    Locate, obtain and photograph any injuries to involved members.

       (2)    Locate, obtain and photograph any person on whom force was used.

     g.    The supervisor shall complete and submit a preliminary report to the Element Commander or Director within 24 hours.

     h.    The supervisor shall ensure that the Force Investigation Team is notified for tracking purposes.

     i.    The Final Investigative Report will be completed by the supervisor/manager as designated by the Element Director or Commander.

     j.    At the discretion of the Chief of Police or his designee, any incident that may be investigated by chain of command supervisors may be assigned to the Force Investigation Team.

**E.  Handling Use of Force Incidents Indicating Potential Criminal Conduct**

    1.    The United States Attorney's Office shall make the determination as to whether criminal wrongdoing is present in any use of force incident.

    2.    The Force Investigation Team shall consult with the United States Attorney's Office for the District of Columbia about incidents of Deadly Force, Serious Use of Force, Use of Force Indicating Potential Criminal Conduct, and in-custody deaths involving Metropolitan Police Department officers.

    3.    When evidence of criminal wrongdoing is determined as a result of a member being involved in a use-of-force incident, members from the Force Investigation Team shall coordinate prosecutorial needs between the U.S. Attorney's Office or other appropriate prosecuting entity and the affected organizational element and/or investigative unit, and shall serve as a liaison with other applicable local and federal law enforcement agencies.

    4.    In cases where the United States Attorney's Office has not issued a written declination, the subject officer shall not be compelled or ordered to make a statement.

    5.    The Force Investigation Team is responsible for handling all arrests of police officers in regards to a use of force.

F.    Processing Use of Force Incidents by MPD Members
      **Outside of the District of Columbia**

      When a member is involved in a use of deadly force *outside* of the District of
      Columbia, whether on or off duty:

      1.    The member shall immediately notify the Watch Commander of
            his/her element through the Communications Division and SOCC who
            shall notify the Force Investigation Team.

      2.    The Force Investigation Team shall respond immediately.

      3.    The appropriate law enforcement authority of the jurisdiction of
            occurrence will maintain primary responsibility for conducting a
            criminal investigation of the underlying matter.

      4.    The Force Investigation Team shall initiate a concurrent investigation,
            and shall work closely with the investigator/official from the originating
            police jurisdiction that is investigating the primary criminal offense. In
            cases where the United States Attorney's Office or the competent
            prosecutorial authority has not yet issued a written declination, FIT
            shall not compel or order a subject officer to make a statement.

G.    Processing In-Custody Deaths

      1.    When a Metropolitan Police Department officer becomes aware of a
            possible in-custody death, the initial responsibilities of member(s) shall
            be to ensure that the scene is safe, render first aid if applicable,
            secure the scene's integrity, and notify a supervisor.

      2.    Deaths occurring while a subject is in custody shall be reported to
            both the Force Investigation Team and the Office of the
            Superintendent of Detectives.

      3.    In cases involving in-custody deaths, the Office of the Superintendent
            of Detectives shall respond to the scene and be responsible for
            completing the PD 130 (Death Report).

      4.    The Force Investigation Team shall consult with the United States
            Attorney's Office for the District of Columbia about in-custody deaths
            involving subjects that were in Metropolitan Police Department
            custody.

H.    Determination of Duty Status of Involved Officer

      1.    Immediately following a Serious Use of Force incident in which a serious
            injury occurs or any in-custody death, the Element Commander or
            Director, or the highest ranking official on the scene from the involved

officer's element) shall relieve the involved member of his or her normal policing responsibilities. (CALEA 18.8).

2.    Determinations as to the permanent duty status of the involved member shall be made pursuant to GO RAR-301.11 (Force-Related Duty Status Determination).

3.    The Force Investigation Team shall be responsible for handling all arrests of police officers with regard to a use of force.

I.    **Command Support Responsibilities**

1.    The Office of Professional Responsibility (OPR) shall, in use of force incidents, be responsible for the dissemination of Complaint System Numbers, for all reported incidents.

2.    OPR shall enter and maintain the database for information relative to all uses of force.

3.    District or Division Commanders shall ensure that:

     a.    Force Investigation Team members are immediately notified of any incident involving use of force through the Communications Division.

     b.    All uses of force are reported in writing to the Office of Professional Responsibility and that Complaint System Numbers are obtained within one hour of the incident. (CALEA 1.3.6 a - d)

     c.    All use of force incidents are investigated.

     d.    A designated management official from the police district where the incident occurred (or, if in another jurisdiction, a management official from the involved member's assigned cluster) responds to the scene.

     e.    A copy of the Use of Force Incident Report is forwarded to OPR and to the affected element's detectives' office for the purpose of entering relevant information into WACIIS.

     f.    The Office of Professional Responsibility is notified if there is evidence of any wrongdoing as a result of a member being involved in any use of force investigated at the command level.

     g.    The final investigative report of the use of force incident, with recommendations and conclusions, is forwarded, through the chain of command, to the Use of Force Review Board within 60 days of the use of force incident, absent special circumstances.

    h.    All completed investigations are forwarded to the Use of Force Review Board.

4.    The Office of the Superintendent of Detectives (OSD) shall respond and assume primary responsibility for conducting a criminal investigation of the underlying matter (e.g., robbery, burglary, theft, etc.)

5.    When requested, the Synchronized Operations Command Center (SOCC) shall be available to assist members of the Force Investigation Team in facilitating requests to other Department elements or outside agencies.

## J.    Routine Reports and Follow-up Duties

It is the responsibility of the involved officer's organizational element to handle routine administrative follow-up duties. They include but are not limited to:

    PD Forms 251,252 (Incident Report Forms)

    PD Form 77 (Temporary Change of Duty Status Report)

    Adherence to Medical Services Division and Employee Assistance program follow-up

    PD Form 42 (Medical Injury Reports) & Certification

    PD Form 43 (Property Damage Report) & Certification

- Service weapon replacement

    Processing of the injured/arrested person (where applicable)

    Guard details

## K.    Investigative Report Content and Completion Schedules

1.    In instances of deadly force, serious use of force, or any use of force indicating potential criminal misconduct by an officer, the Force Investigation Team preliminary report of investigation shall be forwarded to the Chief of Police, through the chain of command, within twenty-four hours. A transmittal document to the Mayor of the District of Columbia from the Chief of Police shall also be completed.

2.    In instances of deadly force, serious use of force, or any use of force indicating potential criminal misconduct by an officer, the Force Investigation Team shall complete a final investigative report with conclusions and recommendations within ninety (90) days of receiving a Letter of Declination from the USAO or the conclusion of a criminal prosecution (absent special circumstances that must be documented).

3.    The final investigative report shall include a description of the force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation, and proposed findings and analysis supporting those findings.

4.    The proposed findings shall include a determination of whether the force was consistent with MPD policy and training, a determination of whether proper tactics were employed, and a determination whether lesser force alternatives were reasonably available.

5.    To ensure comprehensive and timely completion of investigations by the Force Investigation Team, the Office of the Superintendent of Detectives shall liaison and provide full cooperation with members of the Force Investigation Team.

6.    The Office of the Superintendent of Detectives shall forward immediately a duplicate copy of all reports, communications, and information related to an enumerated use-of-force incident to the Force Investigation Team.

7.    The Forensic Science Services Division (to include the Mobile Crime Lab and Firearms Examination Unit) shall forward immediately a duplicate copy of all reports, communications, diagrams, lab results, and other related information to the Force Investigation Team.

8.    The Director, Communications Division, shall ensure that duplicates of all relevant radio communication tapes of a use-of-force incident are immediately provided to the Force Investigation Team.

9.    The Director, Information Technology, shall ensure that computer related communications (MDC Terminals) concerning a use-of-force incident are immediately provided to the Force Investigation Team.

10.   The Force Review Operations Liaison of the Force Investigation Team shall maintain a repository of electronic and paper copies of Preliminary and Final Investigative Reports completed by the Force Investigation Team. In addition, the liaison will ensure coordination with the department's Use of Force Review Board.



11.    Force investigation team final investigative report findings shall reflect
       both the criminal and policy findings. They shall be classified as
       follows:

              Justified, Within Departmental Policy – this classification
              reflects a finding in which a police use of force is determined to
              be justified, and during the course of the incident the subject
              officer did not violate department policy.

              Justified, Policy Violation – this classification reflects a finding
              in which a police use of force is determined to be justified, but
              during the course of the incident the subject officer violated a
              department policy.

              Justified, Tactical Improvement Opportunity - this
              classification reflects a finding in which a police use of force is
              determined to be justified, and during the course of the incident
              no departmental violations occurred. However, the
              investigation revealed tactical errors that could be addressed
              through non-disciplinary and tactical improvement endeavors.

              Not Justified, Not Within Departmental Policy - this
              classification reflects a finding in which a police use of force is
              determined to be not justified, and during the course of the
              incident the subject officer violated a department policy.

12.    The standard of review in a criminal investigation is **probable cause.**
       The standard of review in a policy review (administrative) investigation
       is a preponderance of the evidence.

13.    When allegations of excessive force or misconduct are made, the
       Force Investigation Team or the Office of Internal Affairs (whichever is
       applicable) shall make one of the following dispositions:

       a.     Unfounded: Where the investigation determined that there are
              no facts to support the incident complained of actually
              occurred.

       b.     Sustained: Where the person's allegation is supported by a
              preponderance of the evidence to determine that the incident
              occurred and the actions of the officer were improper.

       c.     Insufficient Facts: Where there are insufficient facts to decide
              whether the alleged misconduct occurred.

       d.     Exonerated: Where a preponderance of the evidence shows
              that the alleged conduct did occur, but did not violate MPD
              policies, procedures, or training.

**L.    Use of Force Review Board (UFRB)**

1.    The UFRB shall conduct timely reviews of all use of force investigations pursuant to GO RAR – 901.09 (Use of Force Review Board).

2.    Based on its review of the use of force incidents from throughout the Metropolitan Police Department, the Use of Force Review Board shall act as a quality control body for all use of force investigations and shall forward policy and training recommendations to the Chief of Police on an ad hoc basis.

3.    A thorough review of all use-of-force incidents shall be conducted annually by the UFRB to reveal patterns or trends that would indicate training needs, equipment upgrades, or policy modifications. (CALEA 1.3.7 and 1.3.13)

**VI.    CROSS REFERENCES**

**A.    Related Directives**

1.    GO OPS-304.10 (Police-Citizen Contacts, Stops and Frisks)
2.    GO RAR-306.01 (Canine Teams)
3.    GO PC-502.07 (Medical Treatment and Hospitalization of Prisoners)
3.    GO RAR-901.01 (Handling of Service Weapons)
4.    GO RAR-901.04 (Oleoresin Capsicum Spray Dispensers)
5.    GO RAR-901.07 (Use of Force)
6.    GO RAR-901.09 (Use of Force Review Board)
7.    GO RAR-901.11 (Force-Related Duty Status Determination)

**B.    Court Opinions**

1.    Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)
2.    Graham v. Connor, 490 U.S. 386 (1989), 104 L. Ed 2d 443,447
4.    Saucier v. Katz, 533 U.S. 194 (June 18,2001)

**C.    Laws and Regulations**

1.    D.C. Code 94-176 (Use of Wanton or Unnecessary Force)
2.    D.C. Municipal Regulations, Title 6A, Section 207 (Use of Firearms and Other Weapons)

**D.    Other**

1.    CALEA Standards Section 45 (Use of Force)
2.    IACP Model Policy (Use of Force)

E.   Related Forms

1.   PD Form 901-e (Use of Force Incident Report)
2.   PD Form 42 (Medical Injury Reports)
3.   PD Form 43 (Property Damage Report)
4.   PD Form 77 (Temporary Change of Duty Status Report)
5.   PD Forms 251, 252 (Incident Report Forms)
6.   PD Form 118 (Complainant Statement)
7.   PD Form 119 (Witness Statement)
8.   PD Form 313 (Arrestee's Injury or Illness Report and Request for Examination and Treatment)

Charles H. Ramsey
Chief of Police

Attachment:   PD Form 901-e (Use of Force Incident Report) [interim hard-copy version]

CHR:NMJ:JAE:MAR:AFA:aia