Form 901-hc (9-02)

# Use of Force Incident Report

Report ID: _____          Date: _____

## REPORTING PERSON

| OFFICER | SUBJECT | | WITNESS | | THIRD PARTY | |
|---|---|---|---|---|---|---|
| LAST: | FIRST: | | MIDDLE: | | | CAD#: |
| ADDRESS: | | CITY: | | STATE: | | ZIP: |
| PHONE(H): | EMPLOYMENT/SCHOOL: | | | | PHONE(W): | |
| DOB: | SEX: | RACE: | | HEIGHT: | | WEIGHT: |
| NOTIFIED: | RANK: | | | TIME NOTIFIED | | |
| FIT NOTIFIED: | TIME NOTIFIED: | | INVESTIGATOR: | | | CAD#: |

## EVENT INFORMATION

| CCN: | TOTAL # of OFFICERS USING FORCE: | | | TOTAL # of SUBJECTS: | |
|---|---|---|---|---|---|
| REPORT TAKEN BY: | | | CAD#: | | |
| REPORT TAKEN ON SCENE? Yes No | REPORT DATE / TIME: | | INCIDENT DATE / TIME: | | |
| OTHER JURISDICTION? Yes No | INCIDENT LOCATION: | | DISTRICT: | | PSA |
| 1st MEMBER ON SCENE: | | CAD#: | RADIO ASSIGNMENT? Yes No | | |
| WEATHER: | | LIGHTING: | | | |

*********************** LOCATION TYPE ***********************

| | | | | |
|---|---|---|---|---|
| Air/Bus/Train Terminal | Alley | Bank/Savings & Loan | Bus Stop | Church/Synagogue/Temple |
| College/University | Commercial Office Bldg | Construction Site | Convenience Store | Department/Discount Store |
| DC Government Bldg | Doctor Office/Hospital | Drug Store | Federal/Government Bldg | Fields/Woods |
| Grocery/Supermarket | Hotel/Motel | Jail/Prison | Lake/Waterway | Liquor Store |
| Park Area | Parking lot/garage | Public Housing Project | School | Rental Storage Facility |
| Residence/Home | Restaurant | Service Station | Sidewalk | Specialty Store |
| | Club | Other | | Unknown |

| | | | | |
|---|---|---|---|---|
| Victim's Vehicle | Suspect's Vehicle | Auto | Bus | Train/Metro/Amtrak |
| Hallway | Elevator | Porch | Basement/Laundry Room | Apartment/Condo Unit |
| Single Family Dwelling | Hotel/Motel Room | | Classroom | Office Room |
| Vacant Bldg/Room | Customer Area | Storage Area | In Public Housing | Within 1 block of Public Housing |
| Within 1000ft of School | N/A | Unknown | Other: | |

## REVIEW INFORMATION

| SIGNATURE: | | ELEMENT: | DATE: |
|---|---|---|---|
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |
| COMMANDER. SIGNATURE: | CAD#: | ELEMENT: | DATE: |
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |
| ROC SIGNATURE: | CAD#: | ELEMENT: | DATE: |
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |
| CASE STATUS: | REASON: | | |
| OPEN    CLOSED | | | |

| LAST: | | FIRST: | | | MIDDLE: | |
|---|---|---|---|---|---|---|
| CAD#: | RANK: | ELEMENT: | | ASSIGNMENT: | | PSA: |
| SUPERVISOR: | | CAD# | DISTRICT: | | DATE NOTIFIED: | |
| DOB: | SEX: | RACE: | | HEIGHT: | WEIGHT: | |
| APPOINTMENT DATE: | | | | | | |

| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASION | |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE F |
| LACERATION | |
| UNCONSCIOUS | |
| NONE | |
| PHOTOS TAKEN:   Yes  No | |

| TYPE | | | | |
|---|---|---|---|---|
| HANDS | ASP-CONTROL | | FIREARM | |
| FEET-KICK | ASP-STRIKE | POINTED AT PERSON | DISCHARGED | |
| FIRM GRIP | STUNGUN (ERT) | # SHOTS: | | |
| CONTROL HOLDS | TASERS (ERT) | | FIREARM TYPE | |
| JOINT LOCKS | BEANBAGS (ERT) | HANDGUN | SHOTGUN | |
| PRESSURE POINTS | STUNBAGS (ERT) | RIFLE (ERT) | AUTOMATIC WEAPON (ERT) | |
| FIST | FLASHBANGS (ERT) | OTHER | | |
| | | MAINTAIN BLDE SLIDE STRIKE TAKEDOWN (CERTIFIED) | | |

| NON-ISSUED WEAPON USED: | QUALIFIED IN WEAPONS USE | DATE CERTIFIED: |
|---|---|---|

of SUBJECTS:

| | | |
|---|---|---|
| LAST: | FIRST: | MIDDLE: |
| ADDRESS: | CITY | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | CERTIFIED: |

| | |
|---|---|
| **COMPLIANT** | **ASSAULTIVE (PHYSICAL INJURY)** |
| **RESISTANT (PASSIVE)** | **ASSAULTIVE (SERIOUS PHYSICAL INJURY / DEATH)** |
| **RESISTANT (ACTIVE)** | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* SUBJECT ACTIVITY \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | | |
|---|---|---|---|
| ASSAULT ON POLICE | DISORDERLY CONDUCT | HOSTAGE | DANGEROUS ANIMAL |
| ATTEMPT ARREST | DEMONSTRATION | LANDLORD / TENANT DISPUTE | ROBBERY |
| ALCOHOL | DOMESTIC VIOLENCE | TRANSPORTING | FOOTPURSUIT |
| BARRICADE | DRUGS | TRAFFIC STOP | VEHICLE PURSUIT |

| |
|---|
| SUBJECT INJURED Yes No    IMPAIRMENT:    DESCRIBE INJURIES: |
| HOSPITAL TREATMENT RECEIVED: Yes No    HOSPITAL:    DATE / TIME TAKEN: |
| TAKEN BY AMBULANCE? Yes No    AMBULANCE #:    MEDIC #:    HOSPITAL STATUS: |
| ESCORT PROVIDED? Yes No    PHYSICIAN NAME:    Admitted / Released / NA    PHOTOS TAKEN? Yes No |
| ARREST DATE / TIME:    FIRST: |

| | | |
|---|---|---|
| OFFICERS AT SCENE:    AGENCY(IES) | | |
| COMMANDING OFFICIAL: | CAD#: | ASSIGNMENT: |
| LAST: | FIRST: | MIDDLE: |
| RANK: | CAD#    DISTRICT: | PSA: |
| On    INTERVIEW DATE / TIME: | | |
| TECHNICIAN NAME: | CAD#: | |

## WITNESS INFORMATION

| | | |
|---|---|---|
| # OF WITNESSES: | | |
| LAST: | FIRST: | MIDDLE: |
| ADDRESS: | CITY:    STATE: | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | |
| DOB: | SEX: | LOCAL CANVASS? Yes No |
| Yes No    INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No |

## PROPERTY INFORMATION

| | | |
|---|---|---|
| # OF PROPERTIES: | | |
| Property #: | WAS PROPERTY DAMAGED FROM USE OF FORCE? Yes No | ESTIMATED VALUE: $ |
| PROPERTY TYPE: | DESCRIPTION | |

PD Form 901-hc (UFIR)

## NARRATIVE



4.    The Forensic Science Services Division Technician handling the scene shall be required to coordinate all evidentiary information with the Force Investigation Team throughout the duration of the investigation.

**D.    Investigation of Use of Force Incidents
Within the District of Columbia**

1.    <u>Rights of Officers Before USAO Declination Has Been Made</u>

In all cases involving serious use of force, or any other force indicating potential criminal misconduct by an officer, the subject officer(s) will not be compelled or ordered to make a statement (which includes interview by video or tape-recording) until the USAO has issued a written declination.

2.    <u>Interviews: Subjects, Members and Witnesses (General)</u>

In conducting administrative misconduct investigations involving a serious use of force or serious physical injury (following a criminal declination where applicable) the appropriate investigators shall include, subject to and in conformance with applicable MPD directives, the following measures:

a.    Whenever practicable and appropriate, complainants and witnesses shall be interviewed at sites and times convenient for them, including at their residences or places of business.

b.    Officers involved in a use of force incident shall be sequestered until they are interviewed by a member of FIT or by appropriate supervisory personnel.

c.    Group interviews are prohibited.

d.    Supervisors of the involved members subject to the investigation shall be notified, as appropriate.

e.    All appropriate MPD members, including supervisors, shall be interviewed.

f.    Investigators shall ensure that all appropriate evidence is collected, preserved, and analyzed, including canvassing the scene to locate witnesses and obtaining complainant medical records, where appropriate.

g.    Investigators shall tape record or videotape interviews of complainants, involved officers, and material witnesses in investigations involving a serious use of force or serious physical injury (subject to and in conformance with applicable

laws.  If a complainant or non-officer witness refuses to be tape-recorded or videotaped, then a written narrative of the statement shall be prepared to be signed by the complainant or non-officer witness.

h.  Any inconsistencies in officer and witness interview statements gathered during the investigation shall be identified and reported in writing.

3.  **Response to Deadly Force, Serious Use of Force Incident or a Use of Force Indicating Potential Criminal Conduct**

The Force Investigation Team (FIT) shall be responsible for investigating all incidents involving Deadly Force, Serious Use of Force or the Use of Force Indicating Potential Criminal Conduct.  In such instances, the following procedures shall apply:

a.  When a member reports any use of force or accusation of force, a supervisor from the district of occurrence (of higher rank than the reporting member) is required to respond to the scene.

b.  The supervisor shall notify the Force Investigation Team and the Office of the Superintendent of Detectives through the Communications Division and the Synchronized Operations Command Center (SOCC).

c.  The supervisor shall maintain and preserve the scene and canvass and gather witnesses.

d.  The supervisor shall provide the assistance of District personnel to the Force Investigation Team in conducting the investigation of the incident, as necessary.

e.  In cases of use-of-force incidents within the investigative jurisdiction of the Force Investigation Team, FIT members shall be responsible for the following:

(1)  Submitting a preliminary report of investigation to the Assistant Chief, Office of Professional Responsibility, prior to being relieved from duty.

(2)  Notifying and consulting with the United States Attorney's Office (USAO), within 24 hours or the next business day, of any use of force incident involving deadly force, a serious use of force, or any force indicating potential criminal misconduct by a MPD member.

# BODY DIAGRAM

**Report ID:** _____

_____            **CCN:** _____

**Date:** _____

**PDID:** _____

**Body Diagram is:**    Officer ☐          **Officer #:** _____
                         Subject ☐          **Subject #:** _____

**CAD#:** _____

**Last Name:** _____          **First Name:** _____          **Middle Name:** _____



| | BURNING |
|---|---|
| | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| GUN SHOT WOUND | DIFFICULTY BREATHING |
| LACERATION(s) | NUMBNESS |
| STAB WOUND | NONE |
| UNCONSCIOUS | |
| NONE | |

ESCORT PROVIDED? Yes No    PHYSICIAN NAME:          Admitted / Released    NA    PHOTOS TAKEN? Yes NO

# GENERAL ORDER



| | |
|---|---|
| **Title** Serious Misco         i_ | |
| **Series / Number** GO – PER – 120.23 | |
| **Effective Date** January 16, 2004 | **Distribution** B |

**DISTRICT OF COLUMBIA**

er    rest
General O      1202.3 (Investigative ResponsibilitiesWhere Sworn Members of This Department Are Arrested or Are Suspected of Criminal Misconduct)

| I. Background | Page 1 | IV. Regulations............................ | Page 4 |
|---|---|---|---|
| II. Policy | Page 1 | V. Procedural Guidelines.. | Page 6 |
| III. Definitions.. | Page 2 | VI. Cross References.. | Page 15 |

## I.    BACKGROUND

Sworn members of the Metropolitan Police Department are expected to maintain the highest standards of conduct. Members should conduct themselves properly and professionally, on or off duty. When a member is accused of misconduct, a thorough investigation will be conducted. The purpose of this directive is to establish responsibilities and procedures for reporting and conducting investigations of serious misconduct (administrative and/or criminal) that may result in disciplinary action.

## II.    POLICY

The policy of the Metropolitan Police Department (MPD) is to investigate every instance of alleged misconduct against a member of this Department (whether criminal or administrative in nature), in accordance with the laws of the District of Columbia and the policies and procedures of MPD. Investigations shall be conducted in a fair and consistent manner. (CALEA 52.1 **. 1**

The Office of Internal Affairs (OIA) within the Office of Professional Responsibility (QPR) shall be responsible for the investigation of ail allegations of serious misconduct by members of the Department. **(CALEA 52.1.1b-c)**

The Force Investigation Team (FIT) within the Office of Professional Responsibility shall be responsible for investigating force-related misconduct pursuant to General Order RAR – 901.08 (Use of Force Investigations). (CALEA 52.1.1b-c)

Other administrative or policy misconduct shall be investigated at the command level pursuant to General Order PER – 120.20 (Chai-of-command Misconduct investigations **(CALEA** 52.1.1a)

Where applicable and pursuant to Genera ⅼOrder PER – 120.25 (Processing Citizen Complaints certain use-of-force misconduct, serious misconduct, and other administrative or policy misconduct cases will be investigated by the Office of Citizen Complaint Review through the Citizen complaint process. (CALEA 52.1.1)

## III    DEFINITIONS

When used in this directive, the following terms shall have the meanings designated:

1.    **Agent** – positions held by Sergeants and Detective Grades I and II assigned to the Office of Internal Affairs (OIA). While engaged in official duties, an OIA agent may assert authority over a higher-ranking member involved in the investigation.

2.    **Officer/Member** – interchangeable terms referring to sworn law enforcement personnel of the Department. The terms do not include civilian employees of the Department.

3.    **Serious Misconduct** – suspected criminal misconduct and the following specific forms of misconduct listed below (except that for the purposes of this directive, serious misconduct involving a use of force within the jurisdiction of the Force Investigation Team pursuant to GO RAR-901.08 shall be investigated by the Force Investigation Team):

   a.    all civil suits alleging any misconduct by an officer while acting in an official capacity;

   b.    all civil suits against an officer for off-duty conduct (while not acting in an official capacity) alleging physical violence, threats of physical violence, racial bias, dishonesty, or fraud;

   c.    all criminal arrests or filing of criminal charges against an officer;

   d.    all allegations of unlawful discrimination (e.g., on the basis of race, ethnicity, gender, religion, national origin, sexual orientation, or disability), including improper ethnic remarks and gender bias, but excluding employment discrimination;

   e.    all allegations of an unlawful search and seizure;

   f.    all allegations of an unlawful stop;

   g.    all allgations of false arrests or filing of false charges;

   h.    any act of retaliation or retribution against an officer or person;

   i.    any act of retaliation or retribution against a person for filing a complaint against a member;

j.    all allegations of excessive use of force or improper threat of force (including strikes, blows, kicks, or other similar uses of force against a compliant subject or administered with a punitive purpose);

k.    any intentional failure to complete use of force reports required by MPD policies and in accordance with procedures;

l.    any intentional provision of false information in an MPD or an Office of Citizen Complaint Review (OCCR) investigation or in any official report, log, or electronic transmittal of information;

m.    all incidents in which (1) a person *is* charged by an officer with assault on a police officer or resisting arrest or disorderly conduct, and **(2)** the United States Attorney's Office (USAO) or the Office of the Corporation Counsel (QCC) notifies MPD that it is dismissing the charge based upon officer credibility or a judge dismissed the charge based upon officer credibility;

n.    all incidents in which MPD has received written notification from a prosecuting agency in a criminal case that there has been (1) an order suppressing evidence because of any constitutional violation involving potential misconduct by an MPD officer, or (2) any other judicial finding of officer misconduct made in the course of a judicial proceeding or any request by a federal or District of Columbia judge or magistrate that a misconduct investigation be initiated pursuant to some information developed during a judicial proceeding before a judge or magistrate. MPD shall request that all prosecuting agencies provide them with written notification whenever the prosecuting agency has determined that any of the above has occurred; or

o.    all referrals pursuant to Sections **IV-A** and IV-B (Regulations) of this General Order.

4.    **Underlying Matter** – an incident which would require appropriate police action and during which a responding or involved officer is charged with misconduct. This directive focuses on the handling of the alleged misconduct while recognizing that the "underlying matter" is a police responsibility that must also be processed to completion.

5.    **Probable Cause** – whether a reasonably prudent police officer, considering the total circumstances confronting him/her and drawing from his/her experience, would be warranted in the belief that an offense has been or is being committed. (GALEA 1.3.2)

## IV.    REGULATIONS

A.    All officers shall promptly notify OPR or a supervisor (who shall report the information to **OPR)** of the following:

    1.    the officer is arrested or criminally charged for any conduct;

    2.    the officer is named as a party in any civil suit involving his or her conduct while on duty (or otherwise while acting in an official capacity); or

    **3.**    the officer is named as a party in any civil suit regarding off-duty conduct (while not acting in an official capacity) that alleges any of the following:

        a.    physical violence,

        b.    threats of physical violence,

        c.    racial bias,

        d.    dishonesty, or

        e.    fraud by the officer.

B.    All officers (including supervisors and managers who learn of evidence of possible misconduct through their review of an officer's work) shall promptly notify OPR of any conduct by other officers that reasonably appears to constitute any of the following:

    1.    an excessive use of force or improper threat of force;

    2.    a false arrest or filing of false charges;

    **3.**    an unlawful search or seizure;

    **4.**    unlawful discrimination;

    5.    an intentional failure to complete use of force reports required by MPD policies and in accordance with procedures;

    6.    an act of retaliation for complying with any MPD policy or procedure; or

    7.    an intentional provision of false information in an MPD or OCCR investigation or in any official report, log, or electronic transmittal of information

C.    Failure to voluntarily report officer conduct as described in Sections A and B above shall be an offense subject to discipline if sustained.

D     Any member who has reason to believe that reporting misconduct to an element official may compromise the investigation may report the information to OPR directly.

E.    MPD shall notify and consult with the USAO immediately, in no case later than the next business day, following the receipt or discovery of any allegations of criminal misconduct referred to in Section III-3 (Serious Misconduct) above. In every such incident involving allegations of criminal misconduct, the USAO will notify and consult with the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

F.    Failure to voluntarily make a timely and proper notification of possible misconduct shall be an offense subject to discipline, if sustained, up to and including removal from the Department.

G.    Members of this Department shall take appropriate police action in any situation involving serious allegations of misconduct against another member. Appropriate action may include, but is not limited to, arrest based on probable cause.

H.    Any member who has a potential conflict of interest related to a pending misconduct investigation shall not be allowed to participate in any way in the conduct or review of that investigation.

I.    No member shall interfere with the process of a lawful arrest of another member, whether on or off duty.

J.    Investigative responsibility is assigned to the Office of Professional Responsibility for all incidents of serious misconduct as defined by Section III-3 of this order. OPR shall review all misconduct complaints as they are received and shall determine whether a misconduct complaint meets the criteria for being assigned for investigation outside of the District Chain of Command, except that whenever an incident of serious misconduct involves a use of force within the jurisdiction of the Force Investigation Team pursuant to General Order RAR – 901.08 (Use of Force Investigations), the Force Investigation Team shall conduct the investigation (CALEA 52.1.1-b)

K.    Where applicable and pursuant to General Order PER – 120.25 (Processing Citizen Complaints), certain use-of-force misconduct, serious misconduct, and other administrative or policy misconduct cases within the concurrent jurisdiction of MPD and OCCR will be investigated by the Office of Citizen Complaint Review through the Citizen Complaint process. (CALEA 52.1.1)

**V    PROCEDURAL GUIDELINES**

A.    Initial Duties at the Scene of an Allegation of Serious Misconduct

   1.    When a member is handling a police matter and an act of misconduct is alleged, the initial responsibility of the member shall be to ensure that the scene is safe, render first aid if applicable, and secure the scene's integrity.

   2.    If an arrest or other police action is required in the underlying matter, the officer shall complete all necessary and appropriate police duties unless otherwise directed by an official.

   3.    A member who is involved in an alleged act of misconduct shall not be compelled to provide a statement when the alleged incident indicates potential criminal misconduct in accordance with Section V-E-2 of this order.

B.    Duties of Members

   Members of the Department shall immediately notify an official when any member:

   a.    is accused of misconduct or an allegation of misconduct is made;

   b.    is arrested and/or criminally charged for any misconduct in any jurisdiction;

   c.    has knowledge of any serious or criminal misconduct by another member;

   d.    is named as a party in any civil suit involving his or her conduct while on duty or otherwise acting in an official capacity;

   e.    is named as a party in any civil suit regarding off-duty conduct while not acting in an official capacity that alleges:

      (1)    physical violence,

      (2)    threats of physical violence,

      (3)    racial bias,

      (4)    dishonesty, or

      (5)    fraud;

    **f.**    learns of an existing warrant, summons or protection order for himself/herself or another member, regardless of jurisdiction;

    **g.**    has knowledge of an alleged use of force, excessive force or improper threat of force by another member;

    **h.**    has knowledge of a false arrest or filing of false charges by another member;

    **i.**    has knowledge of an unlawful stop, search and/or seizure by another member;

    **j.**    has knowledge of any conduct by another member that reasonably appears to constitute unlawful discrimination;

    **k.**    has knowledge of an act of retaliation or retribution toward any person for complying with any MPD policy or procedure;

    **l.**    has knowledge of another member's intentional failure to complete a Use of Force incident Report (PD Form 901-e) when required; or

    **m.**    has knowledge that another member intentionally provided false information in an MPD or an Office of Citizen Complaint Review (OCCR) investigation or in any official report, log or electronic transmittal of information.

**C.**    Obtaining Complaint System (CS) Tracking Numbers

Officials of the Department shall notify the Office of Professional Responsibility and obtain Complaint System tracking numbers within one (1) hour of learning of an incident of alleged serious misconduct –

    **a.**    During normal weekday business hours (from 0700 – 1900), notify the Office of Professional Responsibility directly at 727-4385, or

    **b.**    During non-business hours (from 1900 – 0700), notify the on-call OPR Agent. The agent may be contacted through the Synchronized Operations Command Center (SOCC).

**D.**    Investigation of Underlying Matter or Offense Related to the Allegation of Serious Misconduct

    **I**    The Office of Internal Affairs is responsible for investigating all allegations of serious misconduct except those incidents within the jurisdiction of FIT or OCCR.

2.    The Office of the Superintendent of Detectives (OSD) is responsible for conducting the investigation of the underlying offense related to the allegation of serious misconduct.

3.    The OSD shall immediately respond to begin their investigation and secure evidence, witnesses, and other information related to the crime that led up to the alleged misconduct. An OSD official shall designate a lead investigator for the crime that led up to the allegation of misconduct.

4.    The OSD lead investigator shall coordinate all investigative information with the Office of Internal Affairs.

5.    The OSD is responsible for handling the arrest and processing of any individual charged as a result of the underlying offense related to the alleged misconduct.

6.    Members from the Forensic Science Services Division shall respond and be responsible for evidentiary crime scene processing.

7.    The Forensic Science Services Division Technician handling the scene shall be required to coordinate all evidentiary information with the Office of Internal Affairs.

E.    Investigation of Serious Misconduct Incidents Within the District of Columbia

1.    Interviewing Subjects, Members and Witnesses (General)

In conducting serious misconduct investigations, the Office of Internal Affairs or other appropriate investigators shall include, subject to and in conformance with applicable law and MPD directives, the following measures:

a.    If, during the course of an investigation, the investigator has reason to believe that misconduct occurred other than that alleged, the investigator also shall investigate the additional potential misconduct to its logical conclusion.

b.    In investigations involving a serious use of force or serious physical injury, MPD investigators shall tape record or videotape interviews of complainants, involved officers, and material witnesses (if a complainant or non-officer witness refuses to be tape-recorded or videotaped, then MPD shall prepare a written narrative of the statement to be signed by the complainant or non-officer witness)

c.    Whenever practicable and appropriate, complainants and witnesses shall be interviewed at sites and times convenient for them, including at their residences or places of business

d.   Officers involved in a serious misconduct incident shall be sequestered until interviewed by a member of OIA or by appropriate supervisory personnel.

e.   Group interviews are prohibited.

f.   Supervisors of the involved members subject to the investigation shall be notified, as appropriate.

g.   All appropriate MPD members, including supervisors, shall be interviewed.

h.   Investigators shall ensure that all appropriate evidence is collected, preserved, and analyzed, including canvassing the scene to locate witnesses and obtaining complainant medical records, where appropriate.

I.   Any inconsistencies in officer and witness interview statements gathered during the investigation shall be identified and reported in writing.

2.   Duties of Officials When Notified of Alleged Serious Misconduct Indicating Potential Criminal Charges or Arrest in the District of Columbia

a.   In all cases of serious misconduct involving potential criminal charges or the arrest of an officer, the subject officer shall not be compelled or ordered to make a statement (which includes interview by video or tape-recording) until the USAO has issued a written declination and an authorized Reverse-Garrity warning has been issued; or criminal prosecution of the officer has been completed. (Refer to Section V-D-1 of General Order RAR-901.08 regarding use of force incidents required to be investigated by the Force Investigation Team.)

b.   All situations in which the "Reverse-Garrity Warning" is used shall be authorized by an official of the rank of captain or above.

c.   Questions concerning the use of "Garrity Warning" or the "Reverse-Garrity Warning should be addressed to the Office of the General Counsel

d.   In those instances in the District of Columbia when a member, either on or off duty, is arrested or suspected of criminal misconduct, the Assistant District Commander or Watch Commander of the district of occurrence shall:

(1)   Immediately respond to the scene and determine if the member shall be summarily arrested; and

**(2)** Whether or not an arrest is made, the potential crime scene shall be protected and the responding official shall ensure that all evidence is preserved.

**(3)** Ensure that the Office of Professional Responsibility has been notified as prescribed by Section V-D of this general order.

**(4)** Ensure that the USAO has been timely notified, pursuant to Section IV-E (Regulations) of this general order.

e. Upon receiving notification that a member has been arrested or suspected of criminal misconduct, a member from OPR shall respond to the scene.

f. The official responding to the scene of an arrested member or a member suspected of criminal misconduct shall:

(1) Ensure that the Office of Professional Responsibility has been notified as prescribed by Section V-C of this general order;

(2) Turn over all pertinent information to the investigating official of the OPR;

(3) Take possession of appropriate Department property not seized as evidence; and

(4) Interview those present to verify the essential aspects of the incident and gather all pertinent information needed until such time as a member of OPR responds to handle the investigation, if applicable.

3. Responsibilities of Officials when Notified of Alleged Serious Misconduct

The official or supervisor receiving notification of serious misconduct by a member shall:

a. Notify his/her commanding officer or the Assistant District Commander through the chain of command;

b Modify the member's duty status, if applicable and cause the appropriate entries to be made in the Patrol Signal System (PSS) Book of the arrested member's element. (CALEA 1.3.8)

c. Cause the applicable preliminary report, PD Form 99 (Citizen Complaint Report) and/or OCCR complaint form to be transmitted either by facsimile or hand-carried to the OPR prior to being relieved from duty.

d. Immediately notify (no later than the next business day) the USAO regarding the misconduct.

F.    Duties and Responsbilities of the Office of Professional Responsibility

1.    The Office of Professional Responsibility shall maintain responsibility for conducting the administrative investigation, in conjunction with any other investigative component that is involved, in all situations where a member:

   a.    is arrested;

   b.    is the subject of an arrest warrant; criminal information or criminal indictment; or

   c.    is the subject of a protection order.

2.    Members of the Office of Internal Affairs have the authority and responsibility to conduct investigations assigned by the Assistant Chief of the Office of Professional Responsibility or the Chief of Police. As such, they have the following authority, as required by their position:

   a.    Conduct activities in the furtherance of an investigation;

   b.    Request and receive all Department records and/or information to facilitate an investigation;

   c.    Direct a member of this Department to appear at designated locations for interviews;

   d.    Require members to provide truthful statements for use in an investigation (subject to "Reverse-Garrity" requirements, after a criminal declination by the **USAO,** or after any criminal prosecution of the officer has been completed).

   e.    Cause the p o k e powers of a sworn member to be revoked in connection with an investigation being conducted by the Office of Internal Affairs. **(CALEA** 52.1.8)

   f.    Assert authority over a higher-ranking member involved in the investigation while engaged in official duties.

3.    The Director, Office of Internal Affairs, or the Director, Civil Rights and Force investigations Division, when applicable, shall be responsible for:

   a.    Completing any administrative investigations of serious
                    ., absent special Circumstances within 90 calendar
           days of receiving the complaint criminal declnation or
           conclusion of a criminal prosecution where applicable (Special
           circumstances causing any delay in an administrative

investigation shall be documented and the investigating member shall submit a written status report of the investigation at least every thirty days thereafter.); (CALEA 52.1.4)

b.    Investigating all incidents of serious misconduct as defined in this order, (CALEA **52.1.1-b**);

c.    Monitoring each related case in the judicial process;

d.    Designating members to serve in an "on-call" capacity;

e.    Tracking all allegations of misconduct against MPD members; (CALEA 52.1.10)

f.    Ensuring that, in those cases where members of OPR are required to investigate a case in conjunction with another investigative unit, copies of all statements taken from involved parties and witnesses, along with any tapes, are kept on file at the OPR; and

g.    Approving requests from other involved investigative units for records and copies of statements taken by OPR personnel.

**G.**    Handling of Arrests of Members

When a member is arrested by MPD personnel, the arresting officer shall:

a.    Upon learning that an arrested person is a member of MPD, immediately notify his/her Assistant District Commander or Watch commander. The notified official shall follow the procedures outlined in Section V-E of this general order.

b    Handle the arrest in an appropriate manner, consistent with the requirements of this order;

c.    Transport the arrested member to the appropriate element for processing;

d    Where multiple members are arrested, sequester them from each other during processing;

e.    Be responsible for processing the case and meeting all court obligations; (a member of OPR shall assist the arresting officer in meeting these obligations);

f.    Turn in all Department equipment, not held as evidence, to the arrested member's immediate supervisor or, if not available, to the official who responds from the arrested member's element

H       Responsibilities of Commanding Officer After Arrest of a Member

Upon learning that a sworn member of the Department is involved in criminal misconduct requiring arrest, the arresting officer's commanding officer shall:

1.      Notify the arrested member's commanding officer, if the arrested member is from another district or unit;

2.      Ensure that the member's duty status is appropriately modified, if applicable;

3.      Ensure that an official from the arrested member's unit responds to the location of the arrest to assist with the investigation and take possession of any department property not seized as evidence; and

4.      Ensure that the proper entries are made in the PSS Book and the Time and Attendance Court Information System (TACIS).

I.      Responsibility of Synchronized Operations Command Center (SOCC)

The official in charge of SOCC shall be responsible for:

1.      Notifying an official of the OPR immediately upon receiving all notifications in Section V-B of these procedural guidelines:

a.      During normal weekday business hours, from 0700 – 1900, notify OPR, or

b.      During non-business hours, from 1900 – 0700, notify the on-call OPR Agent through SOCC;

2.      Maintaining an on-call duty schedule of all OPR members and their assigned pager numbers; and

3.      Notifying the Chief of Police or official then in command of the Department, in all cases where a sworn member of this Department has been arrested. (CALEA 52.1.3)

J.      Processing Serious Misconduct Involving MPD Members
        Outside of the District of Columbia

When a member is involved in serious misconduct *outside* of the District of Columbia, whether on or off duty:

1.      The member shall immediately notify the Watch Commander of his/her element through the Communications Division or SOCC.

2.      The Communications Division or SOCC; shall notify the Office of Professional Responsibility.

3. The Office of Professional Responsibility shall respond as may be appropriate under the particular circumstances.

4. The appropriate law enforcement authority of the jurisdiction of occurrence will maintain primary responsibility for conducting a criminal investigation of the incident or the underlying matter.

5. The Office of internal Affairs shall initiate a concurrent administrative investigation, and shall work closely with the investigator/official from the originating police jurisdiction investigating the primary criminal offense. In cases where the United States Attorney's Office or the competent prosecutorial authority has not yet issued a written declination, OIA shall not compel or order a subject officer to make a statement.

K. Investigative Report Contents and Completion Schedules

1. In instances of serious misconduct by an officer, the **OIA** Investigators shall complete a final investigative report with conclusions and recommendations within ninety (90) days as prescribed in Section V-G-3a of this general order.

2. The final investigative report shall include a description of the serious misconduct identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation, and proposed findings and analysis supporting those findings.

3. To ensure comprehensive and timely completion of investigations by OIA, all MPD special units, whether located at the district level or operating from a centralized location, shall liaison and provide full cooperation with members of OIA.

4. A duplicate copy of all reports, records, communications, and information related to the enumerated misconduct incident shall be provided immediately to the OIA Agent by any support unit having any such related materials.

5. The standard of review in a criminal investigation is *probable cause.* The standard of review in a policy review (administrative) investigation is a *preponderance of the evidence.*

6 When allegations of serious misconduct are made, the Office of Internal Affairs, shall make one of the following dispositions:

a. **Unfounded:** Where the investigation determined that there are no facts to support the incident complained of actually occurred.

    b.    **Sustained:** Where the person's allegation is supported by a preponderance of the evidence to determine that the incident occurred and the actions of the officer were improper.

    c.    **Insufficient Facts:** Where there are insufficient facts to decide whether the alleged misconduct occurred.

    d.    **Exonerated:** Where a preponderance of the evidence shows that the alleged conduct did occur, but did not violate MPD policies, procedures, or training.

## VI.    CROSS REFERENCES

### A.    Related Directives

1. GO OPS-304.10 (Police-Citizen Contacts, Stops and Frisks)
2. GO PCA-502.07 (Medical Treatment and Hospitalization of Prisoners)
3. GO RAR-901.01 (Handling of Service Weapons)
4. GO RAR-901.04 (Aerosol Oleoresin Capsicum Spray Dispensers)
5. GO RAR-901.07 (Use of Force)
6. GO RAR-901.08 (Use of Force investigations)
7. GO PER-I20.20 (Chain-of-Command Misconduct Investigations)
8. GO PER-I20.25 (Processing Citizen Complaints)
9. GO PER-201.26 (Duties, Responsibilities and Conduct of Members)

### B.    Court Opinions

1. Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)
2. Graham v. Connor, 490 U.S. 386 (1989), 104 L. Ed 2d 443, 447
3. Garrity v. New Jersey, 385 U.S. 493 (1967)
4. Saucier v. Katz, 533 U.S. 194 (June 18, 2001)

### C.    Laws and Regulations

1. D.C. Official Code § 5-1101, *et seq.* (Review of Citizen Complaints Involving Police)
2. D.C. Municipal Regulations, Title 6A, §200 (Performance of Duty) and §202 (Standards of Conduct)

Charles H. Ramsey
Chief of Police

CHR:NMJ:JAE:MAR:LN:AFA:afa

# GENERAL ORDER



**METROPOLITAN POLICE**

**DISTRICT OF COLUMBIA**

**Title**
**Force-Related Duty Status Determination**

**Series / Number**
**GO - RAR – 901.11**

| Effective Date | Distribution |
|---|---|
| **October 7, 2002** | **B** |

**Related to**
**General Order RAR-901.07**
(Use of Force)
**General Order RAR-901.08**
(Use of Force Investigations)

I. Background........................ Page 1
II. Policy ............................. Page 1
III. Definitions......................... Page 1
IV. Rules ............................... Page 2

V. Regulations. .................... Page 3
VI. Procedural Guidelines ........Page 3
VII. Cross References...............Page 4

## I.   BACKGROUND

The Metropolitan Police Department recognizes that police-involved use-of-force incidents set in motion a series of complex investigations that allow the Department and community to hold police officers accountable for their actions.  Further, following a use-of-force incident, police officers experience a variety of psychological and physiological reactions that must be considered.

The duty status of a police officer following a use-of-force incident is linked to the ability of force investigators to properly make a preliminary assessment of an incident, as well as the agency's ability to provide involved officers with an opportunity to participate in a post-use-of-force debriefing.  This general order delineates the types of duty status categories, as well as the process for duty status determination, following a serious use-of-force incident.

## II.   POLICY

The policy of the Metropolitan Police Department *is* to value and preserve human life when exercising lawful authority to use force.  The Metropolitan Police Department, therefore, mandates that its members shall use the minimum amount of force that the objectively reasonable officer would use, in light of the circumstances, to effectively bring an incident or person under control, while protecting the lives of the member or others.

## III.   DEFINITIONS

When used in this directive, the following terms shall have the meanings designated:

   1.   **Use of Force** – any physical coercion used to effect, influence or persuade an individual to comply with an order from an officer. The term shall not include unresisted handcuffing or hand control procedures that do not result in injury.



2.  **Serious Use of Force** – lethal and less-than-lethal actions by MPD officers including:

    a.  **All** firearm discharges by an MPD officer with the exception of range and training incidents and discharges at animals;

    b.  All uses of force **by** an MPD officer resulting in a broken bone or an injury requiring hospitalization;

    c.  All head strikes with an impact weapon;

    d.  All uses of force by an MPD officer resulting in a loss of consciousness, or that create a substantial risk of death, serious disfigurement, disability or impairment of the functioning of any body part or organ;

    e.  All other uses of force by an MPD officer resulting in a death; and

    f.  All incidents where a person receives a bite from an MPD canine.

3.  **Serious Physical Injury** – any injury that results in hospitalization and that creates a substantial risk of death, serious disfigurement, disability or protracted loss or impairment of the functioning of any body part or organ.

4.  **In-Custody Death** – Any death of a person while that person is in the custody of the Department.

5.  **Police Powers** – the authority granted to a sworn police officer by the Metropolitan Police Department in accordance with applicable law to enforce the law, make arrests, and carry and/or use authorized service weapons.

6.  **Duty Status** – the designation of a police authority category granted by the Department to a member as it relates to the permission and ability to engage in the full spectrum of authorized policing duties.

## IV. RULES

A.  The Department has the sole right, authority, and complete discretion to determine the duty status of a member. The duty-status decision made by the Department will consider recommendations made by the Medical Services Division, the Office of Professional Responsibility, and any Department recognized support professional (i.e.: MPEAP, Psychologist, etc). The Department's duty-status decision shall not be subject to the contractual grievance procedure or any other appeal.

B.    The decision to place a member in a duty status at any time does not
preclude the Department from conducting an administrative investigation,
which may result in Adverse Action.

## V.    REGULATIONS

### Duty Status

When a member is involved in a serious Use-of-Force incident, involved in
an incident where a person dies in police custody, or where the actions of the
member results in, or is alleged to have resulted in, serious physical injury or
death, the member shall be placed in an Administrative Leave with Pay
status for three (3) business days.  Within this period, the Department shall
determine a duty status as described below;

1.    <u>Full-Duty Status</u> − Member retains police powers and performs all
functions

2.    <u>Administrative Leave with Pay Status</u> − Member retains police powers,
but will not report to their duty assignment.

3.    <u>Non-Field Status (full duty)</u> − Member retains police powers, but is
temporarily assigned to non-field duties.

4.    <u>Revoked Status</u> − Member has police powers revoked, and is not
authorized to carry a firearm.  Members in this status may be required
to report to a duty assignment, but will have restricted contact with
members of the public. (Members shall surrender their weapons as
described in G.O. RAR-901.01 [Handling of Service Weapons]).

## Vi.    PROCEDURAL GUIDELINES

### A.    Duty Status Determination Following a Serious Use *of* Force

1.    Immediately following a Serious Use of Force incident in which a serious
injury occurs, or an incident in which a person dies in police custody, the
Element Commander or Director (or the highest ranking official on the
scene from the involved officer's element) shall caused the involved
member to be relieved of his or her normal policing responsibilities.
(CALEA 1.3.8)  The member shall be placed on Administrative Leave with
Pay for three (3) business days.

2.    Within three (3) business days, the Assistant Chief of Police, Office of
Professional Responsibility, or his designee, shall make a determination
as to the permanent duty status of a member.

3.    The Assistant Chief of Police, Office of Professional Responsibility, may
change the duty status of any member involved in a serious use of force
incident as the force investigation progresses and new information is
revealed.

FORCE-RELATED DUTY STATUS DETERMINATION (GO – RAR – 901.11)

**B.    Duty Status Determination Following All Other Use of-Force Incidents**

The appropriate Organizational Element Commander or Director shall make a duty status recommendation for a member not involved in a serious use of force. However, the final decision as to the duty status of a member shall be made by the involved officer's Commanding Officer in conjunction with executive police management.

**C.    Duty Status Determinations Made by the Medical Services Division**

Any duty-status decision noted above does not preclude the Medical Services Division from placing a member in a Sick Leave status as a result of a post-Serious-Use-of-Force incident.

**VII.    CROSS REFERENCES**

**A.    Related Directives**

1. ▮ GO RAR-901.01 (Handling of Service Weapons)
2. GO RAR-901.07 (Use of Force)
3. GO RAR-901.08 (Use of Force Investigations)

**B.    Laws and Regulations**

1. D.C. Code §4-176 (Use of Wanton or Unnecessary Force)
2. D.C. Municipal Regulations, Title 6A, Section 207 (Use of Firearms and Other Weapons)

**C.    Other**

1. ▮ CALEA Standards Section 1.3 (Use of Force)
2. IACP Model Policy (Use of Force)

Charles H. Ramsey

Chief of Police

CHR: NMJ:JAE:MAR:AFA:afa

# GENERAL ORDER



| | |
|---|---|
| **Title** | **Use of Force** |
| **Series / Number** | **GO – RAR – 901.07** |
| **Effective Date** October 7, 2002 | **Distribution** B |

**Replaces / Rescinds**
General Order 901.7 (Use of Force)
related to
   general Order RAR-909.08
     (Use of Force investigations
   General Order RAR-901.09
     (Use of Force Review Board)

## DISTRICT OF COLUMBIA

I. Background ........................... Page 1
II. Policy.. ................................. Page 2
III. Definitions,, ......................... Page 2
IV. Rules ................................... Page 4

V. Regulations ...................... Page 5
VI. precedural guidelines.........Page 9
VII. Cross References.. .............Page 10

## I.  Background

The legal limitations on the use of force by District of Columbia law enforcement officers are expressed in D.C. Code § 4-176 (Use of Wanton or Unnecessary Force) and in District of Columbia Municipal Regulations (DCMR), Title 6A, Section 207 (Use of Firearms and Other Weapons).

6A OCMR Section 207.1 provides, among other things, that *a* member is allowed to "use only the minimum amount of force, which is consistent with the accomplishment of his or her mission, and shall exhaust every other reasonable means of apprehension or defense before resorting to the use of firearms."

6A DCMR section 207.2, provides, among other things, that no member shall discharge a firearm in the performance of police duties except to "defend himself or herself or herself or another from an attack which the officer has reasonable cause to believe could result *in* death or serious bodily injury"; or to "effect the arrest or to prevent the escape, when every other means of effecting the arrest or preventing the escape, has been exhausted, of a person who has committed a felony or has attempted to commit a felony . . . Provided, that the felony for which the arrest is sought involved an actual or threatened attack which the officer has reasonable cause to believe could result in death or serious bodily injury; and provided further, that the lives of innocent persons will not be endangered if the officer uses his or her firearm r . . ."

The Fourth Amendment of the U.S. Constitution guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person   The Supreme Court has stated that the Fourth Amendment reasonableness inquiry is whether the officers' actions are "Objectively reasonable in light of the fa&   and circumstances confronting them, without regard to their underlying intent or

motivation. The "reasonableness" of a particular use of force must be judge~from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation. (Graham v. Connor, 490 U.S. 386, 396-397 **[1989]**

With respect to the us0 of deadly force, the Supreme Court in *Tennessee v. Garner,* **471** U.S. **1,11-12,** held that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens an officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." (CALEA 1.3.2)

II.    **POLICY**

The policy of the Metropolitan Police Department is to value and preserve human life when using lawful authority to use force. Therefore, officers of the Metropolitan Police Department shall use the minimum amount of force that the **objectively** reasonable officer would use in light of the **circumstances to** effectively bring an incident or person under control, while protecting the lives of the member or others. **(CALEA 1.3.1**

III.    **DEFINITIONS**

When used in this directive, the **following** terms shall have the meanings designated:

A.    Deadly **Force** – any use of force likely to cause death or serious physical injury, including but not limited to the use of a firearm or a strike to the head with a hard object.

B.    **Non-Deadly** Force – any use of force that is neither likely nor intended to cause death or serious physical injury.

C.    **Serious Use of Force** – lethal and less-than-lethal actions by MPD officers including:

    1.    all firearm discharges by an MPD officer with the exception of range and training incidents and discharges at animals;

    2.    all uses of force by an MPD officer resulting in a broken bone or an injury requiring hospitalization;

    3.    all head strikes with an impact weapon;

4.      all uses of force by an MPD officer resulting in a loss of consciousness, or that create a substantial risk of death, serious disfigurement, disability or impairment of the functioning of any body part or organ;

5.      all other uses of force by an MPD officer resulting in a death; and

6.      all incidents where a person receives a bite from an MPD canine.

D.      **Use of Force** – any physical contact used to effect, influence or persuade an individual to comply with an order from an officer. The term shall not include unresisted handcuffing or hand control procedures that do not result in injury.

E.      **Use of Force Indicating Potential Criminal Conduct** by a Member – includes, but is not limited to, all strikes, blows, kicks or other similar uses of force against a handcuffed subject and all accusations or complaints of excessive force made against the member.

F.      **Serious Physical Injury** – any injury that results in hospitalization and that creates a substantial risk of death, serious disfigurement, disability or protracted loss or impairment of the functioning of any body part or organ.

G.      **Less-Than-Lethal Weapons** – any object or device deployed with the intent or purpose of eliminating a threat without causing death. These include, but are not limited to, a 37 mm gas gun containing a cloth bag filled with small lead shot pellets, rubber bullets, batons, OC Spray, A.S.P. (Armament System Procedures) tactical batons.

H.      **Use of Force Continuum** – a training model/philosophy that supports the progressive and reasonable escalation and de-escalation of member-applied force in proportional response to the actions and level of resistance offered by a subject. The level of response is based upon the situation encountered at the scene and the actions of the subject in response to the member's commands. Such response may progress from the member's actual physical presence at the scene to the application of deadly force.

I.      **objective Reasonableness** – Reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene in light of the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation.

USE OF FORCE *(G0 _RAR - 901.07)*

## IV.    RULES

**A.**    No member of the Metropolitan Police Department shall discharge his/her
firearm under the fallowing circumstances:

     1.    As a warning.  (CALEA 1.3.3)

     2.    Into a crowd,

     3.    At or from a moving vehicle, unless deadly force is being used or threat-
ened **against** the member or another, situations where a moving vehicle
itself constitutes the use of deadly force, such as when a subject
intentionally tries to run an officer down with his or her vehicle.  in those
instances, an officer's use of deadly force may be reasonable and
**justifiable.**  However, members **shall,** as a **rule,** avoid tactics that could
place them in a position where a vehicle could be used against them.
**(CALEA 1.3.4)**

     4.    In a felony case which does not involve an **actual** attack, **but** involves
a threatened **attack,** unless the member has reasonable **cause** to
believe the threatened **attack** is imminent and **could** result in death or
**serious** bodily injury. (CALEA **1**3.2)

     *5.*    In any misdemeanor offense, unless under exceptional circumstances.

     *6.*    Solely to **protect** property interests.

     7.    To stop an individual on mere suspicion of a crime simply because the
individual runs away.

**B.**    No member shall draw and point a **firearm** at or in the direction of a person
unless there is a **reasonable** perception of a substantial risk that the **situation**
may **escalate** to the point where lethal force would be **permitted** When it is
**determined** that the use of lethal force is not necessary, as **soon** as
practicable, firearms **shall be** secured or holstered.

**C.**    when feasible, members **shall** identify themselves as a police **officer** and
**issue** a warning before discharging a firearm.

**D.**    No member of the Metropolitan Police Department, in the normal exercise of
his or her responsibilities, shall **carry use or** discharge any firearm or other
weapon, except those **issued or** approved far use by the Metropolitan **Police**
Department under direction of the Chief of Police. **(CALEA** **1**3.9)

**E.**    **No member** of the Metropolitan **police** Department shall carry use, or
discharge any unauthorized ammunition in their issued **service** weapons,
Members are prohibited from obtaining service ammunition from any source
except through official **departmental** channels. **members** are further **required**
**to carry** only the **requisite amount of service** ammunition as applicable to the
authorized **service** weapon they **are** utilizing. (CALEA 1.3.9)

USE OF force *(00-* RAR - 901.07)

**F.**     Any excessive force by a member will subject him or her to disciplinary action and possible criminal prosecution or civil liability.

**G.**     Any violation of these **rules** will subject members to disciplinary action.


## V.     REGULATIONS

When force is necessary, District of Columbia regulations require members to **use the** minimum **level** of force that is necessary **to** accomplish a police mission, **(CALEA 1.3.1)** Members are not required to start at the lowest level of the options listed in the Use of Force Continuum. Members should **select** the appropriate level of **force** based on **what** a reasonable member and **the** circumstances require **(See** attached Use of Force Continuum chart).

### A.     Prompt Medical Attention

When any level of force is used, there **shall** be a visual and **verbal** check of the subject to ascertain whether the subject is in **need** of medical care. Medical assistance shall be summoned immediately if a person is physically injured in any way, complains of pain, or demonstrates life-threatening symptoms. (CALEA **1.3.5**)

### B.     Us0 of Farce Continuum (CALEA 1.2.7)

In determining what level of force to use, **it** is important to consider **the** seriousness of the **crime,** the level of threat or resistance presented by the suspect, the imminence of danger, and **the** suspect's mental capacity. Only the minimum **level** of force needed to obtain control that the objectively **reasonable** officer would use in light of the circumstances **shall** be used.

All members who encounter a situation where the possibility of **violence** or resistance to lawful arrest is present should, **if** possible, **defuse** the *situation* through advice, warning and **verbal** persuasion.

In the event that a situation escalates beyond **the** affective use of **verbal** diffusion techniques, **members** are authorized to employ Department-**approved** compliance techniques and Department-issued defensive weapons.

**1.**     The Department recognizes and employs the Use of **Force** continuum  members in response **to** resistant or dangerous individuals may apply escalating options of force (see Use of Farce **continuum** Chart **attached** The options include:

**a,**     cooperative Controls, such as verbal persuasion;

**b.**     contact Controls, such as hand control **procedures,** firm grip, escort and control holds

c.    ____ **Techniques**, such as Ole    Capsicum (OC)
ray (r        il )

d.    <u>Defensive Tactics</u>, such as less-than-lethal weapons including impact weapons, such as a baton, or ASP, and including less-than lethal projectiles used by the Emergency Response Team and during times of civil disobedience (e.g., 12 gauge shotgun, 37mm gas guns, and rubber bullets), and canines.

e.    <u>deadly Force</u> (including **deadly** applications of less-than-lethal weapons).

2.    **The patrol supervisor,** if present where there is a violent or resisting subject, shall direct and control all activity.

3.    **Members** shall modify their level of force in relation to the amount of resistance offered by a subject. As the **subject** offers **less** resistance, the member shall **lower** the amount or type of force used. **Conversely,** if resistance escalates, **members are** authorized to respond in an objectively reasonable manner. (CALEA 13.1)

4.    Issued defensive weapons may be employed in response to the threat level recognized by an **objectively** reasonable police member in the circumstances as necessary to protect himself/herself or another from physical harm, to restrain or subdue a resistant individual, and to bring an unlawful situation **safely** and effectively under control.

C.    **Authorized Use of Non-Deadly Force** (CALEA 1.3.4)

1.    When using force, members must **be able** to articulate the facts and circumstances surrounding the force used in **any** given situation.

2.    Only **objectively** reasonable force may **be used** to **respond** to **threats** or resistance in every situation.

3.    A member's decision **to** use non-deadly force **must involve one** or more of the **following:**

a.    **To** protect life **or** property.

b.    **To make a lawful arrest.**

c.    **to** prevent the **escape** of a **person in custody.**

d.    To control a **situation** and/or subdue and **restrain** a resisting individual.

USE OF FORCE (GO – RAR – 901.07)

4.    A member shall use only that option of force on the Department's USE of Force Continuum that is reasonably necessary to bring the situation under control. if de-escalation does not work, the member may us0 an increasing level of farce to overcome the level of resistance. As soon as the incident is under control the member's use of force should diminish proportionally. (CALEA 1.3.1)

**D.    Authorized Use of Deadly Force** (CALEA 1.3.2)

1.    <u>defense of Life</u>

a.    Members of the Metropolitan Police Department may use deadly force in the performance of police duties:

(1)    When it is necessary and objectively reasonable AND,

(2)    To defend himself/herself or another from an actual or threatened attack that is imminent and could result in death or serious bodily injury.

b.    Members shall not draw and point a firearm at or in the direction of a person unless the officer has an objectively reasonable perception of a substantial risk that the situation may escalate to the point where lethal force would be permitted. When it is determined that the use of lethal farce is not necessary, as soon as practicable, firearms shall be secured or re-holstered.

2.    <u>Fleeing Felon</u>

Members may use deadly force to apprehend a fleeing felon ONLY when every other reasonable means of affecting the arrest or preventing the escape has been exhausted AND,

a    The suspect fleeing poses an immediate threat of death or serious bodily harm to the member or others; OR (CALEA 1.3.2)

b.    there is probable cause to believe the crime committed or attempted was a felony, which involved an actual or threatened attack which could result in death or serious bodily harm; AND

(1)    there is probable cause to believfe the person fleeing committed or attempted to commit the crime, AND

(2)    Failure to immediately apprehend the parson plaqces a member or the public in immediate danger of death or serious bodily injury; AND

(3)    The lives of innocent persons will not be endangered if deadly force is used.

USE OF FORCE (GO   RAR – *901.07*

3.   Warning to Subject

When feasible, **members shall identify themselves as police** officers and issue a warning **before** discharging a **firearm.**

E.   **Leas-Than-Lethal Projectiles** (CALEA 13.4)

1.   The objective of **less-than-lethal** projectiles is to save human live

2.   Consistent with the Department's philosophy of using only the minimum **amount** afforce **necessary** to control or **subdue** potentially violent subjects, less-than-lethal **projectiles** may **be** used only by authorized members with **appropriate** specialized training.

3.   During instances of civil disobedience, **less-than-lethal** weapons may only be used to **subdue or** incapacitate a subject to prevent imminent physical harm to **the officer or** another person and **shall** be used only at the direction of the official in charge of the scene.  **all** other use, by any other member, is strictly prohibited.

F.   Prohibitions

1.   **No** member shall carry any Department-issued weapon prior to **successfully** completing Department-approved training courses directed by the Chief of Police. (CALEA **13.10**)

2.   Under no circumstances **shall** a member carry or use blackjacks, saps, nunchakus, kempo sticks, brass knuckles, or weighted gloves or other unauthorized weapons.

3.   Members **shall** not employ any form of neck restraint except when an imminent threat of **death or** serious physical injury exists, and no **other** option is **available.**

4.   Whenever it becomes necessary to take a violent or resisting subject into custody, **the** responding member shall utilize appropriate tactics **in** a coordinated effort to overcome resistance.

5.   **Members** shall avoid **the use of** flashlights, radios or any **iems** not issued specifically as **a defensive weapon as a means** of force, **except when an imminent threat of death** or serious **physical injury exists, and** no **other option is available.**

G.   **Positional Asphyxia Precautions**

When **necessary** to restrain subjects, members shall:

1.   **Make every effort (whenever possible) to avoid tactics, which** may **impede a subject's** ability to **breathe** which may result in chest **or throat compressions or airway blockage.**

PD Form 901hc (9-02)

# Use *of* Force **Incident** Report

report ID _____                          Date: _____

## REPORTING person

| OFFICER | SUBJECT | | EYE WITNESS | | THIRD PARTY | |
|---|---|---|---|---|---|---|
| LAST: | FIRST: | | MIDDLE: | | | CAD#: |
| ADDRESS: | | CITY: | | STATE: | | ZIP: |
| PHONE(H): | EMPLOYMENT/SCHOOL: | | | PHONE(W): | | |
| DOB: | SEX: | RACE: | | HEIGHT: | | WEIGHT: |
| PERSON NOTIFIED: | | RANK: | CAD#: | DATE / TIME NOTIFIED: | | |
| FIT NOTIFIED: | | TIME NOTIFIED: | | FIT INVESTIGATOR: | | CAD#: |

## EVENT INFORMATION

| CCN: | | TOTAL # of OFFICERS USING FORCE: | | TOTAL # of SUBJECTS: | |
|---|---|---|---|---|---|
| REPORT TAKEN BY: | | | CAD#: | | |
| REPORT TAKEN ON SCENE? Yes No | REPORT DATE / TIME: | | INCIDENT DATE / TIME: | | |
| OTHER JURISDICTION? Yes No | INCIDENT LOCATION: | | | DISTRICT: | PSA |
| 1st MEMBER ON SCENE: | | | CAD#: | RADIO ASSIGNMENT? Yes No | |
| WEATHER: | | GROUND: | | LIGHTING: | |

********************* LOCATION TYPE *********************

| | | | |
|---|---|---|---|
| Air/Bus/Train Terminal | Alley | Bank/Savings & Loan | Bus Stop | Church/Synagogue/Temple |
| College/University | Commercial Office Bldg | Construction Site | Convenience Store | Department/Discount Store |
| DC Government Bldg | Doctor Office/Hospital | Drug Store | Federal/Government Bldg | Fields/Woods |
| Grocery/Supermarket | Hotel/Motel | Jail/Prison | Lake/Waterway | Liquor Store |
| ..rk Area | Parking lot/garage | Public Housing Project | School | Rental Storage Facility |
| ...idence/Home | Restaurant | Service Station | Sidewalk | Specialty Store |
| Street/Highway/Road | Tavern/Night Club | Other | N/A | Unknown |

********************* DESIGNATED AREAS *********************

| | | | | |
|---|---|---|---|---|
| Victim's Vehicle | Suspect's Vehicle | Taxi-Cab | Bus | Train/Metro/Amtrak/Etc. |
| Hallway | Elevator | Stairwell | Basement/Laundry Room | Apartment/Condo Unit |
| Single Family Dwelling | Hotel/Motel Room | College/Univeristy Dorm | Classroom | Office Room |
| Vacant Bldg/Room | Customer Area | Storage Area | In Public Housing | Within 1 block of Public Housing |
| Within 1000ft of School | N/A | Unknown | Other: | |

## REVIEW INFORMATION

| SUPERVISOR SIGNATURE: | | CAD#: | ELEMENT: | DATE: |
|---|---|---|---|---|
| FINDING: | | RECOMMENDATION: | | |
| REASON: | | | | |
| COMMANDER SIGNATURE: | | CAD#: | ELEMENT: | DATE: |
| FINDING: | | RECOMMENDATION: | | |
| REASON: | | | | |
| ROC SIGNATURE: | | CAD#: | ELEMENT: | DATE: |
| FINDING: | | RECOMMENDATION: | | |
| REASON: | | | | |
| CASE STATUS: OPEN CLOSED | REASON: | | | |

## OFFICER INFORMATION

| NUMBER OF OFFICERS USING FORCE: | | CS#: | | |
|---|---|---|---|---|
| LAST: | FIRST: | | MIDDLE: | |
| CAD#: | RANK: | ELEMENT: | ASSIGNMENT: | PSA: |
| SUPERVISOR: | | CAD#: | DISTRICT: | DATE NOTIFIED: |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |
| APPOINTMENT DATE: | | | DUTY STATUS: On  Off | |
| UNIFORM: Full / Partial / Plain Clothes | | | OFFICER INJURED? Yes  No | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* DESCRIBE OFFICER INJURIES (Check all that apply) \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASION | BURNING |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| LACERATION | DIFFICULT BREATHING |
| STAB WOUND | NUMBNESS |
| UNCONSCIOUS | NONE |
| NONE | |
| PHOTOS TAKEN:  Yes  No | |

## OFFICER INFORMATION

| NUMBER OF OFFICERS USING FORCE: | | |
|---|---|---|
| LAST: | FIRST: | MIDDLE: |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* TYPE OF FORCE USED \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | FIREARM | |
|---|---|---|---|
| HANDS | ASP-CONTROL | | |
| FEET-KICK | ASP-STRIKE | POINTED AT PERSON | DISCHARGED |
| FIRM GRIP | STUNGUN (ERT) | # OF SHOTS: | |
| CONTROL HOLDS | TASERS (ERT) | FIREARM TYPE | |
| JOINT LOCKS | BEANBAGS (ERT) | HANDGUN | SHOTGUN |
| PRESSURE POINTS | STUNBAGS (ERT) | RIFLE (ERT) | AUTOMATIC WEAPON (ERT) |
| FIST | FLASHBANGS (ERT) | OTHER | |
| TAKEDOWN – SOLO | STINGBALL | MOUNTAIN BIKE SLIDE STRIKE/TAKEDOWN (CERTIFIED) | |
| TAKEDOWN – TEAM | CS CHEMICAL AGENT (CDU) | CANINE | |
| OC AEROSOLE | BATON-CONTROL (CDU) | OTHER FORCED USED: | |
| | BATON-STRIKE (CDU) | | |
| WAS FIRST AID RENDERED? Yes  No | | | |
| NON-ISSUED WEAPON USED: | QUALIFIED IN WEAPON USE: | DATE CERTIFIED: | |

Attachment A — General Order RAR - 901.07 (Use of Force)



USE OF FORCE  *(GO – RAR – 901.07)*

2.    position the individual in a manner to allow free breathing, once he or she has been controlled and placed under custodial restraint using handcuffs and other authorized methods. The subject shall not be maintained or transported in a face down position

3.    Seek medical assistance immediately if a person appears to be having difficulty breathing or is otherwise demonstrating life-threatening symptoms (such as positional asphyxia). The patrol supervisor shall direct that alternative means to maintain custody be utilized, if appropriate.

4.    The unauthorized use of restraints and the transportation of subjects in a face down position within any vehicle are prohibited.

## VI.    PROCEDURAL GUIDELINES

Notification and Reporting of a Use of Force Incident

1.    **Incidents To Be Reported**

The Use of Force Incident Report (PD Form 901-e) shall be completed in all of the following situations:  (CALEA 13.6)

a.    all Use of Force incidents (except Cooperative or Contact Controls, e.g. mere presence, verbal commands or submissive handcuffing, unless there has bean a resulting injury or the subject complains of pain following the use of Cooperative or Contact Controls);

b.    any time when an officer is in receipt of an allegation of excessive us0 of force; or

c.    whenever a member draw3 and points a firearm at or in the direction of another person.

2.    **Member responsibilities**

Members shall notify their supervisor and complete a PD Farm 901-e (Use of force Incident Report) *immediately* following any use of farce, receipt of an allegation of excessive force, or immediately following the drawing of and pointing a firearm at or in the direction of another person.

3.    **Supervisor Responsibilities**

When a Member has declined to complete the Use of Force Incident Report immediately following an incident, the supervisor shall compel the Member to complete the report following a declination by the U. S. Attorney's office and/or issuance of an authorized Reverse-Garrity warning.

USE OF FORCE  *(GO– RAR – 901.07)*

VII.  **CROSS REFERENCES**

A.  **Related** Directives

1.  GO OPS-301.03 (Operation of Emergency Vehicles, Fresh Pursuit and Vehicular Pursuit)
2.  GO OPS-304.10 (Police-Citizen Contacts, Stops and Frisks)
3.  GO RAR-306.01 (Canine Teams)
4.  GO RAR-901.01 (Handling of Service Weapons)
5.  GO RAR-901.04 (Oleoresin Capsicum Spray Dispensers)
6.  GO-RAR-901.08 (Use of Force Investigations)
7.  GO RAR-901.09 (Use of Force Review board)

B.  **Court Opinions**

1.  Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)
2.  Graham v. Connor, 490 U.S. 386 (1989), 104 L. Ed 2d 443, 447
3.  Saucier v. Katz, 533 U.S. 194 (June 18, 2001)

C.  **Laws and Regulations**

1.  D.C. Code §4-176 (Use of Wanton or Unnecessary Force)
2.  D.C. Municipal Regulations, Title 6A, Section 207 (Use of Firearms and Other Weapons)

D.  **Other**

1.  CALEA Standards Section 1.3 (Use of Force)
2.  IACP Model Policy (Use of Force)

E.  **Related Form**

1.  PD Form 901-e (Use of Force Incident Report) [electronic version]
2.  PD Form 901-hc (Use of Force Incident Report) [interim hard-copy version]

Charles H. Ramsey
Chief of Police

Attachment:  Use of Force Continuum Chart
PD Form 901-hc (Use of Force Incident Report) [interim hard-copy version]

CHR:MMJ:JAE:MAR:AFA:afa

## subject INFORMATION

| # of SUBJECTS: | | | | |
|---|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | | SSN: |
| ADDRESS: | CITY: | STATE: | | ZIP: |
| ONE (H): | EMPLOYMENT/SCHOOL: | | CERTIFIED: | |
| B: | SEX: | RACE: | HEIGHT: | WEIGHT: |

### *********** SUBJECT ACTION ***********

| COMPLIANT | ASSAULTIVE (PHYSICAL INJURY) |
|---|---|
| RESISTANT (PASSIVE) | ASSAULTIVE (SERIOUS PHYSICAL INJURY / DEATH) |
| RESISTANT (ACTIVE) | |

### *********** SUBJECT ACTIVITY ***********

| ASSAULT ON POLICE | DISORDERLY CONDUCT | HOSTAGE | DANGEROUS ANIMAL |
|---|---|---|---|
| ATTEMPT ARREST | DEMONSTRATION | LANDLORD / TENANT DISPUTE | ROBBERY |
| ADW | DEFENDING AND ASSAULT | SUICIDE ATTEMPT | BURGLARY |
| ALCOHOL | DOMESTIC VIOLENCE | TRANSPORTING | FOOT PURSUIT |
| BARRICADE | DRUGS | TRAFFIC STOP | VEHICLE PURSUIT |
| CROWD CONTROL | DUI | SUSPICIOUS SITUATION | OTHER |

## WEAPON INFORMATION

| WEAPON: Yes No | FIREARM Type: | BLUNT WEAPON Type: | EDGED WEAPON Type: | OTHER WEAPON Type: |
|---|---|---|---|---|
| DISCHARGED: Yes No | # SHOTS FIRED: | WEAPON DESCRIPTION: | | |
| WEAPON RECOVERED? Yes No | RECOVERY LOCATION: | | | |
| SUBJECT INTERVIEWED? Yes No | INTERVIEW DATE / TIME: | | RECORDED: Yes No | |
| SUBJECT INJURED Yes No | IMPAIRMENT: | DESCRIBE INJURIES: | | |
| HOSPITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | | DATE / TIME TAKEN: | |
| KEN BY AMBULANCE? Yes No | AMBULANCE #: | MEDIC #: | HOSPITAL STATUS: | |
| ORT PROVIDED? Yes No | PHYSICIAN NAME: | | Admitted / Released / NA | PHOTOS TAKEN? Yes No |
| ARREST DATE / TIME: | | | PDID: | |
| CHARGES: | | | | |

## OFFICERS AT scene

| # OFFICERS AT SCENE: | AGENCY(IES) (NON-MPD): | | |
|---|---|---|---|
| COMMANDING OFFICIAL: | | CAD#: | DISTRICT ASSIGNMENT: |
| LAST: | FIRST: | MIDDLE: | |
| RANK: | CAD#: | DISTRICT: | PSA: |
| DUTY STATUS? On Off | PDID? Yes No | INTERVIEW DATE / TIME: | RECORDED INTERVIEW? Yes No |
| TECHNICIAN NAME: | | CAD#: | |

## WITNESS INFORMATION

| # OF WITNESSES: | | | |
|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | |
| ADDRESS: | CITY: | STATE: | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | | |
| DOB: | SEX: | RACE: | LOCAL CANVASS? Yes No |
| PDID? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No |

## PROPERTY INFORMATION

| PROPERTIES: | | |
|---|---|---|
| Property #: | WAS PROPERTY DAMAGED FROM USE OF FORCE? Yes No | ESTIMATED VALUE: $ |
| PROPERTY TYPE: | DESCRIPTION | |

## NARRATIVE

# BODY DIAGRAM

Report ID: _____                              Date: _____

CS#: _____          CCN: _____       PDXD: _____

Body Diagram is:   **Officer**        Officer #: _____          CAD#: _____
                   **Subject**        Subject #: _____

Last Name: _____    First Name: _____    Middle Name: _____



| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASIONS | BURNING |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| GUN SHOT WOUND | DIFFICULTY BREATHING |
| LACERATION(s) | NUMBNESS |
| STAB WOUND | NONE |
| UNCONSCIOUS | |
| NONE | |

HOSPITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | DATE / TIME TAKEN:
_EN BY AMBULANCE? Yes No | AMBULANCE #: | MEDIC #: | HOSPITAL STATUS:
_RT PROVIDED? Yes No | PHYSICIAN NAME: | Admitted / Released / NA | PHOTOS TAKEN? Yes No