IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIGEL AUSTIN | : |
| Plaintiff, | : |
| v. | : CASE No. 1:05-CV-02219 (JDB) |
| THE DISTRICT OF COLUMBIA, et al. | : |
| Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THOMAS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

I.

**Statement of Facts**

In August 2005 the Plaintiff Nigel Austin (Austin) was involved in a neighborhood altercation. Austin swung a golf club at his neighbor, but missed. Ultimately, Austin threw a brick and struck his neighbor in the head. (Exhibit 1, Austin Deposition, p. 46.). Within days, the Metropolitan police arrested Austin who was charged with assault with a deadly weapon. Austin pled to attempted aggravated assault while armed and received 18 months probation. (Exhibit 1, Austin Deposition, pp. 40 & 47).

On August 25, 2005, at approximately 1:45 p.m. the Defendant Don Thomas (Thomas) was processing Austin in the Central Cell block which was under-staffed at the time. (Plaintiff's Complaint; Exhibit 2, Bradley Deposition, pp. 112-113; Exhibit 3, Thomas Deposition, pp. 47-48, 55). Just before the occurrence, Austin had learned that he would be spending the night in jail because he was too late for a court appearance that day. Austin began

shouting "take me back to my mother fucking cell" and started to repeatedly step out of a interview room (Exhibit 1, Austin Deposition, pp.151-152 & Exhibit 3, Thomas Deposition, p. 78 ). At one point Austin stepped out of the interview room again, and started to move right towards the exit, leading Thomas to believe that Austin was trying to escape. (Exhibit 3, Thomas Deposition, pp. 78-86, 91-94). Thomas followed Austin and grabbed his arm. (Exhibit 3, Thomas Deposition, pp. 94-95). Austin then swung at Thomas who swung back, in self defense, striking Austin in the face. (Exhibit 3, Thomas Deposition, pp. 97, 101, & 102).

Soon thereafter, once Austin was secured, Thomas advised his acting watch commander that Austin had requested medical transport. The watch commander requested medical transport within ten minutes. (Exhibit 3, Thomas Deposition, p. 126-127 & Exhibit 4, Hawkins Deposition, pp. 32). The commanding officer had to recall transport who did not arrive at the cell block until approximately 8:00 p.m. (Exhibit 4, Hawkins Deposition, pp. 32-33). Delays in the arrival of the transport were not caused by Thomas who had fulfilled his duty upon notifying his watch commander. (Exhibit 2, Bradley Deposition, p. 155 & Exhibit 5, Mazzei Deposition, pp. 118-121).[1]

While waiting for transport, Austin was placed in a holding cell where he fell asleep for a couple of hours. (Exhibit 1, Austin Deposition, pp. 72-73). Police officers from the Seventh District ultimately arrived and transported Austin to Greater Southeast Community Hospital

---

[1] Experts for both Plaintiff and Defendant agree that the Defendant Thomas had no further duty to request transport after Thomas notified the watch commander who was responsible for procuring the transport.

emergency room. A triage nurse evaluated Austin by 8:30 p.m. (Exhibit 1, Austin Deposition, p. 74 & Exhibit 6). Hospital lab tests of August 26 and 27, 2005, revealed that Austin was positive for marijuana (i.e. tetrahydrocannabinol or "THC"). (Exhibit 7 & Exhibit 1, Austin Deposition, pp. 194-197).

## II.

### As a Matter of Law Defendant Thomas' Alleged Delay of Medical Treatment did not Violate Due Process

In Counts IV and V, the Plaintiff contends that the Defendant Thomas' alleged delay in providing medical treatment was a violation of Due Process under the Fifth Amendment. Plaintiff's contention has no factual basis and is against settled United States Supreme Court authority.

In the pretrial detention setting, actions which are prohibited under the Due Process Clause must be "egregious" and "conscience shocking" or amount to a "punishment". *Bell v. Wolfish*, 441 U.S. 520 (1979); *County of Sacramento v. Lewis*, 523 U.S. 833 (1997). Due Process does not create a "font of tort law" and requires that an action be more than negligence, or even gross negligence in some cases, before it will amount to a constitutional violation. *County of Sacramento v. Lewis*, 523 U.S. at 848-49. The "due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848.

The Defendant Thomas' alleged actions were hardly egregious. As a threshold matter, after the occurrence, Thomas quickly notified his watch commander to request medical

3

transport. At that point, the matter was in control of Thomas's supervisor, and not Thomas, who had a duty to direct the coordination of medical care. (Exhibit 2, Bradley Deposition, p. 155 & Exhibit 5, Mazzei Deposition, pp. 118-121).

Moreover, even if Thomas had any responsibility to expedite the transport of Austin, any transport delay, under the totality of the circumstances, did not amount to "punishment" or "conscience shocking" activity. At the time of the occurrence, the cell block was under-staffed. The watch commander had to repeatedly call for outside transport from the Seventh District. Prior to the arrival of the transport, Austin was stable and not in any medical emergency crisis. In fact, Austin fell asleep for a couple of hours while waiting for the transport. Within approximately six hours after the occurrence, Austin started to receive care at the hospital. While not prompt, any action (or inaction) leading to delays were not, as a matter of law, to the level of "egregious" which is required for a constitutional violation.[2] Accordingly, Plaintiff's constitutional claims in Counts IV and V must be dismissed.

### III.

**Plaintiff's Claims of Delayed Medical Care are Also Barred
Under the Qualified Immunity Doctrine**

Under the doctrine of qualified immunity, officials are "liable for constitutional torts only

---

[2]Plaintiff's other contention that Thomas should have rendered first aid (such as providing an ice pack or bandage), or directly call an ambulance (assuming he had authority to do so without watch commander approval), likewise did not amount to "conscience shocking" activity.

4

if the officials knew, or were unreasonable in not knowing, that their behavior violated the Constitution." *Harris v. District of Columbia,* 932 F. 2d 10 (D.C. Cir. 1991). Summary judgment must be granted unless the "unlawfulness of defendant's actions was so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Id.* at 13 *(quoting Martin v. Malhoyt,* 830 F.2d 237 (D.C. Cir. 1987).

Whether a claim is barred by qualified immunity is a preliminary issue of law to be decided by the trial court. *Saucier v. Katz,* 533 U.S. 194 (2001); *Sabir v. District of Columbia,* 755 A.2d 449 (D.C. 2000). The determination involves a two part test as the court in *District of Columbia v. Jackson,* 810 A.2d 388 stated:

> Qualified immunity... requires a two-fold inquiry by the trial court: (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right ... and (2) if so, whether the right was clearly established at the time of the conduct, the dispositive inquiry there being whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

810 A.2d at 394.

For reasons set forth above, Thomas is entitled to immunity. He had communicated to his supervisor who was in charge of the shift and could reasonably expect that his supervisor was in charge of medically managing Austin. Morever, a delay of six hours, where a detainee is not in any acute medical emergency (and asleep), and delays are caused by the failure of outside transport, is not egregious or presents a set of facts where a reasonable officer could

5

only conclude that he was committing an unlawful act.[3]  Counts IV and V must accordingly be dismissed on the basis of qualified immunity.

### V.

### Plaintiff's Negligence Claim Must Fall Because
### Negligent Battery is not a Recognized Cause of Action

It is settled that a Plaintiff cannot transform a claim of battery into negligence by artful pleading. *Hudson v. District of Columbia*, 2005 U.S. Dist Lexis 115050; *Sabir v. District of Columbia*, 755 A.2d 449 (D.C. 2000).  Because Plaintiff's negligence allegations in Count VI do not establish a claim separate and distinct from the alleged battery, Count VI of Plaintiff's complaint must be dismissed.[4]

Wherefore, for the foregoing reasons, the Defendant Thomas requests the Court to dismiss Counts VI, V, and VI of the Plaintiff's complaint.

---

[3] As set forth above, any failure by Thomas to provide an ice pack or bandage or to call for an ambulance directly would also not be sufficient to offset his immunity protection.

[4] For the sake of brevity, the Defendant Thomas adopts the similar arguments of the Defendant District of Columbia set forth in its partial motion for summary judgment.

Respectfully submitted,

*[signature]*

James W. Pressler, Jr. #221051
Patrick G. Senftle #412191

PRESSLER & SENFTLE, P.C.
Three McPherson Square
927 15th Street, N.W.
12th Floor
Washington, D.C. 20005
(202) 822 -8384
(202) 331-7587 (Fax)

Attorney for Defendant Thomas