## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **NIGEL AUSTIN,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) **Case No. 05-2219(JDB)** |
| | ) |
| **v.** | ) |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.** | ) |
| | ) |
| **Defendants.** | ) |
_____)

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
### JUDGMENT AGAINST DEFENDANT DISTRICT OF COLUMBIA

Plaintiff Nigel Austin ("Mr. Austin"), through undersigned counsel, moves this

Court for an Order pursuant to Federal Rules of Civil Procedure Rule 56, for partial

summary judgment (liability) on a portion of Plaintiff's negligence claim (Count VI)

against Defendant District of Columbia ("District").  As discussed more fully in the

accompanying memorandum of points and authorities, Plaintiff is entitled to an Order of

summary judgment on his claim that Defendant District breached its standard of care its

unreasonable delay in obtaining medical treatment for Plaintiff.  The undisputed facts

show that (1) Defendant District had a clear duty to obtain immediate medical treatment

for an injured prisoner; (2) after being struck by Defendant Officer Thomas, Plaintiff

stated that his jaw was broken, complained of pain, repeatedly requested medical

attention, and was visibly bleeding; (3)  Defendant District failed to immediately obtain

medical treatment for Plaintiff, choosing instead to leave him bleeding and handcuffed in

multiple holding cells for anywhere between three to eight hours; and (4) Defendant

District's *very own expert witness repeatedly agreed at his deposition that Defendant*

*District's delay in transporting Plaintiff to the hospital for medical treatment was a*

*breach of the standard of care.*

Plaintiff's supporting Memorandum, Statement of Material Facts not in Genuine

Dispute, and a proposed Order are filed herewith.

Respectfully submitted,

NIGEL AUSTIN

By:    <u>Peter C. Grenier /s/</u>
          Peter C. Grenier (D.C. Bar No. 418570)
          Bode & Grenier, L.L.P.
          1150 Connecticut Avenue, N.W.
          Ninth Floor
          Washington, D.C.  20036
          (202) 828-4100
          (202) 828-4130 (fax)
          *Counsel for Plaintiff*

Dated: March 9, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of March 2007, I served a true and accurate copy of the foregoing Plaintiff's Cross-Motion for Partial Summary Judgment Against Defendant District of Columbia, including all exhibits and attachments, by electronic case filing and U.S. Mail, postage-prepaid upon:

      Philip Lattimore III, Esquire
      Chief, General Litigation Sec. III
      Steven J. Anderson, Esquire
      Assistant General Counsel
      441 4th Street, N.W.
      6th Floor North
      Washington, DC 20001
      *Attorney for Defendant District of Columbia*

      James Pressler, Esquire
      PRESSLER & SENFTLE, P.C.
      927 15th Street, N.W.
      Twelfth Floor
      Washington, D.C. 20005
      *Counsel for Defendant*
      *Officer Don Thomas*

                                     *Peter C. Grenier /s/*
                                        Peter C. Grenier

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

NIGEL AUSTIN                                  )
                                              )
                                              )
            **Plaintiff,**                    )
                                              )
                                              ) **Civil Action No. 05-02219(JDB)**
      **v.**                                  )
                                              )
**DISTRICT OF COLUMBIA,** *et al.***,**       )
                                              )
            **Defendants.**                   )
_____ )

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Nigel Austin, pursuant to Federal Rules of Civil Procedure Rule 56, requests that this Court grant partial summary judgment as to liability on Plaintiff's negligence claim.

In Count VI of his Complaint, Plaintiff Nigel Austin ("Mr. Austin") alleges that Defendants breached their duty of care by failing to immediately obtain medical treatment for Mr. Austin after he was struck by Defendant Thomas.  As demonstrated below, there are no genuine issues of material fact that: (1) Defendant District of Columbia ("District") had a duty to immediately obtain medical treatment for a prisoner who complained of pain, requested medical treatment, and/or exhibited physical injuries; (2) Mr. Austin was physically injured as a result of the blow by Officer Thomas; (3) immediately following the incident, Mr. Austin complained of pain, requested medical treatment and exhibited physical injuries; and (4) Defendant District failed to immediately obtain medical treatment for Mr. Austin, choosing instead to leave him bleeding in multiple holding cells for anywhere between three to eight hours, before

finally transporting him to the hospital. In fact, Defendant District's breach of the standard of care was so egregious that *its very own expert witness confirmed repeatedly in his deposition that the Metropolitan Police Department's ("MPD") delay in transporting Mr. Austin to the hospital for medical treatment was a breach of the standard of care*.

## FACTUAL BACKGROUND

On or about August 25, 2005, between 9:00 a.m. and 10:00 a.m., Mr. Austin was arrested pursuant to a warrant arising from an altercation between Mr. Austin and his neighbor, which occurred several days prior to his arrest. *See* Deposition Transcript of Nigel Austin at 37, attached hereto as "Exhibit 1." Following his arrest, Mr. Austin was transported to the 7th District Police station where he was processed, fingerprinted, and photographed. *Id*. at 37-38. Mr. Austin was placed in a holding cell for about an hour, and was then transported to the Central Cell Block ("Central Cell") where, as Mr. Austin had been informed by one of his arresting officers and an officer at the 7th District Station, he would be taken to court, arraigned, and released later that same day. *Id*. at 37, 53-54. Mr. Austin arrived at the Central Cell at approximately 12:15 p.m. *See* Arrestee Lockup Sheet, attached hereto as "Exhibit 2." Upon arriving at the Central Cell, Mr. Austin was processed, photographed and fingerprinted for a second time, and placed in a jail cell for approximately ten minutes. *See* Exhibit 1 at 52. Mr. Austin and two other pre-trial detainees who had been transported with Mr. Austin from the 7th District Station to the Central Cell were then taken out of their respective cells, given lunch, and then returned to their cells. *See* Exhibit 1 at 53.

Defendant Don Thomas ("Officer Thomas") was working the 1:00 p.m. to 9:30

p.m. tour of duty at the Central Cell on August 25, 2005.  *See* Deposition of Officer

Thomas at 37-38, attached hereto as "Exhibit 3."  At some point in the early part of his

tour of duty, Officer Thomas retrieved Mr. Austin from his jail cell and brought him to

the processing room for the purpose of putting an armband on Mr. Austin.  *See* Exhibit 1

at 54-55; Exhibit 3 at 47-48.  Once brought to the processing room, the account of the

sequence of events which ultimately resulted in Mr. Austin's injuries are widely

divergent.[1] There is no dispute, however, that the incident  culminated with Officer

---

[1] Mr. Austin states that after being brought to the processing room, he overheard either
Officer Thomas or Officer Rhonda Crowder ("Officer Crowder") (another officer present
in the processing room) inform another pre-trial detainee that they would not be going to
court that day, and would therefore have to spend the night at the Central Cell.  *See*
Exhibit 1 at 55-57.  After learning that he would not be going to court and subsequently
released, on August 25, 2005, Mr. Austin became upset and demanded that he be "take[n]
back to my mother-fucking cell."  *See* Exhibit 1 at 60.  Officer Thomas approached Mr.
Austin and asked him to repeat the statement.  *Id*. at 60.  Mr. Austin repeated the
statement, at which time Officer Thomas struck Mr. Austin in the left side of his face
with a closed fist, causing Mr. Austin to fall down the steps outside of the processing
room.  *Id.* at 63-64.

Officer Thomas offers a drastically different account of how the incident
occurred.  Officer Thomas states that he brought Mr. Austin to the processing room for
the purpose of placing an armband on Mr. Austin.  *See* Exhibit 3 at 48.  After bringing
Mr. Austin to the processing room, he instructed Mr. Austin to sit in the attorney/prisoner
interview room (a small room attached to the processing room).  *Id*. at 66.
Approximately five minutes later, Officer Thomas observed Mr. Austin walking out of
the processing room.  *Id*. at 83.  Officer Thomas immediately moved towards Mr. Austin
to stop him from leaving the room.  *Id*. at 85.  Officer Thomas then grabbed Mr. Austin's
arm to prevent him leaving.  *Id*. at 96.  In response, Mr. Austin turned and swung at
Officer Thomas, and Officer Thomas swung back at Mr. Austin, while simultaneously
grabbing him.  *Id*. at 97, 103-104.  Officer Thomas struck Mr. Austin on the left side of
his face with a closed fist.  *See* Officer Thomas FIT Statement, attached hereto as
"Exhibit 9."

Similarly, Officer Crowder originally stated to the Force Investigation Team
("FIT") investigators assigned to investigate this incident that she observed Mr. Austin
swing at Officer Thomas when Officer Thomas sought prevent Mr. Austin from leaving

Thomas - justified or not justified - striking Mr. Austin on the left side of his face with a closed fist.  After Officer Thomas struck Mr. Austin, Mr. Austin was subdued by at least two MPD officers (Officer Thomas and Officer George Hawkins), and placed in a jail cell with his hands handcuffed behind his back.  *See* Exhibit 1 at 65-66; Exhibit 3 at 118, 122, 129; Exhibit 6 at 102, Deposition of Officer George Hawkins at 22, 28, attached hereto as "Exhibit 7;" Deposition of Lynn Lewis at 19, attached hereto as "Exhibit 8."  In addition, it is undisputed that immediately after the incident, all of the involved MPD officers and employees observed blood on the floor where the incident occurred.  *See* Exhibit 3 at 109, 124; Exhibit 6 at 102; Exhibit 7 at 27; Exhibit 8 at 13.  Additionally, Officer Crowder and Officer Hawkins testified that they observed blood on Mr. Austin's shirt immediately after the incident.  *See* Exhibit 6 at 106; Exhibit 7 at 27.  Officer Hawkins testified that he also saw blood in the cell where Mr. Austin was taken immediately after the incident.  *See* Exhibit 7 at 68.  There have been no allegations, or testimony that indicate that the blood that the MPD officers and employees observed following the incident was anybody's other than Mr. Austin's.

After Officer Thomas struck him, and as soon as he was placed in his jail cell, Mr. Austin immediately and repeatedly complained that his jaw was broken and that he wanted to see a doctor.  *See* Exhibit 1 at 69, 71; Exhibit 7 at 30-31.  After passing out in the jail cell for an extended period of time from blood loss and pain, Mr. Austin was then brought to a second jail cell, where he remained until he was ultimately brought to

---

the processing room, but that she did not see Officer Thomas swing at Mr. Austin, and then observed both Mr. Austin and Officer Thomas fall to ground outside of the processing room.  *See* Preliminary FIT report, attached hereto as "Exhibit 4" and Final FIT report, attached hereto as "Exhibit 5."  However, at her deposition, Officer Crowder repeatedly testified that she did *not* see Mr. Austin swing at Officer Thomas.  *See* Deposition of Officer Crowder at 84-85, 89 attached hereto as "Exhibit 6."

Greater Southeast Community Hospital. *See* Exhibit 1 at 71. Emergency room records from Greater Southeast Community Hospital indicate that Mr. Austin arrived at the hospital at approximately 8:30 p.m., at which time he was diagnosed as sustaining broken jaw. *See* Greater Southeast Community Hospital emergency room records attached hereto as "Exhibit 10."

## *ARGUMENT*

### I.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is upheld on appeal only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1457 (D.C. Cir. 1990) (internal citations and quotations omitted). Additionally, "the party against whom summary judgment was granted has the benefit of all reasonable evidentiary inferences that can be drawn in his favor." *Id*. at 1458; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (U.S. 1986) (holding that at the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial). Plaintiff clearly meets this standard, and, accordingly, should be granted partial summary judgment.

### II.    PLAINTIFF'S AMENDED REQUEST FOR ADMISSIONS ARE DEEMED ADMITTED UNDER RULE 36

As per this Court's Order on January 17, 2007, Plaintiff was instructed to limit the number of his previously served Request for Admissions to 100 requests, and in return, Defendant District was ordered to serve its responses within twenty-one days of service.

*See* January 17, 2007 Order attached hereto as "Exhibit 11." On January 22, 2007,

Plaintiff served his Amended Request for Admissions ("RFAs") on Defendant District

via hand delivery. *See* Plaintiff's Amended Request for Admissions, attached hereto as

"Exhibit 12." Because the RFAs were served by hand delivery, Defendant District did

not have the additional three days pursuant to Fed. R. Civ. P. Rule 6(e) in which to file its

responses. As a result, Defendant District's responses were due within twenty-one days

of January 22, 2007, or by February 12, 2007.

Defendant District served its responses on February 13, 2007, one day late. *See*

Certificate of Service for Defendant District's Reponses to Plaintiff's RFA's attached

hereto as "Exhibit 13." As a result, Plaintiff's Amended Requests for Admissions are

now deemed admitted, and Defendant District's responses are a legal nullity.

Federal Rules of Civil Procedure Rule 36 expressly provides that admissions are

automatically deemed admitted if not answered within thirty days, or within such a time

deemed by the Court. *Id.* Indeed, in *Rainbolt v. Johnson*, 669 F.2d 767 (D.C. Cir. 1981),

the D.C. Circuit Court held:

> **The District Court erred in failing to give binding and
> conclusive effect to the unanswered requests for admissions.
> Rule 36 of the
> Federal Rules of Civil Procedure, as revised in 1970,
> expressly provides that requests for admissions are
> automatically deemed
> admitted if not answered within 30 days, and that the matters
> therein are "conclusively established" unless the court on
> motion permits withdrawal or amendment of the admissions**.
> The rule is designed to expedite litigation, and it permits the party
> securing
> admissions to rely on their binding effect. *See Advisory
> Committee Notes, Proposed Amendments to the Federal Rules of
> Civil Procedure,*

> 48 F.R.D. 487, 534 (1970) (Rule 36); *see, e.g., Luick v. Graybar
> Electric Co*., 473 F.2d 1360, 1362 (8th Cir. 1973); *Jackson v.
> Riley Stoker Corp*., 57 F.R.D. 120, 121 (E.D.Pa.1972).

669 F.2d at 768 (emphases added); *see also Baker v. Potter*, 212 F.R.D. 8, 9 (D.D.C.

2002); *Beberaggi v. New York City Transit Auth.*, 1994 U.S. Dist. LEXIS 384, *5

(D.N.Y. 1994); *Brook Village North Assocs v. General Electric Co*., 686 F.2d 66 (1st Cir.

1982) (holding that when a party failed timely to answer a request for admissions, the

requested items were deemed admitted and were conclusive).

Plaintiff does not say this lightly; this Court would be in *legal error* if it failed to

deem Plaintiff's RFAs admitted.  *See Rainbolt,* 669 F.2d at 768.  Hardly any other

principle of law is more clear-cut, and one need not look past the four corners of Federal

Rule 36.  There has been no motion to withdraw the deemed admissions. In fact, there

would be no justification for even *seeking* the withdrawal of the deemed admissions –

Defendant District was required to respond to Mr. Austin's RFAs by February 12, 2007,

and, plainly failed to do so.

Further, Mr. Austin may properly rely on these deemed admissions for the

purposes of his cross-motion for summary judgment.  *See Burt v. First Am. Bank,* 490

A.2d 182, 185 (D.C. 1985) (holding that requests for admissions which are not denied

within the statutory period are deemed admitted and may properly serve as a basis for a

grant of summary judgment).

As a result, Plaintiff is entitled to rely on the following admissions for the

purposes of this Motion: [2]

---

2 As an aside, Plaintiff notes that these admissions are independently corroborated by the
other evidence submitted herewith.

1.      General Order 502.7 requires that any person held in departmental confinement facilities who claims a need for medical treatment due to any injury or disease shall be immediately transported to a hospital for examination and treatment. *See* Exhibit 12 at ¶ 85.

2.      On August 25, 2005, Plaintiff claimed a need for medical treatment and should have been immediately transported to a hospital for medical examination or treatment. *Id*. at ¶ 86.

3.      Officer Thomas violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment. *Id*. at ¶ 87.

4.      Officer Crowder violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment. *Id*. at ¶ 88.

5.      Officer Hawkins violated General Order 502.7 by not immediately transporting Plaintiff      to receive medical treatment. *Id*. at ¶ 89.

6.      After Officer Thomas used force against Plaintiff, if Plaintiff complained of pain, medical assistance should have been summoned. *Id*. at ¶ 91.

7.      Officer Thomas violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff. *Id*. at ¶ 92.

8.      Officer Crowder violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff. *Id*. at ¶ 93.

9.      Officer Hawkins violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff. *Id*. at ¶ 94.


### III.     DEFENDANT DISTRICT BREACHED ITS DUTY TO PROVIDE IMMEDIATE MEDICAL ATTENTION TO MR. AUSTIN


Despite the differing views of what exactly happened immediately before Officer Thomas struck Mr. Austin, it undisputed that after Officer Thomas struck Mr. Austin: (1) all of the participants and witnesses to the incident observed blood on the ground where the incident occurred; (2) Mr. Austin immediately complained that his jaw was broken, and requested medical attention; and (3) despite the foregoing, Mr. Austin was placed in

a jail cell, and not transported to receive medical attention for several hours, at the very

least.  As a result, based on the testimony of all of the participants and witnesses to the

incident, the findings and testimony of all FIT investigators with regard to this incident,

and Defendant District's *very own expert witness*, there is absolutely no dispute of

material fact that Defendant District breached its duty to immediately transport Mr.

Austin to receive medical attention, despite his repeated requests to go to the hospital, his

continuous complaints of pain, and the obviousness of his injury.  As a result, Mr. Austin

should be granted partial summary judgment as to liability with regard to the portion of

Count VI in his complaint relating to Defendant District's failure to obtain immediate

medical treatment.

Plaintiff's expert, James Bradley, relying on commonly used police procedures

and specific nationwide police standards (*see Butera v. District of Columbia,* 235 F.3d

637, 660 (D.C. Cir. 2001)), testified that the national standard of care with regard to

persons injured while in the custody of the MPD is to make sure that they receive

immediate medical attention.  *See* Deposition of James Bradley at 84-86, attached hereto

as "Exhibit 14."   Similarly, the following MPD General Orders, echoing the national

standard of care, set forth the standard of care that MPD must follow when a prisoner is

injured while in police custody and/or as a result of an officer's use of force:

**General Order 502.7(a)(1), Medical Treatment and Hospitalization for
Prisoners,**
    **Medical Treatment**

Persons held in departmental confinement facilities who claim a need for medical
treatment due to <u>any</u> injury or disease *shall be immediately transported* to D.C.
General Hospital for examination and treatment (emphasis added in part).  *See*
MPD GO 502.7, attached hereto as Exhibit 15.

**General Order 901.07(V)(A), Use of Force, Prompt Medical Attention**

> When any level of force is used, there shall be a visual and verbal check of the subject to ascertain whether the subject is in need of medical care. Medical assistance *shall be summoned immediately, if a person is physically injured in any way, complains of pain, or demonstrates life-threatening symptoms* (emphasis added). *See* MPD GO 901.07, attached hereto as Exhibit 16.

> **General Order 901.08(V)(A)(2), Initial Responses and Duties at the Scene of a Use of Force**

> When a subject is suffering from or complains of injuries, he or she shall be *immediately taken to the Hospital for examination and treatment pursuant to GO PCA-502.07* (emphasis added). *See* MPD GO 901.08, attached hereto as Exhibit 17.

Therefore, under the foregoing local and national standards of care, Defendant District clearly had a duty to immediately obtain medical assistance, whether by immediately summoning medical attention or by immediately transporting Mr. Austin to the hospital, once he complained of pain and/or requested medical treatment. Immediately, which is not defined in any of the above general orders, is defined as "as soon as" or "without delay." *See* THE AMERICAN HERITAGE DICTIONARY, 643 (2d ed. 1985). Defendant District flatly breached this duty, as evidenced by the fact that it is undisputed that Mr. Austin was placed into a jail cell following the incident, and was not transported to the hospital for at least several hours. None of the participants, witnesses, investigators, or expert witnesses dispute that Mr. Austin failed to receive prompt and immediate medical attention.

Despite the fact that, amazingly, not one of the MPD members who directly participated in and/or witnessed the incident could recall what time of the incident between Mr. Austin and Officer Thomas occurred, documentary evidence clearly shows that Mr. Austin was not "immediately" transported to receive medical care. The PD-313 "Arrestee Injury Illness Report," which was generated due to Mr. Austin's injury,

indicates that medical transport arrived at the Central Cell at 8:10 p.m. *See* PD-313,

attached hereto as "Exhibit 18." Similarly, emergency room records from Greater

Southeast Community Hospital indicate that Mr. Austin arrived at the emergency room at

8:30 p.m. *See* Exhibit 10. Officer Thomas indicated that the incident occurred between

2:00 p.m. and 5:00 p.m. *See* Exhibit 9; Exhibit 3 at 48. Thus, even assuming that the

incident occurred at 5:00 p.m., Mr. Austin was still forced to languish in his cell for over

*three hours* before finally arriving at the hospital.

Again, *no one* disputes that Mr. Austin was not immediately taken to the hospital.

Officer Hawkins, the acting sergeant at the time of the incident who radioed dispatch for

medical transport, explicitly testified at his deposition that Mr. Austin did not receive

immediate medical attention. *See* Exhibit 7 at 38. In fact, Officer Hawkins

acknowledged that General Order 901.07 was violated because medical assistance was

not immediately summoned for Mr. Austin. *Id*. at 44. Notably, when asked to define

what "immediately" meant, Officer Hawkins stated that immediately means "maybe five

minutes." *Id*. at 38. Further, Officer Eldrick Creamer, testifying as a Federal Rule

30(b)(6) witness for Defendant District, stated that immediately meant "as soon as

practical." *See* Deposition of Eldrick Creamer at 22, attached hereto as "Exhibit 19."

None of the defendants, nor any agents on their behalf, have put forth any evidence

showing that "immediately" means at least three hours. Therefore, based on the

undisputed evidence, Mr. Austin was not "immediately" transported to receive medical

care in breach of Defendant District's clear and explicit duty to do so under both national

and local standards of care.

Defendant District's breach was so egregious that even its own expert witness, Jerry Wilson, designated by Defendant District to testify with respect to police procedures and administration, found that the delay in Mr. Austin receiving medical attention was beyond the standard of care. At his deposition, Mr. Wilson repeatedly acknowledged that Mr. Austin was not timely transported to the hospital in violation of the above MPD General Orders and applicable standards of care. For example, Mr. Wilson testified as follows:

> Q:    And what is your opinion as you sit here today as far as whether or not the standard of care was met with respect to the provision of medical treatment to plaintiff?
>
> A:    It would be my opinion that the delay was *beyond the standard of care*. Let me say . .
>
> [. . . ]
>
> [. . .] that based on still unresolved issues with regard to the timing [of the incident], but the timing was longer than would be appropriate under the standard of care.
>
> Q:    So would your opinion be then that there was a breach of the standard of care with respect to the provision of medical treatment to Mr. Austin?
>
> A:    I would say that the transportation of plaintiff to the hospital was *delayed longer then the standard of care would permit*.
>
> Q:    So would that be a yes, it's a breach of the standard of care?
>
> A:    *Yes*.

*See* Deposition of Jerry Wilson at 28-29, attached hereto as "Exhibit 20" (emphasis added). Thus, in spite of some ambiguity as to when Mr. Austin was actually injured, even Defendant District's *own expert* found that it breached the standard of care to provide immediate medical transport to Mr. Austin, and in doing so, specifically breached General Order 502.7. *Id.* at 115. As a result, both Mr. Austin's expert witness,

Mr. Bradley, and Defendant District's expert witness, Mr. Wilson, are in complete agreement that Defendant District breached the standard of care by not immediately providing medical transport for Mr. Austin, and specifically that Defendant District breached General Order 507.7  *See* Exhibit 14 at 84; Exhibit 20 at 115.

Mr. Wilson's opinion that Defendant District breached the standard of care with respect to providing medical assistance to Mr. Austin is even more striking in that Mr. Wilson originally concluded in his expert report, dated December 11, 2006, that there was insufficient evidence to render an opinion with regard to whether medical care was timely sought.  *See* Jerry Wilson Expert Report, attached hereto as "Exhibit 21." However, after learning that medical transport did not occur until 8:10 p.m., Mr. Wilson now clearly believes that there is sufficient evidence to offer an opinion with regard to the timing of medical treatment for Mr. Austin, and has accordingly found that Mr. Austin was not transported to the hospital in a timely manner, which was a breach of the standard of care.  *See* Exhibit 20 at 128-29.

Even, Detective Christopher Coles, the FIT investigator assigned to investigate the incident between Mr. Austin and Officer Thomas, acknowledged that medical attention should have been summoned immediately because Mr. Austin was physically injured and complained of pain, stating in the Final FIT Report that "*it was not reasonable for the officers to place an injured prisoner in a holding cell without making sure that he was transported to the hospital immediately*."  *See* Exhibit 5 at 16 (emphasis added).  Further, at his deposition, Detective Coles, the assigned FIT investigator and a Federal Rule 30(b)(6) designee on behalf of Defendant District, acknowledged that even if the incident had occurred as late as 5:00 p.m.,  Mr. Austin should have been brought to

the hospital more quickly than after 8:00 p.m. on the date of the incident.  *See* Deposition

of Detective Coles at 145, attached hereto as "Exhibit 22."  In fact, when asked what

immediate medical transport meant in this context, Detective Coles testified that "it's

faster than what he was taken to the hospital [sic]."  *Id.*

Therefore, based on Defendant District's deemed admissions, the testimony from

all of the participants and witnesses to the incident, Mr. Austin and Defendant District's

expert witnesses, and the very MPD officers charged with investigating the August 25,

2005 incident between Mr. Austin and Officer Thomas, it is undisputed that Defendant

District breached its duty of care owed to Mr. Austin by failing to immediately obtain

medical treatment after he was injured.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Nigel Austin is entitled to partial summary

judgment as to liability, holding as a matter of law:

(1) That on August 25, 2005, Defendant the District of Columbia breached its

duty of care to immediately obtain medical treatment for Plaintiff Nigel Austin.

*Peter C. Grenier /s/*
Peter C. Grenier (D.C. Bar No. 418570)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C.  20036
(202) 828-4100
(202) 828-4130 (fax)
*Counsel for Plaintiff*

Dated: March 9, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March 2007, I served a true and accurate copy of Plaintiff's Motion for Partial Summary Judgment by electronic case filing and U.S. Mail, postage-prepaid upon:

> Steven J. Anderson, Esquire
> Assistant General Counsel
> 441 4th Street, N.W.
> 6th Floor North
> Washington, DC 20001
> *Attorney for Defendant*
> *District of Columbia*

> James Pressler, Esquire
> PRESSLER & SENFTLE, P.C.
> 927 15th Street, N.W.
> Twelfth Floor
> Washington, D.C. 20005
> *Counsel for Defendant*
> *Officer Don Thomas*

_____*Peter C. Grenier /s/*_____
Peter C. Grenier

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | ) |
| **NIGEL AUSTIN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 05-02219(JDB)** |
| **v.** | ) |
| | ) |
| **DISTRICT OF COLUMBIA**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| _____) | |

### <u>PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE</u>

In accordance with LCvR 7(h), Plaintiff Nigel Austin submits this statement of material facts not in genuine dispute in support of his motion for summary judgment.

1.      On August 25, 2005, Mr. Austin was arrested by officers from the Metropolitan Police Department.  *Exhibit 1* at 37.

2.      Mr. Austin arrived at the Central Cell Block at 12:15 p.m. on August 25, 2005.  *Exhibit 2*.

3.      On August 25, 2005, Defendant Officer Don Thomas was working the 1:00 p.m. to 9:30 p.m. tour of duty at the Central Cell Block.  *Exhibit 3* at 37-38.

4.      On August 25, 2005, Officer Thomas transported Mr. Austin from Mr. Austin's holding cell to the processing room during the early part of Officer Thomas' tour of duty.  *Exhibit 1* at 54-55; *Exhibit 3* at 47-48.

5.      On August 25, 2005, Officer Thomas struck Mr. Austin on the left side of his face with a closed fist.  *Exhibit 1* at 63; *Exhibit 4; Exhibit 5; Exhibit 9*.

6.       After Mr. Austin was struck by Officer Thomas, Mr. Austin repeatedly stated that his jaw was broken and that he wanted to see a doctor.  *Exhibit 1* at 69, 71; *Exhibit 7* at 30, 31.

7.       Immediately after Officer Thomas struck Mr. Austin, Mr. Austin was subdued by at least two Metropolitan Police officers, and was placed in a jail cell with his hands handcuffed behind his back.  *Exhibit 1* at 65-66; *Exhibit 3* at 118; *Exhibit 7* at 22, 28; *Exhibit 8* at 19.

8.       Immediately after Officer Thomas struck Mr. Austin, Officer Rhonda Crowder and Officer George Hawkins observed blood on Mr. Austin's shirt. *Exhibit 6* at 106; *Exhibit 7* at 27.

9.       Immediately after Officer Thomas struck Mr. Austin, there was blood on the ground where the incident occurred.  *Exhibit 3* at 109; *Exhibit 6* at 102; *Exhibit 7* at 27; *Exhibit 8* at 13.

10.       The national standard of care with regard to injured prisoners is that an injured prisoner should receive immediate medical attention.  *Exhibit 14* at 84-86.

11.       MPD General Order 502.7 requires that any person held in departmental confinement facilities who claims a need for medical treatment due to any injury or disease shall be immediately transported to a hospital for examination and treatment. *Exhibit 15*.

12.       MPD General Order 901.07 (V)(A) requires that when any level of force is used, there shall be a visual and verbal check of the subject to ascertain whether the subject is in need of medical care.  Medical assistance shall be summoned immediately, if

a person is physically injured in any way, complains of pain, or demonstrates life-threatening symptoms. *Exhibit 16.*

13.    MPD General Order 901.08(V)(A)(2) requires that when a subject is suffering from or complains of injuries, he or she shall be immediately taken to a Hospital for examination and treatment pursuant to GO PCA-502.07. *Exhibit 17.*

14.    On August 25, 2005, if Mr. Austin claimed a need for medical treatment, he should have been immediately transported to a hospital for medical examination or treatment. *Exhibit 12* at ¶ 86.

15.    The PD-313, which was generated as a result of Mr. Austin's injury, indicates that medical transport did not arrive to bring Mr. Austin to the hospital until 8:10 p.m. *Exhibit 18.*

16.    The emergency room records from Greater Southeast Community Hospital indicate that Mr. Austin arrived at the emergency room at 8:30 p.m. on August 25, 2005. *Exhibit 10.*

17.    Officer Thomas believes that the incident occurred between 2:00 p.m. and 5:00 p.m. *Exhibit 3* at 48; *Exhibit 9.*

18.    Jerry Wilson, expert witness for the District of Columbia, repeatedly testified that the District of Columbia breached its standard of care by delaying in bringing Mr. Austin to the hospital. *Exhibit 20* at 28-29.

19.    The Final Force Investigation Team report state that "it was not reasonable for the officers to place an injured prisoner in a holding cell without making sure the he was transported to the hospital immediately." *Exhibit 5* at 16.

20.     Officer Thomas violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment.  *Exhibit 12* at ¶ 87.

21.     Officer Crowder violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment.  *Exhibit 12* at ¶ 88.

22.     Officer Hawkins violated General Order 502.7 by not immediately transporting Plaintiff  to receive medical treatment.  *Exhibit 12* at ¶ 89.

23.     After Officer Thomas used force against Plaintiff, if Plaintiff complained of pain, medical assistance should have been summoned.  *Exhibit 12* at ¶ 91.

24.     Officer Thomas violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff.  *Exhibit 12* at ¶ 92.

25.     Officer Crowder violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff.  *Exhibit 12* at ¶ 93.

26.     Officer Hawkins violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff.  *Exhibit 12* at ¶ 94.

27.     Officers Thomas, Crowder, and Hawkins were all acting within the scope of their employment with the Metropolitan Police Department at the time of the incident. *Exhibit* 5 at 1.

Respectfully submitted,

*Peter C. Grenier /s/*_____
Peter C. Grenier (D.C. Bar No. 418570)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C.  20036
(202) 828-4100
(202) 828-4130 (fax)
Dated: March 9, 2007          *Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of March 2007, I served a true and accurate copy of Statement of Material Facts Not in Genuine Dispute by electronic case filing and U.S. Mail, postage-prepaid upon:

Steven J. Anderson, Esquire
Assistant General Counsel
441 4th Street, N.W.
6th Floor North
Washington, DC 20001
*Attorney for Defendant*
*District of Columbia*

James Pressler, Esquire
PRESSLER & SENFTLE, P.C.
927 15th Street, N.W.
Twelfth Floor
Washington, D.C. 20005
*Counsel for Defendant*
*Officer Don Thomas*

_____*Peter C. Grenier /s/*_____
Peter C. Grenier