UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIGEL AUSTIN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE DISTRICT OF COLUMBIA, *et al.* )<br>)<br>Defendants. ) | Case No. 1:05CV02219 |

### PLAINTIFF NIGEL AUSTIN'S AMENDED REQUEST FOR ADMISSIONS TO DEFENDANT THE DISTRICT OF COLUMBIA

TO:   District of Columbia
      c/o:   Steven J. Anderson, Esquire
            Assistant Attorney General
      441 Fourth Street, N.W.
      Suite 600S
      Washington, D.C. 20001

Plaintiff Nigel Austin ("Mr. Austin" or "Plaintiff"), by undersigned counsel and pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby requests that Defendant The District of Columbia (the "District") answer these Amended Requests For Admissions. Pursuant to the Court's January 17, 2007 Order, the matters set forth below are <u>admitted</u> unless the District serves upon Mr. Austin a written answer or objection addressed to each such Request within twenty-one (21) days hereof.

### Instructions

1. If any objection is made, the reasons therefore shall be stated.

2. The answer shall specifically admit or deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

**EXHIBIT 12**

3. Denial shall thoroughly meet the substance of the requested admission and when good faith requires a party to qualify an answer to deny only a part of the matter in which an admission is requested, the party shall specify some such of it as is true and qualify or deny the remainder.

4. An answering party may not give lack of information of knowledge as the reasons for failure to admit or deny unless the party states that the party made reasonable inquiry and the information known or fully obtainable by the party is insufficient to enable the party to admit or deny.

5. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the Request.

6. Defendant shall deliver all responses to undersigned counsel at the offices of BODE & GRENIER, L.L.P., 1150 Connecticut Avenue, N.W., Ninth Floor, Washington, D.C. 20036-4192.

Definitions

A.   The term "communication" as used herein shall include all oral, visual, written, or other sensory means of transmitting information or statements.

B.   Unless otherwise specified, the terms "you," "your," or "Defendant," as used herein shall refer to the District of Columbia, and shall include all of its present and former agencies, divisions, employees, agents, servants, attorneys (to the extent not privileged), consultants, representatives and all other persons acting or purporting to act on their behalf, and also specifically includes the Metropolitan Police Department and its chief, police officers or any tank or title, general counsel and other attorneys, and other employees or personnel.

C.     As used herein, "MPD" shall refer to and include the Metropolitan Police Department of the District of Columbia and its chief, police officers of any rank or title, general counsel and other attorneys, other employees or personnel, and persons acting on their behalf.

D.     As used herein, "Officer Thomas" shall refer to MPD Officer Don Thomas, and to the extent not privileged, all of his agents, servants, attorneys, consultants, representatives, and all other persons acting or purporting to act on his behalf.

E.     The term "Central Cell Block" shall refer to the jail facility located at 300 Indiana Avenue, N.W., Washington, D.C.

F.     As used herein, "document" means all materials so defined in the broadest sense of Fed. R. Civ. P. 34(a), and includes any written, printed, typed, recorded or graphic matter, however produced or reproduced, of any kind or description; any other tangible thing by which information or data is stored, including any writing, drawing, film, graph, chart, photograph, phonograph record, mechanical or electrical sound recording or transcript thereof, computer printout or display; as well as any retrievable data or information (whether in computer storage or on computer hard-drive or disk), and all information carded, taped, coded or stored (electrostatically, electromagnetically or otherwise), and any other data compilation from which this information can be obtained. Without limiting the generality of the foregoing, "document" shall include all computer disks, computer e-mails, computer printouts, correspondence, letters, telegrams, telephone messages, notices, notes of conversations, memoranda, reports, diaries, minutes, recitals, statements, work sheets, abstracts, resumes, summaries, notes, jottings, market data, books, journals, ledgers, audits, charts, diagrams, statutes, regulations, policies, procedures, rules, guidelines, manuals, handbooks, brochures, audio and/or video tapes, training materials,

teaching materials, research documents, newspapers, appointment books, desk calendars, and expense reports. It also shall include drafts and non-identical copies of any such documents.

G. Unless otherwise indicated, the term "Plaintiff" as used herein shall refer to Nigel Austin and, to the extent not privileged, shall include all of his agents, servants, attorneys, consultants, representatives, and all other persons acting or purporting to act on his behalf.

H. The term "relating" means connected with in any way, referring to, describing, concerning, addressing, dealing with, commenting upon, evidencing or constituting.

I. The term "Incident" shall refer to the events of August 25, 2005, whereby physical contact resulted between Officer Don Thomas and Nigel Austin, while Mr. Austin was a pre-trial detainee in the custody of the Metropolitan Police Department, as well as the events immediately prior to and immediately after the contact.

J. For purposes of interpreting or construing the scope of the following Requests for Admission, the terms used shall be given their most expansive and inclusive interpretation unless otherwise specifically limited in the Request itself. This includes, without limitation, the following:

(a) construing the words "and" and "or" used in any Request in the disjunctive or conjunctive, as necessary, to make the request more inclusive;

(b) construing the words "any" and "all" used in any Request to mean "any and all," as necessary, to make the request more inclusive;

(c) construing a singular form of any word to include the plural and the plural form to include the singular;

(d) construing the past tense of a verb to include the present tense and the present tense to include the past tense;

(e) construing the masculine form to include the feminine form.

K. If any information called for by these Requests For Admission is withheld because you claim that such information is contained in a document or communication protected under the attorney/client privilege, work product privilege, or other recognized privilege, you are requested to so state, specifying for each such document or communication, its title, subject matter, sender, author, recipients of copies, each person to whom the original or any copy was circulated, the parties to the communication, the persons present during the communication, the purpose and substance of the communication, and the basis upon which the privilege is claimed.

## REQUEST FOR ADMISSIONS

Plaintiff requests that the District of Columbia admit the following:

1. Officer Thomas was an employee of the MPD on August 25, 2005.

2. Officer Thomas remains an employee of the MPD to date.

3. Officer Thomas was acting within the scope of his employment with the MPD at the time that Mr. Austin was injured on August 25, 2005.

4. Officer Thomas has been the subject of more than one (1) FIT investigation.

5. Officer Thomas has been the subject of a FIT investigation where it has been determined that his use of force was "not justified, not within departmental policy."

6. FIT investigated Officer Thomas as a result of a January 10, 2006 use of force by Officer Thomas ("January Use of Force").

7. FIT determined that the January Use of Force was justified.

8. Plaintiff was arrested on August 25, 2005 at 1341 Howard Road, SE, Apt. 302, Washington, DC by Officer T. Whittington.

9. After Plaintiff was arrested on August 25, 2005, Plaintiff was transported from 1341 Howard Road, SE, Apt. 302, Washington, DC to the MPD 7th District Station.

10. Plaintiff was processed at the MPD 7th District Station.

11. Plaintiff was fingerprinted at the MPD 7th District Station.

12. Plaintiff was photographed at the MPD 7th District Station.

13. Plaintiff had his "mug shot" taken at the MPD 7th District Station.

14. Plaintiff was transferred from the MPD 7th District Station to the Central Cell Block.

15. Plaintiff was processed at the Central Cell Block.

16. Plaintiff was fingerprinted at the Central Cell Block.

17. Plaintiff was photographed at the Central Cell Block.

18. Plaintiff had his "mug shot" taken at the Central Cell Block.

19. Plaintiff was placed in jail cell #2 ("Cell #2") upon his arrival in the Central Cell Block.

20. Kennett Brown was in Cell #2 in the Central Cell Block at the same time Plaintiff was in Cell #2 in the Central Cell Block on August 25, 2005.

21. Dwayne Dunne was in Cell #2 in the Central Cell Block at the same time Plaintiff was in Cell #2 in the Central Cell Block on August 25, 2005.

22. Officer Thomas was assigned to the Central Cell Block on August 25, 2005.

23. Officer Thomas was working the 1300 to 2130 tour of duty on August 25, 2005.

24. The Incident occurred while Plaintiff was in or around the attorney prisoner room.

25. Kennett Brown was present in the attorney prisoner room at the time of the Incident.

26. Kennett Brown was present in the processing room at the time of the Incident.

27. Plaintiff was already in custody at the time of the Incident.

28. Dwayne Dunne was present in the attorney prisoner room at the time of the Incident.

29. Dwayne Dunne was present in the processing room at the time of the Incident.

30. Plaintiff was not armed at the time of the Incident.

31. On August 25, 2005, no surveillance camera in the processing room in the Central Cell Block was functioning.

32. As of August 25, 2005, the surveillance camera in the processing room in the Central Cell Block had been non-functioning for more than one (1) year.

33. As a result of the Incident, members of FIT were notified on August 28, 2005 to investigate the use of force.

34. The June 13, 2001 Memorandum of Agreement on the Use of Force ("MOA"), entered into between the DOJ, MPD and District of Columbia, requires that a supervisor immediately notify FIT of any use of force that indicates potential criminal conduct by a MPD officer.

35. The MOA was in effect on August 25, 2005.

36. Acting Sergeant/Officer Hawkins was in violation of the MOA by not immediately notifying FIT about Officer Thomas' use of force against Plaintiff.

37. On August 30, 2005, Officer Thomas completed a Use of Force Incident Report ("UFIR") as a result of the Incident.

38. A true and correct copy of Officer Thomas' UFIR is attached hereto as Exhibit No. 1.

39. A complete copy of Officer Thomas' UFIR is attached hereto as Exhibit No. 1.

40. On August 29, 2005, Officer/Acting Sergeant Hawkins completed a UFIR as a result of the Incident.

41. A true and correct copy of Officer Hawkins' UFIR is attached hereto as Exhibit No. 2.

42. A complete copy of Officer Hawkins' UFIR is attached hereto as Exhibit No. 2.

43. The copy of the UFIR attached as Exhibit No. 2 is not missing any pages, or otherwise incomplete.

44. On September 1, 2005, Officer Rhonda Crowder completed a UFIR as a result of the Incident.

45. A true and correct copy of Officer Crowder's UFIR is attached hereto as Exhibit No. 3.

46. General Order 901.08(IV)(E) requires that MPD members notify their supervisors and complete a PD Form 901-e (Use of Force Incident Report) immediately following any use of force.

47. Officer Thomas violated General Order 901.08 by not completing a PD Form 901-e on August 25, 2005 with regard to the Incident.

48. Officer Crowder violated General Order 901.08 by not completing a PD Form 901-e on August 25, 2005 with regard to the Incident.

49. Acting Sergeant/Officer Hawkins violated General Order 901.08 by not completing a PD Form 901-e on August 25, 2005 with regard to the Incident.

50. On August 30, 2005, Sergeant Harrison took the statement of Officer Thomas ("Thomas Statement").

51. On August 30, 2005, Sergeant Harrison took written notes regarding the Thomas Statement.

52. In the Thomas Statement, Officer Thomas states that Officer Rhonda Crowder assisted Officer Thomas in subduing Plaintiff.

53. Officer Thomas has not given any other statements regarding the Incident apart from the Thomas Statement.

54. Officer Thomas spoke with Detective Christopher Coles ("Detective Coles") regarding the Incident.

55. Detective Coles obtained a statement from Officer Thomas regarding the Incident.

56. Detective Coles took written notes of any conversation he had with Officer Thomas.

57. Following the Incident, Officer Hawkins provided a statement to FIT regarding the Incident on August 28, 2005.

58. The MPD officer who interviewed Officer Hawkins on August 28, 2005 with regard to the Incident took written notes of the interview.

59. Officer Hawkins did not observe Plaintiff swing at Officer Thomas.

60. Officer Hawkins has spoken with Detective Coles regarding the Incident.

61. Officer Crowder provided a statement to FIT regarding the Incident on August 28, 2005.

62. The FIT officer who interviewed Officer Crowder on August 28, 2005 with regard to the Incident took written notes of the interview.

63. Officer Crowder did not see Plaintiff physically strike Officer Thomas.

64. Officer Crowder has spoken with Detective Coles regarding the Incident.

65. At Officer Crowder's deposition, taken on December 12, 2006, Officer Crowder testified that she had not observed Plaintiff swing at Officer Thomas.

66. At the very latest, the District issued a final FIT report as a result of the Incident on December 22, 2006.

67. The District issued a final FIT report as a result of the Incident after Officer Crowder's December 12, 2006 deposition.

68. The District was aware that Officer Crowder had been deposed, under oath, on December 12, 2006 with regard to the Incident.

69. The District had knowledge of the content of Officer Crowder's sworn testimony at her December 12, 2006 deposition.

70. The District reviewed Officer Crowder's December 12, 2006 sworn deposition testimony prior to issuing the final FIT report.

71. The District informed Detective Coles that Officer Crowder testified under oath that Officer Crowder did not see Plaintiff swing at Officer Thomas.

72. The final FIT report states that Officer Crowder saw Plaintiff swing at Officer Thomas.

73. Officer Crowder's statement, as reflected in the final FIT report, contradicts her sworn deposition testimony wherein she testified that she had not seen Plaintiff swing at Officer Thomas.

74. Officer Crowder has never stated under oath that she saw Plaintiff swing at Officer Thomas.

75. Officer Crowder lied when she told FIT that she saw Plaintiff swing at Officer Thomas.

76. General Order 901.08 (III)(C)(2), defines "serious use of force," as all uses of force by an MPD member resulting in a broken bone or an injury requiring hospitalization.

77. Plaintiff was injured as a result of Officer Thomas' use of force.

78. Immediately after the Incident, it was obvious that Plaintiff had suffered an injury that was causing him to bleed.

79. Plaintiff sustained a broken jaw as a result of Officer Thomas' use of force.

80. If Plaintiff sustained an injury requiring hospitalization as a result of Officer Thomas' use of force, then Officer Thomas' use of force would be a serious use of force.

81. If Plaintiff sustained a broken bone as a result of Officer Thomas' use of force, then Officer Thomas' use of force would be a serious use of force.

82. Officer Thomas' use of force against Plaintiff was a serious use of force.

83. Officer Thomas' use of force against Plaintiff was a serious use of force because Plaintiff sustained a broken bone.

84. Officer Thomas' use of force against Plaintiff was a serious use of force because Plaintiff required hospitalization.

85. General Order 502.7 requires that any person held in departmental confinement facilities who claims a need for medical treatment due to any injury or disease shall be immediately transported to a hospital for examination and treatment.

86. On August 25, 2005, Plaintiff claimed a need for medical treatment and should have been immediately transported to a hospital for medical examination or treatment.

87. Officer Thomas violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment.

88. Officer Crowder violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment.

89. Officer Hawkins violated General Order 502.7 by not immediately transporting Plaintiff to receive medical treatment.

90. General Order 901.07(V)(A) states that "[w]hen any level of force is used, there shall be visual and verbal check of the subject to ascertain whether the subject is in need of medical care. Medical care shall be summoned immediately if a person is physically injured in any way, complains of pain, or demonstrates life-threatening symptoms."

91. After Officer Thomas used force against Plaintiff, if Plaintiff complained of pain, medical assistance should have been summoned.

92. Officer Thomas violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff.

93. Officer Crowder violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff.

94. Officer Hawkins violated 901.07 by not immediately summoning medical attention despite complaints of pain by Plaintiff.

95. Plaintiff was never charged with assault on a member of the police force (or any other crime whatsoever) as a result of the Incident.

96. If Plaintiff struck, or attempted to strike, Officer Thomas, Plaintiff was guilty of assault on a member of the police force pursuant to D.C. Code § 22-405.

97. Prior to August 25, 2005, other detainees have been charged with violating D.C. Code § 22-405 while at the Central Cell Block.

98. The final FIT report issued with regard to the Incident found that Officer Thomas' use of force against Plaintiff was "Justified, Within Departmental Policy."

99. The final FIT report issued with regard to the Incident found that there was no violation of departmental policy in not immediately transporting Plaintiff to receive medical treatment.

100. The final FIT report issued with regard to the Incident found that Officers Thomas, Hawkins and Crowder did not violate departmental policy by not immediately reporting Officer Thomas' use of force to FIT.

Respectfully submitted,

NIGEL AUSTIN

By: *[signature]*
Peter C. Grenier (D.C. Bar No. 418570)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100
(202) 828-4130 (fax)
*Counsel for Plaintiff*

Dated: January 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January 2007, I sent copies of PLAINTIFF'S AMENDED REQUEST FOR ADMISSIONS TO DEFENDANT DISTRICT OF COLUMBIA, along with all exhibits thereto, to counsel of record as follows:

    Steven J. Anderson, Esquire   *(Via Hand Delivery)*
    Assistant General Counsel
    441 4th Street, N.W.
    6th Floor North
    Washington, DC 20001
    *Attorney for Defendant*
    *District of Columbia*


    James C. Mehigan, Esquire   *(Via first class mail, postage prepaid)*
    PRESSLER & SENFTLE, P.C.
    927 15th Street, N.W.
    Twelfth Floor
    Washington, D.C. 20005
    *Counsel for Defendant*
    *Officer Don Thomas*

                                                  Peter C. Grenier