```
                                                                    1
 1            UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF COLUMBIA
 3   - - - - - - - - - - - - - - - - x
 4   NIGEL AUSTIN,
 5                  Plaintiff
 6        v.                              CA No. 05-2219 (JDB)
 7   THE DISTRICT OF COLUMBIA, et al.,
 8                  Defendants
 9   - - - - - - - - - - - - - - - - x
10            Deposition of JERRY WILSON
11                  Washington, D. C.
12            Tuesday, January 30, 2007
13                    2:38 p.m.
14
15   Job No. 1-95967
16   Pages 1 - 140
17   Reported By:  Cindy L. Wilmoth, RPR
```

**EXHIBIT 20**



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

28

1  opinion with respect to any delay in Mr. Austin
2  receiving medical care?
3           MR. MEHIGAN:  By Officer Thomas or anybody?
4           MR. GRENIER:  Anybody.  I was intentionally
5  all-inclusive.
6  BY MR. GRENIER:
7       Q.   And I'm looking at page 2 of your initial
8  report, by the way.
9       A.   That's when I was looking for.  What's
10 happened to my initial report?
11      Q.   I think Mr. Anderson may have stolen it.
12 There it is.  And I'm looking under section 2, of
13 course.
14      A.   Yes.  I did give -- I really was unable to
15 form an opinion basically at the time of that report,
16 but, yes, I was asked to give an opinion as to the
17 medical care.
18      Q.   And what is your opinion as you sit here
19 today as far as whether or not the standard of care was
20 met with respect to the provision of medical treatment
21 to plaintiff?
22      A.   It would be my opinion that the delay was

29

1   beyond the standard of care.  Let me say --

2       Q.  So your -- I understand.  I'm sorry.

3       A.  -- that I say that based on still unresolved
4   issues with regard to the timing, but that the timing
5   was longer than would be appropriate under the standard
6   of care.

7       Q.  So would your opinion be then that there was
8   a breach of the standard of care with respect to the
9   provision of medical treatment to Mr. Austin?

10      A.  I would say that the transportation of
11  plaintiff to the hospital was delayed longer than the
12  standard of care would permit.

13      Q.  So would that be yes, it's a breach of the
14  standard of care?

15      A.  Yes.

16      Q.  What is your understanding as to the
17  approximate time that the incident occurred?  And when
18  I say "the incident," the injury being caused.

19      A.  I have been unable to resolve that in my own
20  mind.  I mean, I don't know, but I'll assume that it
21  was before 2:00 o'clock.

22      Q.  P.M.?

115

1  was probably in effect when I was chief and
2  substantially the same and perhaps the same language.
3  Q. Now, under 502.7, there's a provision that
4  states that a person held in departmental confinement
5  facilities who claims a need for medical treatment due
6  to any injury shall be immediately transported to the
7  hospital for examination or treatment, correct?
8  A. Yes.
9  Q. And that was violated in this case, correct?
10 A. I would say yes in this case, yes.
11 Q. Let's talk about not charging Mr. Austin with
12 assault on a police officer.
13     In your -- I'll call it your first report,
14 your December 10 report, which begins on the bottom of
15 page 2, subsection 3, which you call not charging
16 plaintiff with assault on a police officer?
17 A. Yes.
18 Q. You state, quote, "It has been my observation
19 that police officers after being engaged in a struggle
20 with a prisoner that is already in custody do not
21 routinely," quote, "pile on," unquote, a charge of
22 assault on an officer unless the prisoner used a

DEPOSITION OF JERRY WILSON
CONDUCTED ON TUESDAY, JANUARY 30, 2007

128

1   Q.  Do you ever make a conclusion in your first
2   report as far as whether or not the District of
3   Columbia and/or Thomas met the standard of care with
4   respect to the provision of medical treatment?
5   A.  Well, as I point out in my first report, it
6   is not practical to make a conclusion as to whether or
7   not he met the standard of care because from the
8   initial information, it was totally unclear what had
9   occurred in terms of providing medical care.  It wasn't
10  clear who had called or when he was transported or
11  anything, so it was not possible to make an informed
12  decision as to whether or not they complied with the
13  standard of care.
14  Q.  Since speaking with Bowman yesterday, have
15  you been able in your mind to formulate that opinion?
16  A.  Since speaking with Bowman.  Well, Bowman
17  really didn't -- he really did not change anything.
18  Since learning that Mr. Hawkins had said that he had
19  called and that Hawkins said that the transport
20  occurred at 20 some hours, I do not believe that the
21  plaintiff was transported to the hospital in a timely
22  manner.

129

1    Q.   So that was a breach?

2    A.   That is a breach, yes.

3    Q.   How many cases are you currently working on

4    at any stage or aspect of the claim for the District of

5    Columbia?

6    A.   I've got two or three old cases that are

7    hanging around maybe waiting for appeal, maybe waiting

8    for appeal.  As far as an active case that I can think

9    of, I think this is the only one.  I may have some

10   others that -- sometimes the District calls me, says

11   we're going to send you material, and then they never

12   do.  So -- well, I mean, other attorneys do, too, so I

13   can't really tell you, but --

14   Q.   Could you turn to the second to last page of

15   Exhibit 1, right, you've got it in your hand, the

16   second to last page.

17   A.   Okay.

18   Q.   Starting with the Emanuel vs. District of

19   Columbia case, may I assume that you're serving as the

20   District of Columbia's expert?

21   A.   That is correct.  Actually, that's active,

22   too.