1

UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - X

NIGEL AUSTIN,                          :

        Plaintiff,             :    Case Number:

                               :    1:05CV02219

v.                                     :

DISTRICT OF COLUMBIA,                  :

et. al.,                               :

        Defendants.            :

- - - - - - - - - - - - - - - - X

January 30, 2007

Washington, D.C.

Deposition of JAMES E. BRADLEY, JR., a witness, called for examination by counsel for the Defendants, in the above-entitled matter, pursuant to notice, taken at the offices of the District of Columbia Attorney General, located at 441 4th Street, N.W., Sixth Floor, Washington, D.C., 20001, beginning at 10:28 a.m., before Leanne M. Krivonak, CVR, CCR, a court reporter and notary public in and for the District of Columbia.

EXHIBIT 1

                                                                    78

1    official does it?

2        A    Yes, because he's the one that caused
3    it.

4        Q    The -- is that according to the General
5    Orders, or the standard of care, or how do
6    you -- let me get the whole question.  How do
7    you come by the rule that Thomas was supposed to
8    make sure that a 313 was completed?

9        A    If a prisoner is injured while in the
10   care and custody of a police officer, it is the
11   responsibility of the police officer to ensure
12   that when he gets medical attention, immediately
13   a 313 is filled out.  And he is transported for
14   evaluation to a hospital as soon as possible.

15       Q    Since you misunderstood my question --
16       A    No, I didn't.
17       Q    Because you had already said that.

18            But I'm asking you, who are any sources
19   that one could be required to do something from?
20   Like my -- my neighbor could tell me to do
21   something, my boss could tell me to do
22   something, and the government could tell me to

JAMES E. BRADLEY, Jr.
Austin v. District of Columbia, et al.                                    1/30/2007

81

```
 1        Q    Oh.  Well, tell me --
 2        A    If you have a copy here, I'll read it
 3   to you.
 4        Q    No, tell me what you recall it
 5   requiring about professionalism?
 6        A    You -- that officers will always --
 7   just like in the manual, it is derived -- part
 8   of it is derived from the police manual.  That a
 9   police officer will always be vigilant, they
10   will protect the citizenry, they will act in a
11   professional manner.
12             I don't have 6(a) with me, so I can't
13   quote you from the top of my head.
14        Q    Oh, okay.  But you think that if Thomas
15   did not make sure that his supervisor completed
16   a 313, that he was not being professional?
17        A    Sir, Mr. Thomas broke his jaw.  He was
18   responsible for taking care of an injured
19   prisoner.
20             How many times do you want me to tell
21   you that?
22        Q    Well, I didn't really ask you that, I'm
```

1   asking you more specific questions. I know
2   that's your broad conclusion. I was asking you
3   --
4       A    No, that's a specific conclusion, sir.
5       Q    No, I'm asking you more specifically
6   about the language in the D.C. Code, because
7   I thought you had said, but maybe I
8   misunderstood, that your reading of the
9   reference to professionalism in the D.C. Code
10  required that Thomas make sure that his
11  supervisor completed a 313.
12          Is that correct?
13      A    No, not specifically. Not
14  specifically.
15      Q    Well, generally, or what?
16      A    Generally. He was required to protect
17  the citizenry of the District of Columbia. Not
18  beat them up, not break their jaw, not refuse to
19  send them for medical attention, not put them in
20  a cell and let them bleed. No, he's not allowed
21  to torture or mistreat, or do anything like
22  that, to prisoners.

JAMES E. BRADLEY, Jr.
Austin v. District of Columbia, et al.                                         1/30/2007

83

1     He's -- if he injures the prisoner,
2     breaks his jaw, then he has a requirement to
3     make sure that prisoner goes immediately to the
4     hospital.
5         Now, I don't know where this idea of
6     his responsibility ends and somebody else's
7     picks up. But he is a sworn police officer, and
8     he is sworn to protect the citizens of the
9     District of Columbia. He did not do that in
10    this case.
11    Q   Well, the professionalism language
12    that's referred to in 6(a) of the Code that
13    you've mentioned, does not specifically require
14    the 313, and I think you've testified about the
15    courteous language.
16        Is there any other part of the Code
17    which you think Thomas violated, if he did not
18    make sure that his supervisor completed a 313?
19    A   No.
20    Q   In this case, his supervisor did
21    complete a 313, didn't he?
22    A   Yes. Eventually.

JAMES E. BRADLEY, Jr.
Austin v. District of Columbia, et al.                              1/30/2007

84

1    Q    So is there a violation at all of
2    Thomas, vis-a-vis 313?
3    A    He should have made sure that prisoner
4    went immediately to the hospital. General order
5    502-7, prisoners complaining of injury shall --
6    and he admitted that he complained of injury --
7    shall immediately be transported to the hospital
8    for examination and treatment.
9         MR. GRENIER:   502.7?
10        THE WITNESS:   Yes, sir.
11        BY MR. ANDERSON:
12   Q    Is there a national standard of care
13   about transporting prisoners to the hospital?
14   A    Yes, sir.
15   Q    What does it require?
16   A    It requires -- the District of Columbia
17   is pretty much in line with -- there is no
18   published national standard, there's not a book
19   that opens up and says, this is the national
20   standard of police procedures. Police
21   procedures are protocols, regulations, rules,
22   General Orders, manuals from police departments,

JAMES E. BRADLEY, Jr.
Austin v. District of Columbia, et al.                               1/30/2007

153

1          Is there something in the national
2     standard of care that indicates that one hour to
3     transport an injured detainee to the hospital is
4     a violation of the national standard of care,
5     other than your definition of the word
6     immediate?
7          A    No.
8          Q    Oh.  Okay.
9               Isn't it true that Thomas notified
10    Hawkins that Austin wanted medical care?
11         A    Yes.
12         Q    Didn't -- didn't Thomas fulfill his
13    obligation under the General Orders by notifying
14    his supervisor -- his obligation to give medical
15    care -- by notifying his supervisor that Austin
16    wanted medical care?
17         A    No.
18         Q    What more other than your contention
19    that Thomas had an obligation to give first aid
20    -- what more was Thomas required to do to get
21    medical care for Austin, other than to notify
22    his supervisor?

```
                                                                   204

  1    the cell block?

  2         A     Varies, depending on how many

  3    lightbulbs are working.

  4         Q     So it's not just the cameras, it's also

  5    the lightbulbs?

  6         A     Lightbulbs, and there's also an

  7    obligation to check on these prisoners, too.

  8    Particularly injured prisoners.  Go back.  And

  9    if it means opening the door, then you got to

 10    open the door.

 11         Q     Okay.  Officer Thomas informed Hawkins

 12    of the incident and the injury, and Hawkins

 13    ordered a transport?

 14         A     Yes.

 15         Q     What more was Thomas supposed to do?

 16         A     Render first aid, and make sure that it

 17    was an immediate transport.

 18         Q     Okay.  What if the transport wasn't

 19    coming, what was Thomas supposed to do?

 20         A     Arrange for an ambulance to come.

 21         Q     So Thomas should have called for the

 22    ambulance?
```

205

1   A   Certainly.

2   Q   Okay, he shouldn't have -- he shouldn't
3   have informed Hawkins to call for the ambulance?

4   A   You asked me first if the call wasn't
5   coming?  Then what was he supposed to do?  If he
6   did the first, he notified Hawkins, you asked me
7   the next question was, if it didn't come, what
8   was he supposed to do?  And then he's supposed
9   to call an ambulance, particularly with the
10  severity of the wounds.

11  Q   Okay.  But what if Thomas -- this is a
12  hypothetical --

13  A   Sure.

14  Q   What if Thomas was instructed to
15  continue with his duties, namely, to process
16  prisoners, after he informed Hawkins of the
17  incident?  Was Thomas relieved of an obligation
18  to continue to tend to Officer -- or, to Mr.
19  Austin?

20  A   I think I heard those same things at
21  Nuremberg.  No, I don't think so.

22          MR. MEHIGAN:  Objection.