## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| NIGEL AUSTIN, | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) Case No. 05-2219(JDB) |
| | ) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| **Defendants.** | ) |

_____)

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Nigel Austin, by and through his counsel, Bode & Grenier, LLP, hereby opposes Defendant District of Columbia's Motion for Partial Summary Judgment (the "Motion").

### SUMMARY OF ARGUMENTS

As set forth more fully herein, this Court should deny the motion for the following reasons:

1.      Mr. Austin and Officer Thomas have offered two differing versions as to how the incident occurred, and, as a result, Mr. Austin has distinct and separate claims for battery and negligence with regard to Officer Thomas' use of force.  Mr. Austin's battery claim focuses on whether Officer Thomas was justified in striking Mr. Austin in the face, whereby his negligence claim focus on the reasonableness of the use of force by Officer Thomas if such justification is found.

## **FACTUAL BACKGROUND**

On or about August 25, 2005, between 9:00 a.m. and 10:00 a.m., Mr. Austin was arrested pursuant to a warrant arising from an altercation between Mr. Austin and his neighbor, which occurred several days prior to his arrest. *See* Deposition Transcript of Nigel Austin at 37, attached hereto as "Exhibit 1." Following his arrest, Mr. Austin was transported to the 7th District Police station where he was processed, fingerprinted, and photographed. *Id*. at 37-38. Mr. Austin was placed in a holding cell for about an hour, and was then transported to the Central Cell Block ("Central Cell") where, as Mr. Austin had been informed by one of his arresting officers and an officer at the 7th District Station, he would be taken to court, arraigned, and released later that same day. *Id*. at 37, 53-54.

Defendant Don Thomas ("Officer Thomas") was working the 1:00 p.m. to 9:30 p.m. tour of duty at the Central Cell on August 25, 2005. *See* Deposition of Officer Thomas at 37-38, attached hereto as "Exhibit 2." At some point in the early part of his tour of duty, Officer Thomas retrieved Mr. Austin from his jail cell and brought him to the processing room for the purpose of putting an armband on Mr. Austin. *See* Exhibit 1 at 54-55; Exhibit 2 at 47-48. Officer Thomas did not remember Mr. Austin acting hostile, belligerent or otherwise failing to cooperate with Officer Thomas when he was transferred from his cell to the processing room. *See* Exhibit 2 at 49-50. Additionally, Officer Thomas chose not to place Mr. Austin in handcuffs at the time of the transfer, despite the fact the he could have done so. *Id*. at 50, 60.

Upon being brought to the processing room, Officer Thomas instructed Mr.

Austin to go into the attorney/prisoner interview room. *See* Exhibit 1 at 55; Exhibit 2 at

66. While in the attorney/prisoner interview room, Mr. Austin overheard either Officer

Thomas or Officer Rhonda Crowder ("Officer Crowder") (another officer present in the

processing room) inform another pre-trial detainee that they would not be going to court

that day, and would therefore have to spend the night at the Central Cell. *See* Exhibit 1 at

55-57. After learning that he would not be going to court, and subsequently released, on

August 25, 2005, Mr. Austin became upset and demanded that he be "take[n] back to my

mother-fucking cell." *See Id.* at 60. Officer Thomas approached Mr. Austin and asked

him to repeat the statement. *Id.* Mr. Austin repeated the statement, at which time Officer

Thomas struck Mr. Austin in the left side of his face with a closed fist, causing Mr.

Austin to fall down the steps outside of the processing room. *Id.* at 63-64.

Officer Thomas offers a drastically different account of how the incident

occurred. Officer Thomas states that he brought Mr. Austin to the processing room for

the purpose of placing an armband on Mr. Austin. *See* Exhibit 2 at 48. After bringing

Mr. Austin to the processing room, he instructed Mr. Austin to sit in the attorney/prisoner

interview room (a small room attached to the processing room). *Id.* at 66.

Approximately five minutes later, Officer Thomas observed Mr. Austin walking out of

the processing room. *Id.* at 83. Officer Thomas immediately moved towards Mr. Austin

and grabbed Mr. Austin's arm to prevent him from leaving the room. *Id.* at 83, 85, 96.

In response, Mr. Austin allegedly turned and swung at Officer Thomas, and Officer

Thomas swung back at Mr. Austin, while simultaneously grabbing him. *Id.* at 97, 103-

104. Officer Thomas struck Mr. Austin on the left side of his face with a closed fist. *See*

Officer Thomas FIT Statement, attached hereto as "Exhibit 3."

Officer Crowder, the only other eye-witness to the incident, originally stated to the Force Investigation Team ("FIT") investigators assigned to investigate this incident that she observed Mr. Austin swing at Officer Thomas when Officer Thomas sought to prevent Mr. Austin from leaving the processing room, but that she did not see Officer Thomas swing at Mr. Austin, and then observed both Mr. Austin and Officer Thomas fall to ground outside of the processing room. *See* Preliminary FIT report, attached hereto as "Exhibit 4" and Final FIT report, attached hereto as "Exhibit 5." However, at her deposition, Officer Crowder repeatedly testified that she did *not* see Mr. Austin swing at Officer Thomas. *See* Deposition of Officer Crowder at 84-85, 89 attached hereto as "Exhibit 6." Interestingly, despite her claim that she never observed Officer Thomas strike Mr. Austin, and that she never spoke with any one about the incident after it happened, she filled out a "Use of Force Incident Report" ("UFIR") in connection with the incident, based on her personal knowledge, indicating that Officer Thomas *had* used force (specifically a fist) on Mr. Austin on August 25, 2005. *See* Officer Crowder Use of Force Report attached hereto as Exhibit 7; *see also* Exhibit 6 at 86.

Regardless, it is undisputed that the incident culminated with Officer Thomas - justified or not justified - striking Mr. Austin on the left side of his face with a closed fist. Immediately after the incident, Mr. Austin was placed in, at least, one jail cell, bleeding and with his hands handcuffed behind his back. *See* Exhibit 1 at 65-66; Exhibit 2 at 109, 118, 122, 124, 129; Exhibit 6 at 102, Deposition of Officer George Hawkins at 22, 27-8, attached hereto as "Exhibit 8;" Deposition of Lynn Lewis at 13, 19, attached hereto as "Exhibit 9."

After passing out in the jail cell for an extended period of time from blood loss

and pain, Mr. Austin was then brought to a second jail cell, where he remained until he was ultimately brought to Greater Southeast Community Hospital. *See* Exhibit 1 at 71. Emergency room records from Greater Southeast Community Hospital indicate that Mr. Austin arrived at the hospital at approximately 8:30 p.m., at which time he was diagnosed as sustaining a broken jaw. *See* Greater Southeast Community Hospital emergency room records attached hereto as "Exhibit 10."

## ARGUMENT

### I.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is upheld on appeal only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1457 (D.C. Cir. 1990) (internal citations and quotations omitted). Additionally, "the party against whom summary judgment was granted has the benefit of all reasonable evidentiary inferences that can be drawn in his favor." *Id.* at 1458; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (U.S. 1986) (holding that at the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial).

Defendant District does not meet this standard. Because there are at least **two versions** as to how the incident occurred (i.e., Mr. Austin's versions and Officer Thomas' version), it is clear that there are genuine issues of material facts, and that each set of facts supports either Mr. Austin's battery and/or negligence claim. As a result, Defendant District's Motion should be denied.

**II.    Plaintiff Has Distinctly Stated a Separate Claim For Negligence and Battery**

Mr. Austin's Complaint distinctly states separate claims for negligence and battery.  In Count I (Battery) of his complaint, Mr. Austin alleges that Officer Thomas struck Mr. Austin on the left side of his face with a closed fist.  Complaint at ¶ 42. Mr. Austin further alleges that this blow constituted an unlawful, intentional and offensive touching.  *Id.* at ¶ 43.  Mr. Austin further alleges in Count I of his Complaint that Mr. Austin did not consent to the blow, and had done nothing to provoke the blow, or otherwise act in such a way where the blow would be reasonably necessary.  *Id.* at ¶ 44. In Count VI (Negligence) of his Complaint, Mr. Austin alleges various breaches of the duty of care by Defendants while Mr. Austin was in the custody of the MPD. Specifically, Mr. Austin alleges that Defendants breached MPD General Order 901.07 by failing to use "only that force reasonably necessary to bring an incident under control[,]" and breached their duty to use non-deadly force only when such force is necessary to protect themselves from physical harm, subdue an individual or bring an unlawful situation under control.  Complaint at ¶¶ 85-6.  Mr. Austin further alleges that Defendants breached their duty to only use the minimum amount of force necessary to accomplish their goal.  *Id.* at ¶ 89.   As will be demonstrated below, Defendant District's "undisputed fact" that Officer Thomas intentionally struck Mr. Austin does not make Mr. Austin's claims any less separate.

Defendant District mischaracterizes Mr. Austin's battery and negligence claims. Mr. Austin's battery claim hinges on the question of whether Officer Thomas had legal justification to strike Mr. Austin, and not on any allegations of use of "excessive force." *See Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997).  Mr. Austin's

*negligence claim* focuses on the conduct *after* legal justification for the use of force has been found, and is solely related to the reasonableness of that conduct. *Id*. at 742 (noting that for battery the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged; and for negligence the inquiry is whether the officer's conduct violated the standard of care of a reasonably prudent police officer). As a result, Mr. Austin's negligence claim is not seeking recovery for a "negligent assault." Thus, the mere fact that Officer Thomas intentionally struck Mr. Austin has absolutely no bearing on the separateness of Mr. Austin's battery and negligence claim because the battery claim is premised on whether Officer Thomas was justified in striking Mr. Austin, and the negligence claim is premised on the reasonableness of the use of force by Officer Thomas after legal justification had been found. When this distinction is brought to light, it is clear that Mr. Austin has distinctly pled two separate causes of action.

It is *not* undisputed that Officer Thomas struck Mr. Austin in self defense. Rather, there are two versions of how the incident occurred – Mr. Austin's and Officer Thomas'. Each version provides a separate and distinct basis for Mr. Austin's negligence and battery claims. Mr. Austin alleges that Officer Thomas intentionally, and without justification, struck Mr. Austin on the left side of his face after Mr. Austin demanded to be returned to his cell. *See* Exhibit 1 at 63-64. As a result of Officer Thomas' blow, Mr. Austin's jaw was broken and he required hospitalization. *See* Exhibit 10. If a jury were to accept this version of how the incident occurred, then this unjustified intentional and offensive touching would certainly support a finding of battery. *See Holder*, 700 A.2d at 741 (holding that a plaintiff may recover on a claim for battery by proving an intentional act that causes harmful or offensive bodily contact).

Officer Thomas' drastically different account of how the incident occurred (namely, that he struck Mr. Austin in self defense after Mr. Austin swung at him) could support a finding of negligence against Officer Thomas. *Id*. at 97, 103-104. Under these facts, the question is not whether Officer Thomas intentionally struck Mr. Austin without legal justification, but whether in striking him, Officer Thomas breached his duty to only use "that force which is reasonably necessary to bring an incident under control, while protecting the lives of the officers and others." *See* MPD General Order 901.07, attached hereto as "Exhibit 11."[1] In support of his negligence claim, Mr. Austin has presented expert testimony establishing the duty of care that an officer must adhere to when he uses force. *See* Deposition of James Bradley at 104-105, attached hereto as "Exhibit 12;" *see also* Exhibit 11.

As a result of the above, it is clear that Mr. Austin asserts two separate and distinct theories of liability in his Complaint with regard to the use of force by Officer Thomas. Mr. Austin alleges that as a result of Officer Thomas' unjustified blow, Officer Thomas committed a battery against him. Alternatively, Mr. Austin alleges that Officer Thomas' actions in striking him were negligent and breached the standard of care as set forth in, among others, MPD General Order 901.07, the "Spectrum of Force," and any other standards established by expert testimony. There is no bar against Mr. Austin alleging multiple theories of liability entitling him to recovery. For example, a party injured by an intentional act (such as a police shooting) may sue for the common law

---

[1] "The policy of the Department is that an officer shall use only that force which is reasonably necessary to bring an incident under control, while protecting the lives of the officers and others." *See* Exhibit 11. 901.07 continues that an officer shall only use such force when it is necessary to protect themselves, to restrain or subdue a resistant individual, or to bring an unlawful situation safely and effectively under control. *Id*.

intentional torts of assault and battery. *See Etheredge v. District of Columbia*, 635 A.2d

908, 916 (D.C. 1993); *District of Columbia v. White*, 442 A.2d 159, 162-64 (D.C. 1982);

*District of Columbia v. Downs*, 357 A.2d 857, 859-60 (D.C. 1976).  However, suit may

also simultaneously be predicated upon one or more theories of negligence, such as an

officer's negligent act of shooting the victim. *See District of Columbia v. Evans*, 644 A.2d

1008, 1019-21 (D.C. 1994); *Etheredge*, 635 A.2d at 918; *White*, 442 A.2d at 162-64;

*District of Columbia v. Davis*, 386 A.2d 1195, 1198 (D.C. 1978); *Downs*, 357 A.2d at

859-60.  Each of these theories of liability has distinct elements of proof, defenses, and

rules on vicarious liability, but bear substantial similarities at the same time.  *See Holder*,

700 A.2d at 742.

    Based on these differing accounts as to how the incident occurred, it is evident

that Mr. Austin's battery and negligence claims are completely independent and distinct.

Mr. Austin's factual scenario claiming that Officer Thomas had no legal justification to

strike Mr. Austin, will support a finding of battery, while Officer Thomas' version of the

incident, where Mr. Austin swung at Officer Thomas, would provide a basis for finding

of negligence.  The dueling allegations of self-defense versus an intentional act present in

this action are similar to those in *District of Columbia v. Downs*, 357 A.2d 857 (1976).

In *Downs*, a minor was shot and fatally wounded by an officer who was executing a

search warrant of the premises.  *Id*. at 858. The decedent's mother brought suit under the

District's wrongful death and survival statute against the District and the involved officer,

alleging that the officer had shot the decedent while he was hiding in a closet.  *Id*.  The

defendant officer stated that he shot the decedent in self-defense because the decedent

had attacked him and attempted to grab his gun.  *Id*.  At the conclusion of the trial, the

judge, after instructing the jury concerning the meaning of the terms "negligence" and "assault" charged the jury as follows:

> [Whether] he [appellant officer] committed an assault as distinguished from negligence is dependent upon whether what he did he did deliberately, or whether he did it without intent, deliberate intent. But, did it accidentally or by failure to exercise the prudence that might be expected of him in the situation, assuming he is an ordinary, reasonable, prudent person.

*Id*. at 859. Further, the judge submitted special interrogatories to the jury which consisted of two questions, namely, did the officer commit the tort of negligence, or did the officer commit the tort of assault. *Id*. at 860. After the jury returned its verdict, the judge asked for the jury's answers to the special interrogatories. In response to the interrogatories, the jury answered that the defendant officer did not commit the tort of assault, but did commit the tort of negligence. *Id*. Thus, the jury found that the officer did not act with deliberate intent in shooting the decedent, but did fail to exercise the prudence that would be expected of an ordinary, reasonable, prudent person. On appeal, the court found that the jury could have found that the defendant officer did not assault the decedent in the sense that he deliberately shot decedent without justification, but that the officer did act negligently, and that his negligence was the cause of decedent's death. *Id*. The *Downs* case is identical to Mr. Austin's action, in that one side is alleging unjustified battery and other is alleging self-defense. Just like in *Downs*, it is entirely reasonable that a jury could determine that while Officer Thomas was not guilty of a battery in the sense of deliberately striking Mr. Austin in the face without justification, Officer Thomas was negligent in his response to Mr. Austin's alleged attempted blow, and that such negligence was the cause of Mr. Austin's injuries.

Similarly, there is a long line of cases in the District of Columbia which support

submitting both an intentional tort and negligence claims to the jury in cases where the

assaulting officer claims self-defense.  *See Etheredge v. District of Columbia*, 635 A.2d

908 (D.C. 1993); *District of Columbia v. White*, 442 A.2d 159, 163 (D.C. 1982); *District

of Columbia v. Evans*, 644 A.2d 1008 (D.C. 1994).   In *Etheredge v. District of

Columbia*, 635 A.2d 908 (D.C. 1993), the plaintiff brought suit against the District after

he was shot in the back by a police officer, who was responding to a domestic

disturbance at plaintiff's residence.  Plaintiff contended that as he was descending down a

staircase, two police officers ordered him to stop and "drop the gun."  *Id*. at 912.  In

response to this command plaintiff turned around so that his back was to the officers and,

in an attempt to comply with the command, reached into his pocket and threw a closed

switchblade over the left banister.  *Id*.  One of the police officers then shot plaintiff in the

back.  *Id*.  The police officers testified that prior to entering the plaintiff's residence they

had been warned that he had a hand gun.  *Id*. at 914.  Upon seeing the plaintiff, they

ordered him to freeze, which he disobeyed, instead whirling around toward the officers

with what appeared to be the handgun which they had been warned about, and that one of

the officers shot the plaintiff because he reasonably believed that the plaintiff was about

to fire.  *Id*.  Plaintiff brought an action alleging, *inter alia*, assault and battery and

negligence.  In reversing the trial court's grant of judgment n.o.v., with regard to

plaintiff's negligence claims the District of Columbia Court of Appeals stated:

> The claims of negligence and assault and battery . . . are related.  *The question
> with respect to the assault and battery claim is whether the [officer] intentionally
> shot [plaintiff] without justification.*  (citations omitted).  *The negligence claim
> hinges on whether [the officer] (when he shot [plaintiff]) failed to act as a
> reasonable prudent officer would have acted.*  (citations omitted).  Having held
> that the evidence was sufficient to support the assault and battery claim, we reach
> the same conclusion as to negligence.  The descriptions of the events . . . would
> permit an impartial juror to find that [the officer] *used excessive force and failed*

> *to act with reasonable prudence when he shot [plaintiff].  It was therefore the*
> *prerogative of the jury, not of the judge, to determine whether [plaintiff] proved*
> *negligence*.

*Id*. at 919 (emphasis added).  Once again, this is the identical situation as with the instant

action.  Any determination of Mr. Austin's battery claim will solely hinge on whether

Officer Thomas struck him without legal justification (s*ee District of Columbia v. White*,

442 A.2d 159, 163 (D.C. 1982)).  Whereas if it is determined that Officer Thomas was

justified in using force (because, for example, Mr. Austin had attempted to strike him),

any negligence claim will solely hinge on whether Officer Thomas' use of force breached

the applicable standards of care.

Based upon the dual scenarios presented in this matter, it is clear that all of the

cases cited by Defendant District in support of its Motion are completely distinguishable.

In *District of Columbia v. Chin*, 839 A.2d 701 (D.C. 2003), the District of Columbia

Court of Appeals addressed whether separate claims for negligence and battery existed in

the context of allegations of excessive force stemming from an *arrest*.  Plaintiff Chinn

alleged that he was pulled over by several District Police officers, and, after refusing to

exit his car, was pulled out of his vehicle and severely beaten by the police.  *Id*. at 705.

The police testified that Chinn refused to exit his vehicle, became extremely combative,

and had to be subdued with force.  The court acknowledged that both negligence and

battery claims:

> involve an inquiry into the reasonableness of the police officer's actions . . . [f]or
> assault and battery the inquiry is whether the officers conduct was reasonably
> necessary and thereby privileged; and for negligence the inquiry is whether the
> officer's conduct violated the standard of care of a reasonably prudent officer.

*Id*. at 707; *see also Holder*, 700 A.2d at 742.  However, these inquires are *identical* when

a battery *lawful in its inception* (such as an arrest) escalates into alleged excessive force,

and there will be no claim for negligence. *Chinn*, 829 A.2d at 707. The court's delineation of a "battery lawful in its inception" is the key distinguishing fact. An arrest in and of itself is a battery, however if an officer does not use more force than reasonably necessary, then the officer will be clothed in privilege. *Id*. at 706. However, if an officer uses more force than reasonably necessary, his actions will not be privileged, and he will be liable for battery. In this instance, even a negligent use of excessive force will be subsumed into a battery. *Id*. at 707. But regardless of whether excessive force is used, the initial battery (the arrest) was lawful in its inception. In the instant action, Mr. Austin does not allege that he was injured pursuant to an arrest, or that the battery was lawful in its inception, rather Mr. Austin alleges that Officer Thomas struck him in the face without justification. Under the facts as proposed by the Mr. Austin, there was simply no lawful justification for the battery.

Further, in *Chinn* there was essentially only one set of facts how the incident between plaintiff and defendants occurred – plaintiff refused to exit his vehicle and was pulled out of his car, subdued and arrested. *Id*. at 705. The only issue between the parties was whether excessive force was used in effecting the arrest. In the instant action, there are two completely different versions of what occurred between Mr. Austin and Officer Thomas, each which supports either a finding of negligence or battery. The court in *Chinn* explicitly acknowledged that in cases involving police misconduct where there were two different versions of what happened, there was sufficient evidence to submit both negligence and battery claims to the jury. *Id*. at 709; *see also Etheredge v. District of Columbia*, 635 A.2d 908 (D.C. 1993); *District of Columbia v. Downs*, 357 A.2d 857 (D.C. 1976); *District of Columbia v. White*, 442 A.2d 159 (D.C. 1982).

Similarly, *Hudson v. District of Columbia*, 2005 U.S. Dist. LEXIS 11505 (D.C. 2005), and *Sabir v. District of Columbia*, 755 A.2d 449 (D.C. 2000), are equally distinguishable for the exact same reasons as *Chinn*. As in *Chinn*, in *Sabir*, the plaintiff sought to recover under theories of negligence and assault for injuries sustained pursuant to an *arrest*. The plaintiff alleged that the defendant officers used excessive force when seeking to restrain her after she attacked on of the defendant officers. *See Sabir*, 755 A.2d at 451. The plaintiff's complaint alleged that the defendant police officers had "negligently caused the assault and battery, arrest and detention of plaintiffs." *Id*. at 452. The court dismissed the plaintiffs' negligence action, finding the plaintiffs failed to specify any negligent act, and failed to characterize any breach of duty which may have resulted in negligence liability. *Id*. As a result, the negligence claim amounted to little more than an allegation for a negligent assault. *Id*. Mr. Austin's negligence claim is completely distinguishable from that of the plaintiffs in *Sabir*. Mr. Austin has distinctly set forth particular breaches of duties by Defendants which could result in negligence liability even in the event that a jury was to find that Officer Thomas did not commit a battery on Mr. Austin. Further, as in *Chinn*, there are no real issues of fact in *Sabir* as to how the incident occurred, apart from allegations regarding the excessiveness of the force used to effect the arrest. As provided above, this is distinctly different then the circumstances in the instant action where two completely different set of facts exist as to how the incident occurred. *Hudson v. District of Columbia*, which also arose out of an officer's conduct pursuant to an arrest, is equally distinguishable for the same reasons as set forth above.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Nigel Austin requests that the Court deny the

Defendant's Motion for Partial Summary Judgment. A proposed Order is attached hereto.

Respectfully submitted,

BODE & GRENIER, LLP

_____*Peter c. Grenier*_/s/_____
Peter C. Grenier, #418570
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C. 20036
(202) 862-4311
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April 2007, I served a true and accurate copy of Plaintiff's Opposition to Defendant District of Columbia's Motion for Partial Summary Judgment by electronic case filing and U.S. Mail, postage-prepaid upon:

Steven J. Anderson, Esquire
Assistant General Counsel
441 4th Street, N.W.
6th Floor North
Washington, DC 20001
*Attorney for Defendant*
*District of Columbia*


James Pressler, Esquire
PRESSLER & SENFTLE, P.C.
927 15th Street, N.W.
Twelfth Floor
Washington, D.C. 20005
*Counsel for Defendant*
*Officer Don Thomas*


_____*Peter C. Grenier /s/*_____
Peter C. Grenier

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
**NIGEL AUSTIN,**                              )
                                              )
                                              )
      **Plaintiff,**                    ) **Case No. 05-2219(JDB)**
                                              )
      **v.**                            )
                                              )
**THE DISTRICT OF COLUMBIA, et al.**           )
                                              )
      **Defendants.**                   )
_____)

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
DEFENDANT DISTRICT OF COLUMBIA' S
STATEMENT OF MATERIAL FACTS**

In accordance with LCvR 7(h), Plaintiff Nigel Austin ("Mr. Austin") submits this statement of genuine issues in opposition to Defendant District of Columbia's statement of material facts.

    1.    **Defendant's alleged "fact:"** Officer Thomas intentionally struck Nigel Austin on August 25, 2005.[2]

    **Genuine issue:**  Plaintiff does not dispute the fact stated.

_____

[2] Plaintiff does not dispute that Officer Thomas intentionally struck him, however as it is unclear whether Defendant District of Columbia is also asserting that it is undisputed that Officer Thomas struck Mr. Austin in self-defense after Mr. Austin swung at Officer Thomas, Mr. Austin denies that he swung at Officer Thomas.  *See* Exhibit 1 at 60, 63-4.

Respectfully submitted,

BODE &GRENIER, LLP

_Peter C. Grenier /s/_____
Peter C. Grenier (D.C. Bar No. 418570)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C.  20036
(202) 828-4100
(202) 828-4130 (fax)
_Counsel for Plaintiff_

Dated: April 6, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April 2007, I served a true and accurate copy of Statement of Genuine Issues in Opposition to Defendant District of Columbia's Statement of Material Facts by electronic case filing and U.S. Mail, postage-prepaid upon:

Philip Lattimore III, Esquire
Chief, General Litigation Sec. III
Steven J. Anderson, Esquire
Assistant General Counsel
441 4th Street, N.W.
6th Floor North
Washington, DC 20001
*Attorney for Defendant District of Columbia*

James Pressler, Esquire
PRESSLER & SENFTLE, P.C.
927 15th Street, N.W.
Twelfth Floor
Washington, D.C. 20005
*Counsel for Defendant*
*Officer Don Thomas*


           *Peter C. Grenier /s/*       
              Peter C. Grenier