1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - X

NIGEL AUSTIN,                          :

        Plaintiff,               :   Case No.

                                  :   1:05-CV-02219(JDB)

v.

THE DISTRICT OF COLUMBIA,              :

et al.,                                :

        Defendants.              :

- - - - - - - - - - - - - - - - - - X

**ORIGINAL**

Deposition of PAUL M. MAZZEI

Washington, D.C.

Tuesday, February 6, 2007

10:10 a.m.

Job No.: 1-96506

Pages 1 through 140

Reported by: Cynthia R. Simmons, RMR, CRR



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

Case 1:05-cv-02219-JDB   Document 56-5   Filed 05/15/2007   Page 2 of 3
DEPOSITION OF PAUL M. MAZZEI
CONDUCTED ON TUESDAY, FEBRUARY 6, 2007

20 (Pages 77 to 80)

**77**

1  strikes is always center mass of the personal weapon
2  delivery system. A personal weapon is a subject's
3  hand, arm, elbow, upper body, torso, knees, legs or
4  feet."
5    Q  And the last bullet?
6    A  The head and neck and groin are areas --
7    Q  You might want to start over.
8    A  Okay. "The head, neck and groin areas are
9  not primary target areas and should be avoided."
10   Q  Do you have an opinion as to whether
11 Officer Thomas should have struck Mr. Austin on a
12 different part of his body than his head?
13   A  I believe that Officer Thomas reacted with
14 an A strike simply to keep Mr. Austin off of him and
15 to counter the strike that missed him.
16   Q  Well, wait. You said, the first part of
17 what you just said was that Mr. Austin was continuing
18 to attack Officer Thomas after the missed swing?
19   A  What I'm saying is Officer Thomas's punch
20 was a reaction to the swing that missed. All
21 happening very dynamically, very fluidly, very
22 quickly, in the same context of there not being time

**78**

1  for words, okay. And in relationship to the head
2  being struck, that, in that situation I believe that
3  he was striking in the direction of Mr. Austin to
4  avoid any further attempt by him possibly, whether it
5  occurred to him or not, he wouldn't have known that
6  at the time. And that if the strike came in contact
7  with the head, that that would have been reasonable
8  under those circumstances. Done.
9    Q  Okay.
10      MR. MEHIGAN: Peter, I need one minute.
11      MR. GRENIER: Okay.
12      (Off the record.)
13 BY MR GRENIER:
14   Q  Mr. Mazzei, I don't really want to get
15 into the areas of issues relating to medical
16 attention because I'm going to strenuously object to
17 you giving any opinions in this case on those issues.
18 However, since it appears that you're being asked to
19 do so, and reserving my right to seek to strike that,
20 I feel that I need to ask you some questions about
21 that. Can you tell me, when were you asked to
22 formulate an opinion as far as whether or not Officer

**79**

1  Thomas complied with the standard of care regarding
2  medical attention?
3    A  It wasn't quite put that way. I'm trying
4  to remember exactly, I think it was more in line with
5  simply being prepared for the deposition in a broad
6  focus. I may have misspoke earlier. I was never
7  specifically asked by Mr. Mehigan to render an
8  opinion on the medical. I'm not qualified to render
9  an opinion on medical treatment per se.
10      But as it was part of, the way I perceived
11 it is it was part of the material given and, as
12 policy and procedure would go, that, you know, if I
13 was comfortable in that, or whatever the case may be,
14 simply to, you know, to, you know, just to look at
15 all those aspects.
16   Q  And again subject to my strenuous
17 objection to you providing such opinions, can you
18 tell me what is the totality of your opinions
19 regarding medical attention insofar as Officer Thomas
20 was concerned?
21   A  I don't have any specific to, from the
22 medical perspective other than the fact that he

**80**

1  qualified his responsibility when he, in fact,
2  notified and actually when, in fact, officer or
3  Acting Sergeant Hawkins was on the scene of the
4  incident with Mr. Austin.
5    Q  Was Officer Thomas required to render
6  first aid to Mr. Austin?
7    A  Can you define first aid for me more
8  specifically?
9       MR. MEHIGAN: Where's your definition?
10 BY MR GRENIER:
11   Q  I'm glad you asked. It's the provision of
12 medical services to someone before formal medical
13 attention arrives.
14   A  I believe the way I read the general order
15 that talks, I believe it's 901.07, that if a
16 supervisor, and if I remember supervisor is bolded,
17 but once a supervisor is on the scene of a combatant
18 or violent or resisting individual or prisoner or
19 detainee, whatever the case may be, that they take
20 full control of that scene. So, you know, once
21 Acting Sergeant Hawkins got on the scene of that
22 particular situation, especially being in the

**81**

1  contained environment, that it would have been his
2  responsibility to either direct, delegate or initiate
3  whatever first aid would have been necessary.
4      Q  Okay. So yes or no, should Officer Thomas
5  have rendered first aid himself to Mr. Austin?
6      A  Not necessarily.
7      Q  Well, when you say not necessarily, I
8  don't understand that.
9      A  In this particular situation, no, sir.
10     Q  Should Officer Thomas have preserved the
11 scene of the injury as a crime scene?
12     A  I don't believe so. I think that, you
13 know, crime scene, if we were to call every incident
14 that occurs on a regular basis a crime scene to the
15 degree that we would see on CSI or calling out a
16 crime scene technician and stopping all fundamental
17 free flow of a particular area, then I would, I would
18 say, no, no, not in that situation.
19     It's my understanding these types of
20 things, you know, occur, maybe not to this degree,
21 but to one degree or another, you know, quite often
22 in a situation like this. And basically nobody would

**82**

1  be able to do their job.
2      Q  So your answer is no, Officer Thomas was
3  not required to preserve the scene of the injury as a
4  crime scene?
5      A  I do not believe so.
6      Q  Have you ever reviewed any of the FIT --
7  do you know what I mean by FIT, force investigation
8  team?
9      A  Yes.
10     Q  Have you ever reviewed any of the MPD FIT
11 manuals?
12     A  I would have to look here specifically. I
13 have reviewed some --
14     Q  Okay.
15     A  Do you know if it has a specific general
16 order number attached to it?
17     Q  No, it does not.
18     MR. MEHIGAN: Are you referring to a
19 specific document? Maybe you can ask him about that.
20 BY MR GRENIER:
21     Q  Any FIT manuals.
22     MR. ANDERSON: In preparation for this

**83**

1  case or ever?
2  BY MR. GRENIER:
3      Q  Ever.
4      A  Everything that I relied on would be
5  listed here. If you specifically know that it's
6  listed here you could help me.
7      Q  I don't see it listed here. I'm not
8  trying to be coy or tricky or anything, I just don't
9  see it.
10     A  Nor am I trying to be anything other than
11 cooperative. I do not see it here. So I would have
12 to go on the fact that to the best of my
13 recollection, no, sir.
14     Q  Are you rendering any opinions in this
15 case as to whether Officer Thomas violated any
16 general orders or standards of care with respect to
17 the preservation of the incident scene?
18     A  I do not plan to, no, sir.
19     Q  Are you rendering any opinions as to the
20 propriety of placing Mr. Austin, after he was
21 injured, back in a cell with handcuffs, handcuffing
22 him behind his back?

**84**

1      A  You know, unless requested between now and
2  trial, it's not necessarily my understanding, unless
3  asked about that specifically. It was not something
4  that I was specifically looking at when I developed
5  this preliminary report and it is my understanding
6  that my scope of review is still within the
7  perception that I had developing this with the
8  exception of any other information that would be
9  coming in but still looked at through the same
10 filter, so to speak, the area or the parameter of the
11 existing opinion.
12     Q  Turning to where you start with my
13 professional opinion on fax number page 6.
14     A  Yes, sir.
15     Q  You see where it says my professional
16 opinion?
17     A  Yes, sir.
18     Q  Am I correct that the enumerated
19 paragraphs immediately below that, namely 1, 2, 3, 4,
20 5 and 6, are the factual bases for your opinions in
21 this case?
22     A  No, these are, these are basically my