1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - X

NIGEL AUSTIN,                        :

       Plaintiff,                    : Case No.

v.                                   :

                                          1:05-CV-02219(JDB)

THE DISTRICT OF COLUMBIA,            :

et al.,                              :

       Defendants.                   :

- - - - - - - - - - - - - - - - - - X

Deposition of PAUL M. MAZZEI

Washington, D.C.

Tuesday, February 6, 2007

10:10 a.m.

Job No.: 1-96506

Pages 1 through 140

Reported by: Cynthia R. Simmons, RMR, CRR



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

78

1  for words, okay.  And in relationship to the head
2  being struck, that, in that situation I believe that
3  he was striking in the direction of Mr. Austin to
4  avoid any further attempt by him possibly, whether it
5  occurred to him or not, he wouldn't have known that
6  at the time.  And that if the strike came in contact
7  with the head, that that would have been reasonable
8  under those circumstances.  Done.
9      Q    Okay.
10          MR. MEHIGAN:  Peter, I need one minute.
11          MR. GRENIER:  Okay.
12          (Off the record.)
13 BY MR GRENIER:
14     Q    Mr. Mazzei, I don't really want to get
15 into the areas of issues relating to medical
16 attention because I'm going to strenuously object to
17 you giving any opinions in this case on those issues.
18 However, since it appears that you're being asked to
19 do so, and reserving my right to seek to strike that,
20 I feel that I need to ask you some questions about
21 that.  Can you tell me, when were you asked to
22 formulate an opinion as far as whether or not Officer

1  Thomas complied with the standard of care regarding
2  medical attention?
3      A   It wasn't quite put that way.  I'm trying
4  to remember exactly, I think it was more in line with
5  simply being prepared for the deposition in a broad
6  focus.  I may have misspoke earlier.  I was never
7  specifically asked by Mr. Mehigan to render an
8  opinion on the medical.  I'm not qualified to render
9  an opinion on medical treatment per se.
10         But as it was part of, the way I perceived
11 it is it was part of the material given and, as
12 policy and procedure would go, that, you know, if I
13 was comfortable in that, or whatever the case may be,
14 simply to, you know, to, you know, just to look at
15 all those aspects.
16     Q   And again subject to my strenuous
17 objection to you providing such opinions, can you
18 tell me what is the totality of your opinions
19 regarding medical attention insofar as Officer Thomas
20 was concerned?
21     A   I don't have any specific to, from the
22 medical perspective other than the fact that he

1  qualified his responsibility when he, in fact,
2  notified and actually when, in fact, officer or
3  Acting Sergeant Hawkins was on the scene of the
4  incident with Mr. Austin.
5      Q   Was Officer Thomas required to render
6  first aid to Mr. Austin?
7      A   Can you define first aid for me more
8  specifically?
9          MR. MEHIGAN:  Where's your definition?
10 BY MR GRENIER:
11     Q   I'm glad you asked.  It's the provision of
12 medical services to someone before formal medical
13 attention arrives.
14     A   I believe the way I read the general order
15 that talks, I believe it's 901.07, that if a
16 supervisor, and if I remember supervisor is bolded,
17 but once a supervisor is on the scene of a combatant
18 or violent or resisting individual or prisoner or
19 detainee, whatever the case may be, that they take
20 full control of that scene.  So, you know, once
21 Acting Sergeant Hawkins got on the scene of that
22 particular situation, especially being in the

81

1  contained environment, that it would have been his
2  responsibility to either direct, delegate or initiate
3  whatever first aid would have been necessary.
4       Q    Okay.  So yes or no, should Officer Thomas
5  have rendered first aid himself to Mr. Austin?
6       A    Not necessarily.
7       Q    Well, when you say not necessarily, I
8  don't understand that.
9       A    In this particular situation, no, sir.
10      Q    Should Officer Thomas have preserved the
11 scene of the injury as a crime scene?
12      A    I don't believe so.  I think that, you
13 know, crime scene, if we were to call every incident
14 that occurs on a regular basis a crime scene to the
15 degree that we would see on CSI or calling out a
16 crime scene technician and stopping all fundamental
17 free flow of a particular area, then I would, I would
18 say, no, no, not in that situation.
19           It's my understanding these types of
20 things, you know, occur, maybe not to this degree,
21 but to one degree or another, you know, quite often
22 in a situation like this.  And basically nobody would