UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____
                                    )
NIGEL AUSTIN,                       )
                                    )
                                    )
        Plaintiff,                  ) Case No. 05-2219(JDB)
                                    )
    v.                              )
                                    )
THE DISTRICT OF COLUMBIA, et al.    )
                                    )
        Defendants.                 )
_____ )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT OFFICER DON THOMAS' MOTION *IN LIMINE***

Plaintiff Nigel Austin, by and through his counsel, Bode & Grenier, LLP, hereby opposes Defendant Officer Don Thomas' ("Thomas'") Motion *In Limine* (the "Motion").

**SUMMARY OF ARGUMENTS**

As set forth more fully herein, this Court should deny the motion for the following reasons:

1.      The probative value of evidence relating to the Force Investigation Team and United States Attorney's Office's investigations of Officer Don Thomas substantially outweighs any danger of undue prejudice or jury confusion.

2.      Plaintiff is entitled to introduce evidence of Officer Don Thomas' prior specific acts of conduct for purposes of attacking his credibility for truthfulness.

3.      Plaintiff is entitled to an adverse inference as a result of Officer Don Thomas' initial invocation of his Fifth Amendment privilege. Additionally, Plaintiff is entitled to introduce evidence of Officer Don Thomas' invocation of his Fifth Amendment Privilege for impeachment purposes.

## FACTUAL BACKGROUND

As the Court is well aware, this action arises out of the brutal assault of Plaintiff Nigel Austin ("Plaintiff") by Defendant Officer Don Thomas while Plaintiff was a pre-trial detainee at the Central Cell Block and in the custody of the Metropolitan Police Department ("MPD") on August 25, 2005. While the parties disagree about the events leading up to the ultimate assault, it is uncontested that Defendant Thomas struck Plaintiff in the left side of his face with a closed fist. As a result of this blow, Plaintiff was eventually taken to the hospital where he was diagnosed as sustaining a broken jaw.

As a result of Defendant Thomas' use of force, and pursuant to MPD General Orders, a Force Investigation Team ("FIT") investigation commenced to determine the appropriateness of Defendant Thomas' actions in striking Plaintiff.

Additionally, pursuant to the Memorandum of Agreement on the Use of Force, dated June 13, 2001, Assistant United States Attorney Judith Kidwell was notified of the incident on August 28, 2005. After a series of hand-offs of this matter within the United States Attorney's Office, they ultimately issued a declination of prosecution on September 15, 2006, due to Plaintiff's unwillingness to be interviewed by government authorities pending the conclusion of his civil litigation against the District of Columbia and one of its employees.

As part of FIT's investigation, FIT investigators interviewed Defendant Thomas, Plaintiff, and various MPD and non-MPD employees who had witnessed all or part of the incident between Plaintiff and Officer Thomas. FIT investigators also took pictures of Plaintiff, and investigated the scene of the incident. FIT investigators compiled this

information into two main reports – a "Preliminary Report Regarding the Use of Force (Fist) by Officer Don Thomas and Use of Force (Hand Controls) by Officer George Hawkins of the Central Cell Block" ("Preliminary FIT Report"), and a "Final Report Regarding the Use of Force (Fist) by Officer Don Thomas and Use of Force (Hand Controls) by Officer George Hawkins of the Central Cell Block" ("Final FIT Report").[1]

The Preliminary FIT Report is a memorandum to the Assistant Chief of Police, and is essentially a summary of all information gathered to date during the FIT investigation. A copy of the Preliminary FIT Report is attached hereto as "Exhibit 1." Specifically, the Preliminary FIT Report contains: (1) a brief factual summary of the incident between Plaintiff and Defendant Thomas; (2) information regarding the FIT investigators and MPD members involved in the use of force; (3) information regarding Plaintiff; (4) a description of the scene of the incident; (5) summaries of MPD and non-MPD witness statements; (6) a summary of Plaintiff's statement regarding the incident; (7) description of all evidence collected during the course of the investigation; and (8) a list of "Other Issues/Considerations" to be addressed by the FIT investigation. *See* Exhibit 1.

Similarly, the Final Fit Report contains a slightly more detailed recitation of the alleged facts surrounding this incident. A copy of the Final FIT Report is attached hereto as "Exhibit 2." Like the Preliminary FIT Report, the Final Fit Report is comprised of: (1) a narrative section summarizing how the incident occurred; (2) a section containing information about the FIT investigators and involved MPD members; (3) a section containing information regarding Plaintiff; (4) a description of Plaintiff's injuries; (5) a

---

[1] Even though Defendant Thomas makes no reference to the Final FIT Report in his Motion, Plaintiff will discuss the admissibility of both the Preliminary and Final FIT Reports.

3

description of the scene of the incident; (6) summaries of Defendant Thomas' statement to FIT; (7) summaries of MPD and non-MPD witness statements; (8) a summary of Plaintiff's statement regarding the incident; and (9) a description of all evidence gathered during the FIT investigation. *See* Exhibit 2. In addition, the Final FIT Report also contains: (1) a section clarifying and answering questions that arose during the FIT investigation; (2) a tactical analysis of the incident; (3) a summary and conclusion section; and (4) a final recommendation with regard to whether Defendant Thomas' use of force was justified and within departmental policy. *Id*.

On January 9, 2007, the Use of Force Review Board issued a memorandum to Defendant Thomas advising him that his use of force had been found to be "Justified, within Departmental Policy." *See* Exhibit 2 attached to Defendant Thomas' Motion. In addition, the memorandum recommended that Defendant Thomas receive corrective training as a result of certain violations that the FIT investigation uncovered. *Id*. There was no indication as to what type of corrective action was to be taken. As of February 7, 2007, no corrective actions had been taken with regard to Defendant Thomas. *See* No. 15, Defendant Thomas' Interrogatory Answers, a copy of which is attached hereto as "Exhibit 3."

## ARGUMENT

**1.    Evidence of the FIT and USAO Investigations are Highly Probative and Will Not Unduly Prejudice Defendant Thomas**

Evidence of the FIT investigation is highly probative in this matter, and will not be unduly prejudicial to Defendant Thomas. Defendant Thomas does not argue that such evidence is not highly relevant in this action, and this evidence's probative value *clearly* outweighs any perceived risk of prejudice or risk of jury confusion. *See* Fed. R. Evid.

4

403. Further, given the broad definition of relevance and the strong presumption of admissibility under Fed. R. Evid. 403 ("Rule 403"), evidence of the FIT and USAO investigations should be admitted.

There will be no unduly prejudicial effect on Defendant Thomas if evidence of the FIT and USAO investigations is admitted. Indeed, any claim of undue prejudice is absurd being that the FIT investigation consists solely of admissions by Defendant Thomas and various other MPD and non-MPD employees. As Defendant Thomas readily admits that he struck Plaintiff, Defendant Thomas cannot now be prejudiced by any introduction of the FIT or USAO investigation concerning this blow. As an initial matter, the FIT investigation found that Defendant Thomas' use of force was *justified* under the circumstances. Further, the USAO *declined* to prosecute any action against Officer Thomas. Finally, despite the fact that FIT found Defendant Thomas' use of force justified, any additional fears by Defendant Thomas can easily be assuaged by the issuance of cautionary instructions by the Court that any investigations by FIT or the USAO do not necessarily mean that Defendant Thomas had acted wrongly or are representative of the standard of care in this case. *See Carter v. District of Columbia*, 795 F.2d 116, 126 (D.C. Cir. 1986) (stating that in reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness of a limiting instruction). Additionally, Defendant Thomas will also be able to question any witnesses at trial regarding the FIT or USAO investigations, and will thereby be able to mitigate any perceived prejudice.

Evidence of the FIT and USAO investigations is highly probative in this matter. As an initial matter, evidence of the FIT investigation, and its findings and conclusions,

are highly relevant and probative as it is the *only* investigation that was ever conducted as a result of the incident between Plaintiff and Defendant Thomas. As part of the investigation, the FIT investigators questioned and took statements from both the participants and witnesses to the incident, and collected and examined physical evidence – all within days of the actual incident. For example, FIT took pictures of Plaintiff while he was in the hospital several days after the incident. These pictures are extremely probative as they demonstrate Plaintiff's condition in the immediate aftermath of the incident. Notably, as the MPD had allegedly refused to tell Plaintiff's family where he was while Plaintiff was hospitalized, these pictures are the only pictures taken of him in the immediate aftermath of the incident. As a result, Plaintiff should be able to both introduce these pictures and present additional evidence with regard to the circumstances surrounding them.

      More importantly, FIT investigators took statements of Defendant Thomas, Plaintiff, and various MPD and non-MPD employees who witnessed all or part of the incident. It is essential that Plaintiff be allowed to both introduce these statements and question the witness about the circumstances surrounding the making of these statements. These statements represent the witnesses' best, freshest, and most reliable recollections of the incident . Specifically, during the course of discovery, numerous discrepancies have arisen between certain witnesses' FIT statements and their deposition testimony. For example, Officer Rhonda Crowder initially told FIT that she saw Plaintiff swing at Officer Thomas. *See* Exhibits 1 at 3-4 and 2 at 6. However, at her deposition, she repeatedly testified that she did *not* see Plaintiff swing at Defendant Thomas. *See* deposition of Officer Crowder, pages 84-5, a copy of which is attached hereto as "Exhibit

4."   As this case essentially involves two competing version as to how the incident between Plaintiff and Defendant Thomas occurred (namely, Plaintiff's version and Defendant Thomas' version), Plaintiff will be extremely prejudiced if he is unable to explore these discrepancies, and introduce evidence in support thereof, at the time of trial. In addition, Plaintiff should be entitled to introduce evidence of the various statements made to FIT during the course of its investigation to impeach any witnesses should their testimony at trial differ from that of their statements to FIT.

     Further, after obtaining the statements and other evidence, FIT identified and discussed what it deemed to be specific pertinent issues with regard to the incident - namely, the failure to charge Plaintiff with "assault on a police officer," the failure to timely transport Plaintiff to the hospital, and the failure to timely notify FIT of the incident.  These issues, and FIT's factual findings with regard to these issues, are extremely relevant to Plaintiff's claims that he was unjustifiably battered by Defendant Thomas and unreasonably refused immediate medical treatment, and will be helpful to the trier of fact in determining the strength of these claims.  *See Westmoreland v. CBS*, 601 F. Supp 66, 68 (S.D.N.Y. 1984) (holding that post-accident investigations and recommendations are often relevant, and helpful to the trier of fact, because they identify causes of an accident and defendant's concerns about the accident).

     Further, the mere fact that the FIT investigation found that Defendant Thomas did not use excessive force does not automatically render the investigation without value. The reasoning and rationale as to why FIT found Defendant Thomas' use of force justified is equally probative and certainly relevant to this action.  For example, if FIT based its recommendations on facts that are disproved at trial, evidence of this would be

7

highly relevant. This inquiry would go to one of the central issues of the case – namely, was Defendant Thomas justified in striking Plaintiff – and Plaintiff should be able to inquire into the factual bases underpinning FIT's determination that Defendant Thomas' use of force was reasonable.

Additionally, while the FIT investigation focuses primarily on Defendant Thomas' use of force, it also addresses numerous other issues relevant to Plaintiff's action. For example, the final FIT Report addresses the alleged delay in transporting Plaintiff to the hospital after the incident. *See* Exhibit 2 at 16. Specifically, the Final FIT report notes that it was unreasonable to place Plaintiff in a holding cell following the incident without making sure he was transported to the hospital immediately. *Id*. at 16. Notably, FIT based this determination on evidence which was obtained shortly after the incident, presumably when the incident was most fresh in various witnesses' memory. This finding, as well as facts considered by FIT in making this determination, are both relevant and highly probative to Plaintiff's case, and Plaintiff should accordingly be able to both introduce evidence and question witnesses with regard to this finding.

For the sake of brevity, Plaintiff incorporates by reference his arguments contained in his Opposition to Defendant District of Columbia's Motion *In Limine* with respect to Defendant Thomas' claims that the FIT investigation is a subsequent remedial measure.

**2.    Evidence of Defendant Thomas' Prior Sexual Assault is Relevant to Defendant Thomas' Credibility**

While Plaintiff is not entitled to introduce evidence of prior bad acts to prove that Defendant Thomas acted in conformity with such acts at the time of the incident, Plaintiff

8

is certainly entitled to introduce evidence of Defendant Thomas' prior specific conduct to attack his reputation for truthfulness.  *See* Fed. R. Evid. 608(b) ("Rule 608(b)").

>Rule 608(b) provides:
>
>Specific instances of the conduct of a witness, for the purposes of attacking or supporting the witness' character for truthfulness . . . may be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness.

*Id*.  As a result, Plaintiff is not seeking to inquire into Defendant Thomas' prior sexual misconduct complaint in order to show that he has a propensity for assault.  Rather, Plaintiff seeks to introduce this prior bad act to attack Defendant Thomas' credibility.  As both Defendant Thomas and Plaintiff recite markedly different versions as to how the incident occurred, introduction of this prior bad act will be extremely probative in assessing Defendant Thomas' credibility.  Further, any danger of unfair prejudice can be easily remedied by the issuance of limiting instructions by the Court that any testimony concerning Defendant Thomas' prior bad acts only goes to his credibility, and is not evidence of any propensity to commit assaults.

### 3. **Plaintiff is Entitled an Adverse Inference Against Defendant Thomas Regarding his Initial Invocation of His Fifth Amendment Privilege**

Plaintiff is entitled to introduce evidence pertaining to Defendant Thomas' initial invocation of his Fifth Amendment privilege with regard to Plaintiff's discovery responses.  The Fifth Amendment does not forbid adverse inferences to be made against parties in civil actions when they invoke their Fifth Amendment privileges in response to discovery requests.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *SEC v. Huttoe*, 1998 U.S. Dist. LEXIS 23211, 49-50 (D.D.C. 1998) (holding that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to

testify in response to probative evidence offered against them); s*ee also SEC v. International Loan Network*, Inc., 770 F. Supp. 678, 695 (D.D.C. 1991*)*.

In this instance, the fact that Defendant Thomas ultimately did respond to discovery (notably on the <u>last</u> day of discovery and almost six months after the discovery had been initially served) is of no avail.  Defendant Thomas invoked his Fifth Amendment privilege knowing full well that it could be used against him in any trial of this matter, and Plaintiff should be able to introduce evidence of his initial invocation. *See  In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 58, 68 (D.D.C. 2000);  *Securities and Exchange Comm'n v. International Loan Network, Inc.*, 770 F. Supp. 678, 695 (D.D.C. 1991) (noting that the Fifth Amendment does not prohibit drawing adverse inferences against parties to civil proceedings when they refuse to testify in response to probative evidence offered against them); *see also Davis v. Northside Realty Associates, Inc.*, 95 F.R.D. 39, 45 (N.D. Ga. 1982) (stating that "unfortunately for all the civil defendants, failure to respond, albeit for good cause, creates an adverse inference against those to whom the questions were submitted").

At the very least, Plaintiff should be entitled to introduce Defendant Thomas' invocation of his Fifth Amendment privilege to impeach his credibility.  *See McKune v. Lile*, 536 U.S. 24, 41 (2002), *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (holding that a criminal defendant's exercise of his Fifth Amendment privilege prior to arrest may be used to impeach his credibility at trial); *United States v. Moore*, 322 U.S. App. D.C. 334 (D.C. Cir. 1997).  As set forth in *Jenkins*: "impeachment follows the defendant's own decision to cast aside his cloak of silence," and Plaintiff should be entitled to introduce

evidence of Defendant Thomas' prior invocation of his Fifth Amendment privilege to impeach any testimony by Defendant Thomas. *See Jenkins*, 446 U.S. at 238.

In addition, any danger of unfair prejudice or jury confusion due to admission of Defendant Thomas' Fifth Amendment invocation can easily be assuaged by limiting instructions by the Court that such an invocation is not evidence of actual wrongdoing by Defendant Thomas. *See Carter v. District of Columbia*, 795 F.2d 116, 126 (D.C. Cir. 1986) (stating that in reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness of a limiting instruction).

## CONCLUSION

For the foregoing reasons, Plaintiff Nigel Austin requests that the Court deny Defendant Thomas' Motion *In Limine*. A proposed Order is attached hereto.

Respectfully submitted,

BODE & GRENIER, LLP

_____/s/_____
Peter C. Grenier, #418570
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C. 20036
(202) 862-4311
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of June 2007, I served a true and accurate copy of the foregoing Plaintiff's Opposition to Defendant Officer Don Thomas' Motions In Limine, including all exhibits and attachments, by electronic case filing and U.S. Mail, postage-prepaid upon:

>Philip Lattimore III, Esquire
>Chief, General Litigation Sec. III
>Steven J. Anderson, Esquire
>Assistant General Counsel
>James H. Vricos, Esquire
>Assistant General Counsel
>441 4th Street, N.W.
>6th Floor North
>Washington, DC 20001
>*Attorney for Defendant District of Columbia*


>Patrick Senftle, Esquire
>PRESSLER & SENFTLE, P.C.
>927 15th Street, N.W.
>Twelfth Floor
>Washington, D.C. 20005
>*Counsel for Defendant*
>*Officer Don Thomas*


                                    *Peter C. Grenier /s/*
                                    Peter C. Grenier