**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NIGEL AUSTIN,** | ) | |
| **Plaintiff,** | ) | **Case No. 05-2219(JDB)** |
| **v.** | ) | |
| **THE DISTRICT OF COLUMBIA, et al.** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION *IN LIMINE***

Plaintiff Nigel Austin, by and through his counsel, Bode & Grenier, LLP, hereby opposes Defendant District of Columbia's ("District") Motion *In Limine* (the "Motion").

**SUMMARY OF ARGUMENTS**

As set forth more fully herein, this Court should deny the Motion for the following reasons:

1. Post-incident reports and investigations are not considered "subsequent remedial measures" under Fed. R. Evid. 407 as they are not measures which would have made the alleged harm less likely to occur, and even recommendations that corrective actions be taken have been found insufficient for exclusion under Fed. R. Evid. 407.

2. The cases cited by Defendant District are distinguishable from this matter because Defendant District has not actually instituted any subsequent remedial measures as a result of the incident, and the probative value of the admission of evidence concerning the FIT investigation and recommendations far outweighs any prejudice to Defendant District.

**FACTUAL BACKGROUND**

As the Court is well aware, this action arises out of the brutal assault of Plaintiff Nigel Austin ("Plaintiff") by Defendant Officer Don Thomas ("Thomas") while Plaintiff was a pre-trial detainee at the Central Cell Block, and in the custody of the Metropolitan Police Department ("MPD") on August 25, 2005. While the parties disagree about the events leading up to the ultimate assault, it is uncontested that Defendant Thomas struck Plaintiff in the left side of his face with a closed fist. As a result of this blow, Plaintiff was eventually taken to the hospital where he was diagnosed as sustaining a broken jaw.

As a result of Defendant Thomas' use of force, and pursuant to MPD General Orders, a Force Investigation Team ("FIT") investigation commenced to determine the appropriateness of Defendant Thomas' actions in striking Plaintiff. Acting Sergeant George Hawkins ("Hawkins") was also a subject of the FIT investigation due to his alleged use of force in restraining Plaintiff after Defendant Thomas had struck Plaintiff in the face.

As part of the FIT investigation, the FIT investigators interviewed Defendant Thomas, Plaintiff, Hawkins and various MPD and non-MPD employees who had witnessed all or part of the incident between Plaintiff and Officer Thomas. FIT investigators also took pictures of Plaintiff, and investigated the scene of the incident. FIT investigators compiled this information into two main reports – a "Preliminary Report Regarding the Use of Force (Fist) by Officer Don Thomas and Use of Force (Hand Controls) by Officer George Hawkins of the Central Cell Block" ("Preliminary FIT Report"), and a "Final Report Regarding the Use of Force (Fist) by Officer Don Thomas and Use of Force (Hand Controls) by Officer George Hawkins of the Central

Cell Block" ("Final FIT Report").[1]

The Preliminary FIT Report is a memorandum to the Assistant Chief of Police, and is essentially a summary of all information gathered to date during the FIT investigation. A copy of the Preliminary FIT Report is attached hereto as "Exhibit 1." Specifically, the Preliminary FIT Report contains: (1) a brief factual summary of the incident between Plaintiff and Defendant Thomas; (2) information regarding the FIT investigators and MPD members involved in the use of force; (3) information regarding Plaintiff; (4) a description of the scene of the incident; (5) summaries of MPD and non-MPD witness statements; (6) a summary of Plaintiff's statement regarding the incident; (7) a description of all evidence collected during the course of the investigation; and (8) a list of "Other Issues/Considerations" to be addressed by the FIT investigation. *See* Exhibit 1. At no point does the Preliminary FIT Report offer any opinions as to the appropriateness of Defendant Thomas' actions, nor does it make any recommendations that any corrective action be taken as a result of Defendant Thomas' actions.

Similarly, the Final Fit Report contains a slightly more detailed recitation of the alleged facts in this incident. A copy of the Final FIT Report is attached hereto as "Exhibit 2." Like the Preliminary FIT Report, the Final FIT Report is comprised of: (1) a narrative section summarizing how the incident occurred; (2) a section containing information about the FIT investigators and involved MPD members; (3) a section containing information regarding Plaintiff; (4) a description of Plaintiff's injuries; (5) a description of the scene of the incident; (6) summaries of Defendant Thomas' and Officer Hawkins' statements to FIT; (7) summaries of MPD and non-MPD witness statements;

[1] Even though Defendant District makes no reference to the Final FIT Report in its Motion, Plaintiff will discuss the admissibility of both the Preliminary and Final FIT Reports.

(8) a summary of Plaintiff's statement regarding the incident; and (9) a description of all evidence gathered during the FIT investigation. *See* Exhibit 2. In addition, the Final FIT Report also contained: (1) a section clarifying and answering questions that had arisen during the FIT investigation; (2) a tactical analysis of the incident; (3) a summary and conclusion section; and (4) a final recommendation with regard to whether Defendant Thomas' and Officer Hawkins' uses of force were justified and within departmental policy. *Id*. The Final FIT Report makes no reference to any corrective action, or other remedial measures to be instituted against either Defendant Thomas or Officer Hawkins.

On January 9, 2007, the Use of Force Review Board issued separate memoranda to Defendant Thomas and Officer Hawkins advising them that their respective uses of force had been found to be "Justified, within Departmental Policy." *See* Exhibits B and C attached to Defendant District's Motion. In addition, the memoranda recommended that the officers receive corrective training as a result of certain violations that the FIT investigation uncovered. *Id*. There was no indication as to what type of corrective action was to be taken. Additionally, as of February 7, 2007, no corrective actions had been taken with regard to Defendant Thomas. *See* No. 15, Defendant Thomas' Interrogatory Answers, a copy of which is attached hereto as "Exhibit 3."

## ARGUMENT

### 1. MPD FIT Reports and Recommendations Are Not Subsequent Remedial Measures Subject to Fed. R. Evid. 407 Prescription

Defendant District's Motion should be denied because the Preliminary and Final FIT reports (collectively "FIT Reports") and Use of Force Review Board's ("UFRB") recommendations do not constitute subsequent remedial measures which would be subject to exclusion under Fed. R. Evid. 407 ("Rule 407").

**a. MPD FIT Reports Are Not Subsequent Remedial Measures**

Internal investigatory reports are not "subsequent remedial measures" subject to Rule 407 prohibitions, as the District suggests. Rule 407 provides as follows:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if previously taken, *would have made that harm less likely to occur*, evidence of the subsequent measures is not admissible to prove negligence [or] culpable conduct . . . [.]

*Id*. (emphasis added). Despite the District's characterizations of the FIT investigations as "subsequent remedial police investigations," the FIT reports are clearly internal investigatory reports of the incident and are not subject to Rule 407 because there is absolutely no indication that they "would have made the harm less likely to occur." *See Howell v. Polk*, 2006 U.S. Dist. LEXIS 7257, *45 (D. Ariz. 2006); *Benitez-Allende v. Alcan Aluminio Do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir. 1988); *Rocky Mount. Helicopter, Inc. v. Bell*, 805 F.2d 907, 918 (10th Cir. 1986); *see also* Martin Schwartz, *Admissibility of Investigatory Reports in 1983 Civil Rights Actions*, 79 MARQ. L. REV. 453, 500 (1996). In fact, because an investigation of an incident (and, accordingly, the preparation of any investigative report) cannot occur *before* an incident has happened, the FIT Reports are clearly not measures which, if taken earlier would have made the harm to Plaintiff less likely to occur. *See Evdokia Ensign v. Marion County*, 914 P.2d 5, 7 (Or. Ct. App. 1996) (noting that to be excluded under Rule 407, the measure at issue must have been one that could have been taken before the harm occurred, and since one cannot investigate an incident before it has occurred, an investigation of the incident cannot be excluded pursuant to Rule 407); *accord Bethel v. Peters*, 97 P.3d 822, 827 (Alaska 2004) (concluding that even if a post-incident investigation and report were considered "measures," they would be excluded from Rule 407 because one cannot investigate an

incident before it happens).

Courts have consistently distinguished between internal investigatory reports and "subsequent remedial measures," in deciding whether such reports are subject to Rule 407. This distinction has even applied to reports and investigations pertaining to the very problem that serves as the basis for a lawsuit. *See Prentiss & Carlisle Co., Inc. v. Koehering-Waterous Div.*, 972 F.2d 6, 10 (1st Cir. 1992); *Rocky Mount. Helicopter., Inc.*, 805 F.2d at 918; *Benitez-Allende*, 857 F.2d at 33; *McFarlane v. Caterpillar, Inc.*, 974 F.2d 176, 181 (D.C. Cir. 1992) (holding that portion of post-accident service report which indicated that dimensions of a spool in a hydraulic system did not meet manufacturing specifications was not evidence of a subsequent remedial measure).

In fact, virtually every Circuit recognizes that post-incident investigations do not constitute subsequent remedial measures. *See, e.g., McFarlane v. Caterpillar, Inc, et al.*, 974 F.2d 176, 181-182 (D.C. Cir. 1992); *Prentiss and Carlisle Company, Inc. v. Koehring-Waterous*, 972 F.2d 6, 9 (1st Cir. 1992); *Allred v. Maersk Line, Ltd.*, 35 F.3d 139, 142 (4th Cir. 1994); *Wilson v. Beebe*, 770 F.2d 578, 590 (6th Cir. 1985); *O'Dell, et al. v. Hercules, Inc.*, 904 F.2d 1194, 1205 (8th Cir. 1990); *In re: Aircrash in Bali, Indonesia. Causey, Jr., et al. v. Zinke, et al.*, 871 F.2d 812, 816 n2 (9th Cir. 1989); *Rocky Mountain Helicopters, Inc., et al. v. Bell Helicopters Textron*, 805 F.2d 907, 918 (10th Cir. 1986); *Westmoreland v. CBS Inc., et al.*, 601 F. Supp. 66, 67-68 (S.D.N.Y. 1984); *In re: the Chicago Flood Litigation*, 1995 U.S. Dist. LEXIS 10305, 17 (N.D. Ill. 1995); *Fasanaro v. Mooney Aircraft Corp., et al.*, 687 F Supp. 482, 487 (N.D. Cal. 1988); *Hochen, et al. v. Bobst Group, Inc.*, 193 F.R.D. 22, 24-25 (D. Mass. 2000).

For example, in *Rocky Mount. Helicopter,* the plaintiff sued the defendant-

manufacturer for damages arising out of an alleged manufacturer's defect in a helicopter that the plaintiff had purchased. The plaintiff sought to admit evidence from a "Photoelastic Study" that was conducted by the defendant after the accident which ultimately concluded that the trunnions (cylindrical protrusions used as mounting points) on their helicopters were defective. *Rocky Mount. Helicopter*, 805 F.2d at 918. The defendant objected to the admission of this study arguing that its admission communicated to the jury that the trunnions had been redesigned and that this constituted a subsequent remedial measure that should have been excluded pursuant to Rule 407. *Id*. Notably, all references to the fact that trunnions had been redesigned following this report were redacted from the report. The Court in admitting the study noted that "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports." *Id*. at 918. The Court further pointed out that:

> tests are conducted for the purposes of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test. In this case, the remedial measure was not the Photoelastic Study of the trunnion but rather the subsequent redesign of the trunnion.

*Id*.; *see also Misener v. GM*, 924 F. Supp. 130, 132 (D. Utah 1996) (noting that the "Tenth Circuit has held that [Rule] 407 does not have application to exclude the introduction of evidence of subsequent remedial measures in the nature of post-event tests"). Similarly, in this matter, the FIT Reports are equally admissible under the same logic. The FIT Reports are factual recitations and analyses of the incident between Plaintiff and Defendant Thomas, and do not contain, or even discuss, any actual remedial measures taken as a result of the incident. The sole purpose of these FIT Reports was to

determine whether Defendant Thomas' and Officer Hawkins' actions were within departmental policy, not to discuss remedial actions taken against them. *See Finely v. Lindsay*, 1999 U.S. Dist. LEXIS 12261, *10 (D. Ill. 1999) (noting that Rule 407 did not serve to bar evidence of investigations or disciplinary actions of police officer's other acts as "subsequent remedial measures" because the "very purpose of the internal investigations is to determine fault, while Rule 407 is concerned about an improper inference between a party taking subsequent remedial measures and it being at fault").

In addition, the mere fact that an investigatory report *may* lead to remedial measures is not enough to exclude the report on Rule 407 grounds. For example, in *Prentiss & Carlisle v. Koehering-Waterous*, 972 F.2d 6 (1st Cir. 1992), the plaintiff was injured when a product manufactured by the defendant caught fire. *Prentiss & Carlisle*, 972 F.2d at 7. Shortly after the fire, the defendant's employees investigated the cause of the fire, and prepared a report outlining their analysis and making several suggestions for remedial measures.[2] *Id*. at 9. At trial, defendant objected to the admission of the documents that discussed the defendant's analysis of the problem. *Id*. The Court upheld the admission of these documents, and held that the fact that "the analysis may often result in remedial measures being taken . . . does not mean that evidence of the analysis may not be admitted." *Id*. at 10; *see also Benitiz-Allende v. Alcan Aluminio Do Brasil*, 857 F.2d 26, 33 (1st Cir. 1988) (upholding admission of a test of an allegedly defective product even though test was used to plan a voluntary recall of product following accident); *DOW Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481 (10th Cir. 1990) (noting that 407 is not a basis to exclude a report on what corrective action might have been

[2] The Court redacted any mention of the suggested remedial measures contained in the documents.

taken). Similarly here, the FIT Reports can only be construed as the MPD's analysis of the incident between Defendant Thomas and Plaintiff, especially as the FIT Reports make absolutely *no mention* of any suggested corrective measures to be taken against either Defendant Thomas or Officer Hawkins.

Further, contrary to Defendant District's claims, it is not universally held that subsequent police investigations are inadmissible under Rule 407. In *Ensign v. Marion County*, 914 P.2d 5 (1996), the Court affirmed the trial court's admission of a Marion County Sheriff's board of review's letter containing its findings and conclusions regarding a collision between a Marion County deputy sheriff and the plaintiff. Specifically, the court noted, in response to defendant's objection that the letter should be excluded as a subsequent remedial measure under OEC 407 (Oregon's version of Rule 407), that to exclude the board's findings and conclusions as evidence of a subsequent remedial measure would be to expand OEC 407 beyond its intended bounds. *Id*. at 8. Notably, in arriving at this decision, the Court relied on federal case law, specifically *Prentiss & Carlisse v. Koehring-Waterous*, *supra*, and *Rocky Mount. Helicopter v. Bell*, *supra*, in interpreting Rule 407. *Id*. at 7.

In *Wilson v. Beebe*, 770 F.2d 578 (6th Cir. 1985), the Court rejected the defendant's argument that a police officer's supervisor's report should have been excluded under Rule 407. In *Wilson*, a police officer's service revolver mistakenly went off while he was attempting to handcuff the plaintiff. *Wilson*, 770 F.2d at 580. Immediately after the shooting, the police officer's supervisor prepared a report which stated, in part, that the officer had cocked his weapon in breach of his training. *Id*. The Court rejected the defendant's argument that this report constituted a subsequent remedial

measure, finding, instead, that the report was merely a report of the incident, and did not recommend any changes in procedures. *Id*. Similarly, in the above action, the FIT Reports are also mere reports of the incident and make no mention of policy changes or other remedial actions to be taken against Defendant Thomas or Officer Hawkins.

**b. UFRB Recommendations Are Not Subsequent Remedial Measures Under Rule 407**

The Court should also deny the portion Defendant District's motion that seeks to exclude evidence of the UFRB's recommendations that Defendant Thomas and Officer Thomas receive corrective actions as a result of the incident for the simple fact that these recommendations are not concrete actions that have actually been taken.

The UFRB recommendations are not protected under Rule 407 because they are simply that – recommendations that corrective action be taken. There is absolutely no indication that there recommendations were actually followed, and in fact, as of February 7, 2007, Defendant Thomas had not been subjected to any corrective measures. *See* Exhibit 3. As a result, the board's recommendations cannot be seen as measures which, if taken previously, would have made the incident less likely to occur. Simply put, the UFRB did not implement any corrective action, it only recommended such actions, and mere recommendations for corrective measures are not within the scope of Rule 407. *See Rocky Mount. Helicopters*, 805 F.2d at 918; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482, 487 (D. Cal. 1988) (holding that it is only if the recommendations contained in an investigatory report are actually implemented will they fall within Rule 407); *Bethel v. Peters*, 97 P.3d 822, 827 (Alaska 2004) (holding that subsequent remedial measures are concrete actions, not preliminary investigations or recommendations pointing towards those actions); *see also* 2 Jack B. Wienstein and Margaret A. Berger, *Weinstein's Federal*

*Evidence* § 407.06 (2d ed., 2004). As there has been no indication that any action has been taken to implement these recommendations they can not rise to the level of a subsequent remedial measure protected under Rule 407, and Plaintiff should be allowed to introduce evidence of the recommendations.

**c. The Cases Cited in Support of Defendant District's Motion are Distinguishable**

As no remedial actions have actually been taken, the cases cited by Defendant District in support of its Motion are easily distinguishable. In both *Altemus v. Tamadge*, 58 F.2d 874 (D.C. Cir. 1932), and *Avery v. S. Kann Sons. Co.*, 91 F.2d 248 (D.C. Cir. 1937), *actual subsequent corrective measures were taken* by the respective defendants in the form of post-accident repairs. As indicated above, the UFRB merely recommended corrective actions – actions which to date have apparently not been implemented.

Defendant District *completely misrepresents* the holding in *Exxon Corp. v. Shuttleworth*, 800 S.W.2d 902 (Tex. App. 1990). The *Exxon* Court makes absolutely no determination as to whether the foreman's report of the plaintiff's injury was a subsequent remedial personnel measure. Rather, the court solely affirmed the trial court's exclusion on the grounds that the evidence contained in the foreman's report was cumulative of other evidence already properly admitted, and did not address any of the parties' specific objections regarding its admissibility. There have been no allegation in this matter that the FIT Reports or UFRB's recommendation are cumulative in nature.

Further, while *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986), held that the internal investigation and measures taken by the City against the offending police officer were remedial measures, and therefore excluded under Rule 407, the rationale applied by the Court does not apply in this matter. Initially, the Court failed to

distinguish between the investigation and the corrective measures taken by the City as a result of the investigation in reaching its conclusion that both were excluded under Rule 407. *Id*. at 1417. However, the authorities cited by the Court in support do take this distinction into account. *See Boeing v. Brown*, 291 F.2d 310, 315 (9th Cir. 1961) (holding that *subsequent remedial measures* are inadmissible with regard to the issue of prior negligence); *Luera v. Synder*, 599 F. Supp 1459, 1463 (D.C. Col. 1984) (holding that testimony of changes in police department policies are inadmissible as evidence of a subsequent remedial measure). Both of the cases cited in support are clearly premised on the inadmissibility of subsequent remedial measures, and not investigatory reports or hearings. The *Maddox* court does not offer any other authority in support of its proposition that the internal affairs investigation was a subsequent remedial measure. Notably, in this matter (as opposed *Maddox*), *no concrete corrective actions have been taken* with regard to Defendant Thomas' actions.

*Maddox* is an outlier Ninth Circuit decision and does not bind this Court. In fact, *Maddox* is contradicted by the great weight of federal authority, and does not state the current law of its own Circuit. *Maddox* is therefore not even persuasive authority, and should not influence the Court's disposition of the Motion. Clearly, *Maddox* does not represent the nearly universal view of post-incident investigations under Rule 407. Indeed, *Maddox*, a Ninth Circuit decision, fails to represent the present state of Ninth Circuit law. *Maddox*, decided in 1986, was superseded in 1989 by *In re: Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 n2 (9th Cir. 1989), which states, "'Subsequent remedial measures' include 'only the actual remedial measures themselves, and not the initial steps toward ascertaining whether any remedial measures are called for.'" *Id*.

(citations omitted). Moreover, *Maddox* does not state the law of this Circuit. The District of Columbia Circuit does not consider post-incident investigations to be subsequent remedial measures. *See*, *McFarlane*, 974 F.2d at 181-2. *Maddox* is therefore neither binding nor persuasive, and should not be considered in the Court's disposition of the Motion.

Further, the *Maddox* court clearly reached its decision to exclude the above evidence primarily on Fed. R. Evid. 403 grounds rather than Rule 407 grounds. The evidentiary dispute between the plaintiff and defendants arose because plaintiff wished to introduce evidence of an admission made by the offending police officer during a disciplinary hearing that he had violated City police by applying a choke hold. *Id*. at 1417. The Court held that this would be unduly prejudicial because (1) the evidence had little probative value as other evidence had been introduced regarding the City's policies regarding the use of choke holds; and (2) because the jury might unfairly infer that because the offending officer had been subjected to a disciplinary proceeding he was guilty of the alleged wrongdoing. *Id*.

These concerns are not present in this action. Initially, it is not clear that the FIT investigation is similar to the disciplinary proceeding present in *Maddox*.[3] Similarly, Plaintiff is not seeking to introduce evidence of the FIT reports solely to admit a damning admission by Defendants – it is uncontested that Defendant Thomas struck Plaintiff – the sole dispute is whether the action was justified. Rather, the FIT Reports contain highly probative information that far outweighs any perceived prejudice to Defendant District. For example, as stated above, as part of its investigation FIT took statements from MPD

---

[3] *Sheller-Globe Corp. v. City-Express* is similarly distinguishable for the identical reason.

and non-MPD witnesses to the incident. During depositions in this action, certain MPD witnesses' testimony contradicted the statements that they had made to FIT. As a result, Plaintiff should be allowed to introduce this evidence at trial.

Further, notwithstanding the fact that the FIT reports and UFRB found that Officer Thomas' and Officer Hawkins' actions were justified, any perceived prejudice can be easily assuaged by limiting and/or cautionary instructions by the Court regarding the nature of the FIT investigations. *See Carter v. District of Columbia*, 795 F.2d 116, 126 (D.C. Cir. 1986) (stating that in reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness of a limiting instruction).

Finally, there can be no prejudice to Defendant District because it has not taken any corrective actions. One of the primary reasons for Rule 407's exclusion of subsequent remedial measures (at least in negligence actions) is that evidence of subsequent remedial measures may cause a jury to improperly consider defendant's knowledge of a defect at the time of a repair, rather than at the time of the accident. *See Roland v. Red Cross*, 696 A.2d 399 (D.C. 1996). In this matter, absolutely no corrective actions have been taken, and as a result, there can be no jury confusion.

**CONCLUSION**

For the foregoing reasons, Plaintiff Nigel Austin requests that the Court deny the Defendant District's Motion *In Limine*. A proposed Order is attached hereto.

Respectfully submitted,

BODE & GRENIER, LLP

_______/s/_________________
Peter C. Grenier, #418570
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C. 20036
(202) 862-4311
*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of June 2007, I served a true and accurate copy of the foregoing Plaintiff's Opposition to Defendant District of Columbia's Motions In Limine, including all exhibits and attachments, by electronic case filing and U.S. Mail, postage-prepaid upon:

Philip Lattimore III, Esquire
Chief, General Litigation Sec. III
Steven J. Anderson, Esquire
Assistant General Counsel
James H. Vricos, Esquire
Assistant General Counsel
441 4th Street, N.W.
6th Floor North
Washington, DC 20001
*Attorney for Defendant District of Columbia*

Patrick Senftle, Esquire
PRESSLER & SENFTLE, P.C.
927 15th Street, N.W.
Twelfth Floor
Washington, D.C. 20005
*Counsel for Defendant*
*Officer Don Thomas*

_Peter C. Grenier /s/_
Peter C. Grenier