IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIGEL AUSTIN | : |
| Plaintiff, | : |
| v. | : CASE No. 1:05-CV-02219 (JDB) |
| THE DISTRICT OF COLUMBIA, et al. | : |
| Defendants. | : |

### DEFENDANT THOMAS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT THOMAS' MOTION IN LIMINE

Defendant Don Thomas, through counsel, hereby replies to Plaintiff's opposition to Defendant Thomas' Motion in Limine.

I.

### THE METROPOLITAN POLICE DEPARTMENT'S FORCE INVESTIGATION TEAM'S INVESTIGATION AND REPORTS[1] ARE INADMISSIBLE

As a threshold matter, Defendant Thomas does not seek to preclude the Plaintiff from offering the underlying or primary evidence (e.g., photographs, statements, etc.), within the constraints of the applicable rules of evidence, upon which the Force Investigation Team (FIT) based its reports. Defendant Thomas does, however, seek to preclude Plaintiff from referring to the investigation itself or from offering the findings, recommendations, or substantive portions of the report on the basis that such evidence is hearsay, cumulative conclusions which displace the function of the jury, and otherwise is inadmissible under Fed. Rule Evid. § 403 and § 407.

---

[1] In his initial motion, the Defendant Thomas did not address the final FIT report. To clarify, the Defendant Thomas seeks to preclude evidence pertaining to the investigation and/or evaluations of the Use of Force Board (UFRB), the United States Attorney General Office (USAO) and Force Investigation Team (FIT). As the Defendant Thomas has previous addressed the UFRB review and USAO investigation, the focus of this reply will be on the FIT investigation and reports.

A.

**The FIT Reports are Hearsay**

The FIT reports are hearsay and not admissible under a hearsay exception. Under Fed R. Evid. 803(8)(C), investigative reports of public agency which contain fact-based opinion or conclusions may be admissible. *Beech Aircraft Corporation v. Rainey*, 488 U.S.153 (1988). Legal conclusions, however, contained in official investigative reports are outside of the "factual findings" aspect of the rule. *Fed. R. Evid.* 803(8)(C); *see also Beech* 488 U.S. at 170 n.13. However, investigative reports are admissible under Rule 803(8)(C) if trustworthy. Factors to determine trustworthiness include whether there was a hearing and whether the subject report was the final report of the public agency. *Beech Aircraft Corporation v. Rainey*, 488 U.S.153 (1988*); City of New York v. Pullman Inc.*, 662 F.2d 910 (2d Cir. 1981). Moreover, even if reports fall within the exception of Rule 803(8)(C), a court must address other evidentiary safeguards such as weighing the probative value and the unfair prejudicial effect of the evidence. *Beech Aircraft Corporation v. Rainey*, 488 U.S.153 (1988); *Paolitto v. John Brown E.&C., Inc.*, 151 F.3d 60 (2d Cir. 1998).

Here, the operative conclusion (which Plaintiff would offer) of the final FIT report was that the subject officers did not act reasonably in promptly transporting the Plaintiff or providing medical assistance. (See Exhibit 1, pp. 14 & 16). Because such a finding is in essence a legal conclusion, as opposed to a fact-based opinion, it falls outside of Rule 803(8)(C). Also, the final FIT report has questionable trustworthiness in a Rule 803(8)(c) context as the conclusions were arrived at without a hearing with evidentiary safeguards such as cross-examination. The FIT reports were also not the final report of the MPD. Under the Memorandum Agreement between the MPD and the Department of Justice, which established the review of force framework

(Exhibit 2), the FIT investigation was subject to review by the UFRB who would be responsible for final action. (See Exhibit 2, §53-67). As to Officer Thomas, the UFRB ultimately rejected the FIT finding that Officer Thomas did not promptly transport the Plaintiff or failed to provide timely medical assistance. (See Exhibit 1 & 3). Accordingly, the FIT reports are not admissible under Fed. R. Evid. 803(8)(C).

B.

**FIT Reports are Cumulative Conclusions**

The FIT reports are also nothing more than cumulative conclusions which, if admitted, would displace the function of the jury. *See Universal Airline, Inc. v. Eastern Airlines, Inc.*, 88 U.S. App. D.C. 219, 188 F.2d 993 (D.C. Cir 1951) The conclusions of the FIT investigations are findings determined under a lower evidentiary standard, not subject to cross-examination, which are only cumulative to the substantial underlying evidence that the parties will be presenting to the jury. The evidence, therefore, has no probative value and the jury should be allowed to arrive at its own conclusions in weighing the evidence. *See Maddox v. City of Los Angelus*, 792 F.2d 1408 (9th Cir. 1986).

C.

**Evidence Related to the FIT Investigation is Inadmissible Under Rule 403**

Under a Rule 403 balancing test, evidence related to the FIT investigation and the FIT reports is inadmissible. As set forth above, such evidence has little probative value because it is cumulative and conclusory as well as based on an underdeveloped record without evidentiary safeguards. Evidence related to the FIT investigation and its findings, however, will be unduly prejudicial and cause jury confusion. Notwithstanding that the jury is to conduct its own review of the evidence, a jury may give undue weight to the mere fact that the Defendant Thomas was

the subject of an agency investigation. A jury may infer wrongdoing against the Defendant Thomas simply because he was the subject of an investigation as opposed to weighing the underlying evidence. A jury may also be confused as to what weight it should give the evidence and give greater value to the evidence only because it was an official investigation.

Plaintiff's contention that the FIT reports are favorable to the Defendant Thomas and will not otherwise prejudice him is disingenuous. Plaintiff will obviously focus on the adverse aspects of the report, such as those portions dealing with the promptness of providing medical care. It is for the jury, however, to evaluate the underlying evidence to resolve that issue.

D.

**Evidence Related to the FIT Investigation is Inadmissible under Rule 407**

Evidence related to the FIT reports are also inadmissible as a subsequent remedial measure under Rule 407. While the Plaintiff attempts to portray the FIT reports as merely investigatory with no remedial purpose, the reports, and the process surrounding the promulgation of the reports, provide a correctional self-evaluation mechanism for the MPD. The final FIT reports presents questions for review, analysis, and remedial conclusions. The report itself sets forth the remedial purpose of the process stating: "[T]his type of analysis allows for a review of policies and procedures with the application of 'hindsight vision' which lends itself as a teaching tool and helps preclude unsafe and improper practices from occurring <u>in the future</u>" (emphasis added). (Exhibit 1, FIT Final Report, p.14). The FIT process, therefore, fulfills a remedial teaching purpose that is designed to make future harm less likely to occur and, therefore, falls within Rule 407.

The FIT process is particularly remedial in nature in view of the history behind the MPD's implementation of the force review program. In an effort to correct past allegations of

force abuse, the MPD entered into an agreement with United States Department of Justice to implement, *inter alia*, a use of force review process. As part of that process, MPD agreed to have use of force incidents subject to review. (Exhibit 2). Thus, the FIT reports in this case are remedial in nature in so far as they are part of a greater remedial program already implemented by MPD

Moreover, while Plaintiff cites to authority suggesting that recommendations are not remedial, the better rule is that recommendations or conclusions which call for changes in policy or behavior (as opposed to investigative reports that state factual observations and did not recommend future changes) are remedial because they fulfil the purpose of Rule 407 to prevent harm in the future.[2] In this case, the recommendations in the final FIT report (and the UFRB report) are part of a course of change and fall within the contours of Rule 407.[3]

## II.

### EVIDENCE PERTAINING TO DEFENDANT THOMAS' ALLEGED SEXUAL MISCONDUCT IS INADMISSIBLE

Plaintiff concedes that evidence pertaining to Defendant Thomas' alleged sexual misconduct has no substantive value, but contends that it is admissible for impeachment purposes. Plaintiff's contention must be rejected because Plaintiff cannot provide any basis for

---

[2] The issue has apparently not been directly addressed in this jurisdiction. The case of *McFarlane v. Caterpillar, Inc.*, 974 F.2d 176 (D.C. Cir. 1992) stands for the proposition that observations contained in investigatory report are not inadmissible under Rule 407, but does not address the issue of whether recommendations for future corrective actions are within the purview Rule 407.

[3] Plaintiff's other contention, related to Rule 407, that the FIT reports doesn't involve disciplinary actions is inapplicable because MPD did not take any disciplinary action against Officer Thomas.

the Defendant Thomas' alleged untruthfulness. Moreover, any impeachment value would be far outweighed by the undue prejudice caused by admitting the evidence.

Before a party can offer evidence of an act of prior untruthfulness, the party must establish a factual predicate for the prior act. *Hemphill v. WMATA*, 982 F.2d 572 (D.C.Cir. 1993); *Doggett v. McLachlen Bancshares Corp.*, 663 A.2d 511 (D.C. 1995). If a factual predicate exists, a court must then weigh the probative value of the evidence in view of its potential unfair prejudice including the "besmirching" of the witness and juror distraction. *Doggett v. McLachlen Bancshares Corp.*, 663 A.2d 511 (D.C. 1995).

In deposition, Plaintiff's counsel inquired about the alleged sexual misconduct relying on the MPD's Final Notice of Adverse Action. (Exhibit 4, pp.28-31). Defendant Thomas reviewed the agency's factual findings and agreed with some, disagreed with others, and stated he had no recollections as to others. The fact that his recollection did not comport with the agency's findings (which were based on a lower evidentiary standard without a hearing) does not establish a factual predicate that he was untruthful in his deposition.

Moreover, due to the sensational nature of the alleged sexual misconduct, the danger of undue prejudice and juror distraction would far outweigh any impeachment value. The evidence is of the "kind that, if hurled into the proceedings recklessly, could work unfair prejudice . . . ." *Id.* at 510.

### III.

### EVIDENCE PERTAINING TO DEFENDANT THOMAS' INVOCATION OF FIFTH AMENDMENT RIGHTS IS INADMISSIBLE

Because the Defendant Thomas withdrew the invocation of his Fifth Amendment rights, the fact that he invoke his constitutional rights has no substantive value. There is no fair inference, as to substantive issues, to be draw from the fact that a party lawfully withheld

6

information where the party later discloses the subject information which addresses the substantive issues. In so far as the information is now available, an adverse party cannot argue that the previous non-disclosure meant that the previous withheld information had some harmful substantive value.

The Defendant Thomas's invocation of his Fifth Amendment rights also has no impeachment value. In this case, the Defendant Thomas, who was under investigation, invoke his Fifth Amendment rights in responding to discovery at the advice of counsel. Because the Defendant Thomas was following counsel's advice, a fact-finder can hardly infer that the Defendant Thomas was untruthful simple because he was complying with counsel's request. The Defendant Thomas had a legitimate reason for invoking the Fifth Amendment which would offset any impeachment value.

The Court in *Jenkins v. Anderson*, 447 U.S. 231 (1980) addressed the point in a similar context. In *Jenkins*, the Court noted that a criminal defendant's invocation of the Fifth Amendment had no impeachment value where the defendant had received his Miranda warnings informing him he had a right to remain silent. In such a case, there is no fair impeachment inference where the defendant is only acting in accordance with the Miranda warning. *See Jenkins* 447 U.S. at 239-240. Likewise, in this case, there is no fair impeachment inference to be drawn from the fact that the Defendant Thomas followed the affirmative advice of counsel.[4]

As the invocation of the Fifth Amendment can create a negative and dramatic inference,

---

[4] In *Jenkins*, the Court approved of a prosecutor offering the pre-arrest silence of an unrepresented criminal defendant for impeachment where there was no reason for why the defendant did not come forward earlier to explain his self-defense theory. *See Jenkins* 447 U.S. at 240. Unlike the Defendant Thomas, the defendant in *Jenkins* had no other valid basis for his silence which provided the impeachment value to the silence.

7

the allowing of such evidence, under the facts of this case, would be more prejudicial than probative. The fact that Defendant Thomas was following the advice of counsel could simply be lost by the dramatic effect of the invocation of the Fifth Amendment which would lead to a level of juror confusion and undue prejudice not correctable by instruction.

Wherefore, for the foregoing reasons, the Defendant Don Thomas requests the Court to grant his Motion in Limine.

Respectfully submitted,

/s/ Patrick G. Senftle
Patrick G. Senftle #412191
James W. Pressler, Jr. #221051

PRESSLER & SENFTLE, P.C.
Three McPherson Square
927 15th Street, N.W.
12th Floor
Washington, D.C. 20005
(202) 822-8384
(202) 331-7587 (fax)

ATTORNEY FOR DEFENDANT THOMAS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Defendant Thomas' Reply to Plaintiff's Opposition to Defendant Thomas' Motion in Limine was electronically served this 18th day of June, 2007, to Peter C. Grenier, Esq., 1150 Connecticut Avenue, N.W., Ninth Floor, Washington, D.C. 20036 and Steven J. Anderson, Esq., 441 Fourth Street, N.W., Suite 600S, Washington, D.C. 20001.

/s/ Patrick G. Senftle
Patrick G. Senftle