*Read summary of agreement*

# MEMORANDUM OF AGREEMENT

Between the United States Department of Justice

and the

District of Columbia and

the District of Columbia Metropolitan Police Department,

June 13, 2001

## TABLE OF CONTENTS

I. INTRODUCTION

    A. Background

    B. General Provisions

    C. Definitions

II. GENERAL USE OF FORCE POLICY REQUIREMENTS

    A. General Use of Force Policy

    B. Use of Firearms Policy

    C. Canine Policies and Procedures

    D. Oleoresin Capsicum Spray Policy

    E. Implementation Schedule

III. INCIDENT DOCUMENTATION, INVESTIGATION, AND REVIEW

    A. Use of Force Reporting Policy and Use of Force Incident Report

    B. Investigating Uses of Force and Misconduct Allegations

        1. Use of Force Investigations

        2. Investigations of Misconduct Allegations

IV. RECEIPT, INVESTIGATION, AND REVIEW OF MISCONDUCT ALLEGATIONS

    A. Coordination and Cooperation Between MPD and OCCR

used unless resistance ends. The policy shall require that prior to discharging the OC spray, officers permit a reasonable period of time to allow compliance with the warning, when feasible.

50. The policy shall require officers to aim OC spray only at a person's face and upper torso. The policy shall require officers to utilize only two, one second bursts and to do so from at least 3 feet away from the subject, unless exceptional circumstances require otherwise. The policy shall require that, absent exceptional circumstances, officers shall decontaminate every sprayed subject with cool water or a decontamination solution within 20 minutes after the application of the spray. Officers shall transport sprayed subjects to the hospital for treatment when they complain of continued effects after having been contaminated, or they indicate that they have a pre-existing medical condition (e.g., asthma, emphysema, bronchitis, heart ailment, etc.) that may be aggravated by OC Spray. The policy shall prohibit officers from keeping any sprayed subject in a face down position, in order to avoid positional asphyxia.

### E. Implementation Schedule

51. MPD shall complete development of the policies and procedures referenced in this section within 30 days from the effective date of the agreement. In developing the final policies and procedures, MPD shall build upon the latest working drafts and correspondence exchanged between DOJ and MPD during the course of the investigation.

52. Prior to implementation of the policies and procedures referenced in this section, MPD shall submit them to DOJ for approval. In the event MPD revises any of the policies, procedures, or forms referenced in this section during the term of this agreement, it shall obtain approval from DOJ prior to implementation of the revised policy or form.

## III. INCIDENT DOCUMENTATION, INVESTIGATION, AND REVIEW

### A. Use of Force Reporting Policy and Use of Force Incident Report

53. MPD shall complete development of a Use of Force Reporting policy and Use of Force Incident Report. The policy shall require officers to notify their supervisor immediately following any use of force or receipt of an allegation of excessive use of force and to complete a Use of Force Incident Report. Additionally, the policy shall require officers to complete a Use of Force Incident Report immediately following the drawing of and pointing of a firearm at, or in the direction of, another person. The policy shall require supervisors, upon notification of a use of force or allegation of excessive force, to respond to the scene. In every incident involving deadly force, as defined by paragraph 15, a serious use of force, as defined by paragraph 33, or any use of force indicating potential criminal conduct by an officer, as defined by paragraph 35, the supervisor shall ensure that the Force Investigation Team (FIT) is immediately notified.

54. MPD shall notify the Office of the United States Attorney for the District of Columbia (USAO) immediately, in no case later than the next business day, following a deadly use of force or a serious use of force by an MPD officer or following any use of force indicating potential criminal conduct by an officer.

55. Data captured on the reports described above in paragraph 53 shall be entered into MPD's Personnel Performance Management System (PPMS). Hard copies of these reports shall be maintained centrally by the Office of Professional Responsibility.

### B. Investigating Uses of Force and Misconduct Allegations

#### 1. Use of Force Investigations

56. MPD created the Force Investigation Team (FIT) to conduct fair, impartial and professional reviews of firearm discharges. The provisions in this section build upon the investigative techniques employed by FIT and expand FIT's role within MPD.

57. Within 60 days from the effective date of this Agreement, MPD shall fully implement its plan, subject to approval of DOJ, to reallocate responsibility for MPD criminal investigations of officer use of force from District Violent Crime Unit supervisors or other District supervisors to the Force Investigation Team (FIT). The plan shall include procedures to address the rights and responsibilities of officers and supervisors in carrying out their duties, including the preparation of both preliminary investigative files and complete investigative files.

58. MPD shall consult with the USAO regarding the investigation of an incident involving deadly force, a serious use of force, or any other force indicating potential criminal misconduct by an officer. If the USAO indicates a desire to proceed criminally based on the on-going consultations with MPD, or MPD requests criminal prosecutions in these incidents, any compelled interview of the subject officers shall be delayed, as described in paragraph 60. However, in order to ensure the collection of all relevant information, all other aspects of the investigation shall proceed. The USAO shall respond to a written request by MPD for charges, declination, or prosecutorial opinion within three business days, by either filing charges, providing a letter of declination, or indicating the USAO's intention to continue further criminal investigation.

59. In every incident involving deadly force, a serious use of force, or any use of force indicating potential criminal misconduct by an officer, the USAO shall notify and consult with the Chief of Police or the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

60. MPD and the USAO jointly acknowledge the need to continue consultation throughout the course of an investigation; and recognize the investigative process may ultimately proceed to an administrative conclusion and/or criminal charges. MPD agrees that it will not compel or order a subject officer to make a statement if the USAO has not yet issued a written criminal declination, for all incidents subject to the notice and consultation provisions described in paragraphs 58 and 59.

61. FIT shall respond to the scene of every incident involving deadly force, a serious use of force, or any use of force indicating potential criminal misconduct by an officer. In each of these incidents, FIT shall conduct the investigation of the use of force. That investigation may result in criminal charges, administrative action or both. Investigators from the involved officers' District shall not conduct the investigation. Based upon its review of use of force incidents from throughout MPD, FIT shall forward policy and training recommendations to the Chief of Police or his designee.

62. FIT shall complete its administrative use of force investigations within 90 days from the criminal declination described in paragraph 60, absent special circumstances which must be documented, and shall continue to conduct investigations in accordance with paragraphs 81 and 82, below. At the conclusion of each use of force investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall

include a description of the use of force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the findings. The proposed findings shall include the following: 1) a determination of whether the use of force is consistent MPD policy and training; 2) a determination of whether proper tactics were employed; and 3) a determination whether lesser force alternatives were reasonably available.

63. Within 120 days from the effective date of this Agreement, MPD shall train and assign a sufficient number of personnel to FIT to fulfill the requirements of this Agreement.

64. Chain of command district supervisors may investigate all use of force incidents except for those incidents involving a serious use of force, serious physical injury, or any use of force indicating potential criminal conduct by an officer. At the discretion of the Chief of Police or designee, any incident that may be investigated by chain of command district supervisors may be assigned for investigation to FIT or to chain of command supervisors from a district other that the district in which the incident occurred. No supervisor who was involved in the incident shall be responsible for the investigation of the incident.

65. Chain of command use of force investigations shall be completed within 90 days following the use of force incident, absent special circumstances which must be documented, and shall be conducted in accordance with paragraphs 81 and 82, below. At the conclusion of each use of force investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall include a description of the use of force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the proposed findings. The proposed findings shall include the following: 1) a determination of whether the use of force is consistent and MPD policy and training; 2) a determination of whether proper tactics were employed; and 3) a determination whether lesser force alternatives were reasonably available.

66. Upon completion of a chain of command use of force investigation, the investigator shall forward the investigation to the Unit Commander, who shall review the investigation to ensure that it is complete and that the findings are supported by the evidence. The Unit Commander shall order additional investigation when necessary. When the Unit Commander determines the investigation is complete and the findings are supported by the evidence, the investigation file shall be forwarded to the Use of Force Review Board (UFRB). Whenever there is evidence of criminal wrongdoing, the Unit Commander shall suspend the investigation immediately and notify FIT and the USAO.

67. Within 60 days from the effective date of this Agreement, MPD shall complete the development and implementation of a policy to enhance the UFRB, subject to approval by DOJ. The policy shall require the UFRB to conduct timely reviews of all use of force investigations. The policy shall set forth the membership of the UFRB and establish timelines for UFRB review of use of force investigations. The policy shall authorize the UFRB to recommend discipline for violations of MPD's policies and training. The policy shall authorize the UFRB to direct District supervisors to take non-disciplinary action to enable or encourage an officer to modify his or her performance . The policy shall require the UFRB to act as a quality control mechanism for all use of force investigations, with the responsibility to assign to FIT, or return to the investigating unit, all incomplete or mishandled use of force investigations. The policy shall provide the UFRB the authority and responsibility to recommend to the Chief of Police, or his designee, investigative protocols and standards for all force investigations. The policy shall require the UFRB to conduct

annual reviews of all use of force cases examined to detect patterns/problems and to issue a report to the Chief of Police with findings and recommendations.

### 2. Investigations of Misconduct Allegations

68. The Office of Professional Responsibility shall be responsible for the investigation of allegations of criminal misconduct set forth in the categories in paragraph 72, (a) through (i) below. Within 60 days from the date of this Agreement, MPD shall develop a plan, subject to approval of DOJ, to allocate sufficient personnel and establish procedures to accomplish this new responsibility.

69. MPD shall notify the USAO immediately, in no case later than the next business day, following the receipt or discovery of any allegations of criminal misconduct referred to in paragraphs 72 and 73. In every incident involving allegations of criminal misconduct referred to in paragraphs 72 and 73, the USAO shall notify and consult with the Chief of Police or the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

70. MPD shall consult with the USAO regarding the investigation of an incident involving allegations of criminal misconduct in the categories of matters described in paragraphs 72 and 73. If the USAO indicates a desire to proceed criminally based on the on-going consultations with MPD, or MPD requests criminal prosecutions in these incidents, any compelled interview of the subject officers shall be delayed, as described in paragraph 71. However, in order to ensure the collection of all relevant information, all other aspects of the investigation shall proceed. The USAO shall respond to a written request by MPD for charges, declination, or prosecutorial opinion within three business days, by either filing charges, providing a letter of declination, or indicating the USAO's intention to continue further criminal investigation.

71. MPD and the USAO jointly acknowledge the need to continue consultation throughout the course of an investigation; and recognize the investigative process may ultimately proceed to an administrative conclusion and/or criminal charges. MPD agrees that it will not compel or order a subject officer to make a statement if the USAO has not yet issued a written criminal declination, for all incidents involving allegations of criminal misconduct in the categories of matters described in paragraphs 72 and 73.

72. Within 60 days from the date of this Agreement, MPD shall develop a plan, subject to approval of DOJ, to reallocate responsibility for MPD administrative complaint investigations of misconduct complaints from chain-of-command District supervisors to OPR with respect to the following:

   a. all referrals pursuant to paragraphs 76 and 77;

   b. all civil suits alleging any misconduct by an officer while acting in an official capacity;

   c. all civil suits against an officer for off-duty conduct (while not acting in an official capacity) that alleges physical violence, threats of physical violence, or racial bias;

   d. all criminal arrests of or filing of criminal charges against an officer;

iv. that it expressly identified in the annual fiscal year adopted budget prepared for Congressional use such obligation (not necessarily to include reference to this Agreement as such) together with the amount of money tied to performing such obligation; and

v. that Congress acted expressly to eliminate such amount of money or to reduce it below the level necessary to perform the obligation, or that Congress made an across the board reduction in the appropriation of MPD, OCCR, or any other agency with specific obligations under this Agreement as shown in the Council's budget act without expressly saving such obligation and the across the board reduction, as applied proportionately to the amount of money shown in the adopted budget for such obligation left an insufficient amount to carry out that obligation.

b. The Mayor and MPD shall make diligent efforts to safeguard all appropriated funds available to meet obligations under this Agreement from re-programming.

E. Compliance

192. This Agreement is a public document and shall be posted on the websites of the City or MPD and of the Special Litigation Section of the Civil Rights Division of DOJ.

193. The City and MPD agree that they shall not retaliate against any person because that person has filed or may file a complaint, provided information or assistance, or participated in any other manner in an investigation or proceeding relating to this Agreement.

F. Modifications

194. The Parties may jointly agree, in writing, to modify this Agreement.

For the United States Department of Justice:

_____
WILLIAM R. YEOMANS
Acting Assistant Attorney General
Civil Rights Division

_____
STEVEN H. ROSENBAUM
Chief
Special Litigation Section
Civil Rights Division

_____
SHANETTA Y. BROWN CUTLAR
Special Counsel
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66400

Washington, D.C. 20035-6400
202-514-0195

DATED: June 13, 2001


For the District of Columbia and the Metropolitan Police Department:

_____
ANTHONY WILLIAMS
Mayor of the District of Columbia


_____
CHARLES H. RAMSEY
Chief of Police
District of Columbia Metropolitan Police Department


_____
TERRANCE W. GAINER
Executive Assistant Chief of Police
District of Columbia Metropolitan Police Department


_____
ROBERT RIGSBY
Corporation Counsel
Office of the Corporation Counsel
441 4th Street, NW, Suite 1060N
Washington, D.C. 20001

Approved as to form and legal sufficiency

*Return to the Civil Rights Division Home Page*