**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| | ) |
| **NIGEL AUSTIN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 05-02219(JDB)** |
| **v.** | ) |
| | ) |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANTS' OPPOSITION**
**TO PLAINTIFF'S MOTION *IN LIMINE***

Plaintiff Nigel Austin, by counsel Bode and Grenier, LLP, hereby submits his Reply to

Defendants District of Columbia's ("District's") and Officer Don Thomas' ("Thomas'")

Opposition to Plaintiff Nigel Austin's Motion *In Limine* ("Opposition").[1]

**SUMMARY OF ARGUMENTS**

As set forth more fully herein, this Court should grant Plaintiff's motion for the following

reasons:

1.      Evidence regarding Plaintiff's felony conviction has little or no probative value

with regard to Plaintiff's credibility, and will unfairly prejudice him.

2.      Evidence regarding the criminal charges underlying Plaintiff's arrest on August

25, 2005, and his prior and subsequent arrests are irrelevant, unfairly prejudicial for Plaintiff, and

will result in jury confusion.

---

[1] Defendant Don Thomas adopts and incorporates by reference all of the arguments made by
Defendant District in its Opposition to Plaintiff's Motion *In Limine*.  As a result, all arguments
set forth by Plaintiff with regard to Defendant District's Opposition are equally applicable to
Defendant Thomas.

**ARGUMENT**

### 1.    Plaintiff's Felony Convictions Should Not Be Admitted

Defendant District has failed to set forth any compelling reasons how evidence of

Plaintiff's criminal history and criminal convictions are probative towards Plaintiff's credibility,

and will not unfairly prejudice Plaintiff in this matter. Rather, instead of setting forth concrete

arguments in support of its position, Defendant District merely provides conclusory, and for the

most part, unsupported statements regarding the admissibility of convictions *in general*.

Defendant District has failed to meet its burden in establishing that Plaintiff will not be unduly

prejudiced by the introduction of his felony convictions, and Plaintiff's Motion should be

granted.  *See* Fed. R. Evid. 609(a)(1) and 403;  *see also United States v. Lipscomb*, 702 F.2d

1049, 1055 (D.C. Cir. 1983) (noting that the Conference Committee placed "the burden on the

proponent of such evidence to show that . . . the probative value of the conviction outweighs its

prejudicial effect");  *see also United States v. Smith*, 551 F.2d 348, 359-60 (D.C. Cir. 1976).

Evidence of Plaintiff's felony convictions will unfairly prejudice Plaintiff because, even

if offered solely for impeachment purposes, they will lead a jury to believe that because Plaintiff

was convicted of attempted aggravated assault in a separate incident, Plaintiff more than likely

swung at Defendant Thomas, as Defendant Thomas (and Defendant Thomas alone) has alleged.

This is the sole reason why Defendants wish to introduce this evidence.  Defendants essentially

seek to "back door in" impermissible character evidence alleging Plaintiff's propensity for

assaults under the guise of impeachment.  This is untenable, and the Court should grant

Plaintiff's Motion.  *See* Fed. R. Evid. 404(b).

Evidence of crimes involving violence generally has little or no bearing on the credibility

of a witness.  *See Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) (stating that a

good "rule of thumb" to be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not); *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (observing that crimes of violence generally have a low probative worth in determining credibility); *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977) (noting that a prior conviction of smuggling has a higher probative value regarding credibility than a prior conviction of a violent or assaultive crime); 4 WEINSTEIN & BERGER § 609.05[3][b] at 609-39 and 40 (noting that "crimes of violence generally have limited probative value concerning the witness' credibility" and that theft "crimes have greater impeachment value").  Plaintiff's prior convictions for "Attempted Aggravated Assault" and "Possession of a Prohibited Weapon," clearly do not rest on dishonest conduct, and are certainly "crimes of impulse" (such as assault or purse-snatching) which have no bearing on Plaintiff's credibility. *See United States v. Lipscomb*, 702 F.2d 1049, 1071 (D.C. Cir. 1983) (noting that robbery, which involves theft and a conscious disregard for the rights of others, reflects more strongly on credibility than crimes of impulse).  Because Plaintiff's convictions have little or no probative value concerning credibility, and because admission of such evidence will unfairly prejudice Plaintiff, evidence regarding Plaintiff's felony convictions should be excluded.

The very nature of Plaintiff's prior convictions serves to distinguish this matter from *United States v. Lipscomb*, *supra*, which Defendant District heavily relies on in support of its argument that Plaintiff's felony convictions should be admitted for impeachment purposes.  In *Lipscomb*, the prosecution sought to introduce evidence of the defendant's prior conviction of robbery.  Notably, in ruling that such a conviction could be used for impeachment purposes, the Court made a specific finding that robbery was probative towards credibility because robbery involved theft and the "conscious disregard for the rights of others."  *Lipscomb*, 702 F.2d at

1071.  Thus, the Court specifically found that the prior conviction was a "veracity-related"

crime, and therefore probative towards credibility.  However, courts have repeatedly determined

that very crimes for which Plaintiff as convicted have little or no bearing on credibility, and, as a

result, evidence of Plaintiff's crime should be excluded.  *See Id.*, *Gordon*, 383 F.2d at 940;

*Estrada*, 430 F.3d at 617 (observing that crimes of violence generally have a low probative

worth in determining credibility).

Defendant District utterly misquotes *Lipscomb* in support its position.  Defendant District

cites the *Lipscomb* court for the statement that "the desperate person who would commit [a

felony] would also lie under oath."  *See* Defendant District's Opp. Mem. at 5.  However,

Defendant District's insertion of "[a felony]" completely changes the meaning of this quote with

respect to Plaintiff's case.  The *Lipscomb* Court originally stated that "somebody desperate

enough to *rob somebody* . . . is desperate enough to lie on the witness stand."  *Lipscomb*, 702

F.2d at 1053 (emphasis added).  Defendant District's substitution thus entirely changes the intent

of the *Lipscomb* Court's statement because the Court later determined that robbery *is* a "veracity-

based" crime probative of credibility, as opposed to "crimes of impulse" or violence (such as

assault).  As a result, the *Lipscomb* court is not stating that the commission of *any* felony renders

a witness "desperate enough to lie under oath," but rather the commission of a "veracity-based"

crime.

The remainder of Defendant District's arguments for admission of evidence pertaining to

the Plaintiff's convictions of "Attempted Aggravated Assault" and "Possession of a Prohibited

Weapon" are equally unavailing.  The fact that Plaintiff was never criminal charged as a result of

the incident between him and Defendant Thomas has no bearing on the very real potential for

prejudice to Plaintiff by introduction of his felony convictions.  Additionally, contrary to

Defendant District's assertions, the existence of differing issues between Plaintiff's felony

convictions and his alleged assault of Defendant Thomas has no bearing on any potential

prejudice.  There is no prerequisite in Fed R. Evid. 609(a)(1) which requires that only evidence

of crimes of the exact same nature are to be excluded.

It is clear that Defendants wish to introduce his felony convictions to imply that because

Plaintiff had been convicted of an attempted assault, it is more likely than not that he likewise

attempted to assault Defendant Thomas.  This is untenable.  As demonstrated above, crimes

involving violence have little or no probative value with regard to a witness' credibility.

However, there is the very real possibility that a juror, regardless of any limiting instruction by

the Court, will look beyond any impeachment instruction, and further credit Defendant Thomas'

claim that Plaintiff attempted to assault him.  As a result, Plaintiff's Motion *In Limine* should be

granted, and Defendants should be precluded from introducing any evidence relating to

Plaintiff's criminal convictions.

> **2.      Evidence Relating to the Criminal Details Underlying Plaintiff's Arrest and
> Criminal History are Completely Irrelevant and Have No Probative Value.**

Defendant District's arguments seeking to introduce evidence relating to Plaintiff's

underlying arrest and other alleged criminal activity are completely baseless and should be

ignored by the Court.

Relevant evidence is evidence which has the tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable then it

would be without the evidence.  *See* Fed. R. Evid. 401.  Evidence pertaining to the criminal

details underlying Plaintiff's arrest and his criminal history are completely unrelated to *any* of

the issues present in this case, and under this rubric are completely irrelevant and should be

excluded.

The facts of Plaintiff's underlying arrest and his criminal charges have absolutely no bearing on any of the issues in this action. The assault with a deadly weapon incident ("ADW Incident") for which Plaintiff was ultimately arrested, and transported to the Central Cell, on August 25, 2005 occurred *four days before* the incident between Plaintiff and Defendant Thomas, and is completely independent and unrelated. Neither Defendant Thomas, nor any other MPD officers, were involved in the ADW Incident, and because of the passage of time between the ADW Incident and Plaintiff's arrest, Defendant District cannot even argue that Plaintiff was still under the influence of any emotions stemming from the ADW incident when he was ultimately transported to the Central Cell Block. Thus, the facts underlying Plaintiff's arrest are not "inexorably intertwined" with the facts of this matter.

Even should the Court allow Plaintiff to be impeached by his prior felony convictions, case law is clear that a cross-examiner is not permitted to go into the details of the underlying convictions. *See United States v. Pettiford*, 238 F.R.D. 33, 42 (D.D.C. 2006) (allowing the government to introduce evidence that the defendant had a prior felony conviction for which he was sentenced to seven to twenty-one years, but finding that evidence regarding the type of crime committed by the defendant was not relevant to present case nor necessary to impeach the defendant); *Wilson v. City of Chicago*, 6 F.3d 1233, 1237 (7th Cir. 1993) (holding that cross-examiner should not be able to go into the details of the crime underlying a felony conviction unless they are directly related to the witness' credibility); *Guzman v. Kelly*, 1996 U.S. Dist. LEXIS 18666 (D.N.Y. 1996).

Introduction of facts relating to the ADW incident and criminal charge will be misleading to the jury, and could quite possibly result in a jury confusing the issues of the case. *See* Fed. R. Evid. 403. Plaintiff has previously testified, and is expected to testify again if questioned about

the ADW Incident, that he acted in self-defense, and only pled guilty to the criminal charges

because he did not want to go to jail.  As a result, at the trial of this matter, it is entirely possible

that Defendants will seek to introduce evidence to show that Plaintiff did assault the criminal

complainant with a cinder block, which Plaintiff will most likely dispute.  Introduction of such

evidence has no bearing on Plaintiff's civil case, and can only serve to confuse the jury as to the

real issues of the case.

Similarly, Defendant District's argument that exclusion of the facts underlying Plaintiff's

arrest will invite jury speculation is baseless.  Defendant District does not even provide what this

speculation would be and how it would be prejudiced.  The reasons why Plaintiff was at the

Central Cell on August 25, 2005 are completely irrelevant to the facts of this case.  Plaintiff's

action is solely premised the actions of Defendant Thomas and other MPD employees while he

was already present at the Central Cell, and bear no relation to the events ultimately culminating

in Plaintiff's arrest – all of which occurred four days prior.  Thus, even if a jury was to speculate

as to why Plaintiff was arrested, Defendant District would in no way be prejudiced.  In any

event, any jury speculation can be easily rectified as the parties can surely stipulate that Plaintiff

was arrested on August 25, 2005 and was a pre-trial detainee at the time of the incident.

Further, Defendant District's "state of mind" argument is equally meritless, and utterly

devoid of any factual basis.  This argument is nothing more than a sheer legal construct that

counsel for Defendants has created in an attempt to introduce altogether irrelevant and

potentially prejudicial information.  Defendant District essentially argues that because Defendant

Thomas and the other MPD officers knew that Plaintiff had been charged with assault with a

deadly weapon ("ADW"), he was treated in a certain manner.  Specifically, because the MPD

knew that Plaintiff had been charged with a violent crime, the MPD acted accordingly in keeping him handcuffed.

Apart from once again seeking to introduce impermissible character evidence of Plaintiff's alleged propensity for violence, there is absolutely no evidence that Plaintiff's criminal charges had any bearing on the decision to handcuff him, and keep him handcuffed until he was transported to the hospital. In fact, this is the first time that Defendants have ever advanced this argument.

According to the MPD officers at the scene of the incident, plaintiff was only handcuffed after he swung at Defendant Thomas, and remained handcuffed after he had been placed in the jail cell because he was characterized as being combative. *See* Deposition of Officer George Hawkins at 29, a copy of which is annexed hereto as "Exhibit 1." When asked to explain how Plaintiff was being combative, Officer Hawkins indicated that Plaintiff was "fussing and cussing" at him after he been placed in the jail cell. *Id*. at 30. Defendant Thomas was unable to articulate *any reason* justifying the decision to place Plaintiff in the jail cell with his hands handcuffed behind his back, and, in fact, testified that Officer Hawkins never instructed him to leave Plaintiff handcuffed. *See* Deposition of Officer Don Thomas at 129, 134, 135, a copy of which is annexed hereto as "Exhibit 2." There has been *zero* testimony, or any other evidence, that the decision to both handcuff Plaintiff, and keep him handcuffed, was based on anything other than the alleged incident between Plaintiff and Defendant Thomas.

It is not even clear whether any of the MPD officers even knew what Plaintiff's was charged with at any time prior or subsequent to the incident. Plaintiff arrived at the Central Cell before all of the involved MPD officers' tours of duty, and neither Defendant Thomas, Officer Crowder or Officer Hawkins were involved in processing Plaintiff. *See* Exhibit 2 at 57;

Deposition of Officer Rhonda Crowder at 52, a copy of which is annexed hereto as "Exhibit 3."

In fact, the only reason that Defendant Thomas went to retrieve Plaintiff was because Defendant

Thomas saw Plaintiff's identification armband lying on the table when he arrived for his August

25, 2005 tour of duty. *See* Exhibit 2 at 54. When questioned about whether he had ever looked

at any paperwork to see when Plaintiff had been transferred to the Central Cell, Defendant

Thomas testified that there would have been no reason to look at any paperwork in order to put

an armband on Plaintiff. *See* Exhibit 2 at 53-4. Likewise, Defendant Thomas would most likely

not have had any reason to look at any of Plaintiff's paperwork to ascertain Plaintiff's criminal

charges in order to put an (already created) armband on Plaintiff. Similarly, Officer Hawkins'

responsibilities as acting sergeant on the date of the incident would have made it highly unlikely

that he would have any prior knowledge of Plaintiff's criminal charges.

Defendant Thomas' own actions immediately prior to the incident belie this hypothetical

"state of mind" argument as well. When Defendant Thomas retrieved Plaintiff from his cell

Defendant Thomas did not to place Plaintiff in handcuffs or leg shackles at the time of the

transfer, despite the fact the he could have done so. *See* Exhibit 2 at 50, 60. Further, upon being

brought to the processing room, Defendant Thomas left Plaintiff, alone and unchecked, in the

attorney/prisoner interview room which was connected to the processing room, and went to a

livescan machine located nearby to input data on a different detainee. *Id*. at 64, 69-70. If

Defendant Thomas was truly cognizant of Plaintiff's alleged violent propensities, and therefore

wary of a violent attack, as Defendant District seeks to argue, Defendant Thomas would certainly

not have been as lax in securing Plaintiff immediately prior to the incident.

Further, no one has ever testified that their knowledge of Plaintiff's criminal charges

prompted them to wait for a police escort to bring Plaintiff to receive medical treatment, rather

than call an ambulance. Defendant District is unable to produce any evidence stating such, and

is once again seeking to manufacture hypothetical reasons for the admission of clearly irrelevant

and inadmissible evidence. In fact, Officer Hawkins, who was the official responsible for

requesting an ambulance, explicitly testified that he did not call an ambulance for Plaintiff

because *he did not think that Plaintiff's injuries warranted immediate medical care*. *See* Exhibit

1 at 43-45. Obviously, knowledge of Plaintiff's criminal charges did not influence his decision

in the slightest. Additionally, none of the involved officers ever made any reference to

Plaintiff's criminal charges in response to the Force Investigation Team ("FIT") investigator's

queries as to why Plaintiff was not transported to the hospital immediately after the incident. *See*

FIT Report at 12, annexed hereto as "Exhibit 4."

Similarly, Defendant District's contention that details of Plaintiff's ADW Incident and

other arrests somehow go to show Plaintiff's "antipathy" towards police officers is nothing short

of bizarre. Defendant District is essentially asking this Court to hold that any interaction with

the police is evidence of hostile feelings, thereby opening the door to allow every speeding ticket

and other minor infraction to become possible sources of impeachment. Defendant District has

provided absolutely no reasons why details of the ADW Incident are relevant in any way

relevant to this contention, and Defendant District appears to be confused as to what Plaintiff is

seeking to exclude. Plaintiff is seeking to exclude details pertaining to his arrest for the ADW

Incident, but not the arrest itself. In fact, Plaintiff anticipates presenting testimony that after he

was arrested, he was told that he would be returning from jail on that same day. Obviously,

evidence pertaining to Plaintiff's belief that he would not be spending the night in jail is highly

relevant, but Defendant District has failed to set forth any reasons why the evidence regarding

*why* he was arrested has any bearing on this belief. As stated above, the ADW Incident occurred

four days prior to his arrest, and, accordingly, Plaintiff had obviously "cooled off" from any

feelings that he may have been experiencing at the time of the ADW Incident. Simply put,

Plaintiff did not become upset and swear at Defendant Thomas out of "antipathy" for the police,

Plaintiff became upset (understandably) when he learned that, contrary to what he had been told,

he would be spending the night in jail.

Similarly, the evidence of Plaintiff's other arrests have no bearing on Plaintiff's alleged

"antipathy" to the police, and Defendant District fails to offer any other reason justifying the

admission of this evidence. On June 30, 2005, Plaintiff was arrested in Montgomery County,

Maryland, as a result of being a passenger in a vehicle that was later determined to be stolen.

The criminal charges were ultimately dropped against Plaintiff, and he was never convicted of

any crime as a result thereof. *See* Deposition of Nigel Austin at 49, a copy of which is annexed

hereto as "Exhibit 5." Further, Plaintiff was cited for possession of an open container of alcohol

in March 2006 for which he ultimately paid a fine. Contrary to Defendant District's contentions

neither of these arrests demonstrates that Plaintiff harbored ill-will against the police officers,

and Defendant District has failed to cite to any authority demonstrating that an arrest

automatically indicates that a person harbors hostile feeling towards the police.

*United States v. Spencer*, 25 F.3d 1105 (D.C. Cir. 1994) is distinguishable from the

Plaintiff's case. In *Spencer*, the Court allowed a defense witness to be impeached by an

*impending* armed robbery charge for the purposes of showing that the defense witness was

*biased* against the police. *Id*. at 1109. In allowing this impeachment, the Court determined that

the defense witness' prior acts of harassment of the police demonstrated that the witness would

potentially slant her testimony towards the defendant. *Id.* Plaintiff's criminal history is clearly

distinguishable. First, none of Plaintiff's past arrests involve any impending criminal charges.

Second, the mere fact that Plaintiff was arrested one time prior to the incident, and received a

citation *subsequent to the incident* certainly does not rise to the level of harassment of the police,

or otherwise demonstrate that Plaintiff harbors hostile feelings towards the police.

Finally, evidence of Plaintiff's prior arrests is irrelevant to whether or not Plaintiff knew

that he had to be presented to a judge at a certain time in order to be released that same day.  As

an initial matter, Plaintiff's citation for an open container of alcohol occurred *after* the August

25, 2005 incident.  Further, Plaintiff had never been taken to Central Cell prior to August 25,

2005, and in fact had never been arrested in the District of Columbia.  *See* Exhibit 5 at 51.  As a

result, Plaintiff's June 25, 2005 arrest in Montgomery County is completely irrelevant as to

whether Plaintiff knew he would be spending the night in jail on the date of the incident.


## CONCLUSION

For the foregoing reasons, Plaintiff Nigel Austin requests that the Court grant his

Motion *In  Limine*.


Respectfully submitted,


*Peter C. Grenier /s/_____*
Peter C. Grenier (D.C. Bar No. 418570)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C.  20036
(202) 828-4100
(202) 828-4130 (fax)
*Counsel for Plaintiff*

Dated: June 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June 2007, I served a true and accurate copy of Plaintiff's Reply to Defendants District of Columbia and Officer Don Thomas' Opposition to Plaintiff's Motion *In Limine*  by electronic case filing upon:

>   Steven J. Anderson, Esquire
>   Assistant General Counsel
>   441 4th Street, N.W.
>   6th Floor North
>   Washington, DC 20001
>   *Attorney for Defendant*
>   *District of Columbia*


>   Patrick Senftle, Esquire
>   PRESSLER & SENFTLE, P.C.
>   927 15th Street, N.W.
>   Twelfth Floor
>   Washington, D.C. 20005
>   *Counsel for Defendant*
>   *Officer Don Thomas*

_____*Peter C. Grenier /s/*_____
                 Peter C. Grenier