


**METROPOLITAN POLICE DEPARTMENT**
Office of Professional Responsibility
Internal Affairs Division
Civil Rights and Force Investigation Section
*Force Investigation Team*

## MEMORANDUM

**TO:**        Assistant Chief of Police
            Office of Professional Responsibility

**THRU:**      Director
            Internal Affairs Division

**THRU:**      Commanding Officer
            Civil Rights and Force Investigation Section

**THRU:**      Lieutenant
            Force Investigation Team II

**SUBJECT:**   Final Investigative Report Regarding the Use of Force (Fist) by Officer Don
            Thomas and Use of Force (Hand Controls) by Officer George Hawkins of the
            Central Cell Block, FIT Case X-O-05-180, CS-05-1553

### Chronological Narrative Section

On Thursday, August 25, 2005, , Officers George Hawkins, Don Thomas, Rhonda Crowder, and Mr. Lynn Lewis (civilian employee) were in full uniform working the 1:00 PM to 9:30 PM, tour of duty, assigned to the Central Cell Block. During their tour of duty Officer Hawkins worked as an acting sergeant for the shift. because a civil service sergeant was not working.

During the early part of the 1:00 PM to 9:30 PM, tour of duty, Officers Rhonda Crowder and Don Thomas were processing a prisoner named Mr. Nigel Austin in the cell block processing room. While Officer Crowder was seated at the processing machine, Mr. Austin proceeded to walk out of the room. Officer Thomas grabbed Mr. Austin by his arm to prevent him from leaving the area. At this time, Mr. Austin swung at Officer Thomas.

Officer Thomas moved back slightly and punched Mr. Austin in the face with a closed fist. Officer Thomas and Mr. Austin were near the cement stairs that led out the processing area. During the struggle, Officer Thomas and Mr. Austin fell to the floor. Officer Crowder yelled to Officer George Hawkins for help.

Officer Hawkins and Mr. Lynn Lewis responded to the processing area to assist in subduing Mr. Austin. At the time Officer Hawkins and Mr. Lewis arrived in the processing area, Mr. Austin was lying face down on the floor and Officer Thomas was trying to subdue him. Officer Hawkins

4

Exhibit 4

grabbed Mr. Austin's right arm and pulled it from underneath Mr. Austin's body to handcuff him. Officer Hawkins and Officer Thomas regained control of Mr. Austin and placed him in holding cell 3. Officer Hawkins observed blood coming from Mr. Austin's mouth.

Officer Hawkins prepared a PD-313 (Arrestee's Injury/Illness Report) and sent Mr. Austin to Greater Southeast Community Hospital for pain to his jaw. Seventh District Officers Andrew Richardson and Heath Bowman, operating Cruiser 7061, transported Mr. Austin to the hospital. Mr. Austin was admitted to the hospital for a fractured mandible.

On Sunday, August 28, 2005, at 3:30 PM, members of the Force Investigation Team (FIT) were notified and responded to the scene of this incident to investigate the use of force. All reports regarding this incident bear Central Complaint Number (CCN) 05-113-184. The Complaint Summary (CS) Sheet was completed and it bears number 05-1553. **(Attachment 1)**

On September 1, 2005, Officer Don Thomas completed a Use of Force Incident Report (UFIR) in reference to the Use of Force (Fist). On August 29, 2005, Officer Hawkins completed a UFIR in reference to force used to handcuff Mr. Austin. **(Attachment 2 and 3)**

On Thursday, September 21, 2006, the United States Attorney's Office (USAO) issued a letter of declination in this case. The letter notified the department that the United States Attorney's Office had declined criminal prosecution relative to the August 25, 2005, Use of Force by Metropolitan Police Department Officers Don Thomas and George Hawkins **(Attachment 4)**

## Investigators

Sergeant Lance Harrison was initially assigned as the primary FIT investigator for this incident. This case was reassigned to Detective Christopher Coles. This case was investigated under the direction of FIT Lieutenant Marvin Lyons. There was no underlying offense leading to the use of force incident and therefore did not warrant an investigation by the Superintendent of Detectives Division. No charges were placed against Mr. Austin by the Central Cell Block officers.

Assistant United States Attorney (AUSA) Judith Kidwell was notified of this incident via telephone on August 28, 2005, at approximately 8:53 PM.

## Member(s) Involved

**Don Thomas**
*Duty & Uniform Status:*
*Personal Information:*

*Social Security Number:*
*Assignment:*
*Appointed to MPD:*
*Firearm Certification:*
*ASP Equipped:*
*OC Spray Equipped:*
*Previous Use of Force:*
*Body Armor Equipped:*
*Injuries:*

**Badge 1644** (Provided a signed written statement)
On duty, in full uniform
Black Male    5'10, 175
DOB: January 15, 1961    45 years old
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
Central Cell Block
March 18, 1985, 21 years of service with MPD
October 24, 2006
No
No
Use of Force Hands   01/10/06    Justified
No
None

5

| | |
|---|---|
| Employee Assistance Program: | Voluntarily waived |
| Fraternal Order of Police: | Voluntarily waived |
| Attorney Involvement: | Voluntarily waived |
| Current Duty Status: | Full duty |
| Impairment: | None |
| UFIR | Yes |

**Officer George Hawkins II** **Badge 3607** (Provided an audio-taped statement)

| | |
|---|---|
| Duty & Uniform Status: | On duty, in full uniform |
| Personal Information: | Black Male   6'0    235 lbs |
| | DOB: May 8, 1947 .   59 years old |
| Social Security Number: | 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 |
| Assignment: | Central Cell Block |
| Appointed to MPD: | March 27, 1972    34 years of service with MPD |
| Firearm Certification: | October 26, 2006 |
| ASP Equipped: | No |
| OC Spray Equipped: | No |
| Previous Use of Force: | Use of Force Hands   01/10/06    Justified |
| Body Armor Equipped: | No |
| Injuries: | None |
| Employee Assistance Program: | Voluntarily Waived |
| Fraternal Order of Police: | Voluntarily Waived |
| Attorney Involvement: | Voluntarily Waived |
| Current Duty Status: | Full Duty |
| Impairment: | None |
| UFIR: | Yes |

## Subject(s) of the Force

**Nigel Austin** (Provided a verbal statement)

| | |
|---|---|
| Personal Information: | Black Male    6'1"    180 lbs., |
| | DOB: August 27, 1985, 21 years old |
| | SSN: 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 |
| Home Address: | 1341 Howard Road, Southeast |
| Home Telephone Number: | Unknown |
| Work Address: | Unknown |
| Injuries: | Fractured left side mandible |
| How sustained: | Punched by officer |
| Impairment: | Unknown |

_Violations that led to police contact:_

None

_Violations during police contact:_

Assault on a Police Officer          DC Code 22-505

<u>*Outstanding Arrest Warrants:*</u>

None

<u>*Previous Convictions and/or arrests:*</u>

| | | |
|---|---|---|
| Theft | Montgomery County, Md. | June 30, 2005 |
| ADW Cinder Block | Washington, DC | August 24, 2005 |

<u>*Pending Charges*</u>:

None

### Detailed Description of Injuries

Officers Heath Bowman and Andrew Richardson transported Mr. Austin to Greater Southeast Community Hospital in their assigned Cruiser 7061. Mr. Austin was treated and admitted to the hospital by an Emergency Room staff physician. Mr. Austin was x-rayed and found to have sustained a fractured left mandible. There were no other reported injuries.

### Description of Scene

* The incident occurred in the processing area of the Central Cell Block.

* The room is approximately 25 feet long and 16 feet wide There are no outside windows and there is only one door that is used to enter and exit.

### Involved Officer(s) Statement(s)

**Officer Don Thomas**                                    **Central Cell Block**

On Tuesday, August 30, 2005, Officer Don Thomas provided a signed written statement to the Force Investigation Team. Officer Thomas waived his Fifth Amendment rights and declined legal representation. In Officer Thomas' statement, he related the following:  **(Attachment 5)**

On Thursday, August 25, 2005, Officer Thomas was on duty and in full uniform, working the 1:00 PM to 9:30 PM, tour of duty, at the Central Cell Block (CCB). Officers Thomas and Crowder were working in the processing area when Officer Thomas went to a cell to get Mr. Austin to place an armband on him. Officer Thomas escorted Mr. Austin to the attorney prisoner interview room which is located in the processing area.

Officer Thomas reported when he walked towards a table to retrieve the armband, he heard Officer Crowder ask Mr. Austin to step back into the attorney prisoner interview room. At that time, Officer Thomas turned and saw that Mr. Austin was standing outside the attorney prisoner interview room.

5

Officer Thomas reported that he asked Mr. Austin to step back inside the room. At this time, Mr. Austin started to walk towards the steps leading out of the processing room. Upon seeing that, Officer Thomas quickly walked over to Mr. Austin. In an attempt to prevent him from leaving the processing area, Officer Thomas grabbed Mr. Austin by his arm.

Officer Thomas reported that Mr. Austin quickly turned and in one motion swung at him. Officer Thomas stated he slightly moved back to prevent from being struck and to protect himself, he swung back and struck Mr. Austin about the body.

Officer Thomas stated that he and Mr. Austin fell down a small flight of steps onto the floor. Officer Thomas stated he then attempted to place handcuffs on Mr. Austin to prevent any further confrontation and was aided by Officers Crowder, Hawkins and Civilian Employee Lynn Lewis.

Officer Thomas reported once Mr. Austin was subdued, he was placed in a cell and Mr. Austin then complained of being injured. Officer Thomas then notified Officer Hawkins who completed a PD 313 and Mr. Austin was later transported to Greater Southeast Community Hospital.

**Officer George Hawkins**                                **Central Cell Block**

On Sunday, August 28, 2005, Officer George Hawkins provided a voluntary audio taped statement to the Force Investigation Team. Officer Hawkins waived his Fifth Amendment rights and declined legal representation. In Officer Hawkins' statement, he related the following: **(Attachment 6)**

On Thursday, August 25, 2005, Officer Hawkins was on duty and in full uniform, working the 1:00 PM to 9:30 PM, tour of duty, assigned as the Acting Sergeant for the Central Cell Block. Officer Hawkins was sitting in the cell block's intake area when he heard what he described as a disturbance coming from the processing area.

Officer Hawkins responded to the area and observed Mr. Austin down on the floor, lying on his right hand. Officer Hawkins stated Officer Don Thomas was stating, "Give me your hand."

Officer Hawkins stated after handcuffing Mr. Austin he was picked up off the floor and placed in holding cell 3. Officer Hawkins observed blood coming from Mr. Austin's mouth. Officer Hawkins stated that he prepared a PD 313 and telephoned Police Communications requesting a vehicle to transport Mr. Austin to the hospital.

Officer Hawkins stated that he asked Officer Don Thomas what had happened. Officer Hawkins stated that Officer Thomas informed him that he had stated something to Mr. Austin as Mr. Austin was attempting to leave the processing area. Officer Thomas stated he grabbed Mr. Austin's arm and Mr. Austin turned and swung at Officer Thomas. Officer Thomas stated that he then swung back at Mr. Austin striking him in the face.

Officer Hawkins stated that he did not make notifications to anyone in reference to the use of force. Officer Hawkins reported that he had attended class in reference to General Order 901.07 (Use of Force), but he did not think the situation was serious at that time.

8

## Police Witness Statement(s)

**Officer Rhonda Crowder**                                    **Central Cell Block**

On Sunday, August 28, 2005, Central Cell Block Officer Rhonda Crowder provided an audio taped statement to The Force Investigation Team.  In her statement, Officer Crowder related the following.  (**Attachment 7**)

On Thursday, August 25, 2005, Officer Crowder was working the 1:00 PM to 9:30 PM, tour of duty.  Officer Crowder was assisting in the processing of Mr. Nigel Austin.  Officer Crowder observed Mr. Austin attempting to leave the processing area.

Officer Crowder stated that she observed Mr. Austin swing at Officer Thomas, but she did not observe Officer Thomas strike Mr. Austin.  Officer Crowder stated that she observed Mr. Austin and Officer Thomas fall down a few steps.

Officer Crowder stated she yelled to Officer Hawkins to respond and assist in subduing Mr. Austin.  Officer Crowder stated she observed Officer Thomas and Officer Hawkins subduing Mr. Austin and taking him back to the cell area.  Officer Crowder stated that she observed blood on Mr. Austin, but did not know how he sustained his injury.

**Officer Heath Bowman**                                    **Seventh District**

On Wednesday, January 25, 2006, Seventh District Officer Heath Bowman provided a signed written statement to the Force Investigation Team.  In his statement, Officer Bowman related the following.  (**Attachment 8**)

Officer Bowman reported that on Thursday August 25, 2005, at approximately 5:40 PM, while assigned to Cruiser 7061 along with Officer Andrew Richardson, they received a radio assignment to respond to CCB to transport an adult male to Greater Southeast Community Hospital.

Officer Bowman reported that upon their arrival at CCB, the staff presented them with Mr. Austin who had a swollen cheek and wearing a dried bloody white tee shirt.  Officer Bowman reported that Mr. Austin was wearing flex-cuffs around his ankles because CCB personnel had deemed Mr. Austin a flight risk.  Officer Bowman reported that he was instructed to be careful because Mr. Austin had thrown a punch at an officer and that he received his injury while being subdued.

Officer Bowman reported that he and Officer Richardson transported Mr. Austin to Greater Southeast Community Hospital Emergency Room for treatment.  Officer Bowman stated that Mr. Austin stated that he received his injury when he got into it with the staff at CCB.

Officer Bowman reported he remained at the hospital with Mr. Austin while he was being treated until he was relieved by Seventh District midnight officers.

**Officer Andrew Richardson**                                    **Seventh District**

On Wednesday, January 25, 2006, Seventh District Officer Andrew Richardson provided a signed written statement to the Force Investigation Team.  In his statement, Officer Richardson related the following.  (**Attachment 9**)

Officer Richardson reported on Thursday, August 25, 2005, at approximately 5:40 PM, while assigned to Cruiser 7061 along with Officer Heath Bowman, he responded to CCB. Upon their arrival, CCB staff presented him with Mr. Austin who was wearing a bloody white tee-shirt. He stated that Mr. Austin also had swelling to his cheek.

Officer Richardson reported he, along with Officer Bowman, transported Mr. Austin to Greater Southeast Community Hospital where he was treated. Officer Richardson reported that he remained with Mr. Austin at the hospital until he was relieved by Seventh District midnight officers.

### Emergency Medical Service Personnel Statement

Emergency Medical Service (EMS) Personnel were not requested to respond to the scene. Mr. Austin was transported by Officers Bowman and Richardson in Cruiser 7061 to Greater Southeast Community Hospital where he was treated by an Emergency Room staff physician. Mr. Austin was diagnosed with a fractured mandible and was admitted to the hospital.

### Involved Subject(s) Statement

**Mr. Nigel Austin**                    **1341 Howard Road, Southeast, Washington, DC**

On Sunday August 28, 2005, Mr. Austin was interviewed by Sergeant Charles Whittington of the Force Investigation Team and he related the following. **(Attachment 10)**

Mr. Austin provided a verbal statement stating that he was arrested for an arrest warrant and taken to CCB for processing. After being taken from the cell at CCB, he stated he became loud after he was told by a police officer that he would not make court that day.

He stated that a black male police officer then struck him in the face with his fist, causing him to fall to the floor. Mr. Austin stated that Officer Thomas and approximately three to four officers jumped on him and handcuffed him.

Mr. Austin stated that after being handcuffed, the officer that struck him in the face dragged him into a cell and told him, "You are in here for tonight." Mr. Austin stated that he remained in that cell bleeding for approximately one hour before he was transferred to another cell, while a police officer cleaned up the cell he was originally in.

Mr. Austin stated that he complained of pain and was bleeding from the mouth. Mr. Austin described Officer Thomas as a black male, 6"3 feet, to 6"4 inches tall, with a dark complexion, weighing approximately two hundred and thirty to two hundred and forty pounds and was wearing a dark blue uniform. Mr. Austin also stated that Officer Thomas had a bald head.

Mr. Austin stated that Officer Crowder was standing nearby when he was struck, Mr. Austin described her as being short, heavy set with a medium complexion and wearing a dark blue uniform.

Mr. Austin stated that a person that was also locked up witnessed this incident and was standing nearby. Mr. Austin did not know his name, but stated that this person was locked up for some type of credit card charge and lives on Atlantic Street, Southeast.

## Civilian Witnesses

**Civilian Employee Mr. Lynn Lewis**                         **Central Cell Block**

On Sunday, August 28, 2005, Central Cell Block Civilian Mr. Lynn Lewis provided an audio taped statement to the Force Investigation Team. In his statement, Mr. Lewis related the following. **(Attachment 11)**

Mr. Lewis reported while sitting in the cell block intake area talking with Officer George Hawkins he heard a commotion in the processing area and responded to the area to investigate. Mr. Lewis observed Mr. Austin lying on the floor and Officer Thomas was attempting to subdue him.

Mr. Lewis observed Officer Hawkins and Officer Thomas subduing Mr. Austin and placing him in a cell. Mr. Lewis observed blood on the floor, but did not know how Mr. Austin sustained his injury because he never asked anyone. Mr. Lewis reported prior to Mr. Austin going to the hospital, he also observed blood on the floor of the holding cell that Mr. Austin occupied.

## Physical Evidence Section

Officer Ramonz Height of the Forensic Science Division responded to the Greater Southeast Community Hospital and photographed Mr. Austin's face and clothing. Photographs taken by Officer Height showed the right side of Mr. Austin's face was swollen, and that his white tee-shirt was covered with dried blood . All reports bear Mobile Crime Lab (MCL) Number 05-9211, Film Strip Number 09-068.    **(Attachment 12)**

The scene was processed by Technician Ramonz Height who completed the following tasks:

1. Took photographs of Mr. Austin
2. Took photographs of Mr. Austin's clothing

*Evidence and Firearms Recovered/Processed*

No evidence was recovered or processed in reference to this investigation.

## Vehicle(s) Involved

None

## Electronic Transmissions

**Mobile Digital Computer (MDC)**

There were no Mobile Digital Computer (MDC) transmissions during this incident. The incident took place entirely within the Central Cell Block processing area and the officers did not make any notifications over the MDC System.

**Police Radio Zone Transmissions**

Cassette recordings were obtained from the Metropolitan Police Department Communications Division of the Seventh District Radio Zone transmissions that occurred during this incident. The tapes of the Seventh District Radio Zone transmissions were reviewed by the Force Investigation Team and the tapes revealed that there were no Radio Zone transmissions made during this incident.   The tapes are maintained within the Force Investigation Team's main files. **(Attachment 13)**

**9-1-1 Telephone Calls to MPD Communications Division**

There were no 9-1-1 calls made in reference to this incident.

**Medical Information**

On September, Monday, September 25, 2006, Detective Christopher Coles of the Force Investigation Team telephoned Mr. Peter Grenier, Mr. Austin's attorney, to arrange for Mr. Austin to provide a statement and his medical records to the Force Investigation Team. However Mr. Grenier failed to return the call.

On Tuesday, October 17, 2006, certified letters were mailed to Mr. Austin and Mr. Grenier through the United States Postal Service requesting that they contact me. Mr. Austin's certified letter was signed for on October 24, 2006. Mr. Grenier's certified letter was signed for on October 26, 2006. Mr. Austin and Mr. Grenier have not contacted the undersigned after they received their certified letter.

**Discrepancies and Clarifications**

The statements obtained by the investigator during the course of this investigation were basically the same as they relate to the reported events. There were issues that arose during the investigation in which clarifications are appropriate.

**Why wasn't Mr. Austin transported to the hospital immediately?**

Officer Hawkins stated that he saw the blood on Mr. Austin, but did not know that Mr. Austin was injured that badly.  Officer Hawkins stated that he notified Police Communications Division immediately after the incident and requested a transport vehicle to respond to CCB to transport Mr. Austin to the hospital.

However, the transport vehicle did not transport Mr. Austin to the hospital until 8:10 PM.  The transport officers stated that they got the assignment at 5:40 PM, while they were currently on a previous assignment with a prisoner at Greater Southeast Community Hospital.   After completing that assignment, they responded to CCB and transported Mr. Austin to Greater Southeast Community Hospital.

### Why wasn't FIT notified at the time of the Use of Force?

Officer Thomas stated in his written statement to the Force Investigation Team that he thought he only had to complete a UFIR if an issued service weapon was used. Officer George Hawkins stated in his audio taped statement that he thought the use of force had to be more serious to notify the Force Investigation Team.

Therefore, FIT was not notified of this incident and the officers did not complete the UFIR or report the use of force to an official as required by departmental policy.

### Why wasn't Mr. Austin charged with Assault on a Police Officer?

Officer Thomas stated in his written statement to the Force Investigation Team that he did not know why Mr. Austin was not charged. However, he stated that at CCB, they have to restrain combative people almost daily.

### Consultation with the United States Attorney's Office

On Sunday, August 28, 2005, this matter was referred to Assistant United States Attorney Judith Kidwell of the United States Attorney's Office, Civil Rights Unit, for review. On Thursday, September 21, 2006, a Letter of Declination was forwarded to Assistant Chief of Police William Ponton, Chief of the Metropolitan Police Department's Office of Professional Responsibility.

The letter notified the department that the United States Attorney's Office had declined criminal prosecution relative to the August 25, 2005, Use of Force by Metropolitan Police Department Officers Don Thomas and George Hawkins.

### Tactical Analysis

Based on the facts developed during this investigation, the decision to utilize force to subdue Mr. Austin by Officer Thomas and Officer Hawkins was within departmental policy. Mr. Austin was combative and ignored Officers Thomas' and Crowder's commands to step back into the attorney prisoner interview room. .Mr. Austin demanded to be taken back to a holding cell.

Officers Thomas and Crowder asked Mr. Austin several times to step back into the attorney prisoner interview room but Mr. Austin ignored their requests and continued to walk out of the processing area without permission. Officer Thomas then quickly walked over to Mr. Austin and grabbed him by the arm to prevent him from leaving the processing area. Mr. Austin then turned and swung at Officer Thomas.

To defend himself from an actual attack that could have resulted in serious bodily injury, Officer Thomas struck Mr. Austin once in the face area with a closed fist. Officer Hawkins, along with civilian employee Mr. Lynn Lewis, responded to the processing area to assist Officer Thomas with subduing Mr. Austin.

Officer Thomas then attempted to utilize hand control techniques and physical coercion to get Mr. Austin to return to the processing room but this was also unsuccessful when Mr. Austin turned and swung at Officer Thomas. At that point, Officer Thomas was forced to use the appropriate level of force.

It is the findings of this investigating official that Officers Thomas and Hawkins utilized the necessary amount of force to subdue Mr. Austin. Mr. Austin was combative, resisting, and ignored Officers Thomas and Crowder's command Officer Thomas utilized the department's use of force continuum when he attempted to utilize verbal persuasion to calm and control Mr. Austin, but Mr. Austin ignored Officer Thomas' verbal commands.

### Additional Considerations/Issues

If an officer is going to be utilized as an Acting Sergeant in the Central Cell Block, then the officer needs to know all the duties and responsibilities of an official.

After Mr. Austin was struck by Officer Thomas with a closed fist and blood was observed coming from Mr. Austin's mouth, there should have been a visual and verbal check of Mr. Austin to ascertain whether he was in need of immediate medical attention.

Medical attention should have been summoned immediately because Mr. Austin was physically injured and complained of pain. However Mr. Austin was placed into a holding cell where his mouth continued to bleed while he awaited to be transported to a hospital.

### Summary and Conclusions

In order to assess this Use of Force (Hand Controls) and determine whether or not the events comport with applicable rules and regulations, several issues must be addressed and analyzed. Moreover, this type of analysis allows for a review of policies and procedures with the application of "hindsight vision" which lends itself as a teaching tool and helps preclude unsafe or improper practices from occurring in the future. However, in reviewing and considering this matter it is helpful to refer to the Supreme Court decision of **GRAHAM vs. CONNOR, 490 U.S. 386 (1989),** as it relates to the reasonableness of force used by police. The court indicated that:

> **"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation."**

In regards to Officers Thomas' and Hawkins's use of force, the following question must be considered:

- Did the officers utilize the minimum amount of force necessary to subdue Mr. Austin for the purpose of protecting themselves, and was it done in accordance with the department's applicable directives?

The physical and testimonial evidence of the involved witness statements support the following facts:

- On Thursday, August 25, 2005, Mr. Nigel Austin was placed under arrest at 1341 Howard Road, Southeast, pursuant to District of Columbia (DC) Superior Court Arrest

Warrant Number USW-86505 for Assault with a Deadly Weapon.  Mr. Austin was transported to the Seventh District where he was booked at 10:26 AM.

- On Thursday August 25, 2005, approximately 12:15 PM, Mr. Nigel Austin arrived at the Metropolitan Police Department Central Cell Block.

- On Thursday, August 25, 2005, Central Cell Block Officers Don Thomas, George Hawkins, Rhonda Crowder and Mr. Lynn Lewis were all working the 1:00 PM to 9:30 PM, tour of duty.

- Officers Don Thomas and Rhonda Crowder were working the processing side of Central Cell Block and Officer Thomas escorted Mr. Austin from a holding cell to the processing room.  Mr. Austin stated he became loud and demanded to be taken back to a cell after being told he would not be going to court that day.

- Mr. Austin was advised several times by Officers Crowder and Thomas to step back into the attorney prisoner interview room, but he continued to walk away from the room towards the steps.

- Officer Thomas walked over to Mr. Austin and grabbed him by the arm to prevent him from leaving the area and Mr. Austin swung at Officer Thomas.

- Officer Thomas stepped back to prevent from being struck and to defend him from an actual attack.  Officer Thomas swung back and struck Mr. Austin once about the face and both of them fell down several steps.

- Officer Crowder observed Mr. Austin swing at Officer Thomas and she called out to Officer George Hawkins for assistance.  She then observed Mr. Austin and Officer Thomas fall down several steps.

- Officer Hawkins and Mr. Lewis responded to assist Officer Thomas.  They observed Mr. Nigel Austin lying on t he floor with his hands under his body as Officer Thomas was stating to Mr. Austin, "Give me your hands."

- Officer Thomas informed Mr. Austin to give him his hands and with the assistance of Mr. Lewis, they were able to handcuff Mr. Austin and place him into cell number 3.

- Officer George Hawkins was the Acting Sergeant for the shift and he observed blood coming from Mr. Austin's face.   Officer Hawkins then prepared a PD 313 (Arrestee's Injury/Illness Report) and notified Police Communications via telephone that he needed a transport to respond to Central Cell Block to transport Mr. Austin to the hospital.

- On Thursday, August 25, 2005, approximately 8:10 PM, Seventh District Officers Heath Bowman and Andrew Richardson were operating Cruiser 7061.  They responded to Central Cell Block and transported Mr. Austin to Greater Southeast Community Hospital where he was treated and admitted for a fractured mandible. Both officers remained at the hospital with Mr. Austin until they were relieved of the guard detail.

The physical evidence and the witness information are consistent throughout this incident. It is clear that Officers Thomas and Hawkins utilized force to subdue Mr. Austin. It was determined that Officers Thomas and Hawkins were justified and within departmental policy during the use of force against Mr. Austin.

General Order 901.7 states that it is the policy of the department that:

"The decision to use force of any level ought to be based on the danger posed by a subject confronted by the police rather than the nature or category of the offense. That decision must be based on the circumstances that the officer reasonably believes to exist. Officers are not required to start at the lowest level of the Use of Force Continuum. Officers should select the appropriate level of force required by the circumstances."

General Order 901.7 states that the levels of force in the use of force continuum are:

   A. Verbal persuasion
   B. Hand controls, such as firm grip, escort or pain/pressure compliance holds
   C. Protective weapons including OC spray or impact weapons such as a tactical baton, and
   D. Deadly force

Additionally, General Order 901.7 states that police officers are authorized to use Non-Deadly Force to:

   A. Protect themselves or another from physical harm
   B. Restrain or subdue a resistant individual; and
   C. Bring an unlawful situation safely and effectively under control.

Based on the information gathered, Officers Thomas and Hawkins were protecting themselves from an actual attack that occurred in the cell block.

General Order 901.07, V,A, states that prompt medical attention shall be given:

"When any level of force is used, there shall be a visual and verbal check of the subject to ascertain whether the subject is in need of medical care. Medical attention shall be summoned immediately if a person is physically injured in any way, complains of pain, or demonstrates life-threatening symptoms."


### Findings


After reviewing and taking all known facts into consideration, such as the testimonial evidence, and the direct evidence the undersigned investigating official finds that there is clear and convincing evidence that Officers Thomas' and Hawkins' use of force on August 25, 2005, was reasonable and within departmental policy.

However, it was not reasonable for the officers to place an injured prisoner in a holding cell without making sure that he was transported to a hospital immediately. Additionally, the Central Cell Block officers failed to notify FIT of the use of force that occurred that day. FIT was notified of this case on Sunday, August 28, 2005. At that time, FIT responded to CCB and conducted an initial investigation into the use of force and prepared a preliminary Investigative report. **(Attachment 14)**

14

## **Final Recommendation**

In reference to Officer Don Thomas' Use of Force (Hand Strike) against Mr. Nigel Austin, I recommend that this be classified as **JUSTIFIED, WITHIN DEPARTMENTAL POLICY**.

In reference to Officer George Hawkins's Use of Force (Hand Controls) against Mr. Nigel Austin, I recommend that this be classified as **JUSTIFIED, WITHIN DEPARTMENTAL POLICY**.

Officers Thomas and Hawkins are currently in a Full Duty status

Christopher Coles
Detective I

17